### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MINNESOTA
### DULUTH DIVISION

VIRGIN RECORDS AMERICA, INC., et al.,

       Plaintiffs,

                                    Case No.: 06cv1497-MJD/RLE

vs.

                                    **STATEMENT OF CASE**

JAMMIE THOMAS,

       Defendant.

Pursuant to the Court's Order of August 3, 2007, Plaintiffs respectfully submit their Statement of the Case.

## **BACKGROUND**

This action seeks redress for the infringement of Plaintiffs' copyrighted sound recordings pursuant to the Copyright Act, 17 U.S.C. §§ 101, 106, 501-505. Plaintiffs are recording companies that own or control exclusive rights to copyrights in sound recordings, including specifically twenty-six (26) of the copyrighted sound recordings identified in Exhibit A to the Complaint and in Schedule 1 attached hereto (the "Sound Recordings").[1] Since the early 1990s, Plaintiffs and other copyright holders have faced a massive and exponentially expanding problem of digital piracy over the Internet. Today, copyright infringers use various online media distribution systems to download (reproduce) and unlawfully disseminate (distribute) to others billions of perfect digital copies of Plaintiffs' copyrighted sound recordings each month. The United States Supreme Court has characterized the magnitude of online piracy as "infringement

---

[1] The twenty-six copyrighted Sound Recordings are a small subset of the sound recordings identified on Exhibit B to Plaintiffs' Complaint.

on a gigantic scale." *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster Ltd.*, 545 U.S. 913, 940 (2005). As a direct result of piracy over P2P networks, Plaintiffs have sustained and continue to sustain financial losses.

On February 21, 2005, Plaintiffs' investigator, SafeNet, Inc., detected an individual using Internet Protocol ("IP") address 24.179.199.117 engaged in the infringement of Plaintiffs' copyrighted sound recordings. This individual was distributing 1,702 digital audio files—many of them Plaintiffs' copyrighted sound recordings—from the KaZaA "shared" folder on her computer. This individual was distributing these audio files for free over the Internet under the username "tereastarr@KaZaA" to potentially millions of other KaZaA users. SafeNet determined that Charter Communications, Inc. was the Internet Service Provider associated with IP address 24.179.199.117. Plaintiffs then filed a "Doe" lawsuit and obtained an order for expedited discovery to determine the identity of the infringer. In response to Plaintiffs' Rule 45 subpoena, Charter Communications identified Defendant Jammie Thomas as the subscriber responsible for IP address 24.179.199.117 on February 21, 2005.

The names of each of the 1,702 digital audio files that were being distributed from Defendant's computer are listed in Exhibit B to the Complaint.[2] The 26 Sound Recordings at issue constitute a sample of the copyrighted works that Defendant infringed for which Plaintiffs are asserting their rights. Based on these and other facts, Plaintiffs will prove that Defendant is liable for the direct infringement of Plaintiffs' copyrights because she downloaded and distributed them over the Internet without Plaintiffs' authorization. For all of these reasons,

---

[2] Exhibit B to the Complaint is a copy of the shared folder on Defendant's computer that contained the 1,702 digital audio files that Defendant was distributing to millions of users on a peer-to-peer network at the time Plaintiffs' investigator caught her doing so.

Plaintiffs seek an award of statutory damages under 17 U.S.C. § 504, a permanent injunction as prayed for in the Complaint under 17 U.S.C. § 502, and costs of suit under 17 U.S.C. § 505.

## STATEMENT OF FACTS

Plaintiffs will prove the following facts at trial:

1. Plaintiffs own or control exclusive rights to copyrights and have registered valid copyrights in each of the 26 Sound Recordings at issue.

2. Plaintiffs' copyright registrations for each of the 26 Sound Recordings were effective prior to the date Defendant downloaded and/or distributed the Sound Recordings.

3. Plaintiffs placed proper notices of copyright pursuant to 17 U.S.C. § 402 on each respective album cover and compact disk of each of the Sound Recordings.

4. Plaintiffs' did not authorize Defendant to download or distribute any of the 26 Sound Recordings.

5. On February 21, 2005, at approximately 11:09 p.m. EST, Plaintiffs' third-party investigator, SafeNet, discovered a user at IP address 24.179.199.117 distributing 1,702 digital audio files, including Plaintiffs' 26 Sound Recordings at issue, using the KaZaA file-sharing program.

6. The KaZaA username for the individual at IP address 24.179.199.117 on February 21, 2005 was "tereastarr@KaZaA."

7. The "tereastarr" username has been Defendant's Internet username for multiple purposes for many years.

8. The internet service provider ("ISP") for the computer with IP address 24.179.199.117 on February 21, 2005 was Charter Communications, Inc. ("Charter").

9. Information provided by Charter in response to a Rule 45 subpoena identified Defendant, Jammie Thomas, as the subscriber of record and person responsible for IP address 24.179.199.117 on February 21, 2005 at approximately 11:09 p.m. EST.

10. Defendant used the KaZaA file-sharing program to download Plaintiffs' copyrighted Sound Recordings to her computer and to distribute Plaintiffs' copyrighted Sound Recordings from the KaZaA shared folder on her computer to the public through her Internet account with Charter.

11. Defendant's knew such conduct was unlawful, and acted willfully in violating Plaintiffs' copyrights.

12. Defendant also intentionally concealed her infringement and tried to escape responsibility for her actions by fabricating a clean hard drive to produce to Plaintiffs for inspection.

## **ARGUMENT**

**A. Defendant is liable for infringing Plaintiffs' copyrighted Sound Recordings.**

To establish that Defendant directly infringed Plaintiffs' copyrights, Plaintiffs must prove (1) that they own the copyrights in the Sound Recordings and (2) unauthorized copying or distributing by Defendant. *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (U.S. 1991); *Taylor Corp. v. Four Seasons Greetings, LLC*, 403 F.3d 958, 962-63 (8th Cir. 2005); 4 M. & D. Nimmer, NIMMER ON COPYRIGHT § 13.01, at 13-5 & n.4 (2002) ("Nimmer") ("[T]here are only two elements necessary to the Plaintiffs' case in an infringement action: ownership of the copyright by the plaintiff and copying [or public distribution or public display] by the defendant."). Copyright infringement is a strict liability offense, and Plaintiffs need not demonstrate Defendant's intent to infringe, or even knowledge of infringement, in order to prove copyright infringement. *Pinkham v. Sara Lee Corp.*, 983 F.2d 824, 829 (8th Cir. 1992)

(describing liability for copyright infringement as absolute because "[t]he defendant's intent is simply not relevant: The defendant is liable for 'innocent' or 'accidental' infringements").

The Copyright Act grants the copyright owner of a sound recording the exclusive right to, among other things, "reproduce the copyrighted work in copies or phonorecords." 17 U.S.C. § 106(1). Downloading copyrighted sound recordings over the Internet without authorization from the copyright holder violates the copyright holder's right of reproduction. *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1014 (9th Cir. 2001) ("Napster users who download files containing copyrighted music violate plaintiffs' reproduction rights."); *see also In re Aimster Copyright Litig.*, 334 F.3d 643, 645 (7th Cir. 2003) ("[M]aking . . . a digital copy of [copyrighted] music . . . infringes copyright.").

The Copyright Act also grants the copyright owner of a sound recording the exclusive right to "distribute copies or phonorecords of the copyrighted work to the public." 17 U.S.C. § 106(3). A person violates a copyright holder's distribution right by making an actual, unauthorized dissemination of a copyrighted work. *Perfect 10 v. Google, Inc.*, 416 F. Supp. 2d 828, 844 (C.D. Cal. 2006).

A person also violates a copyright holder's distribution right by making copyrighted works available to others without authorization from the copyright holder. Section 106(3) of the Copyright Act gives the owner of copyright "the exclusive rights to do ***and to authorize*** any of the following: . . . (3) To distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending . . . ." 17 U.S.C. § 106(3). This language makes it clear that it is an actionable infringement for one to violate a copyright owner's exclusive right to authorize the distribution of copies or phonorecords of a copyrighted work. The distribution right does not require a consummated transfer of the copyrighted work at

5

issue. Violating the exclusive right to authorize distribution is infringement. Accordingly, under the clear language of the statute, the making available of a work (*i.e.*, the offering to distribute that work) falls within the exclusive right of distribution under the Copyright Act. The United States Copyright Office has reached precisely the same conclusion, *see* Letter from Marybeth Peters to Rep. Howard L. Berman (Sept. 25, 2002), *reprinted in Piracy of Intellectual Property on Peer-to-Peer Networks, Hearing Before the Subcomm. on Courts, the Internet, and Intellectual Property of the House Comm. on the Judiciary* 107th Cong. 114-15 (2002) ("[M]aking [a work] available for other users of a peer to peer network to download . . . constitutes an infringement of the exclusive distribution right, as well of the reproduction right."), and that Office's interpretation of the Act is entitled to deference where, as here, it is a reasonable one, *see Bonneville International Corp. v. Peters*, 347 F.3d 485, 490 & n. 9 (3d Cir. 2003); *Batjac Productions, Inc. v. Goodtimes Home Video Corp.*, 160 F.3d 1223, 1230 (9th Cir.

1998) ("[T]he register [of copyrights] has the authority to interpret the copyright laws and [] its interpretations are entitled to judicial deference if reasonable.") (citations omitted).[3]

Consistent with the statutory language set forth above, courts have found that, where one makes available a copyrighted work in the manner at issue here, this violates the exclusive right of distribution. For example, in *Hotaling v. Church of Jesus Christ of Latter-Day Saints*, 118 F.3d 199 (4th Cir. 1997), the defendant obtained unauthorized copies of a work, added a listing of the unauthorized copies to its index, *and made the unauthorized copies available for distribution to the public in its library*. The court held that, even in the absence of proof that the work had actually been provided to the public, the work had been distributed within the meaning of 17 U.S.C. § 106(3). *See id.* at 203. It was sufficient that the title of the work had been included in an index *and that the work could have been checked out by a member of the public*. *See id.*

---

[3] The United States has also entered into two treaties, namely, the WIPO Copyright Treaty and the WIPO Performances and Phonograms Treaty (collectively the "WIPO Digital Treaties") that directly address the right of "making available." In order for the United States to sign onto these treaties and comply with them, the United States' copyright laws had to protect the same right of "making available" as do the WIPO Digital Treaties.

Notably, the Register of Copyrights and Congress both concluded that § 106(3) covered the "making available" right, such that no amendment to those statutes was necessary. *See* Letter, from Marybeth Peters, Register of Copyrights, to Rep. Howard L. Berman, dated September 25, 2002, *reprinted in* Piracy of Intellectual Property on Peer-to-Peer Networks: Hearing Before the Subcommittee on Courts, the Internet, and Intellectual Property of the House Comm. on the Judiciary, 107th Cong. 114-15 (2002) ("As you are aware, in implementing the new WIPO Copyright Treaty (WCT) and WIPO Performances and Phonograms Treaty (WPPT) in the Digital Millennium Copyright Act, Congress determined that it was not necessary to add any additional rights to Section 106 of the Copyright Act in order to implement the "making available" right under Article 8 of the WCT."). Simply stated, because U.S. Copyright Law contained a "making available" right consistent with the "making available" rights set forth in the WIPO Digital Treaties, no amendment to U.S. Copyright law was required.

Likewise, in *Napster*, the Ninth Circuit held that making copyrighted works available for electronic distribution on a P2P network violates the exclusive right of distribution, even absent evidence of actual distribution. 239 F.3d at 1014 (holding that file sharers "who upload file names to the search index for others to copy violate plaintiffs' distribution rights"); *see also Atlantic Recording Corp. v. Howell*, No CV06-2076-PHX-NWB, slip op. at 4-7 (D. Ariz. Aug. 20, 2007) (Exhibit 1 hereto) (holding that the defendant violated the plaintiffs' distribution right by using the KaZaA program to make the plaintiffs' copyrighted sound recordings available to other KaZaA users); *United States v. Shaffer*, 2007 U.S. App. LEXIS 65, at *10-11 (10th Cir. Jan. 3, 2007) ("We have little difficulty in concluding that [the defendant] distributed child pornography" by placing the pornography "in his computer's Kazaa shared folder."). Here, as in *Hotaling*, *Napster*, and *Howell*, Plaintiffs' copyrighted works were effectively included in an index and were available to be downloaded by any member of the KaZaA network who wished to do so. For the reasons set forth in *Hotaling*, *Napster*, and *Howell*, this violates Plaintiffs' exclusive right of distribution.

In this case, Plaintiffs will establish that they own or control exclusive rights to, and hold valid copyright registrations for, each of the 26 Sound Recordings at issue. Plaintiffs will also prove that Defendant used the KaZaA file sharing program on her computer to download and distribute Plaintiffs' Sound Recordings through her Charter Internet account from and to other users of the KaZaA file sharing network. Plaintiffs will further prove that Defendants infringement was willful, and that Defendant attempted to conceal her infringement and escape liability by fabricating a clean hard drive before producing it to Plaintiffs for inspection. Defendant is, therefore, liable for the infringement of Plaintiffs' copyrights, and Plaintiffs are entitled to statutory damages, injunctive relief, and costs of suit.

**B.      Plaintiffs are entitled to an award of statutory damages:**

The Copyright Act provides that, once copyright infringement has been established:

> [T]he copyright owner may elect, at any time before final judgment is rendered, to recover, instead of actual damages and profits, an award of statutory damages for all infringements involved in the action, with respect to any one work, for which any one infringer is liable individually, or for which any two or more infringers are liable jointly and severally.

17 U.S.C. § 504(c)(1); *see also Fitzgerald Publ'g Co., Inc. v. Baylor Publ'g Co.*, 807 F.2d 1110, 1114 (2d Cir. 1986) (noting that, upon proof of infringement, a copyright "owner may elect to recover – instead of actual damages and profits – statutory damages under § 504(c)(1) for those works whose copyrights were registered at the time the infringement occurred"). The appropriate statutory damages for non-willful infringement range from a minimum of $750 per work to a maximum of $30,000 per work. *See* 17 U.S.C. § 504(c)(1). In the case of willful infringement, like this one, "the court in its discretion may increase the award of statutory damages to a sum of not more than $150,000" per infringement. *See* 17 U.S.C. § 504(c)(2).

Willful infringement "means [acting] with knowledge that the defendant's conduct constitutes copyright infringement." *Peer Int'l Corp. v. Pausa Records, Inc.*, 909 F.2d 1332, 1336 (9th Cir. 1990) (citing 3 M. Nimmer & D. Nimmer, NIMMER ON COPYRIGHT § 14.04[B], at 14-40.2-.3 (1989)). Knowledge may be either actual or constructive. *GMA Accessories, Inc. v. Olivia Miller, Inc.*, 139 Fed. Appx. 301, 303 (2d Cir. 2005); *Island Software & Computer Serv. v. Microsoft Corp.*, 413 F.3d 257, 264 (2d Cir. 2005) ("even in the absence of evidence establishing the infringer's actual knowledge of infringement, a plaintiff can still prove willfulness by proffering circumstantial evidence that gives rise to an inference of willful conduct."). Importantly, knowledge can also be established by intentional concealment of the

infringement. *See RSO Records, Inc. v. Peri*, 596 F. Supp. 8 (S.D.N.Y. 1984); *Johnson v. Salomon*, 1977 U.S. Dist. LEXIS 15735 (D. Minn. May 25, 1977).

Plaintiffs do not need to prove any actual damages to be entitled to an award of statutory damages. Plaintiffs may elect statutory damages regardless of the adequacy of the evidence offered as to their actual damages and the amount of Defendant's profits. *Columbia Pictures Television, Inc. v. Krypton Broad.*, 259 F.3d 1186, 1194 (9th Cir. 2001) (citing Nimmer § 14.04[A]); *see also Aimster*, F.3d at 649 ("a copyright owner who can prove infringement need not show that the infringement caused him a financial loss"); *Los Angeles News Serv. v. Reuters Television Int'l, Ltd.*, 149 F.3d 987, 996 (9th Cir. 1998) ("a plaintiff may recover statutory damages whether or not there is adequate evidence of the actual damages suffered by the plaintiff or the profits reaped by defendant, in order to sanction and vindicate the statutory policy of discouraging infringement").

Plaintiffs will establish Defendant's liability for copyright infringement and ask the jury to award statutory damages. Plaintiffs will also establish that Defendant's infringement was willful and will request an increase in the award of statutory damages because of Defendant's willful conduct.

**C.  Plaintiffs are entitled to entry of a permanent injunction.**

The Copyright Act provides, "Any court having jurisdiction of a civil action arising under this title may . . . grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." 17 U.S.C. § 502(a); *see also Pac. & S. Co. v. Duncan,* 744 F.2d 1490, 1499 n.17 (11th Cir. 1984). Injunctions are routinely issued pursuant to the mandate of Section 502 because "the public interest is the interest in upholding copyright protections." *Autoskill Inc. v. National Educ. Support Sys., Inc.,* 994 F.2d 1476, 1499 (10th Cir. 1993); *see also Atari Inc. v. North Am. Philips Consumer Elec. Corp.*, 672 F.2d 607, 620 (7th

Cir. 1982) (injunction "necessary to preserve the integrity of the copyright laws which seek to encourage individual efforts and creativity by granting valuable enforceable right"); *Morley Music Co. v. Café Cont'l, Inc.*, 777 F. Supp. 1579, 1583 (S.D. Fla. 1991) ("A Plaintiff is entitled to a permanent injunction in a copyright action when liability has been established and where there is a threat of continuing violations.").

Once copyright infringement is established, irreparable injury is presumed. *See*, *e.g.*, *Atari*, 672 F.2d at 620; *In re Aimster Copyright Litigation*, 252 F.Supp. 2d 634, 662 (N.D. Ill 2002); *A&M Records, Inc. v. Napster, Inc.*, 114 F.Supp. 2d 896, 925 (N.D. Cal. 2001) (*citing Micro Star v. Formgen Inc.*, 154 F.3d 1107, 1109 (9th Cir. 1998). Once irreparable injury is presumed, injunctive relief is appropriate because damages alone are not an adequate remedy. *See Napster*, 239 F.3d at 1027 (holding that an injunction "is not only warranted but required"); *Arista Records, Inc. v. Beker Enters., Inc.*, 298 F. Supp. 2d 1310, 1314 (S.D. Fla. 2003) (noting that injunctions are "regularly issued" because of the strong public interest in copyright protections); *Princeton Univ. Press v. Mich. Document Servs., Inc.,* 99 F.3d 1381, 1392-93 (6th Cir. 1996) ("The weight of authority supports the extension of injunctive relief to future works.").[4]

Plaintiffs seek injunctive relief in the form requested in their Complaint.

**D.     Plaintiffs are entitled to costs of suit, including attorneys fees.**

Finally, Section 505 of the Copyright Act expressly authorizes recovery of "full costs," because an award of costs would "(1) deter future copyright infringement; (2) ensure that all

---

[4]     Additionally, pursuant to the equitable powers provided under 17 U.S.C. § 503(b) (2000), this Court has the power to order the destruction of all infringing copies in Defendant's possession as part of a final order or decree. *See Rogers v. Koons*, 960 F.2d 301, 313 (2d Cir. 1992).

11

holders of copyrights which have been infringed will have equal access to the court to protect their works; and (3) penalize the losing party and compensate the prevailing party." *A&N Music Corp. v. Venezia,* 733 F. Supp. 955, 959 (E.D. Pa.. 1990). Section 505 also allows the Court to award "a reasonable attorney's fee to the prevailing party as part of the costs." 17 U.S.C. § 505; *Fogerty v. Fantasy, Inc.*, 510 US 517 (1994).

Plaintiffs believe they will prevail in this case, and, if they do so prevail, they intend to seek attorney fees and costs under 17 U.S.C. § 505.

Respectfully submitted this 17th day of September 2007.

|  | s/ Laura G. Coates <br> Felicia J. Boyd (No. 186168) <br> Laura G. Coates (No. 350175) <br> FAEGRE & BENSON LLP <br> 2200 Wells Fargo Center <br> 90 South Seventh Street <br> Minneapolis, Minnesota 55402-3901 <br> Telephone: (612) 766-7000 <br> Facsimile: (612) 766-1600 <br><br> Richard L. Gabriel (pro hac vice) <br> Timothy M. Reynolds (pro hac vice) <br> David A. Tonini (pro hac vice) <br> Andrew B. Mohraz (pro hac vice) <br> HOLME ROBERTS & OWEN LLP <br> 1700 Lincoln, Suite 4100 <br> Denver, Colorado 80203 <br> Telephone: (303) 861-7000 <br> Facsimile: (303) 866-0200 <br><br> ATTORNEYS FOR PLAINTIFFS |
|---|---|

fb.us.2298382.01