## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MINNESOTA
## DULUTH DIVISION

VIRGIN RECORDS AMERICA, INC., a
California corporation; CAPITOL
RECORDS, INC., a Delaware
corporation; SONY BMG MUSIC
ENTERTAINMENT, a Delaware general
partnership; ARISTA RECORDS LLC, a
Delaware limited liability company;
INTERSCOPE RECORDS, a California
general partnership; WARNER BROS.
RECORDS INC., a Delaware corporation;
and UMG RECORDINGS, INC., a
Delaware corporation,

                 Plaintiffs,

vs.

Jammie Thomas,

                 Defendant.

Case No.: 06cv1497-MJD/RLE

**PLAINTIFFS' OPPOSITION TO
DEFENDANT'S THREE DOCKET 67
MOTIONS IN LIMINE**

---

Plaintiffs respectfully oppose Defendant Jammie Thomas' Three Docket 67 Motions in

Limine (Doc. No. 67, 85) and state as follows:

### ARGUMENT

**1.    All Three of Defendant's Motions Should be Denied Because They Were Untimely.**

The Court extended the parties' deadline to file motions in limine to 12:00 p.m. CDT,

September 24, 2007. (Order, Doc. No. 72.) Defendant filed one motion in limine shortly before

that deadline (Doc. No. 81.) Defendant then filed a memorandum to support three additional

motions in limine after the deadline at 4:57 p.m. CDT. (Doc. No. 85.) Accordingly, Defendant's

three additional motions were untimely and should be denied on that basis.

#1278604 v1

Dockets.Justia.com

## 2.    Defendant's First Motion In Limine Regarding Plaintiffs' Collective Presentation Of Their Case Is Without Any Factual Or Legal Support And Should Be Denied.

Plaintiffs have never claimed to be a "single entity" or "organization" as Defendant contends (Doc. No. 85 at 1, 2), and they do not intend to make any such arguments to the jury. Plaintiffs do not dispute that they are individual claimants and that each of them is required to substantiate the elements of its claim against Defendant. The factual and legal bases for each Plaintiff's claim against Defendant, however, are substantially identical. Each Plaintiff is suing Defendant for unlawfully sharing copyrighted sound recordings over the Internet. Thus, there will necessarily be some overlap in the evidence and arguments presented to the jury. To require each Plaintiff to repeat testimony common to each Plaintiff's claim would be exceedingly cumbersome and a waste of time.

Likewise, to require counsel to list every Plaintiff every time that they refer to Plaintiffs would be wasteful and would serve no purpose whatsoever. Plaintiffs are not aware of any authority that prohibits counsel for Co-Plaintiffs to refer to their clients as "Plaintiffs," and Defendant cites none.

To the extent that Plaintiffs' joint prosecution of this case remains a concern for Defendant, that concern can be alleviated by the following jury instruction:

> Each plaintiff has asserted claims against the defendant. The claims of each plaintiff must be considered separately and individually, and you should consider each instruction given to apply separately and individually to each plaintiff and to the defendant in this case.

Plaintiffs submit that this instruction eliminates any risk of confusion by the jury as to this issues and burdens of proof in this case. For all of these reasons, the Court should deny Defendant's First Motion in Limine (to Prohibit Plaintiffs from Arguing Collectively).

2

3. **Defendant's Second Motion In Limine Should Be Denied Because It Is A Misstatement Of The Law And Of Plaintiffs' Claims In This Case.**

Defendant's second motion asks the Court to bar Plaintiffs from making statements to the jury that the only element necessary to establish an act of infringement "is the act of downloading to defendant's ISP address." (Doc. No. 85 at 3.) Plaintiffs do not understand what Defendant means by the phrase, "the act of downloading to defendant's ISP address," and have never alleged such act in this case. To the extent that Plaintiffs can glean what Defendant is trying to say, it appears that this argument misstates Plaintiffs' case against Defendant.

Plaintiffs intend to prove at trial that Defendant used the KaZaA file sharing program on her computer to download and distribute Plaintiffs' sound recordings from and to other users of the KaZaA file sharing network. The fact that such downloading and distribution occurred through Defendant's Internet Protocol ("IP") address is but one evidentiary fact that Plaintiffs will show to prove Defendant's responsibility for the infringement at issue in this case.

Every court to consider the issue has held that downloading copyrighted sound recordings over the Internet without authorization from the copyright holder, including on peer-to-peer services like that at issue in this case, violates the copyright holder's right of reproduction. *See, e.g.*, *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster Ltd.*, 545 U.S. 913, 940 (2005) (describing online piracy as "infringement on a gigantic scale"); *BMG Music v. Gonzalez*, 430 F.3d 888, 889 (7th Cir. 2005) ("[P]eople who post or download music files are primary infringers."); *In re Aimster Copyright Litig.*, 334 F.3d 643, 645 (7th Cir. 2003) ("[M]aking . . . a digital copy of [copyrighted] music . . . infringes copyright."); *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1014 (9th Cir. 2001) ("Napster users who download files containing copyrighted music violate plaintiffs' reproduction rights."). Accordingly, and contrary to Defendant's apparent

3

premise, a Defendant who downloads copyrighted sound recordings into a Kazaa share folder without authorization does violate the copyright act.

Likewise, distributing copyrighted sound recordings over the Internet by making them available to other users of the file sharing network violates the copyright holder's distribution right. *Gonzalez*, 430 F.3d at 889 ("[P]eople who post or download music files are primary infringers."); *Napster*, 239 F.3d at 1014 (holding that file sharers "who upload file names to the search index for others to copy violate plaintiffs' distribution rights"); *Sony Pictures Home Entm't, Inc. v. Lott*, 471 F. Supp. 2d 716, 721-22 (N.D. Tex. 2007) (granting summary judgment to the plaintiff motion picture companies based on evidence that their copyrighted motion pictures were being distributed from the defendant's computer); *Atlantic Recording Corp. v. Howell*, No CV06-2076-PHX-NWB, slip op. at 4-7 (D. Ariz. Aug. 20, 2007) (holding that the defendant violated the plaintiffs' distribution right by using the KaZaA program to make the plaintiffs' copyrighted sound recordings available to other KaZaA users) (attached as Exhibit A hereto); *Motown Record Co. v. DePietro*, No. 04-CV-2246, slip op. at 7 and n.38 (E.D. Pa. Feb. 16, 2007) (holding that making copyrighted works available to other online file sharers violates the copyright holder's distribution right) (attached as Exhibit B hereto).  In this case, Plaintiffs intend to prove that Defendant did precisely that.

For all of these reasons, Defendant's Second Motion has no factual or legal basis and should be denied.

**4.      Defendant's Third Motion In Limine Should Be Denied Because Limiting Plaintiffs' Proof Would Cause Substantial Prejudice To Plaintiffs.**

Defendant's third motion asks for the Court to prohibit Plaintiffs' counsel from describing conduct not involving Defendant.  (Doc. No. 85 at 3.)  Although Plaintiffs' agree with Defendant that other copyright infringement lawsuits are not relevant to the case, there is a

fundamental difference between discussing other cases and defendants—which discussion would be wholly irrelevant and should not be permitted by either party—and discussing the existence of other infringers in general—which discussion is relevant given the very nature of the file-sharing network at issue in this case. Indeed, it is impossible to discuss the alleged use of a file-sharing program like KaZaA without discussing the nature of such a program, which allows millions of individuals to share files with other users of the program. Prohibiting Plaintiffs from explaining the nature of the infringement at issue in this case would substantially prejudice Plaintiffs' ability to provide the jury with the fundamental context of peer-to-peer infringement that is necessary to understand this case and Plaintiffs' claims against this Defendant.

In addition, Plaintiffs are entitled to present evidence substantiating the harm caused by Defendant's infringement, including the distribution of copyrighted sound recordings to potentially millions of other KaZaA users. Plaintiffs' have elected to pursue statutory damages against Defendant within the range provided in 17 U.S.C. § 504(c)(1), and "[t]he law commits to the trier of facts, within the named limits, discretion to apply the measure furnished by the statute." *Cass County Music Co. v. C.H.L.R., Inc.*, 88 F.3d 635, 644 (8th Cir. 1996). One of the factors in determining what amount of statutory damages to award is the harm to Plaintiffs. *See* 4 M. & D. Nimmer, NIMMER ON COPYRIGHT § 1404(B)(1)(a) (determination of statutory damages within the applicable limits may turn upon such factors as the revenues lost by the plaintiffs as a result of the defendant's conduct). Because Plaintiffs are entitled to have a jury make factual findings relevant to determining the amount of damages to be assessed, whether they are actual damages or statutory damages, *see Cass County Music Co.*, 88 F.3d at 644, they must be allowed to present evidence concerning the harm caused by Defendant's participation in a file-sharing network with millions of other infringers. Preventing Plaintiffs from putting on

such evidence would be extremely prejudicial.

This evidence is also relevant to Plaintiffs' motive for bringing this case.  Defendant has and likely will try to argue that this is a case of large corporate entities beating up on the little person.  Plaintiffs need to be able to explain to the jury why this case is important and why they brought it.  A discussion of the harm caused by online piracy and why Plaintiffs brought this case is essential.

Finally, Defendant is wrong when she argues that, if Plaintiffs are allowed to put on evidence of harm caused by peer-to-peer file sharing, she should be allowed to discuss other lawsuits where Plaintiffs allegedly sued the wrong person.  This argument mixes apples and oranges.  The harm caused by Defendant's sharing files with potentially millions of other KaZaA users is directly relevant to Plaintiffs' claim for statutory damages.  Defendant is free to argue to the jury, and likely will, that her alleged involvement is but a tiny part of the larger picture and should not warrant any increase in the damage amount.  Both of these arguments are relevant and appropriate for presentation to the jury, which will make the ultimate decision.  Evidence regarding other purported cases where Plaintiffs allegedly sued the wrong person, however, have no relevance to the parties' claims and defenses in this case and would be highly misleading and prejudicial, particularly given that Plaintiffs and other record companies have obtained judgments against literally thousands of other infringers, and the cases on which Defendant would rely reflect a very few exceptional cases.  *See* Fed. R. Evid. 401, 403.  The jury will decide whether Plaintiffs sued the right person in this case based on the evidence in this case.  Evidence of what allegedly happened in other cases would only serve to confuse the issues, multiply these proceedings unnecessarily, and potentially prejudice the jury with irrelevant facts, and it would result in mini trials to demonstrate why the facts of other cases are completely

different to those of this case.  *See id.*

For these reasons, the Court should deny Defendant's Third Motion in Limine.

## CONCLUSION

WHEREFORE, Plaintiffs respectfully ask that the Court deny Defendant's Three Docket 67 Motions in Limine (Doc. No. 67, 85).  A form of order is attached for the Court's convenience.

Respectfully submitted this 26th day of September 2007.

_____
Felicia J. Boyd (No. 186168)
Laura G. Coates (No. 350175)
FAEGRE & BENSON LLP
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, Minnesota 55402-3901
Telephone: (612) 766-7000
Facsimile:  (612) 766-1600

Richard L. Gabriel (pro hac vice)
Timothy M. Reynolds (pro hac vice)
David A. Tonini (pro hac vice)
Andrew B. Mohraz (pro hac vice)
HOLME ROBERTS & OWEN LLP
1700 Lincoln, Suite 4100
Denver, Colorado 80203
Telephone: (303) 861-7000
Facsimile: (303) 866-0200

ATTORNEYS FOR PLAINTIFFS



**EXHIBIT A**

**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Atlantic Recording Corporation, et al., | No. CV06-02076-PHX-NVW |
| Plaintiffs, | **ORDER** |
| vs. | |
| Pamela and Jeffrey Howell, wife and husband, | |
| Defendants. | |

     The court has before it Plaintiffs' Motion for Summary Judgment (doc. # 30), Plaintiffs' Statement of Facts supporting the Motion (doc. # 31), Defendant Jeffrey Howell's Response (doc. # 33) and Plaintiffs' Reply (doc # 38). The Motion will be granted for the reasons set forth below.

**I.    Background**

     In an effort to reduce online infringement of copyrights they hold to sound recordings of various musical artists, Plaintiffs Atlantic Recording Corporation, Elektra Entertainment Group, Inc., Warner Bros. Records, Inc., Capitol Records, Inc., UMG Recordings, Inc., Sony BMG Music Entertainment, and Arista Records (collectively, the "recording companies") hired an investigation company, MediaSentry, to detect unauthorized distribution and reproduction of the recordings in online file-sharing systems. At 1:52 a.m. Eastern Time on January 30, 2006, MediaSentry detected an individual who had 4,007 files available in a shared folder on the Kazaa online file-sharing system. The investigation showed that 2,329

of the files were sound recordings. The relevant Internet service provider, Cox Communications, Inc., identified the IP address associated with the shared folder as registered to a Pamela Howell in Scottsdale, Arizona. Pamela Howell is Defendant Jeffrey Howell's wife.

During the investigation, MediaSentry took screenshots (images of a computer screen display) showing the contents of the Kazaa shared folder. The folder and the files it contained were registered to the Kazaa username "jeepkiller@kazaa." Jeffrey Howell ("Howell") created both the username and the shared folder after downloading the Kazaa file-sharing program to his previous computer. When he bought his current computer he "networked both the computers together and transferred [his] old files to [his] new computer." (Doc. #31, Ex. 9 at 164.) Thus, at the time of the MediaSentry investigation, Howell's computer had his "entire body of Kazaa downloads on it from [his] old computer" along with additional files he added to the Kazaa collection. *Id.* The files, available to all other Kazaa users for download from the shared folder, included 54 specific sound recordings of musical artists for which the recording companies own valid copyrights.

The recording companies filed this action for copyright infringement against Howell and his wife on August 29, 2006, and now move for summary judgment on that claim, arguing that there is no disputed material fact that Howell violated their exclusive distribution right for the 54 identified sound recordings. Howell, proceeding pro se, denies liability on the grounds that he was at work when the MediaSentry investigation took place, that he owns compact discs containing the sound recordings at issue and "translated" them to his computer for personal use, and that "a malfunction or tampering by a third party is responsible for [those] files being available on the [I]nternet." (Doc. # 33.)

## II. Standard of Review

Rule 56(c), Fed. R. Civ. P., provides that summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the

moving party is entitled to a judgment as a matter of law." A "genuine issue" of material fact will be absent if, "viewing the evidence and inferences which may be drawn therefrom in the light most favorable to the adverse party, the movant is clearly entitled to prevail as a matter of law." *Jones v. Halekulani Hotel, Inc.*, 557 F.2d 1308, 1310 (9th Cir. 1977); *see also Baldwin v. Trailer Inns, Inc.*, 266 F.3d 1104, 1111 (9th Cir. 2001). The evidence presented by the parties must be admissible. Fed. R. Civ. P. 56(e). Conclusory and speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and to defeat summary judgment. *Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of any genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The nature of this responsibility varies, however, depending on whether the movant or the non-movant would bear the burden of persuasion at trial with respect to the issue at hand. If, as here, the burden of persuasion at trial would be on the party moving for summary judgment, that party may satisfy its initial burden of production only by showing that it would be "entitle[d] . . . to a directed verdict if the evidence went uncontroverted at trial." *Houghton v. South*, 965 F.2d 1532, 1536 (9th Cir. 1992); *cf. Berry v. Bunnell*, 39 F.3d 1056, 1057 (9th Cir. 1994) ("A directed verdict is proper when the evidence permits only one reasonable conclusion.").

Where the moving party has met its initial burden with a properly supported motion, the party opposing the motion "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is appropriate against a party who "fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of

1  proof at trial." *Celotex Corp.*, 477 U.S. at 322; *Matsushita Elec. Indus. Co. v. Zenith Radio*
2  *Corp.*, 475 U.S. 574, 586 (1986) (nonmovant's showing of "some metaphysical doubt" as
3  to material facts insufficient); *see also Citadel Holding Corp. v. Roven*, 26 F.3d 960, 964 (9th
4  Cir. 1994). Summary judgment is not appropriate when the nonmoving party identifies or
5  produces evidence from which a reasonable juror, drawing all inferences in favor of the
6  nonmoving party, could return a verdict in the nonmoving party's favor. *United States v.*
7  *Shumway*, 199 F.3d 1093, 1103-04 (9th Cir. 1999).

8  **III.   Analysis**

9      Under 17 U.S.C. § 501(a), "[p]laintiffs must satisfy two requirements to present a
10  prima facie case of direct infringement: (1) they must show ownership of the allegedly
11  infringed material and (2) they must demonstrate that the alleged infringers violate at least
12  one exclusive right granted to copyright holders under 17 U.S.C. § 106." *A&M Records, Inc.*
13  *v. Napster, Inc.* 239 F.3d 1004, 1013 (9th Cir. 2001). Section 106(3) in turn grants to "the
14  owner of copyright . . . the exclusive rights to . . . distribute copies or phonorecords of the
15  copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or
16  lending."

17      **A.     Plaintiffs Have Established Copyright Ownership**

18      The recording companies' ownership of valid copyrights to the sound recordings is
19  not in dispute. Affidavits establish that they held valid copyrights effective prior to the date
20  on which the sound recordings were found in the "jeepkiller@kazaa" shared folder. (Doc.
21  # 31, Ex. 4-7.) In his deposition, Howell stated that he "[did not] agree with the law" that
22  the recording companies own the copyrights, but he also "[did not] dispute that they own
23  them." (Doc. # 31, Ex. 9 at 252.) Thus, the first element of the recording companies' claim
24  of copyright infringement has been satisfied.

25      **B.     Plaintiffs Have Established Copyright Infringement**

26      Under 17 U.S.C. § 106(3), distribution of copyrighted material need not involve a
27  physical transfer. "[T]he owner of a collection of works who makes them available to the

28                                          - 4 -

public may be deemed to have distributed copies of the works" in violation of copyright law. *Perfect 10, Inc. v. Amazon.com, Inc.*, 487 F.3d 701, 718-19 (9th Cir. 2007) (citing *Hotaling v. Church of Jesus Christ of Latter-Day Saints*, 118 F.3d 199, 203 (4th Cir. 1997)). Thus, in *Napster, Inc.*, users of the online file-sharing program Napster were found to have violated copyright owners' distribution rights by employing "the Napster software to make their collections available to all other Napster users." *Perfect 10, Inc.*, 487 F.3d at 719 (citing 239 F.3d at 1011-14).

Several cases suggest that Kazaa users commit direct infringement by employing the Kazaa program to make their collections of copyrighted sound recordings available to all other Kazaa users. In *Arista Records v. Greubel*, 453 F. Supp. 2d 961, 969 (N.D. Tex. 2006), a set of screenshots showing the contents of a defendant's Kazaa shared folder was found to present a cognizable claim for copyright infringement under 17 U.S.C. § 106(3). *Warner Bros. Records, Inc. v. Payne*, 2006 WL 2844415, at *4 (W.D. Tex. July 17, 2006), equated the placement of items in a Kazaa shared folder with "publication" as defined by 17 U.S.C. § 101 because it is a distribution, or an offer of distribution "in which further distribution, public performance or display is contemplated." It is no defense that a Kazaa user did not directly oversee the unauthorized distribution of copyrighted material. *Interscope Records v. Duty*, 2006 WL 988086, at *2 (D. Ariz. Apr. 14, 2006) (noting that the mere presence of copyrighted sound recordings in a defendant's Kazaa shared folder may constitute copyright infringement).

There is no genuine issue of material fact as to the second element of the recording companies' claim of direct infringement via distribution. Howell admitted in his deposition that the sound recordings were being distributed from his Kazaa shared folder:

> Q: So each of the songs that you acknowledge were on your computer in Schedule 1, Exhibit A, all of which research [sic] – represent subsets of what's in the thicker packet –
> [Howell]: Yes.

Q: – that was Exhibit B to the complaint[1] and Exhibit 3 to the deposition, are things that you acknowledge that on the date of capture, January 30th, 2006, were seen by plaintiffs as being shared by your Kazaa account?
[Howell]: Yes.

(Doc. # 30 at 8.)

Howell claims he was at work when MediaSentry took the screenshots showing the contents of his Kazaa shared folder, but presents no admissible evidence to support his claim that he was at work at 11:52 p.m. on January 29, 2006,[2] the time when the distribution was detected. In any event, whether Howell was at work at the time MediaSentry captured screenshots of his Kazaa shared folder is irrelevant when he admitted distributing the sound recordings from his shared folder, and when the mere presence of copyrighted works in a shared folder is enough to trigger liability. *Duty*, 2006 WL 988086 at *2.

Howell also objects to liability on the grounds that he owns compact discs ("CDs") containing the disputed sound recordings and that he "translated" them to his computer for personal use. In support of this argument, Howell attached photographs of CDs and cases to his Response. However, the question is not whether Howell owned legitimate copies of some of the sound recordings on CD, but instead whether he distributed copies of the recordings without authorization. Howell's right to use for personal enjoyment copyrighted works on CDs he purchased does not confer a right to distribute those works to others without Plaintiffs' authorization. 17 U.S.C. § 106(3). As he admitted that the sound recordings were "being shared by [his] Kazaa account," Howell is liable for distributing them in violation of the recording companies' exclusive right. Even if Howell believed that ownership of the CDs conferred a right to distribute their contents freely via Kazaa, that

---

[1] Exhibit B to the Complaint contains the screenshots of the contents of Howell's Kazaa shared folder.

[2] Plaintiffs establish that the MediaSentry investigation detected the "jeepkiller@kazaa" username sharing the sound recordings online at 1:52 AM Eastern Time on January 30, 2006, (doc. # 31, Ex. 11 (Hardwick Decl.) ¶ 9) which would have been 11:52 p.m. Mountain Time on Sunday, January 29, 2006, at Howell's Scottsdale home.

1  mistaken impression is no defense to liability. *Pye v. Mitchell*, 574 F.2d 476, 481 (9th Cir.
2  1978) ("Indeed, even where the defendant believes in good faith that he is not infringing a
3  copyright, he may be found liable.").

4     Howell's final contention is that a computer malfunction or a third party put his
5  personal files into his shared folder. However, no evidence has been presented in support
6  of that scenario. Because there is no disputed issue of material fact that (1) the recording
7  companies owned valid copyrights for the sound recordings and (2) Howell distributed the
8  sound recordings in violation of the recording companies' exclusive distribution right under
9  17 U.S.C. § 106(3), summary judgment is appropriate as a matter of law.

10 **IV.  Relief Will Be Granted**

11    **A.    Statutory Damages**

12     The recording companies have elected to seek minimum statutory damages under 17
13 U.S.C. § 504(c)(1) instead of proving actual injury. The statute "provides that the author's
14 entitlement, per infringed work, is 'a sum of not less than $750 or more than $30,000 as the
15 court considers just.'" *BMG Music v. Gonzalez*, 430 F.3d 888, 891 (7th Cir. 2005) (quoting
16 17 U.S.C. § 504(c)(1)). Howell does not dispute the amount of damages requested. The
17 requested statutory damages of $750 per sound recording, a total of $40,500, will therefore
18 be awarded.

19    **B.    Injunction**

20     The recording companies also request an injunction pursuant to 17 U.S.C. § 502(a)
21 prohibiting Howell from further copyright infringement and requiring the destruction of any
22 unauthorized copies of the sound recordings that Howell may hold in any medium. (Doc. #
23 1 ¶ 20.) Title 17, section 502(a), United States Code, provides that "[a]ny court having
24 jurisdiction of a civil action arising under this title may . . . grant temporary and final
25 injunctions on such terms as it may deem reasonable to prevent or restrain infringement of
26 a copyright." An injunction against a Kazaa user found to have infringed copyrights may be
27 "appropriate to ensure that the misconduct does not recur as soon as the case ends." *BMG*

28

1    *Music*, 430 F.3d at 893 (affirming a district court order enjoining a defendant from
2    downloading copyrighted sound recordings).

3      Howell's disregard for copyright law suggests that further infringement is likely
4    absent injunctive relief. An injunction will therefore be entered prohibiting Howell from
5    further distributing the recording companies' copyrighted sound recordings without
6    authorization.

7      **C.    Costs**

8      The recording companies also seek, pursuant to 17 U.S.C. § 505, the cost of their $350
9    filing fee. That section of the Copyright Act provides, in part, that "the court in its discretion
10   may allow the recovery of full costs by or against any party other than the United States or
11   an officer thereof." 17 U.S.C. § 505. Costs have been awarded in infringement cases to: "(1)
12   deter future copyright infringement, (2) ensure that all holders of copyrights which have been
13   infringed will have equal access to the court to protect their works, and (3) penalize the
14   losing party and compensate the prevailing party." *A & N Music Corp. v. Venezia*, 733 F.
15   Supp. 955, 959 (E.D. Pa. 1990) (citations omitted). Costs will be awarded to Plaintiffs in
16   service of these ends.

17      **D.    Marital Community Liability**

18      The final issue is whether, under Arizona community property law, Plaintiffs have
19   made a sufficient showing on summary judgment for marital community liability for
20   Howell's tort of copyright infringement. "There is no presumption of community liability
21   if the [plaintiff's underlying action] is based on alleged tortious conduct." *Selby v. Savard*,
22   134 Ariz. 222, 229, 655 P.2d 342, 349 (1982). Thus, a marital community will not be liable
23   for the tort of one spouse "unless it is specifically shown that the other spouse consented to
24   the act" or that the act "was committed with the intent to benefit the community." *Id.*

25      The recording companies' motion makes no attempt to present facts establishing
26   community liability for Jeffrey Howell's individual liability. There has been no showing or
27   even argument on this Motion that Pamela Howell consented to Jeffrey Howell's distribution

28                            - 8 -

1  of the sound recordings or that the distribution was committed with the intent to benefit the
2  marital community.

3       IT IS THEREFORE ORDERED that the Motion for Summary Judgment (doc. # 30)
4  is granted as against Defendant Jeffrey Howell in the amount of $40,500.00 statutory
5  damages, $350.00 in costs, and for permanent injunction.   Plaintiffs shall lodge a form of
6  permanent injunction by September 4, 2007.  The motion is denied as against Defendant
7  Pamela Howell.

8       IT IS FURTHER ORDERED that Plaintiffs advise the court by September 4, 2007,
9  whether they wish to have judgment entered against Defendant Jeffrey Howell and the case
10 terminated, or whether they wish to pursue further proceedings to establish marital
11 community liability.

12      DATED this 20th day of August 2007.

14      _____
15              Neil V. Wake
                United States District Judge

-9-

**EXHIBIT B**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| MOTOWN RECORD CO., LP, et al., | : | |
| **Plaintiffs,** | : | |
| v. | : | **CIVIL NO. 04-CV-2246** |
| | : | |
| THERESA DePIETRO, | : | |
| **Defendant.** | : | |

## MEMORANDUM OPINION & ORDER

**RUFE, J.**[1]                                                        **February 16, 2007**

This is one of many actions filed throughout the nation in which numerous record companies are seeking to protect their copyrighted sound recordings from illegal downloading and sharing over the Internet. Presently before the Court are the parties' Cross-Motions for Summary Judgment[2] and the oppositions thereto. After consideration of the parties' submissions and review of the relevant legal authorities, Defendant's Motion will be denied, and Plaintiffs' Motion will be dismissed without prejudice. The Court will, however, entertain a request for a hearing to make the necessary findings of fact and conclusions of law regarding Defendant's alleged destruction of integral evidence, before any further judgment is rendered.

### I. FACTUAL BACKGROUND

Most of the underlying facts of this case are undisputed. On November 18, 2003, at

---

[1]  By Order of the Court dated July 14, 2004 [Doc. # 4], this case was referred to the Honorable Cynthia M. Rufe for monitoring and coordination of pre-trial matters. Accordingly, Judge Rufe addresses the parties' instant pre-trial dispositive motions. The case remains, however, on the trial calendar of the Judge to whom it was originally assigned at the time of filing, the Honorable Eduardo C. Robreno.

[2]  The Court is being generous by categorizing Defendant's Request for Summary Judgment [Doc. # 47] as a motion for summary judgment under Federal Rule of Civil Procedure 56(b), but will treat the request as a motion, nonetheless, as Defendant is proceeding *pro se* in this matter.

7:07 a.m., while investigating copyright infringement by users of peer-to-peer file-sharing programs ("P2P programs"), Plaintiffs discovered that substantial copyright infringement was occurring at Internet protocol address ("IP address") 216.15.109.54, through use of KaZaA.[3] At that time, the user at that IP address was distributing 1203 music files, including 31 sound recordings whose copyrights are owned by the Plaintiffs and are at issue in this action.[4] According to Plaintiffs, the user was detected using KaZaA to share copyrighted music files 32 times between November 5, 2003, and April 12, 2004.[5] Each time, the user was notified by instant message that he or she "appeared to be infringing Plaintiffs' copyrights, that distributing or downloading copyrighted music on the internet without permission is illegal, and that by breaking the law the individual risked legal penalties."[6]

Plaintiffs ascertained that RCN Corporation ("RCN") was the Internet service provider ("ISP") for the computer with IP address 216.15.109.54 on the date at issue.[7] Accordingly, they served a subpoena upon RCN requesting information related to that IP address. In response to the subpoena, RCN identified Theresa DePietro, 1121 Folsom Avenue, Prospect Park, Pennsylvania,

---

[3] KaZaA is a P2P program, which is used to distribute files from one user's computer to other users' computers through the Internet. According to Plaintiffs, who have significant experience dealing with these programs, it is one of the most popular P2P programs used to illegally download and distribute copyrighted material. Pls.' Mot. for Summ. J. [Doc. # 50] ¶ 5–6.

[4] Id. ¶ 7; Dr. Doug Jacobson Aff. & Expert Rep. [Ex. # 9] at 6. Citations to exhibits refer to the exhibits attached to Plaintiffs' Motion for Summary Judgment, unless noted otherwise.

[5] Pls.' Mot. for Summ. J. ¶ 8; Thomas Carpenter Aff. [Ex. # 11] ¶ 24.

[6] Pls.' Mot. for Summ. J. ¶ 8; see also Carpenter Aff. ¶ 24; Text of Instant Message [Ex. # 12].

[7] Pls.' Mot. for Summ. J. ¶ 9; Jacobson Aff. & Expert Rep. at 6.

as the subscriber of record for that IP address on November 18, 2003, at 7:07 a.m.[8]

On April 8, 2004, after Defendant was identified as the alleged infringer, Plaintiffs sent her a letter explaining, among other things, that a "Doe" lawsuit had been filed against her and that she was about to be named as a defendant.[9] That letter specifically explained the need to preserve evidence relating to the claims against Defendant.[10] After Plaintiffs' settlement attempts with Defendant failed, they filed the instant action naming Theresa DiPietro as Defendant in May 2004, and served her in July 2004. Defendant subsequently answered the Complaint in August 2004.[11] Nonetheless, Defendant disposed of the computer allegedly used for the infringement by setting it out for trash collection in or around September 2004.[12] Defendant also disposed of the cable modem allegedly used for the infringement by returning it to RCN sometime in September or October 2004.[13]

Defendant's refusal to cooperate with Plaintiffs has persisted throughout the discovery process. Defendant initially refused to provide any written discovery to Plaintiffs.[14] On at least two different occasions, Defendant refused to answer questions related to the case by asserting her Fifth Amendment privilege against self-incrimination, even though no criminal investigation or charges

---

[8] Pls.' Mot. for Summ. J. ¶ 9; Jacobson Aff. & Expert Rep. at 6; Simona E. LaPadat Aff. [Ex. # 14] ¶ 4; RCN's Response to Subpoena [Ex. # 13], at 7.

[9] Pls.' Mot. for Summ. J. ¶ 14.

[10] Id. ¶ 15; Letter from Patricia H. Benson, Esq. to Theresa DePietro (Apr. 8, 2004).

[11] Pls.' Mot. for Summ. J. ¶ 16.

[12] Id. ¶ 17; Def.'s Resp. to Pls.' Third Set of Interrogs. [Ex. # 21], at Interrog. Nos. 14 & 15.

[13] Pls.' Mot. for Summ. J. ¶ 17; DePietro Dep. [Ex. # 17] 110:16–112:24, Oct. 4, 2005; Def.'s Resp. to Pls.' Second Set of Reqs. for Produc. of Docs. & Things [Ex. # 22], at Interrog. No. 2.

[14] See Pls.' Mot. to Compel Expert Discovery [Doc. # 38] at 2.

were pending against her.[15]  These refusals to cooperate forced Plaintiffs to seek Orders from this

Court compelling Plaintiff to provide written discovery and to be deposed.[16]  Thereafter, Plaintiff

was deposed a second time and submitted responses to previously issued interrogatories.  During

discovery, Defendant acknowledged that she was the only person who had access to her computer,[17]

that her live-in boyfriend was the only other person in her apartment for any extended period of

time,[18] and that she never used a wireless router or wireless service to connect to the Internet.[19]

In support of Defendant's position that someone other than she downloaded the music

files at issue here, she submitted a report prepared by her purported expert, Joseph C. Magee, Jr., in

December 2005.  The first drafts of this report were contested by Plaintiffs for failure to comply with

Federal Rule of Civil Procedure 26(b)(2).[20]  Defendant has resubmitted a draft that she contends

complies with the Rule, though Defendants continue to question the validity of the report and the

conclusions offered within it.[21]

On June 15, 2006, after discovery concluded, Defendant made a request for summary

---

[15] DePietro Dep. [Ex. # 15] 26:10–31:6, May 4, 2005; Def.'s Resp. to Interrogs. [Ex. # 16], at 1 ("Defendant Theresa DePietro is exercising her Fifth Amendment right by refusing to answer Plaintiff's [sic] Interrogatories.").

[16] Order Granting Mot. to Compel Expert Disc. [Doc. # 39], Feb. 9, 2006; Order Granting Mot. to Compel [Doc. # 30], Aug. 19, 2005; Order Granting Mot. to Compel [Doc. # 17], Apr. 1, 2005.

[17] DePietro Dep. 135:19–135:24, Oct. 4, 2005.

[18] DePietro Dep. 21:8–24, 22:22–25:1, May 4, 2005. Defendant's boyfriend, Nazareno Fioravanti, claims that he does not know what a computer is and that Defendant never had a computer during the time he has known her. Fioravanti Dep. [Ex. # 18] 19:14–15, 41:11–18, Aug. 2, 2005.

[19] DePietro Dep. 131:17–132:1, Oct. 4, 2005.

[20] Mot. to Strike Def.'s Expert Rep. & Preclude Def.'s Expert from Testifying [Doc. # 43].

[21] See Pls.' Mot. for Summ. J. at 11–12.

judgment.[22]  Plaintiffs filed an opposition to Defendant's request on July 6, 2006.[23]  On June 22,

2006, Plaintiffs filed their Motion for Summary Judgment.[24]  In this Motion, Plaintiffs argued that,

even if summary judgment were deemed inappropriate, the Court should sanction Defendant by

entering default judgment against her for destroying integral evidence.[25]  Defendant filed a bare-

bones opposition to Plaintiffs' Motion on July 14, 2006.[26]  In that Response, Defendant claimed that

she never admitted that "she threw her computer away,"[27] despite the fact that she explicitly admitted

that fact in responses to interrogatories and requests for production of documents and things.[28]

While the Motion was under review, Plaintiffs sought leave of Court to file a late Reply brief to

Defendant's opposition, which was granted, and Plaintiffs filed their Reply on February 2, 2007.[29]

Without seeking leave of Court, Defendant filed a Sur-reply on February 15, 2007, in which she

repeats her denials of liability and vehemently denies discarding her computer after receiving any

letter from Plaintiffs or being named as Defendant in this action.[30]  The Cross-Motions for Summary

Judgment are now ready for review.

---

[22] Def.'s Request for Summ. J. [Doc. # 47].  This submission is a one-paragraph, two-sentence demand for summary judgment without any statement of its basis or argument thereon.

[23] Pls.' Resp. to Def.'s Mot. for Summ. J. [Doc. # 53].

[24] Pls.' Mot. for Summ. J. [Doc. # 50].

[25] Id. at 12–18.

[26] Def.'s Request to Deny Pls.' Mot. for Summ. J. [Doc. # 54].

[27] Id. at 2, ¶ 4.

[28] Def.'s Resp. to Pls.' Third Set of Interrogs., at Interrog. Nos. 14 & 15; see Def.'s Resp. to Pls.' Second Set of Reqs. for Produc. of Docs. & Things, at Req. No. 1.

[29] Pls.' Reply to Resp. to Mot. for Summ. J. [Doc. # 57].

[30] Def.'s Sur-Reply [Doc. #58].

## II.  LEGAL STANDARD FOR SUMMARY JUDGMENT

Disposition upon motion for summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[31]  In this case, the Court is presented with cross-motions for summary judgment.  The mere existence of cross-motions does not necessarily dictate that one motion will be granted and the other denied, thereby disposing of the case.[32]  If issues of material fact exist, such that a reasonable jury could return a verdict for the non-moving party,[33] then summary judgment is not appropriate, and the case must be allowed to proceed to trial.[34]

## III.  DISCUSSION

### A.  Applicable Copyright Law

Under the Copyright Act, the owner of a valid copyright on a sound recording, such as a song, has the exclusive right to, among other things, "reproduce the copyrighted work in copies or phonorecords" and "distribute copies or phonorecords of the copyrighted work to the public."[35]  Accordingly, in order to prevail on a cause of action for copyright infringement, a plaintiff must prove: (1) that he or she owns the copyrights in the sound recordings allegedly downloaded and/or

---

[31] Fed. R. Civ. P. 56(c).

[32] See Rains v. Cascade Indus., Inc., 402 F.2d 241, 245 (3d Cir. 1968).

[33] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

[34] Rains, 402 F.2d at 245.

[35] 17 U.S.C. §§ 106(1) & 106(3) (2000).

distributed by the defendant; and (2) that the defendant actually "copied" those sound recordings.[36]

Under the Copyright Act, "[c]opying refers to the act of infringing any of the exclusive rights that

accrue to the owner of a valid copyright, as set forth at 17 U.S.C. § 106, including the right to

distribute and reproduce copyrighted material."[37] A plaintiff claiming infringement of the exclusive-

distribution right can establish infringement by proof of actual distribution or by proof of offers to

distribute, that is, proof that the defendant "made available" the copyrighted work.[38]

## B. Defendant's Motion for Summary Judgment

Defendant's Request for Summary Judgment demands dismissal with prejudice

because "Plaintiff's [sic] have no credible evidence that proves Defendant Theresa DePietro or

Defendants [sic] computer to be the perpetrator of the alleged copyright infringement complaints

outlined in this case."[39] This one sentence constitutes the entire substance of the request. Defendant

does not provide the Court with any evidence, in the form of affidavits, depositions, or otherwise,

supporting her claim. Nor does she make any argument informing the Court of the rationale behind

her bald assertion that there are no genuine issues of material fact. It is well-established that "a party

---

[36] See Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361 (1991); Dun & Bradstreet Software Servs., Inc. v. Grace Consulting, Inc., 307 F.3d 197, 206 (3d Cir. 2002).

[37] Kay Berry, Inc. v. Taylor Gifts, Inc., 421 F.3d 199, 207 (3d Cir. 2005). In this case, Plaintiffs move for summary judgment only on the basis of Defendant's alleged infringement of their distribution rights, but reserve "all rights and claims as to Ms. DePietro's violations of their exclusive rights of reproduction as to the Sound Recordings." Pls.' Mot. for Summ. J., at 8–9 n.1.

[38] While neither the United States Supreme Court nor the Third Circuit Court of Appeals has confirmed a copyright holder's exclusive right to make the work available, the Court is convinced that 17 U.S.C. § 106 encompasses such a right based on its reading of the statute, the important decision in A&M Records, Inc. v. Napster, Inc., 239 F.3d 1004 (9th Cir. 2001), and the opinion offered by the Register of Copyrights, Marybeth Peters, in a letter related to Congressional hearings on piracy of intellectual property on peer-to-peer networks, Letter from Marybeth Peters, Register of Copyrights, to Rep. Howard L. Berman, Rep. from the 28th Dist. of Cal. (Sept. 25, 2002) ("[M]aking [a work] available for other users of [a] peer to peer network to download . . . constitutes an infringement of the exclusive distribution right, as well as the production right.").

[39] Def.'s Req. for Summ. J. [Doc. #47], at 1.

seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."[40] While the Court acknowledges that it should construe *pro se* filings liberally in the interests of justice, no amount of liberality will render Defendant's Motion sufficient. Because Defendant has wholly failed to meet her initial burden of informing the Court of the basis for her request and identifying the evidence supporting her position, her Motion will be denied.[41]

## C. Plaintiffs' Motion for Summary Judgment

Plaintiffs argue that they are entitled to summary judgment because they indisputably own the copyrights on the 31 sound recordings at issue in this case, and Defendant has not offered any evidence to rebut their allegations that she infringed those copyrights by distributing the sound recordings through the P2P program, KaZaA. At this stage of the litigation, however, the Court cannot agree.

It is clear and undisputed that Plaintiffs own now, and owned at the time of the alleged infringement, the copyrights on the 31 sound recordings at issue here. There are, however, genuine issues of material fact concerning whether or not Defendant has been misidentified as the infringing user. While a mere assertion of misidentification may not be sufficient to satisfy

---

[40] Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).

[41] Furthermore, even if Defendant had attempted to support her request with some argument and evidence, the Court would still deny the Motion. Plaintiffs have provided the Court with more than ample evidentiary support for a reasonable jury to find in their favor, such as the evidence linking an IP address assigned to Defendant on November 18, 2003, to the alleged infringement that occurred on that same date. That piece of evidence, in itself, is enough for Plaintiffs to survive Defendant's Motion for Summary Judgment.

Defendant's burden to establish the existence of a genuine issue of material fact,[42] Defendant has also supplied the Court with a report from her purported expert. In this report, Defendant's expert offers several theories to explain that, even though Plaintiffs identified a user at Defendant's IP address as the infringer on November 18, 2003, it is possible that Defendant was not the infringing user. At the summary-judgment stage, the Court must accept this report in the light most favorable to Defendant. Doing so, in conjunction with Defendant's repeated denials that she downloaded or distributed the sound recordings at issue in this case,[43] creates a genuine issue of material fact. If Defendant can offer proof at trial that she may not have been the user identified by Plaintiffs, a reasonable jury could find that she is not liable for infringement.

The above analysis is not, however, dispositive as to Plaintiffs' Motion. Plaintiffs have been deprived of the opportunity to fully test, evaluate, and challenge the theories offered in Defendant's expert's report because the computer allegedly used in the infringement has not been made available to Plaintiffs for examination. According to Plaintiffs, and also according to Defendant's own admission, Defendant is responsible for that deprivation because she discarded the computer in or around September 2004 by placing it "out for weekly trash pick up."[44] It appears that this was done approximately five months after receiving the "Doe letter" informing her that she had been identified as an infringer and instructing her to preserve all related evidence, four months after

---

[42] See Paramount Pictures Corp. v. Davis, 234 F.R.D. 102, 110 (E.D. Pa. 2005) (citing Trap Rock Indus., Inc. v. Local 825, Int'l Union of Operating Eng'rs, AFL-CIO, 982 F.2d 884, 892 (3d Cir. 1992)).

[43] See, e.g., Def.'s Sur-Reply, at 2–3.

[44] Pls.' Mot. for Summ. J. ¶ 17; Def.'s Resp. to Pls.' Third Set of Interrogs., at Interrog. Nos. 14 & 15. At the same time, Defendant claims that she was merely approximating when she discarded her computer. She points to her deposition testimony in which she stated that she discarded the computer "around then," but "don't hold me on that exact month." Def.'s Sur-Reply, at 4 (quoting DePietro Dep. [Ex. F. to Def.'s Sur-Reply] 97:1–2, Oct. 4, 2005).

the Complaint was filed in this case, two months after Defendant was served with the Complaint,

and a month after Defendant filed her Answer to the Complaint.  Moreover, Defendant disposed of

the cable modem in use at the time of the alleged infringement by returning it to her provider, RCN,

sometime in September or October 2004.[45]  As Defendant's expert acknowledged at his deposition,

if Plaintiffs had access to the computer and the modem, they could determine: (1) whether KaZaA

had ever been downloaded to the computer;[46] (2) whether the MAC address of the computer and the

modem matched the MAC address in RCN's logs;[47] (3) whether a virus or worm could be

responsible for downloading music files to the computer without her knowledge;[48] and (4) whether

Defendant had enabled the remote-desktop feature on her computer, which may have allowed a third

party to access her computer remotely.[49]  With this information, Plaintiffs may be able to prevail at

the summary-judgment stage.  Without it, there remain genuine issues of fact such that a reasonable

jury could return a verdict in Defendant's favor.

      In the face of these disputed facts, the Court does not believe that granting summary

judgment is the appropriate remedy, even when the disputes exist only as a result of alleged

spoliation.  The Court must first determine whether Defendant discarded the computer and modem

---

[45] Pls.' Mot. for Summ. J. ¶ 17; DePietro Dep. 110:16–112:24, Oct. 4, 2005; Def.'s Resp. to Pls.' Second Set of Reqs. for Produc. of Docs. & Things, at Interrog. No. 2.

[46] Magee Dep. [Ex. # 24] 11:24–12:15, May 22, 2006.

[47] Id. 18:2–19:2.

[48] Id. 42:7–43:16 ("Q: So let's assume this happened to the defendant's computer. If you had the computer and the hard drive you would have been able to determine it?  A: Absolutely, 100 percent.").

[49] Id. 62:15–63:12 ("Q: If we still had her hard drive today, we would be able to determine whether this feature had been enabled?  A: Yes.").

-10-

in bad faith and, if so, the appropriate sanction for such spoliation.[50]  The Court will make the

appropriate findings of fact and conclusions of law, but only after an appropriate motion is filed, to

which Defendant will have the opportunity to respond, and the parties have an opportunity to be

heard in Court. In the interim, the Court will dismiss Plaintiffs' Motion without prejudice. Plaintiffs

will be permitted to renew their Motion at a later date, if appropriate.

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment will be

denied, and Plaintiffs' Motion for Summary Judgment will be dismissed without prejudice. Upon

appropriate motion, the Court will hold a hearing to consider the spoliation issue.

---

[50] The sanctions generally available after a finding of spoliation include: (1) dismissal of a claim or granting judgment in favor of a prejudiced party; (2) suppression of evidence; (3) an adverse inference, known as the spoliation inference; (4) fines; and (5) attorneys' fees and costs. Davis, 234 F.R.D. at 110–11. A particular sanction is not mandated by any rule of law, but rather, the decision is left to the discretion of the Court. Schmid v. Milwaukee Elec. Tool Corp., 13 F.3d 76, 79 (3d Cir. 1994).

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| | : | |
| MOTOWN RECORD CO., LP, et al., | : | |
| **Plaintiffs,** | : | |
| v. | : | **CIVIL NO. 04-CV-2246** |
| | : | |
| THERESA DePIETRO, | : | |
| **Defendant.** | : | |
| | : | |

**ORDER**

**AND NOW**, this 16th day of February 2007, upon consideration of Plaintiffs' Motion for Summary Judgment [Doc. # 50], Defendant's Response thereto [Doc. # 54], Plaintiffs' Reply [Doc. # 57], and Defendant's Sur-reply [Doc. # 58], it is hereby **ORDERED** that Plaintiffs' Motion is **DISMISSED** without prejudice, and a renewed motion may be filed at a later date, in accordance with the Court's Memorandum Opinion.

It is **FURTHER ORDERED** that, upon consideration of Defendant's Motion for Summary Judgment [Doc. # 47] and Plaintiffs' Response thereto [Doc. # 53], Defendant's Motion is **DENIED** without prejudice.

It is so **ORDERED**.

**BY THE COURT:**

/s/ Cynthia M. Rufe
**CYNTHIA M. RUFE, J.**