## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| CAPITOL RECORDS INC., a Delaware corporation; SONY BMG MUSIC ENTERTAINMENT, a Delaware general partnership; ARISTA RECORDS LLC, a Delaware limited liability company; INTERSCOPE RECORDS, a California general partnership; WARNER BROS. RECORDS INC., a Delaware corporation; and UMG RECORDINGS, INC., a Delaware corporation, <br><br> Plaintiffs, <br><br> v. <br><br> Jammie Thomas, <br><br> Defendant. | Case No.  06-cv-1497 (MJD/RLE) <br><br><br><br><br> **DEFENDANT'S MOTION FOR NEW TRIAL, OR IN THE ALTERNATIVE, FOR REMITTITUR** |

## **MOTION**

Defendant, by and through her undersigned attorney, hereby moves the Court for an order granting a new trial pursuant to Fed. R. Civ. P. 59, or in the alternative, for remittitur. Defendant's singular grounds for the relief sought is that the amount of the award is excessive and in violation of the Due Process Clause of the United States Constitution.

**MEMORANDUM**

**Introduction.**

Defendant requests that the Court grant a new trial on the issue of damages so that the Court can determine the extent of plaintiffs' actual damages or harm suffered by the uploading of the 24 subject recordings. This inquiry is necessary because the amount of any award above and beyond actual damages or harm suffered is purely punitive, and as such must be scrutinized by the Court to insure that it is not grossly excessive, thereby violating the Due Process Clause of the United States Constitution.

Alternatively, the Court is urged to order remittitur. Song recordings are typically purchased over the internet for about one dollar. Assuming plaintiffs receive 70 cents per song,[1] and pretending that defendant's downloading went to someone other than plaintiffs' agents, plaintiffs' damages would be $16.80.[2] Multiplied by the maximum Constitutional limits suggested in *BMW of North America, Inc. v. Gore*, 517 U.S. 559, 116 S. Ct. 1589, 134 L. Ed. 2d 809 (1996) and in *State Farm Mutual Automobile Insurance Co. v. Campbell*, 538 U.S. 408, 123 S. Ct. 1513, 155 L. Ed. 2d 585 (2003), a proper remittitur would be in the amount of zero dollars to $151.20.

---

[1] See, Declaration of Brian N. Toder, Exh. 1 (Afd. Of Aram Sinnreich offered in *UMG Recordings, Inc., et al v. Lindor*, No. 05 Civ. 1095 (E.D.N.Y. 2005), Dkt. 37-3 attesting that popular music sound recording downloads and consumer license to use the same are lawfully obtainable to the public at 99 cents per song, and of that 99 cents, roughly 70 cents per song is paid by the retailer to the record label.)

[2] Plaintiffs' actual damages are zero dollars, because the only evidence of downloading was to plaintiffs' agents, MediaSentry, who obviously would not have bought the 24 song recordings if defendant had not allegedly made it available.

If the Court decides that the minimum amount of the remittitur is fixed at $750 per song recording, defendant argues that the Court has the authority, if not the duty, to test the Constitutionality of the application of the minimum statutory amount in the instant matter, because that number is more than 1,000 times the actual damages or harm suffered by plaintiffs.[3]

In the trial of the above-entitled matter, the jury awarded almost a quarter of a million dollars for conduct that amounted to the offering for downloading of 24 recordings which were in fact downloaded by plaintiffs' agents.[4]

Plaintiffs offered no evidence respecting their actual damages regarding the 24 subject titles, but given the testimony of Sony's Jennifer Pariser of what CD's generally cost, it would appear that plaintiffs' contend that the actual damages for the offering is approximately $20.00.[5]

---

[3] *See generally*, J. Cam Barker, *Grossly Excessive Penalties in the Battle Against Illegal File-Sharing: The Troubling Effects of Aggregating Minimum Statutory Damages for Copyright Infringement*, 83 TEXAS L. REV. 525 (2004).

[4] Although there was evidence that defendant offered for downloading a total of 1,702 recordings, that fact is not relevant as many of the songs were not subject to copyrights held by plaintiffs in these proceedings, and most importantly, plaintiffs elected not to seek recovery on any more than the 24 songs at issue. *See, State Farm Mutual Automobile Insurance Co. v. Campbell*, 538 U.S. 408, 123 S. Ct. 1513, 155 L. Ed. 2d 585 (2003) (discussion of the consideration of conduct not involving parties to that particular case). There is another issue with respect to actual harm caused by the downloading of the 24 songs. A study by professors at the Harvard Business School and the University of North Carolina concludes that file-sharing has no statistically significant effect on purchases of the average music album and that it increases the sales of "hot albums" by one CD sale for every 150 downloads. Felix Oberholzer & Koleman Strumpf, *The Effect of File-Sharing on Record Sales: An EmpiricalAnalysis* 23–24 (Mar. 2004), *at* http://www.unc.edu/~cigar/papers/FileSharing_March 2004.pdf.

[5] Assuming again that someone other than MediaSentry downloaded the song recordings, the inescapable reality is that plaintiffs suffered zero damages in the matter at bar, and that they are using the judicial system prophylactically.

Plaintiffs elected to seek statutory damages pursuant to 17 U.S.C. §504(c). The Court properly instructed the jury as follows:

> In determining the just amount of statutory damages for an infringing defendant, you may consider the willfulness of the defendant's conduct, the defendant's innocence, the defendant's continuation of infringement after notice or knowledge of the copyright or in reckless disregard of the copyright, effect of the defendant's prior or concurrent copyright infringement activity, and whether profit or gain was established.

Final Jury Instr. No. 22, Dkt. No. 97.

Viewing the evidence in a light most favorable to the verdict, it may be deemed established that: defendant's conduct was willful; that defendant was not innocent; that there was no evidence of any continuation of infringement after notice or knowledge of the copyright or in reckless disregard of the copyright; that there was no evidence of any prior or concurrent copyright infringement activity; and that no profit or gain was established in favor of defendant.

1. This Court has the Discretion to Order a Remittitur.

The power, if not the duty, to order a remittitur is well recognized in the district courts of our circuit. In *U.S. v. 86.52 Acres of Land*, 250 F. Supp. 619, (W.D. Mo. 1966), the court considered a motion for a new trial with remittitur as an alternative remedy, stating:

> The power and duty to direct a remittitur has been recognized and exercised since Mr. Justice Story's opinion in *Blunt v. Little*, 3 Mason 102, a case decided by the Supreme Court of the United States in 1822. *Dimick v. Schiedt*, 293 U.S. 474, 55 S. Ct. 296, 79 L. Ed. 603, 95 A.L.R. 1150 (1935), made clear thirty years ago that the doctrine of *Blunt v. Little*, then over a hundred years old, would not "be reconsidered or disturbed at this late day" (293 U.S. at 485, 55 S.

Ct. at 300). Nor has it been.

> *Dimick* teaches that "our federal courts from a very early day have upheld the authority of a trial court to deny a motion for new trial because damages were found to be excessive, if plaintiff would consent to remit the excessive amount" (293 U.S. at 482, 55 S. Ct. at 299). *Dimick* also held that "[where] the verdict returned by a jury is palpably and grossly * * * excessive * * * it should not be permitted to stand"; but that case added that a new trial may be avoided by remittitur because "the practice of substituting a remission of the excess for a new trial * * * has the effect of merely lopping off an excrescence" (293 U.S. at 486, 55 S. Ct. at 301).

*86.52 Acres of Land*, 250 F. Supp. at 621.

The discretion a court has with respect to the amount of the remittitur is well established. "The employment of the statutory yardstick, within set limits, is committed solely to the court which hears the case, and this fact takes the matter out of the ordinary rule with respect to abuse of discretion." *Douglas v. Cunningham*, 294 U.S. 207, 210, 79 L. Ed. 862, 55 S. Ct. 365 (1935).

Having the authority to order remittitur, the question presented in the instant matter begins with an inquiry as to whether the "verdict returned by a jury is palpably and grossly excessive." In order to address that question, it is necessary to first establish that the statutory penalty in the instant matter is tantamount to an award of punitive damages.

2. The Statutory Damage Remedy in Copyright Law is Meant to Punish and Deter.

The legislative history of the Copyright Act of 1976, declares that "statutory damages are intended (1) to assure adequate compensation to the copyright owner for his

5

injury, and (2) to deter infringement."[6] The latter deterrent effect is achieved by punishing infringers.[7]

Similarly, the courts universally acknowledge that the Copyright Act's statutory damages have a punitive purpose: "[S]tatutory damages for copyright infringement are not only 'restitution of profit and reparation for injury,' but also are in the nature of a penalty, 'designed to discourage wrongful conduct.'"[8] Thus, the Copyright Act's statutory damages, at least in part, serve the same purpose as a jury's award of punitive damages, "to punish the actor's misconduct, and deter others from committing similar acts."[9] While there is nothing wrong with the government imposing penalties for

---

[6] Staff Of House Comm. On The Judiciary, 87th Cong., Report of The Register of Copyrights on The General Revision of The U.S. Copyright Law 103 (Comm. Print 1961), *reprinted in* 3 Omnibus Copyright Revision Legislative History (George S. Grossman ed., 1976).

[7] *See Kemezy v. Peters*, 79 F.3d 33, 34 (7th Cir. 1996) (Posner, C.J.) (noting that "deterrence is a purpose of punishment"). Some commentators argue that the deterrence function should actually extend far beyond any retributive award, suggesting the use of a "punitive damages multiplier" in calculating the proper amount of punitive damages. A. Mitchell Polinksy & Steven Shavell, *Punitive Damages: An Economic Analysis*, 111 Harv. L. Rev. 869, 889 (1998). Under their conception, punitive damages are properly calculated as the amount of loss in the case multiplied by the inverse probability of the injurer being found liable. *Id.* However, the Supreme Court appears to lack receptivity to this approach. In *Campbell*, the Court stated that "the argument that State Farm will be punished only in the rare case . . . had little to do with the actual harm sustained by the Campbells" and emphasized that "[d]ue process does not permit courts, in the calculation of punitive damages, to adjudicate the merits of other parties' hypothetical claims against a defendant under the guise of the reprehensibility analysis." *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 427, 423 (2003). For a more lengthy discussion of punishment and retribution in damages, see generally Catherine M. Sharkey, *Punitive Damages as Societal Damages*, 113 Yale L.J. 347, 356–72 (2003).

[8] *Cass County Music Co. v. C.H.L.R., Inc.*, 88 F.3d 635, 643 (8th Cir. 1996) (*quoting F.W. Woolsworth Co. v. Contemporary Arts, Inc.*, 344 U.S. 228, 233 (1952)).

violations of its laws,[10] the penalties will be subject to substantive due process limits.[11]

3.   *Zomba*.

In *Zomba Enterprises v. Panorama Records, Inc.*, 491 F.3d 574 (6th Cir. 2007) the court conducted a due process analysis in the context of a statutory award for damages in an infringement case. Defendant Panorama argued that, based upon *BMW of North America, Inc. v. Gore*, 517 U.S. 559, 116 S. Ct. 1589, 134 L. Ed. 2d 809 (1996), and *State Farm Mutual Automobile Insurance Co. v. Campbell*, 538 U.S. 408, 123 S. Ct. 1513, 155 L. Ed. 2d 585 (2003), an award of statutory damages alleged to be thirty-seven times the actual damages violated its right to due process. *Zomba*, 491 F.3d at 586-587.

The court in *Zomba* discussed *Gore* and *Campbell* noting that in both cases, the award was greater than one hundred times the amount of compensatory damages awarded. In *Gore*, the court concluded that the award in question (which amounted to 500 times the compensatory-damages award) was "grossly excessive," 517 U.S. at 574, after considering three "guideposts": (1) "the degree of reprehensibility of the "[defendant's conduct];" (2) "the disparity between the harm or potential harm suffered by [the plaintiff] and [the] punitive damages award"; and (3) "the difference between this remedy

---

[9] Theodore B. Olson, et al, Constitutional Challenges to Punitive Damages after BMW v. Gore, Briefly . . . Perspectives on Legislation, Regulation, and Litigation, May 1998, at 2.

[10] *Mo. Pac. Ry. v. Humes*, 115 U.S. 512, 523 (1885) ("The power of the state to impose fines and penalties for a violation of its statutory requirements is coeval with government.").

[11] *St. Louis, Iron Mountain & S. Ry. v. Williams*, 251 U.S. 63, 66 (1919) (holding that due process "places a limitation upon the power of the states to prescribe penalties for violations of their laws").

and the civil penalties authorized or imposed in comparable cases." *Id.* at 575.

In *Campbell*, the court considered the same three guidepost factors and concluded that the punitive-damages award (which amounted to 145 times the compensatory-damages) "was an irrational and arbitrary deprivation of the property of the defendant." 538 U.S. at 429.

Continuing its analysis, the court in *Zomba* advised that the Supreme Court has not indicated whether *Gore* and *Campbell* apply to awards of *statutory* damages**,** and that it knew of no case invalidating an award of statutory damages under *Gore* or *Campbell*, although it noted that some courts have suggested in dicta that these precedents may apply to statutory-damage awards.[12]

The court in *Zomba* completed its analysis by turning directly to the case on point:

> Regardless of the uncertainty regarding the application of *Gore* and *Campbell* to statutory-damage awards, we may review such awards under *St. Louis, I.M. & S. Ry. Co. v. Williams*, 251 U.S. 63, 66-67, 40 S. Ct. 71, 64 L. Ed. 139 (1919), to ensure they comport with due process**.** In such cases, we inquire whether the awards are "so severe and oppressive as to be wholly disproportioned to the offense and obviously unreasonable." *Id.* at 67.

*Zomba*, 491 F.3d at 587.

---

[12] *See, e.g.*, *Parker v. Time Warner Entm't Co.,* 331 F.3d 13, 22 (2d Cir. 2003) (suggesting that "in a sufficiently serious case," due process may require courts to reduce a statutory-damage award in a class action, and citing both *Campbell* and *Gore*); *see also, In re Napster, Inc.*, 2005 WL 1287611 at *10-11, 77 U.S.P.Q. 2d 1833, 2005 Copr. L. Dec. P 29,020 (N.D. Cal. June 1, 2005) (noting that "an award of statutory damages may violate due process if the amount of the award is 'out of all reasonable proportion' to the actual harm caused by defendant's conduct.")

4. Statutory Damages are Subject to the Same Constitutional, Substantive Due Process Analysis as are Punitive Damages.

While *Zomba* provides an alternative framework of analysis outside of *Gore* and *Campbell*, these latter two cases are properly applicable to the matter at bar.

Statutorily fixed damage awards differ from the jury awards of punitive damages in *Gore* and *Campbell* in two significant respects. First, unlike a jury's punitive damage award, the amount of a minimum statutory damage award is always known. Second, unlike a punitive damage award, which is assessed by a jury, legislators fix the minimum amount of a statutory damage award.

With respect to the first difference, the Court's rationale in *Gore* and *Campbell* indicates that substantive due process prohibits any grossly excessive monetary award that is imposed for the purposes of punishment and deterrence, without regard to its predictability.[13] Thus, the prohibition would apply even to known statutory damage awards if they had a punitive component.

*Gore* ultimately applied a substantive due process standard. Substantive due process and procedural due process embody separate and distinct rights, so even if a defendant receives fair *notice* of the size of a punitive award, the three *Gore* guideposts would still be applied to ensure that the award's *size* is not grossly excessive. One court

---

[13] *Gore*, 517 U.S. at 568 (stating that the Court will examine "punitive award[s]" that serve the government's "interests in punishment and deterrence"). The Court's *Campbell* opinion supports this conclusion when it broadly states that the due process limit applies to "punishments," 538 U.S. at 416, 419, and "award[s]," *id.* at 417, not just punitive damages. Another Supreme Court case summarized *Gore* as "prohibit[ing] the States from imposing grossly excessive *punishments* on tortfeasors." *Cooper Indus.*, 532 U.S. at 434 (internal quotations omitted; emphasis added).

9

considering this issue put it simply: "[*Gore*]'s guideposts are applicable even when the defendant has adequate notice of the amount at issue."[14] Commentators agree: A grossly excessive penalty does not satisfy substantive due process merely because the defendant can see it coming.[15]

The second difference is that juries fix punitive damage awards while legislators fix the size of minimum statutory damage awards. This in turn raises the issue of whether or not the *Gore* guideposts make sense when evaluating a legislatively fixed punishment. This is easily resolved by an examination of the three *Gore* guideposts.

The first guidepost, the reprehensibility of the defendant's conduct, translates easily from the review of a punitive damage award to the review of a statutory damage award. A determination of the blameworthiness of the defendant's conduct does not depend on whether punitive damages or statutory damages were awarded.

Similarly, the second guidepost, the ratio "between the penalty and the harm to the victim caused by the defendant's actions,"[16] can be translated to a review of a statutory damage award, separating and distinguishing between the compensatory and punitive

---

[14] *VF Corp. v. Wrexham Aviation Corp.*, 112 Md. App. 703, 731 (Md. Ct. Spec. App. 1997), aff'd in part and rev'd in part on other grounds, 715 A.2d 188 (Md. 1998).

[15] *See, e.g.*, Erwin Chemerinsky, Constitutional Law: Principles And Policies 523, 524 (2d ed. 2002) (distinguishing between procedural and substantive due process and noting that "regardless of the procedures followed," substantive due process imposes limits on punitive damage awards); John Zenneth Lagrow, *BMW of North America, Inc. v. Gore: Due Process Protection Against Excessive Punitive Damages Awards*, 32 NEW ENG. L. REV. 157, 194 (1997) (finding that even if the defendant had notice of disproportionately large punitive damages, the award would still be reviewed for gross excessiveness).

[16] *Cooper Indus. V. Leatherman Tool Group, Inc., 532 U.S. 424, 425(2001).*

portions of a statutory damage award as demonstrated *supra*.

The third guidepost, a comparison of the challenged punishment to the "civil penalties authorized or imposed in comparable cases,"[17] seemingly presents a difficulty, because the civil sanction is precisely what is being scrutinized here. This prong, however, assumes that the legislatively fixed sanction was itself constitutional, which is precisely the question the courts must deal with.

*Gore* says that there *is* a constitutional limit on the size of punitive sanctions, even when fixed by the legislature, but there is a limit to such discretion.[18]

In the instant matter, defendant Thomas urges the Court to consider the statutory damages to be tantamount to an award of punitive damages, since it is based not upon plaintiffs' losses, but rather defendant's conduct. By doing so, the Court would necessarily embrace the teachings of *Campbell*, *supra*, which sets forth a fair analysis. But even if the Court is not inclined to do a due process analysis under *Campbell*, it must under *Dimick* and *Zomba*, *supra*, which proscribe awards that are "palpably and grossly excessive" or "so severe and oppressive as to be wholly disproportioned to the offense and obviously unreasonable."

---

[17] *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 428 (2003) (*quoting BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 575 (1996)).

[18] *See Cooper Indus.,* 532 U.S. at 433. ("[L]egislatures enjoy broad discretion in authorizing and limiting permissible punitive damages awards. . . . Despite the broad discretion that States possess with respect to the imposition of . . . punitive damages, the Due Process Clause of the Fourteenth Amendment to the Federal Constitution imposes substantive limits on that discretion.").

11

Viewing the possible findings in a light most favorable to the verdict and applying the case law cited, the Court is presented with a paradigm example of the proper use of remittitur.  Whether the Court recognizes actual damages of zero dollars, $20 or whatever figure plaintiffs suggest is a fair measure of their actual damages for the 24 subject recordings, the ratio of actual damages to the award is not only astronomical, it is offensive to our Constitution and offensive generally.

## CONCLUSION

For the foregoing reasons, case law and evidence presented at trial, the Court is beseeched to grant a new trial, or alternatively, remittitur for an amount that does not offend the Due Process Clause of the United States Constitution, which amount should be between zero dollars and $150 total, comparing actual damages to the penalty; or $750 total if the Court chooses to aggregate and deem all 24 song recordings a single infringing act and then applies the statutory minimum penalty notwithstanding the ratio of actual damages or harm suffered to the penalty amount.

Respectfully submitted,

Dated:   October 15, 2007  **CHESTNUT & CAMBRONNE, P.A.**

By /s/  Brian N. Toder
Brian N. Toder  (No. 17869X)
Bryan L. Bleichner (No. 0326689)
3700 Campbell Mithun Tower
222 South Ninth Street
Minneapolis, MN 55402
(612) 339-7300
Fax (612) 336-2940

**ATTORNEYS FOR DEFENDANT**