# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| CAPITOL RECORDS, INC., a Delaware corporation; SONY BMG MUSIC ENTERTAINMENT, a Delaware general partnership; ARISTA RECORDS LLC, a Delaware limited liability company; INTERSCOPE RECORDS, a California general partnership; WARNER BROS. RECORDS INC., a Delaware corporation; and UMG RECORDINGS, INC., a Delaware corporation, | Case No.: 06-cv-1497-MJD-RLE<br><br>JUDGE: Michael J. Davis<br><br>MAGISTRATE: Raymond L. Erickson<br><br>**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR NEW TRIAL, OR IN THE ALTERNATIVE, FOR REMITTITUR** |

Plaintiffs,

vs.

Jammie Thomas,

Defendant.

---

Plaintiffs respectfully submit this response in opposition to Defendant's Motion for New Trial, Or In The Alternative, For Remittitur ("Motion"), and state as follows:

## INTRODUCTION AND SUMMARY OF ARGUMENT

The Court in this case correctly instructed the jury regarding the law applicable to Plaintiffs' claim of copyright infringement and justly entered judgment (Doc. No. 106) pursuant to the jury's verdict for Plaintiffs (Doc. No. 100). The sole basis for Defendant's post-trial Motion is her contention "that the amount of the [jury's] award is excessive and in violation of the Due Process Clause of the United States Constitution." ("Defendant's Motion," Doc. No. 109 at 1.) Defendant, however, proffered and/or agreed to the very jury instructions and verdict form that told the jury what range of damages it could award, and the jury's award was well within that range. There is no basis for Defendant to complain about the jury's reasoned

award now, where she knew and agreed before the case went to the jury exactly what that award might be. Defendant's Motion is without merit and should be denied for the following reasons:

First, Defendant's attempt to reduce the jury's award of statutory damages in this case is contrary to Congress's carefully crafted regime of statutory damages, which allows for a maximum award of statutory damages even in the absence of any proof of actual damages and already includes specific limitations on awards of statutory damages.

Second, Defendant's attempt to tie statutory damages to proof of Plaintiffs' actual damages flies in the face of the many cases holding that the jury is entitled to award the maximum amount of statutory damages authorized by Section 504(c) of the Copyright Act, even in the absence of any proof of actual damages. Under Defendant's erroneous view, the awards of statutory damage ratified by the courts in each of these cases would be unconstitutional.

Third, Plaintiffs' actual damages in this case result not only from Defendant's unlawful downloading, but also from Defendant's unlawful distribution of Plaintiffs' sound recordings to potentially millions of other KaZaA users. By focusing on Defendant's unlawful downloading alone, Defendant's Motion ignores completely the harm to Plaintiffs caused by Defendant's unlawful distribution of Plaintiffs' sound recordings. Defendant's Motion also ignores the substantial evidence of Defendant's willful misconduct, including her knowledge of copyright law and of Plaintiffs' copyrights and her efforts to conceal her infringement. Based on the evidence produced by Plaintiffs at trial, the jury's verdict represents a reasoned award of statutory damages that is well within the range set by Congress. Indeed, the jury's award is at the low end of the range set by Congress for willful infringement.

Fourth, Defendant's theory of Plaintiffs' actual damages depends entirely on the untested declaration of a single individual presented in an unrelated case. Defendant introduced no such

#1288791 v3

evidence at trial and cannot rely on such unsubstantiated hearsay to support her post-trial Motion.

Fifth, Defendant herself submitted the jury instructions and approved the verdict form that allowed the jury to consider the full range of statutory damages under the Copyright Act. Having invited the Court to instruct the jury on the full range of statutory damages, Defendant is precluded from now arguing that the jury's verdict, which is on the low end of the statutory range authorized by Congress, is somehow unconstitutionally excessive.

Finally, Defendant inappropriately asks this Court to apply the framework under which courts assess due process challenges to awards of *punitive damages*. That framework, and the cases on which Defendant relies, are inapplicable here. The Supreme Court's jurisprudence on punitive damages expresses procedural concern about legal regimes under which a jury may award punitive damages without meaningful legislative constraints on the amounts of punitive damages awarded or the circumstances in which punitive damages can be awarded. In contrast, *statutory damages* under the Copyright Act may be awarded only in a Congressionally circumscribed category of cases, within Congressionally fixed ranges of amounts, based on Congressionally mandated findings by the trier of fact.

In sum, the statutory damages awarded by the jury in this case are more than reasonable. Defendant should not now be allowed to shirk her responsibility for her own calculated decisions first to engage in substantial online infringement of Plaintiffs' copyrights and then to try to conceal her infringement. Where, as here, the amount awarded by the jury was less than 10% of what the jury could have awarded, there is no basis for a remittitur or a new trial.

## BACKGROUND

Plaintiffs brought this lawsuit against Defendant Jammie Thomas seeking redress for the infringement of Plaintiffs' copyrighted sound recordings under the Copyright Act, 17 U.S.C. §§ 101, 106, 501-505. (Doc. No. 1.) Plaintiffs' Complaint specifically requested statutory damages under Section 504 of the Copyright Act. (*Id.* at 6.) Defendant filed her Answer on May 30, 2006. (Doc. No. 3.) Defendant's Answer contained only two affirmative defenses, and raised no issue at all with respect to the constitutionality of statutory damages. (*Id.* at 2.)

In the course of discovery, Plaintiffs again advised Defendant that they were seeking statutory damages under the Copyright Act. Plaintiffs so advised Defendant in their initial Rule 26(a)(1) disclosures and in their responses to Defendant's interrogatories. (*See* Pls.' Initial Disclosures, Exhibit A to Doc. No. 89 at 3, Pls.' Resp. to Interrogs., Exhibit C to Doc. No. 89 at 13.) Defendant again never raised an issue regarding statutory damages.

On August 3, 2007, the Court issued its Jury Trial Notice setting this case for a jury trial to commence on October 1, 2007. (Doc. No. 38.)[1] The Court's Order directed each side to file a Statement of the Case on or before September 17, 2007 that included a discussion of "unresolved issues" for trial. (*Id.* at 2.) The Court's Order also directed the parties to submit proposed jury instructions and motions in limine on September 17, 2007. (*Id.* at 3.)

Plaintiffs filed their statement of the case and proposed jury instructions on September 17, 2007. (Doc. Nos. 55, 61.) Plaintiffs' statement of the case again stated Plaintiffs' intent to seek statutory damages under Section 504, and also detailed the factual and legal bases for such an award in this case. (Doc. No. 55 at 2-3, 9-10.) Plaintiffs' proposed jury instructions and verdict form also set forth in detail the range of statutory damages set forth in the Copyright

---

[1] The trial date was later changed to October 2, 2007.

Act and asked that the jury be so instructed. (Doc No. 61, Pls.' Instruction No. 10, Doc. No. 63 at 4.)

Defendant also filed her statement of the case and proposed jury instructions on September 17, 2007. (Doc. Nos. 62, 64). Defendant again raised no issue with respect to the constitutionality of statutory damages. (Doc. No. 62.) On the contrary, Defendant's proposed jury instructions, like Plaintiffs', asked that the jury be instructed on the full range of statutory damages available for non-willful infringement under the Copyright Act. Specifically, Defendant asked that the jury be instructed as follows:

> In this case, each plaintiff has elected to recover "statutory damages" instead of its' [sic] actual damages and profits.
>
> *Under the Copyright Act, each plaintiff is entitled to a sum of not less than $750 or more than $30,000 per act of infringement, if any, as you consider just.*
>
> In determining the just amount of statutory damages for an infringing defendant, you may consider the willfulness of the defendant's conduct, the defendant's innocence, the defendant's continuation of infringement after notice or knowledge of the copyright or in reckless disregard of the copyright, effect of the defendant's prior or concurrent copyright infringement activity, and whether profit or gain was established.

(Doc. No. 64 at 13, emphasis added.)

At trial, Plaintiffs' evidence showed that Defendant had approximately 1,700 digital audio files—many of them Plaintiffs' copyrighted sound recordings—in the KaZaA shared folder on her computer at the time Plaintiffs' investigators detected her infringement. Plaintiffs' evidence further showed that Defendant had copied many of these sound recordings from other KaZaA users and that she had made Plaintiffs' copyrighted sound recordings available for download to potentially millions of other KaZaA users. Plaintiffs' witnesses testified to the substantial harm caused by the massive distribution of their copyrighted sound recordings over

5

the Internet, including lost revenues, layoffs, and a diminished capability to identify and promote

new talent. In addition, Defendant testified that she had studied the *Napster* case in college and

was specifically aware that copying and sharing copyrighted music files over the Internet is

illegal. Finally, the evidence produced at trial demonstrated that Defendant refused to accept

responsibility for her actions, and that she intentionally concealed her infringement by providing

Plaintiffs, her counsel, and her own expert with a computer hard drive that she knew would have

no evidence of her infringement because it was a new hard drive.

At the close of the evidence, the Court held two jury instruction conferences, one on the

afternoon of Wednesday, October 3, 2007, and another on the morning of Thursday, October 4,

2007, before closing arguments. At each conference, the Court presented the parties with

specific jury instructions and a verdict form detailing the factors for determining the amount of

statutory damages and the range of statutory damages available to Plaintiffs under the Copyright

Act. The Court's final instructions to the jury set forth Plaintiffs' request for statutory damages

and the facts the jury should consider in awarding statutory damages to Plaintiffs:

> In this case, each plaintiff has elected to recover "statutory
> damages" instead of its actual damages and profits.
>
> *Under the Copyright Act, each plaintiff is entitled to a sum
> of not less than $750 or more than $30,000 per act of infringement
> (that is, per sound recording downloaded or distributed without
> license), as you consider just. If, however, you find that
> defendant's conduct was willful, then each plaintiff is entitled to a
> sum of up to $150,000 per act of infringement (that is, per sound
> recording downloaded or distributed without license), as you
> consider just.*
>
> In determining the just amount of statutory damages for an
> infringing defendant, you may consider the willfulness of the
> defendant's conduct, the defendant's innocence, the defendant's
> continuation of infringement after notice or knowledge of the
> copyright or in reckless disregard of the copyright, effect of the
> defendant's prior or concurrent copyright infringement activity,
> and whether profit or gain was established.

6

(Doc. No. 97, Jury Instruction No. 22, emphasis added.) The Court's verdict form also set forth the range of statutory damages available to each Plaintiff, both for infringement and willful infringement. (Doc. No. 100.) At no time during any of these conferences did Defendant raise any objection to the Court's instructions regarding statutory damages, the range of statutory damages available to each Plaintiff, or the verdict form suggested by the Court.

During their deliberations, the jury sent the Court a note requesting instruction on the minimum statutory damages that it could award if it found willful infringement. (Doc. No. 104.) The Court presented the jury's question to the parties in open court and advised the parties of its intent to instruct the jury that the minimum amount the jury could award for willful infringement is $750, with the maximum amount being $150,000. Each side agreed with the Court's proposed response on the record, and neither side raised any objection. Accordingly, in response to the jury's question, and without objection from Plaintiffs or Defendant, the Court instructed the jury: *"If you find the defendant's conduct was willful, you may award statutory damages from $750 - $150,000."* (Doc. No. 105, emphasis added.)

On the afternoon of Thursday, October 4, 2007, the jury returned its verdict, finding that Defendant had willfully infringed all 24 of Plaintiffs' sound recordings at issue and awarding Plaintiffs statutory damages in the amount of $9,250 for each willful infringement, for a total verdict of $222,000. This amount is less than 10% of the amount the jury could have awarded for Defendant's willful infringement. On October 5, 2007, the Court entered judgment on the jury's verdict. (Doc. No. 106.)[2] On October 15, 2007, Defendant filed her Motion asserting "a singular grounds [sic] for relief [arguing] that the amount of the [jury's] award is excessive and

---

[2] Although Plaintiffs, as prevailing parties under Section 505 of the Copyright Act, were entitled to recover their attorney fees from Defendant, they have not sought fees in this case.

in violation of the Due Process Clause of the United States Constitution." (Doc. No. 109 at 1.) Defendant's Motion should be denied because the jury's verdict is more than reasonable based on the evidence presented at trial, because Defendant invited the Court to instruct the jury to award damages within the range it did, and because Defendant's constitutional arguments find no support in the law or the circumstances of this case.

## ARGUMENT

### A. Statutory Damages Under The Copyright Act.

#### 1. The Copyright Act sets forth a carefully calibrated process and prescribes upper and lower limits on available damages that reflect Congress's judgments about damage awards in copyright cases.

The copyright remedy of statutory damages is a central element in modern copyright law. An award of statutory damages serves several purposes: it compensates the plaintiff for the infringement of its copyrights, and it punishes and deters the unlawful conduct. *See Los Angeles News Serv. v. Reuters Television Int'l, Ltd.*, 149 F.3d 987, 996 (9th Cir. 1998); *Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*, 886 F.2d 1545, 1554 (9th Cir. 1989). "Because awards of statutory damages serve both compensatory and punitive purposes, a plaintiff may recover statutory damages *whether or not* there is adequate evidence of the actual damages suffered by plaintiff or of the profits reaped by defendant, in order to sanction and vindicate the statutory policy of discouraging infringement." *Los Angeles News Serv.*, 149 F.3d at 996 (emphasis added). Indeed, "[s]tatutory damages have been made available to plaintiffs in infringement actions *precisely because of the difficulties inherent in proving actual damages and profits*, as well as to encourage vigorous enforcement of the copyright laws." *Yurman Design, Inc. v. PAJ, Inc.* 93 F. Supp. 2d 449, 462 (S.D.N.Y. 2000) (emphasis added); *see also Marshall v. Music Hall Ctr. for the Performing Arts*, No. 95-CV-70910, 1995 U.S. Dist. LEXIS 17904, at *9, n. 8 (E.D. Mich. Nov. 2, 1995) ("The purpose of statutory damages is to allow relief for copyright

8

infringement where the calculation of actual damages plus profits is too difficult or would be unfair."). Thus, "to require a plaintiff to adduce specific proof of actual damages or profits would contravene the purpose of the statutory damages provision." *Bly v. Banbury Books, Inc.*, 638 F. Supp. 983, 987 (E.D. Pa. 1986).

Moreover, Congress has carefully tailored and limited the remedy of statutory damages. In order to be eligible for copyright statutory damages, an owner must timely register its copyrights. *See* 17 U.S.C. § 412. Congress has also built into the remedy several levels of fault, ranging from "innocent" infringement to "willful" infringement. 17 U.S.C. § 504(c). Congress has established ranges of permissible awards per work infringed, with higher ranges for greater culpability. *See id.* The Act sets forth three levels of awards: a basic award (which may range from $750 to $30,000 per infringement), an increased award for willful infringement (in which case the award may be increased up to $150,000 per infringement), and a decreased award for innocent infringement where proper copyright notices were not placed on the works at issue (in which case the award may be decreased to a sum of not less than $200 per infringement). *See id.*

Congress has revised section 504(c) several times since 1976 to *increase* the ranges of damages. Section 504(c) was last amended in 1999. *See* Digital Theft Deterrence and Copyright Damages Improvement Act of 1999, Pub. L. No. 106-160, 113 Stat. 1774. The 1999 amendments increased the minimum and maximum statutory awards by 50%, with the maximum for non-willful infringement increasing from $20,000 to $30,000, and the maximum for willful infringement increasing from $100,000 to $150,000. The Report of the Committee on the Judiciary explained that increases were needed to achieve "more stringent deterrents to copyright infringement and stronger enforcement of the laws." H.R. Rep. No. 106-216, at 2 (1999). The House Report elaborated in a way that resonates strikingly with the facts of this case:

Many computer users are either ignorant that copyright laws apply to Internet activity, *or they simply believe that they will not be caught or prosecuted for their conduct.* Also, many infringers do not consider the current copyright penalties a real threat and continue infringing even after a copyright owner puts them on notice . . . . In light of this disturbing trend, *it is manifest that Congress respond appropriately with updated penalties to dissuade such conduct.* H.R. 1761 increases copyright penalties to have a significant deterrent effect on copyright infringement.

*Id.* at 3 (emphasis added).

When Congress passed the 1999 Act increasing the maximum awards, it specifically noted that "juries must be able to render awards that deter others from infringing intellectual property rights," and further emphasized the "importan[ce] that the cost of infringement *substantially exceed* the costs of compliance, so that persons who use or distribute intellectual property have a strong incentive to abide by the copyright laws." *Id.* at 6 (emphasis added).

In sum, the statutory damages provisions in the Copyright Act reflect a carefully considered and targeted legislative judgment intended not only to compensate the copyright owner, but also to punish the infringer, deter other potential infringers, and encourage vigorous enforcement of the copyright laws. There is no basis for the Court in this case to reduce the jury's award, which was well within the range authorized by Congress, and doing so would effectively nullify Congress' carefully crafted remedial scheme. *See Eldred v. Ashcroft*, 537 U.S. 186, 222 (2003) ("[T]he Copyright Clause empowers Congress to determine the intellectual property regimes that, overall, in the body's judgment, will serve the ends of the Clause . . . [and] [the] wisdom of Congress' action is not within our province to second-guess").

**2.      The jury has the sole authority to determine all issues pertinent to an award of copyright statutory damages.**

The Supreme Court has made it clear that the *jury* has the sole authority to determine "*all issues* pertinent to an award of statutory damages," including the amount itself. *Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340, 355 (1998) (emphasis added). In reaching this

conclusion, the Court noted that "[i]t has long been recognized that by the law the jury are judges of the damages." *Id.* at 353 (internal quotation marks omitted). Thus, the Supreme Court found, "[I]f a party so demands, a jury *must* determine" the amount of statutory damages under the Copyright Act "to preserve the substance of the common-law right of trial by jury." *Id.* at 355 (emphasis added) (internal quotation marks omitted).

Significantly, the Supreme Court's holding also recognized that "all issues pertinent" to an award of statutory damages under the Copyright Act are subject to jury determination. *See id.* ("[W]e hold that the Seventh Amendment provides the right to jury trial on all issues pertinent to an award of statutory damages under § 504(c) of the Copyright Act, including the amount itself"). Thus, any issue that is "inextricably bound up with determining the amount of statutory damages" necessarily "lie[s] beyond the judge's competence." 4 NIMMER ON COPYRIGHT § 14.04[B][3][a] (2005).

### 3.   A jury is entitled to award maximum statutory damages even in the absence of any proof of actual damages.

Defendant's attempt to reduce the jury's award of statutory damages in this case based on her theory of Plaintiffs' actual damages flies in the face of the numerous cases, some of which are cited above, holding that the jury is entitled to award the maximum amount of statutory damages under section 504(c) even in the absence of any proof of actual damages. As the Supreme Court has made clear, there is no requirement that statutory damages be related to actual damages. *See F.W. Woolworth Co. v. Contemporary Arts*, 344 U.S. 228, 233 (1952) ("Even for injurious and unprofitable invasions of copyright the court may, if it deems just, impose a liability within statutory limits to sanction and vindicate the statutory policy.").

Defendant's argument that statutory damages must bear some reasonable relationship to actual damages has been considered, and rejected, by numerous courts. The Ninth Circuit's

11

decision in *Feltner* is instructive.  After the Supreme Court in *Feltner* reversed the judge's $8.8 million award and held that plaintiff was entitled to a jury determination of statutory damages, the case was re-tried, and the jury returned a verdict of $31.68 million for 440 infringements.  *See Columbia Pictures Television, Inc. v. Krypton Broadcasting of Birmingham, Inc.*, 259 F.3d 1186, 1190-91 (9th Cir. 2001).  Feltner moved for a new trial, arguing that the damages were "excessive," "shocked the conscience," and "violated due process."  *Columbia Pictures Television, Inc. v. Feltner*, Case No. CV 91-6847 ER (CTx), Order at 2 (C.D. Cal. June 10, 1999) (Ex. A hereto).  Denying the motion, the district court held that the defendant "cannot argue that the award was overly punitive, or violated due process, since the award amount fell squarely within the statutory range provided by the statutory damages provision of section 504(c)."  *Id.*  The court further held that, "[t]o receive statutory damages, the Plaintiff did not need to prove the damages actually suffered."  *Id.*  On appeal, the Ninth Circuit affirmed the substantial discretion afforded to a jury's determination of statutory damages.  The Ninth Circuit ruled that, "[a]lthough the jury's $31.68 million verdict is substantial, it is equal to a per work infringed award that is well within the statutory range for willful infringement [and] there was substantial evidence to support a finding of willfulness."  *Columbia Pictures*, 259 F.3d at 1195.

*Lowry's Reports, Inc. v. Legg Mason, Inc.*, 302 F. Supp. 2d 455 (D. Md. 2004), is also on point.  In *Lowry's Reports*, a jury found the defendant liable for willful infringement of 240 copyrights and awarded $19 million in damages.  *Id.* at 458 & n. 3.  The defendant, in support of its motion for a new trial, argued "that the actual harm in this case is limited to $59,000 and that the $19 million dollar verdict is so disproportionate that it violates due process."  *Id.* at 458.  In particular, the defendant argued that "statutory damages should be

limited to four times actual damages." *Id.* at 459. The court rejected the defendant's argument and held that "[s]tatutory damages are 'not fixed or readily calculable from a fixed formula,'" and that "there has never been a requirement that statutory damages be strictly related to actual injury." *Id.* (quoting *Feltner*, 523 U.S. at 352-53).

*Superior Form Builders, Inc. v. Dan Chase Taxidermy Supply Co.*, 74 F.3d 488 (4th Cir. 1996), is also instructive. In that case, plaintiff proved that defendant had willfully infringed four registered works but was "not able to identify any damages" or profits, and the defendant's "gross revenue" (not profits) from infringing sales totaled only $10,200. *Id.* at 496. The jury awarded the then-maximum amount of statutory damages of $100,000 per work, a sum of $400,000 for the four works infringed. *See id.* at 492. On appeal, defendant argued that the damages were "excessive," did not "bear some reasonable relationship to the amount of actual damages" and would give the plaintiff a "windfall." *Id.* at 496. The Fourth Circuit rejected the contention that those factors constrain the jury's "broad discretion to award up to $100,000 for each work copied," and affirmed the award based on its findings that "the jury was properly instructed on its discretionary authority," the evidence supported willfulness, and the jury's award was within the statutory range. *Id.*

The Second Circuit reached the same conclusion in *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101 (2d Cir. 2001). In that case, a jury found that the defendant had willfully infringed the plaintiff's copyright in four pieces of jewelry and awarded statutory damages of "$68,750 per work infringed," two-thirds of the then-maximum of $100,000 per work. *Id.* at 113. The jury also found trade dress infringement and awarded traditional punitive damages under that claim. *Id.* at 107-08. Significantly, the district court vacated the *punitive damages* award because "the jury was not presented with any evidence concerning damages" and did not find "any . . . lost

profits whatever." *Yurman*, 93 F. Supp. 2d at 462-63. The district court, however, rejected

defendant's argument that *statutory damages* under the Copyright Act must be "reasonably

related to the harm" and should not "give [plaintiff] an undeserved windfall." The district court

instead held that the lack of any evidence concerning actual damages did "not preclude

[plaintiff's] recovery of statutory damages." *Id.* at 462. As the district court noted, *"[s]tatutory*

*damages have been made available to plaintiffs in infringement actions precisely because of the*

*difficulties inherent in proving actual damages and profits*, as well as to encourage vigorous

enforcement of the copyright law." *Id.* (emphasis added). The Second Circuit affirmed, noting

that the award was "within the statutory range" and thus within the jury's "discretion." *Yurman*,

262 F.3d at 113-14.

Finally, in *SESAC, Inc. v. WPNT*, 327 F. Supp. 2d 531 (W.D. Pa. 2003), the district court

sustained a $1.26 million verdict where actual damages (the cost of a license) were $6,000. The

court noted that the jury "may well have determined that a statutory damages ratio of 10 to 1, or

$60,000, would not constitute a sufficient deterrent for willful infringement by defendants." *Id.*

at 532. Specifically rejecting defendant's argument that the "verdict should be in some ratio to

the cost of the license," the court concluded its opinion with an observation that applies equally

here:

> [I]t is Congress' prerogative to pass laws intended to protect copyrights and to
> prescribe the range of punishment Congress believes is appropriate to accomplish
> the statutory goal. The Court should not interfere lightly with a carefully crafted
> statutory scheme by substituting its judgment for that of the legislature. In
> essence, that is what the defendants ask us to do.

In sum, as unanimous authority on the issue makes clear, awards of statutory damages

under the Copyright Act that fall within the limits set by Congress are for the jury to determine,

whatever the amounts of actual damages (if any). *See Douglas v. Cunningham*, 294 U.S. 207,

210 (1935) ("[T]he law commits to the trier of facts, within the named limits, discretion to apply

the measure furnished by the statute."); *Superior Form Builders*, 74 F.3d at 496 ("Our review of

such an award is even more deferential than abuse of discretion"); *Broadcast Music, Inc. v. Star*

*Amusements, Inc.*, 44 F.3d 485, 488 (7th Cir. 1995) (noting "wide and almost exclusive

discretion" of the fact finder to set the amount of statutory damages); *Lowry's Reports*, 302 F.

Supp. 2d at 458 ("an award within the statutory range is entitled to substantial deference");

Colleen Murphy, *Judicial Assessment of Legal Remedies*, 94 Nw. U. L. REV. 153, 157, 202-03

(1999) (reviewing courts apply a "highly deferential" standard to awards of statutory damages

under the Copyright Act).  Plaintiffs are aware of no case—and Defendant has cited none—in

which the court has reduced or set aside as excessive an award that fell within the range

permitted by the Copyright Act.

**B.      The Evidence Of Defendant's Willful Infringement Of Plaintiffs' Copyrighted**
**         Sound Recordings Fully Supports The Jury's Award Of Statutory Damages, And**
**         Defendant's Motion Fails To Show Any Basis For A New Trial Or Remittitur.**

     **1.      Standard Of Review.**

Defendant's Motion for a new trial is committed to the Court's discretion. *See*

*McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 556 (1984); *United States v.*

*Metro. St. Louis Sewer Dist.*, 440 F.3d 930, 933 (8th Cir. 2006).  "It should be noted[, however,]

that Rule 59(e) motions serve the limited function of correcting manifest errors of law or fact or

to present newly discovered evidence." *Metro. St. Louis Sewer Dist.*, 440 F.3d at 933 (citation

and quotation omitted).  "Such motions cannot be used to introduce new evidence, tender new

legal theories, or raise arguments which could have been offered or raised prior to entry of

judgment." *Innovative Home Health Care v. P.T.-O.T. Assoc. of the Black Hills*, 141 F.3d 1284,

1286 (8th Cir. 1998); *see also Hagerman v. Yukon Energy Corp.*, 839 F.2d 407, 414 (8th Cir.

1988) ("A motion to alter or amend judgment cannot be used to raise arguments which could

have been raised prior to the issuance of judgment.").  "[N]ew trials are not granted unless it is

reasonably clear that prejudicial error has crept into the record or that substantial justice has not been done." *Kehm v. Procter & Gamble Co.*, 580 F. Supp. 890, 896 (D. Iowa 1982) (citation and quotation omitted); *see also* Fed. R. Civ. P. 61. "The burden of proving the propriety of a new trial is, of course, on the moving party." *Kehm*, 580 F. Supp. at 896 (citing *Hansen v. Barrett*, 186 F. Supp. 527, 532 (D. Minn. 1960)).

With respect to Defendant's fall-back plea for a remittitur, "[t]he amount of damages to be awarded is within the sole province of the jury, and such award may not be disturbed unless it is completely without support in the record." *Loughridge v. Chiles Power Supply Co.*, 431 F.3d 1268, 1280-81 (10th Cir. 2005); *see also General Indus. Corp. v. Hartz Mountain Corp.*, 810 F.2d 795, 801 (8th Cir. 1987) ("In the absence of special interrogatories we presume the existence of factual findings and legal conclusions necessary to support the verdict reached by the jury."). The trial court should order remittitur only if the jury's verdict is so grossly excessive as to shock conscience of court. *Eich v. Board of Regents for Cent. Mo. State Univ.*, 350 F.3d 752, 763-764 (8th Cir. 2003). A jury's verdict is not excessive unless there is "plain injustice" or a "monstrous" or "shocking" result. *Id.*[3]

---

[3] Defendant's reliance on *Douglas v. Cunningham*, 294 U.S. 207 (1935), as setting the standard for remittitur is misplaced. *Douglas* did not involve the question of remittitur but, rather, addressed whether, under the Copyright Act, an "appellate court may review the action of a trial judge in assessing an amount in lieu of actual damages, where the amount awarded is within the limits imposed by the section." *Id.* at 208. The Court answered the question in the negative, holding that "the law commits to the trier of facts, within the named limits, discretion to apply the measure furnished by the statute." *Id.* Thus, *Douglas* actually supports Plaintiffs' position, not Defendant's.

#1288791 v3

**2.  The evidence produced at trial more than supports the jury's award of statutory damages.**

Defendant's Motion concedes that "[t]he Court properly instructed the jury" on the factors to consider in awarding damages to Plaintiffs, as follows:

> In determining the just amount of statutory damages for an infringing defendant, you may consider the willfulness of the defendant's conduct, the defendant's innocence, the defendant's continuation of infringement after notice or knowledge of the copyright or in reckless disregard of the copyright, effect of the defendant's prior or concurrent copyright infringement activity, and whether profit or gain was established.

(Mot at 4.)  The Court further correctly instructed the jury that a "willful" infringement "means that a defendant had knowledge that his or her action constituted copyrighted infringement." (Doc. No. 97, Jury Instruction No. 23.)  Statutory damages for willful infringement range from a minimum of $750 to a maximum of $150,000 per infringement.  17 U.S.C. § 504(c).

Here, the evidence at trial showed that Defendant had approximately 1,700 digital audio files—many of them Plaintiffs' copyrighted sound recordings—in the KaZaA shared folder on her computer, that she had copied many of these files from other KaZaA users, that she had made Plaintiffs' copyrighted sound recordings available to potentially millions of other KaZaA users, that she was specifically aware that copying and sharing copyrighted music files over the Internet was illegal, that she refused to accept responsibility for her actions, and that she intentionally concealed her infringement.  In light of the overwhelming evidence of Defendant's deliberate misconduct, Defendant cannot in any way establish that the jury's verdict is "monstrous" or "shocking" or results in "plain injustice" such as would warrant either a new trial or a remittitur.  Indeed, the jury's verdict of $9,250 per sound recording willfully infringed by Defendant is on the low end of available statutory damages for willful infringement.

3.     **Defendant's purported evidence of Plaintiffs' actual damages ignores the facts of this case and cannot, in any event, be considered in a post-trial motion.**

Defendant attempts to support her arguments by alleging unverified retail prices for the sound recordings at issue in this case, and claiming that Plaintiffs' actual damages equal $.70 per download. (Mot. at 2 n.1.)  Defendant's reliance on such purported evidence, however, ignores completely the harm to Plaintiffs caused by Defendant's unlawful *distribution* of Plaintiffs' sound recordings to potentially millions of other KaZaA users.  In addition, Defendant never proffered at trial the evidence that she now seeks to offer.  Defendant should not be allowed to argue her post-trial Motion based on evidence that is not part of the record in this case, and Plaintiffs object to the Court's consideration of such purported evidence.

A party cannot offer new evidence in a post-trial motion unless it can show, among other things, "that (1) the evidence was discovered after trial; (2) the movant exercised due diligence to discover it before the end of trial; [and] (3) the evidence is material and not merely cumulative or impeaching." *Ford Motor Co. v. B & H Supply, Inc.*, 1987 U.S. Dist. LEXIS 14939, 8-9 (D. Minn. 1987).  Defendant can make no such showing here because (1) the purported evidence referenced in her Motion had been in existence long before the trial in this case, (*see* Mot. at 2 n.1, referring to a 2005 affidavit); (2) Defendant has failed to show any diligence at all in seeking to discover this purported evidence; and (3) the purported evidence is in no way material given that it lacks foundation and consists entirely of hearsay.

#1288791 v3

C.   **The Court Should Reject Defendant's Due Process Arguments Because They Have No Application Here.**

1.   **Defendant invited the Court to instruct the jury that it could award statutory damages within a specified range and cannot now be heard to argue that the jury's award within that same range is somehow unconstitutional.**

Parties may not raise an issue for the first time in a Rule 59(e) motion. *McGuire v. Davidson Mfg. Corp.*, 398 F.3d 1005, 1009-1010 (8th Cir. 2005) (rejecting the defendant's attempt to raise issue for first time in Rule 59(e) motion). It is well established that a party may not seek a new trial under Rule 59 unless it made an appropriate objection, stating the grounds for the objection with particularity before the commencement of jury deliberations. *See Hagerman*, 839 F.2d at 414 (affirming denial of Rule 59 motion where party did not raise argument before entry of judgment); *Johnson v. Hill*, 274 F.2d 110, 116 (8th Cir. 1960) (precluding defendant from seeking new trial on ground of juror misconduct where defendant knew of alleged misconduct during the time of trial but did not object); *Juneau Square Corp. v. First Wis. Nat'l Bank*, 624 F.2d 798, 810, (7th Cir. 1980) (party moving for new trial must have made objection before jury retires to deliberate); *Bateman v. Mnemonics, Inc.*, 79 F.3d 1532, 1543-1544 (11th Cir. 1996) (timely objection required before jury retires).[4]

In addition, a defendant cannot complain that she has been denied a fair trial where the defendant invited the very error about which she complains. *See United States v. Samples*, 456 F.3d 875, 884 (8th Cir. 2006); *see also United States v. Beason*, 220 F.3d 964, 968 (8th Cir. 2000) ("It is fundamental that where the defendant 'opened the door' and 'invited error' there

---

[4] *See also* Fed. R. Civ. P. 51 ("No party may assign as error the giving or the failure to give an instruction unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection."); *Smith v. Updegraff*, 744 F.2d 1354, 1367 (8th Cir. 1984) ("We believe Rule 51 was intended to encompass jury verdict forms and find no compelling reason to decide otherwise.").

19

can be no reversible error."); *Starks v. Rent-A-Center*, 58 F.3d 358, 361-62 (8th Cir. 1995)

(holding that it is fundamental that, where party invited error, there can be no reversible error);

*Porterco, Inc. v. Igloo Prods. Corp.*, 955 F.2d 1164, 1173 (8th Cir. 1992) (holding that, where no

specific objections are made to district court's decision to submit issue to jury, the party waives

appellate review of ruling). The invited error doctrine applies to all claims of error, including

due process challenges, where the movant invited the alleged error. *See King v. Brewer*, 577

F.2d 435, 441-43 (8th Cir. 1978) (finding no violation of fundamental fairness under the Due

Process Clause where the introduction of otherwise inadmissible evidence was an invited error);

*Tiger v. Workman*, 445 F.3d 1265, 1266 (10th Cir. 2006) (holding that the trial court's erroneous

jury instruction did not deprive the defendant of due process where the defendant's counsel

invited the error).[5]

Here, Defendant asks the Court "to test the Constitutionality" of the statutory damages

awarded by the jury as well as the minimum statutory damages under the Copyright Act. (Mot.

at 2-3.) Defendant, however, never once during the course of this litigation raised any issue

regarding the constitutionality of statutory damages despite multiple opportunities to do so. As

discussed above, Plaintiffs made it abundantly clear that they intended to seek statutory damages

in this case. They raised the issue in their Complaint, in their Rule 26(a)(1) disclosures, in their

discovery responses, in their statement of the case, and in their proposed jury instructions and

verdict form. Not only did Defendant not object to such damages, Defendant herself submitted

jury instructions expressly asking that the jury be instructed on the full range of statutory

damages available to Plaintiffs under the Copyright Act:

---

[5] Of course, no error occurred here. The jury instructions were proper, the verdict was at
the low end of the range the jury was instructed to apply, and Defendant does not argue
otherwise.

> In this case, each plaintiff has elected to recover "statutory damages" instead of its' [sic] actual damages and profits.
>
> *Under the Copyright Act, each plaintiff is entitled to a sum of not less than $750 or more than $30,000 per act of infringement, if any, as you consider just.*

(Doc. No. 64 at 13, emphasis added.) Defendant then agreed with—and did not object to—the Court's final jury instructions regarding statutory damages and the Court's verdict form, both of which instructed the jury on the full range of damages for both willful and non-willful infringement. (Doc. No. 97, Jury Instruction No. 22; Doc. No. 100.) Finally, during the jury's deliberations, Defendant again agreed that the Court should instruct the jury that, *"[i]f you find the defendant's conduct was willful, you may award statutory damages from $750 - $150,000."* (Doc. No. 105, emphasis added.) Having at least three times invited the Court to instruct the jury that it could award statutory damages within the range specified by the Copyright Act, Defendant cannot now be heard to argue that the jury's award within that very range—indeed, at the low end of that range—is somehow unconstitutional.

Defendant's invitation and failure to object prohibit review unless the alleged error "is plain error in the sense that it has produced a miscarriage of justice." *See Porterco*, 955 F.2d at 1174. Here, Defendant cannot demonstrate any "miscarriage of justice" because the jury's award is well grounded in the facts of the case and well within the range of statutory damages under the Copyright Act, *see* Section B.2., *supra*, at 16-17, and because Defendant's due process arguments have no merit and are contrary to established case law, *see* Sections C.2. and C.3., *infra*, at 21-27.

**2.   The cases on which Defendant relies have no bearing on the issue of statutory damages under the Copyright Act.**

To support her argument that the statutory damages awarded to Plaintiffs are unconstitutionally excessive and should be reduced, Defendant relies on the Supreme Court's

#1288791 v3

opinions in *State Farm Mutual Automobile Insurance Co. v. Campbell*, 538 U.S. 408 (2003) and

*BMW of North America, Inc. v. Gore*, 517 U.S. 559 (1996), the Second Circuit's decision in

*Parker v. Time Warner Entertainment Co.*, 331 F.3d 13 (2d Cir. 2003), the Northern District of

California's decision in *In re Napster, Inc. Copyright Litigation*, No. C MDL-00-1369 MHP,

2005 U.S. Dist. LEXIS 11498, 2005 WL 1287611 (N.D. Cal. Jun. 1, 2005), and the Sixth

Circuit's recent decision in *Zomba Enterprises v. Panorama Records, Inc.*, 491 F.3d 574 (6th

Cir. 2007).  (Mot. at 2, 7-12, and n.12.)  None of these cases has any application here.

      First, Defendant's request for a reduction in *statutory damages* rests on a flatly erroneous

analogy to case law regarding *punitive damages* as developed in *State Farm* and *Gore* and

referred to in the *Parker* and *Napster* cases.  The fundamental problem with Defendant's

suggested analogy is that, unlike *punitive damages*—which are potentially unlimited and subject

to the unbridled discretion of the jury—copyright *statutory damages* are strictly limited to

specifically defined ranges that have been established by Congress in the Copyright Act.  *See* 17

U.S.C. § 504(c) (basic award must range between $750 to $30,000 per infringed work; award

may be increased up to $150,000 per infringed work if conduct is willful; and decreased to not

less than $200 per infringement if conduct is innocent and proper copyright notices were not

placed on the works).  Because these ranges are prescribed by statute, a jury has *no* discretion to

award statutory damages in excess of these carefully circumscribed limits.  This crucial

difference renders wholly inapposite the constitutional case law that governs the imposition of

punitive damages.

      The particular set of constitutional rules that the Supreme Court has articulated to govern

*punitive damages* is based *precisely* on the concern that the award of such damages would

otherwise rest on an "*unregulated and arbitrary* use of judicial power" that would violate due

process. *See Pacific Mut. Life Ins. Co. v. Haslip*, 499 U.S. 1, 10 (1991) (emphasis added). These concerns are simply inapplicable in the context of a system of *statutorily prescribed* fixed damages ranges. In light of the "safeguards in the legislative process," the Supreme Court has explicitly stated that there is a "significant[] differen[ce]"—a constitutional difference—between "review of a jury's award for arbitrariness and *the review of legislation.*" *TXO Prod. Corp. v. Alliance Res. Corp.*, 509 U.S. 443, 456-57 (1993) (emphasis added).

Moreover, in articulating three "guideposts" for evaluating when an award of *punitive damages* is unconstitutionally excessive, the Court in *Gore* focused upon concerns that have no application in the context of *statutory damages.* A major consideration in *Gore*'s due process analysis was that "[e]lementary notions of fairness enshrined in our constitutional jurisprudence dictate that a person receive *fair notice* not only of the conduct that will subject him to punishment, but also *of the severity of the penalty* that a State may impose." *Id.* at 574 (emphasis added). Because statutory penalties provide parties with clear and ample notice about their potential liability, this centerpiece of the *Gore* analysis is simply irrelevant here. The plain and clear language of Section 504 of the Copyright Act was on the books when Defendant decided to embark on her infringing activities, and there is no need (as in *Gore*) for the courts to articulate their own set of damages limits in order to address due-process "notice" concerns.

Consideration of the specific factors identified in *Gore* only further serves to underscore the inapplicability of the *Gore* line of cases here. The *Gore* Court held that the disparity between a punitive damages award and the "*civil penalties* authorized or imposed in comparable cases" is one of three key "guidepost[s]" for determining whether an award is excessive. *Id.* at 575 (emphasis added). Because "substantial deference' [should be given] to legislative judgments concerning appropriate sanctions for the conduct at issue," the Court reasoned that a common

law punitive damages award that happens to fall within the range of a statutory penalty for a

similar wrong is unlikely to violate due process. *Id.* at 583. Thus, a punitive damages award that

*exceeds* such a range may still be permissible (depending upon a consideration of the other *Gore*

factors), but an award within such a range is presumptively constitutional. This analytical

framework articulated by *Gore* is obviously not intended to address the situation in which

Congress has itself undertaken to prescribe the permissible ranges of damages. It makes no

sense, for example, to ask the circular and tautological question whether a *statutory damages*

amount is "greater" than the civil extractions specifically authorized by *statute. Id.* at 584

(identifying this as the third "guidepost").

The second *Gore* guidepost—*i.e.*, the disparity between the actual or potential harm

suffered and the punitive damage award—also demonstrates why importing punitive damages

case law into the context of statutory damages would be error. *Gore*, 517 U.S. at 575. The

notion that a statutory damages award should bear some specified proportion to the "actual

harm" suffered by the plaintiff was *expressly rejected* by Congress when it gave copyright

holders the statutory right to elect *either* "actual damages and any additional profits of the

infringer" *or* "*instead . . .* statutory damages." 17 U.S.C. § 504 (emphasis added). Congress

gave plaintiffs this choice "precisely because of the difficulties inherent in proving actual

damages and profits." *Yurman*, 93 F. Supp. 2d at 462, *aff'd in relevant part, rev'd on other*

*grounds*, 262 F.3d 101 (2d Cir. 2001); *see also Krypton Broad. of Birmingham, Inc.*, 259 F.3d

at 1194 ("A plaintiff may elect statutory damages 'regardless of the adequacy of the evidence

offers as to his actual damages and the amount of the defendant's profits'") (citation omitted). It

is one thing to say, as the Supreme Court has said, that a common law punitive damages award

must bear some reasonable relationship to the harm suffered; it is quite another to say that the

24

Congress cannot undertake to impose a fixed range of damages awards, particularly in a context in which it has determined that proof of damages can be difficult to quantify.

Put simply, the *Gore* test was and is designed to address the validity of *otherwise unconstrained* common law *punitive damages* amounts awarded by juries; it was not intended, nor is it suited, for second-guessing the legislative judgments made by Congress itself in establishing a range of permissible *statutory damages*.

*Parker* and *Napster* are likewise inapposite. *Parker* was a putative class action by cable television subscribers alleging that a cable provider violated the subscriber privacy provisions of the Cable Communications Policy Act. *Parker*, 331 F.3d at 15. In the context of addressing class certification issues, the court mused that the purposes of both statutory damages and class actions could potentially be distorted were the court mechanically to apply the minimum statutory damages provision of the Cable Communications Policy Act to a class of potentially millions of subscribers. *Id.* at 22. *Parker*, however, expressly refused to "consider what limits the due process clause may impose." *Id. Napster*, like *Parker*, noted the hypothetical nature of a possible excessive statutory damages award in the case before it and then expressly refused to reach that question "in the abstract." *Napster*, 2005 U.S. Dist. LEXIS 11498 *41.

Finally, the *Zomba* decision on which Defendant relies supports Plaintiffs' position, not Defendant's. Indeed, *Zomba* rejected the very arguments that Defendant asserts in this case regarding the constitutionality of statutory damages under the Copyright Act. Specifically, the Sixth Circuit noted that both *State Farm* and *Gore* "addressed due-process challenges to *punitive-damages* awards." *Zomba*, 491 F.3d at 586-87 (emphasis in original). The court found "no case invalidating . . . an award of *statutory damages* under [*Gore*] or [*State Farm*]," and held

25

that *Gore* and *State Farm* were not controlling on the issue of statutory damages under the Copyright Act. *Id.* at 587, 588 (emphasis added).

As for *Zomba*'s review of statutory damages to determine whether the award is "so severe and oppressive as to be wholly disproportioned to the offense and obviously unreasonable" the court held that such review "is extraordinarily deferential—even more so than in cases applying abuse-of-discretion review." *Id.* (citing *Douglas*, 294 U.S. at 210 (Congress's purpose in enacting the statutory damage provision of the 1909 Copyright Act and its delineation of specified limits for statutory damages "take[] the matter out of the ordinary rule with respect to abuse of discretion.")). That standard is easily met in this case, as it was in *Zomba*, given Defendant's willful infringement, including the distribution of Plaintiffs' sound recordings to potentially millions of other KaZaA users, and given that the jury's award of $9,250 per sound recording is less than 10% of the amount that the jury could have awarded under the range established by Congress for willful infringement. The jury's award in this case is entirely reasonable and is in no way "disproportioned to the offense." *See id.* at 587.

### 3.    Any due process concerns are amply satisfied by the limits of Section 504.

As myriad cases make clear, the limits on statutory damages established by Congress in Section 504 of the Copyright Act satisfy all due process concerns. *See, e.g., Feltner*, Case No. CV 91-6847 ER (CTx), Order at 2 (Ex. A), (holding that the defendant "cannot argue that the award was overly punitive, or violated due process, since the award amount fell squarely within the statutory range provided by the statutory damages provision of section 504(c)"), *aff'd*, 259 F.3d at 1195; *Lowry's Reports*, 302 F. Supp. 2d at 460 (holding that "[t]he unregulated and arbitrary use of judicial power that the *Gore* guideposts remedy *is not implicated* in Congress' carefully crafted and reasonably constrained statute") (emphasis added).

The statutory restraints under the Copyright Act stand in stark contrast to the "unregulated and arbitrary use of judicial power" that potentially inheres in an award of punitive damages. *Haslip*, 499 U.S. at 10. Juries have traditionally enjoyed open-ended discretion to impose unlimited awards of punitive damages. Thus, the recurring theme of the Supreme Court's punitive damages jurisprudence has been that such truly open-ended power invites abuse and that some additional limits of some kind should be imposed. *Id.* ("Without statutory (or at least common law) standards for the determination of how large an award of punitive damages is appropriate in a given case, juries are left largely to themselves in making this important and potentially devastating decision.").

There is no need for any additional limits here, as Section 504(c) already incorporates an abundance of such limits as set forth above. *See* Section A, *supra*, at 8-15; *see also Lowry's Reports*, 302 F. Supp. 2d at 460 (noting that statutory damages, unlike punitive damages, "are limited to certain specific circumstances"). Moreover, unlike the defendants in *State Farm* and *Gore*, Defendant here cannot claim that she did not "receive fair notice" of the conduct that would subject her to punishment and of the severity of the potential penalty. *See State Farm*, 538 U.S. 417; *Gore*, 517 U.S. at 574. Defendant admitted that she knew that online sharing was illegal before she engaged in such conduct, and statutory damages do not present an issue of fair notice because such damages are, by their very nature, both expressly delineated and limited by statute. Indeed, Section 504(c) gave Defendant explicit notice of the potential consequences of her willful infringement.[6] The notice provided by the statute itself fully satisfies any due process concerns. *See Pac. Mut.*, 499 U.S. at 20 ("As long as discretion is exercised within reasonable

---

[6] Defendant, like all citizens, is presumptively charged with knowledge of the law, including the statutory damages provisions of the Copyright Act. *See Atkins v. Parker*, 472 U.S. 115, 130 (1985).

constraints, due process is satisfied"); Colleen P. Murphy, *Judicial Assessments of Legal Remedies*, 94 Nw. U. L. Rev. 153, 202-03 (1999) ("Congress, in setting a range for statutory damages, has removed the problem of unbridled discretion [and provided] fair notice under due process.").

## CONCLUSION

WHEREFORE, Plaintiffs ask that Defendant's Motion be denied and that Plaintiffs be granted such other and further relief as the Court deems appropriate.

Respectfully submitted this 8th day of November 2007.

|  | s/ Leita Walker<br>Felicia J. Boyd (No. 186168)<br>Leita Walker (No. 387095)<br>FAEGRE & BENSON LLP<br>2200 Wells Fargo Center<br>90 South Seventh Street<br>Minneapolis, Minnesota 55402-3901<br>Telephone: (612) 766-7000<br>Facsimile:  (612) 766-1600<br><br>Richard L. Gabriel (pro hac vice)<br>Timothy M. Reynolds (pro hac vice)<br>David A. Tonini (pro hac vice)<br>Andrew B. Mohraz (pro hac vice)<br>HOLME ROBERTS & OWEN LLP<br>1700 Lincoln, Suite 4100<br>Denver, Colorado 80203<br>Telephone: (303) 861-7000<br>Facsimile: (303) 866-0200<br><br>ATTORNEYS FOR PLAINTIFFS |
|--|--|

fb.us.2411178.01

#1288791 v3