IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| CAPITOL RECORDS INC., a Delaware corporation; SONY BMG MUSIC ENTERTAINMENT, a Delaware general partnership; ARISTA RECORDS LLC, a Delaware limited liability company; INTERSCOPE RECORDS, a California general partnership; WARNER BROS. RECORDS INC., a Delaware corporation; and UMG RECORDINGS, INC., a Delaware corporation,<br><br>        Plaintiffs,<br><br>v.<br><br>Jammie Thomas,<br><br>        Defendant. | Case No. 06-cv-1497 (MJD/RLE)<br><br><br><br>DEFENDANT'S REPLY TO PLAINTIFFS' RESPONSE (DKT. 122) |

With the Court's permission, defendant, by and through her undersigned counsel replies to Plaintiffs' Response in Opposition to Defendant's Motion for New Trial, or in the Alternative, for Remittitur.

A. <u>The Subject Recordings for Purposes of Defendant's Motion is Properly Limited to the 24 Songs Downloaded, Not the 1702 Songs Listed in Exhibit B of the Complaint</u>.

Throughout the trial and in their instant argument, plaintiffs highlight the fact that the screenshots identified by MediaSentry identified 1702 song recordings that were made available for distribution to millions of others. These same 1702 song recordings are the universe of those listed on Exhibit B of the Complaint. Those 1702 songs *may* be subject to copyrights held by some members of the Recording Industry of American Association ("RIAA"), but the RIAA is not a party plaintiff.

The extent to which plaintiffs have any interest in the 1702 other song recordings is not known to defendant or to the Court, and calculatedly so. In their Complaint plaintiffs plead that the song recordings they own or have licenses to the exclusive rights to "include certain of the sound recordings listed on Exhibit B . . . ." Complaint, p. 3. (Dkt. 1).

In an interrogatory calculated to identify which "certain sound recordings listed on Exhibit B" plaintiffs are claiming were allegedly infringed, plaintiffs responded with an objection "on the grounds that this Interrogatory is premature because discovery is ongoing." Plaintiffs' Responses to Defendant's Interrogatories, Int. 5, p. 6 (Dkt. 79, Exh. 1).

At trial, none of plaintiffs' witnesses identified which of the 1702 other song recordings were subject to copyrights held or controlled by plaintiffs. In fact, plaintiffs did not even own or control the copyrights to some of the songs they originally identified as those constituting the subject of their suit. Witness how the number of subject songs dwindled from 27 down to 24 with one plaintiff dismissing its cause.

Today plaintiffs only allow and identify the 1,700 files as, "*many* of the Plaintiffs' copyrighted sound recordings . . . ." Pltfs' Mem. in Opp., p. 17 (emphasis added) (Dkt. 122). Accordingly, the Court's analysis should be limited or at least focused to the 24 song recordings that were the subject of the verdict.

B.   <u>A Lack of Objection to the Jury Instructions is Not the Same Thing as Waiving a Right to Object to the Application of the Jury Instructions.</u>

Plaintiffs begin there argument with repeated references to the jury instructions and the fact that they were agreed upon by defendant. The instruction given respecting

2

damages was a proper instruction, but whether the instructions were proper or not is not the issue. The issue is the amount of the award.

The instructions are certainly a factor, but the instructions were ultimately and properly derived from the Copyright Act which, referring to statutory damages, provides that the damages awarded must be "as the court considers just." 17 U.S.C. § 504 (c)(1).

Whether an award comports with the constitutional protections of justice, procedural and substantive due process, is the sort of determination that a court will analyze for excessiveness or arbitrariness, or whether the damages are far beyond compensatory and clearly punitive.[1]

Plaintiffs state that "[a]t no time… did Defendant raise any objection to the Court's instruction regarding statutory damages . . . available to each Plaintiff, or the verdict form suggested by the Court." Pltfs' Mem. In Opp., p. 7.  When the instructions were given, defendant had no constitutional claim to argue, because the statutorily derived instructions are not inherently violative of due process requirements.  In other words, somewhat broadly, the instructions are the law, and there can be no arguing with having the law read to the jury.

The result of the instructions, i.e., the jury's application of the law, can and does implicate constitutional protections that the Court must consider.  Plaintiffs' argument regarding the effect of the instructions denies the Court's inherent authority to assess the

---

[1] As an example of the limitations of the statutory scheme, there can be no question that a court would be within its prerogative to overturn a jury award if this case had involved all 1700 plus songs originally referenced, and the jury awarded the maximum $150,000/ per infringement, yielding a recovery of over $255,000,000.  The question then is really "where is that line between reasonable and absurd?"

excessiveness of a punitive jury award as it must do according to the Copyright Act itself, case law and the due process clause of the Constitution.

C.   The Punitive Component of Statutory Damages.

At the heart of the issues raised by defendant's motion is the distinction between compensatory and punitive damages, and the fact is that the Copyright Act does not expressly distinguish between the two.  Defendant submits what should not be a controversial distinction between the two-- that an award which bears no resemblance to the actual losses suffered, which is so far beyond compensation of supposed injuries, must be punitive.  Plaintiffs implicitly accept this distinction[2], though they would like to avoid the implication of the fact that the compensatory damages in this case cannot reasonably amount to more than $20, while the jury award came in at over 10,000 times that figure.

For the purpose of assessing the nature of punitive damages in this case, it is important to look at the dual purpose of 17 U.S.C. § 504.  Plaintiffs correctly refer to one aspect of statutory damages as a substitute in situations where it is difficult to calculate actual damages.  Quoting the first clause of a sentence from *Bly v. Banbury Books, Inc.*, 638 F. Supp. 983, 987 (E.D. Pa. 1986) for the proposition that statutory damages are available where actual damages are inherently difficult to prove, plaintiffs miss the point that this substitution is not intended to ignore the justice of linking an award of damages to the harm caused.

---

[2] The crux of this dispute is that while plaintiffs' brief makes several references to the deterrent and punitive aspects of a jury award, it denies that this requires constraint by the constitutional limitations of due process.

4

Plaintiffs excise the following from *Bly*: "to require a plaintiff to adduce specific proof of actual damages or profits would contravene the purpose of the statutory damages provision." Pltfs' Mem. In Opp., p. 9. *Bly* says much more, and with what plaintiffs quote and with the language plaintiffs omitted states:

> While it is clear that *to require a plaintiff to adduce specific proof of actual damages or profits would contravene the purpose of the statutory damages provision*, this does not mean that it is irrelevant whether and to what extent a plaintiff has been harmed by a defendant's infringement. To the contrary, numerous courts have held that assessed statutory damages should bear some relation to the actual damages suffered.

*Bly*, 638 F. Supp. at 987 (italicized portion from plaintiffs' memorandum, internal citations omitted).

Where the damages are substantially in excess of, or outside any conceivable relationship to the difficult to define actual damages, they must be intended as punitive.

The Court in *Bly* goes on to make a persuasive argument for this proposition that, where damages are nominal, the only purpose of an additional award is the deterrent effect of punitive damages, and that justice must constrain the application of the punitive elements of the statute.

> On the other hand, courts have held that minimum statutory damages should be assessed when a plaintiff has sustained minimal, if any, damages. Moreover, the legislative history of the Copyrights Act, while not entirely clear on this point, seems to contemplate that when a plaintiff does not establish that any damage has resulted from an infringement, the minimum amount of $250 will be awarded.

> Even putting aside the legislative history's rather cryptic reference to minimum statutory damages, nothing in this case convinces me that an award above the $250 statutory minimum is just. As plaintiff admits that his damages were nominal at best, the minimum award will more than compensate him for any pecuniary harm inflicted by defendant's infringement. And, while it is

5

> axiomatic that a $10,000 award would be a more significant deterrent than a $250 one, it is equally clear that Congress believed that statutory damages of $250 would in some cases sufficiently fulfill the Act's compensatory and deterrent purposes. Accordingly, I will assess statutory damages in the amount of $250.

*Id.* at 987-88 (internal citations omitted).

It is also worth noting that this, as well as the majority of cases cited by plaintiff, are pre-*Gore*, and therefore do not approach the issue from the standpoint of current substantive or procedural due process jurisprudence.

D.  <u>Plaintiffs Do Not Dispute that the Statute is Inherently Punitive</u>.

Plaintiffs cite the legislative history of the 1999 amendments to the Copyright Act, with multiple references to the deterrent effects of the statutory damages located in 17 U.S.C. 504 (c). "[T]he statutory damages provisions in the Copyright Act reflect a carefully considered and targeted legislative judgment intended not only to compensate the copyright owner, but also to punish the infringer, deter other potential infringers, and encourage vigorous enforcement of the copyright laws." Pltfs.' Mem. in Opp., p.10.

As punitive, the damages assessed must be analyzed under the existing law requiring punitive damages to comport with constitutional protections of due process, and are rightly criticized when they become excessive and unjust. This is what the Defendant asks of this Court, that it apply the Constitutional limits established in *BMW of North America, Inc. v. Gore,* 517 U.S. 559, 116 S. Ct. 1589 (1996), and *State Farm Mut. Auto. Ins. Co. v. Campbell,* 538 U.S. 408, 123 S. Ct. 1513 (2003).

Plaintiffs also argue that reducing the jury award "would effectively nullify Congress' carefully crafted remedial scheme." Pltfs.' Mem. in Opp., p.10 (*citing Eldred v. Ashcroft,* 537 U.S. 186, 222 (2003), based on a constitutional challenge to the

6

extension of the copyright duration as codified in the 1998 Sonny Bono Copyright Term Extension Act). This assertion is broader than *Eldred*.[3]

This Court can amend the award of damages at issue here without infringing on the right of Congress to adopt the statutory scheme, instead maintaining the inherent power of a court to promote justice by following the procedure established in Fed. R. Civ. P. 59.

Plaintiffs next cites *Feltner v. Columbia Pictures Television, Inc.,* 523 U.S. 340 (1998), for the proposition that the jury is the sole authority on damage awards. *Feltner* is primarily a Seventh Amendment case, answering the question whether the Copyright Act establishes a right to a jury determination of damages. The *Feltner* court says no.

> The language of § 504(c) does not grant a right to have a jury assess statutory damages. Statutory damages are to be assessed in an amount that "the court considers just." § 504(c)(1). Further, in the event that "the court finds" the infringement was willful or innocent, "the court in its discretion" may, within limits, increase or decrease the amount of *346 statutory damages. § 504(c)(2). These phrases, like the entire statutory provision, make no mention of a right to a jury trial or, for that matter, to juries at all.

*Id.* at 345-46.

The *Feltner* court goes on, however, to assert that the Seventh Amendment requires that if a jury is requested, it is to assess damages. However, this rule only

---

[3] In *Eldred,* the court was addressing whether Congress had the authority to alter the prior structure of time limitations, particularly retroactively. Striking down that law would have put the court directly at odds with Article I of the Constitution, which empowers Congress to define the contours of copyright law, confined in this aspect by the term "for limited times." Moreover, had the Sonny Bono Copyright Extension Act, in fact, violated the limitations in Art. I, § 8, cl. 8 of the Constitution, the court would have struck it down, as it has numerous laws that were inconsistent with the text of the Constitution.

applies if we accept that the damages assessed are not punitive in nature. *See Cooper Industries, Inc. v. Leatherman Tool Group, Inc.,* 532 U.S. 424, 437 (2001). It is precisely in this circumstance that review of a jury determination of damages is required to preserve due process.

> Unlike the measure of actual damages suffered, which presents a question of historical or predictive fact, the level of punitive damages is not really a 'fact' 'tried' by the jury. Because the jury's award of punitive damages does not constitute a finding of "fact," appellate review of the district court's determination that an award is consistent with due process does not implicate the Seventh Amendment concerns raised by respondent.

*Id.* For the reasons discussed above, because the damages at issue here bear no reasonable relationship to the actual compensatory damages that might be assessed, and are designed to be punishment or deterrence, the rule of *Feltner* is besides the point.

E.   <u>Plaintiffs' Case Law Showing of Situations Where Large Punitive Damages Were Found Constitutional Are Irrelevant to This Situation</u>.

The numerous cases plaintiffs cite for the proposition that a jury is entitled to award damages above the statutory minimum are not relevant to this case, because they involve corporate defendants, and include a punitive nature to the damages calculation. Punitive damages assessed a corporate defendant are largely a function of defendant's profits and deterring future illegal commercial conduct.[4] That is not the situation here. Defendant finds no cases, nor have plaintiffs cited any, where a high punitive damage

---

[4] *See Jobete Music Co., Inc. v. Johnson Communications, Inc.,* 285 F.Supp.2d 1077, 1086 (S.D.Ohio 2003) ("In determining the amount of damages to be awarded, courts generally consider (1) the infringer's blameworthiness, *i.e.,* whether the infringement was willful, knowing, or innocent, (2) the expenses saved and the profits reaped by the defendants in connection with the infringement, and (3) the revenues lost by the plaintiffs due to the defendants' conduct… .")

8

multiple has been applied to a party who did not use the copyright for commercial gain. This is the deterrent purpose of the statute, and simply does not apply to Ms. Thomas.

What these cases do prove, however, is the seemingly obvious proposition that a finding of willfulness adds a punitive element to the award of statutory damages. In *Bridgeport Music, Inc. v. Justin Combs Pub.,* 2007 WL 3010525, *14 (6th Cir.), the court looked at the ratio of maximum penalties available both with and without a finding of willfulness, and determined that at that ratio, 4:1, there would be no constitutional issue. Here, however, there is no indication that the compensatory portion of the award should be anything more than the minimum the statute allows, or $750, which is essentially a substitute for the actual damages of approximately $.70. Therefore, the ratio at work here with a damages award of $9,250 per song recording is either 12.33:1, or 13,214:1, either of which raises due process concerns and requires this Court to intervene to safeguard Defendant's constitutional protections.[5]

## CONCLUSION

In many respects this is a case of first impression. There was no internet extant when the Copyright Act was made into law. What Congress contemplated was clearly infringement with a commercial component. Here there is no evidence of any kind of monetary gain by defendant. There may be evidence that she acquired song recordings without paying for them, but this is not a downloading case; this is an uploading case where the law is not clear on just what constitutes an infringement.

---

[5] There is nothing in section 504 to prevent a court from taking account of evidence concerning actual damages and profits in making an award of statutory damages within the range set out in subsection (c). HOUSE REPORT NO. 94-1476 H.R. REP. 94-1476, *161, 1976 U.S.C.C.A.N. 5659, **5777 (.1976)

These factors go to reprehensibility, due process and a sense of injustice when making available 24 song recordings results in an award of almost a quarter million dollars.[6]

Respectfully submitted,

Dated:  November 27, 2007	**CHESTNUT & CAMBRONNE, P.A.**

By /s/  Brian N. Toder
Brian N. Toder  (No. 17869X)
Bryan L. Bleichner (No. 0326689)
3700 Campbell Mithun Tower
222 South Ninth Street
Minneapolis, MN 55402
(612) 339-7300
Fax (612)336-2940

**ATTORNEYS FOR DEFENDANT**

---

[6] Interestingly, if the amount awarded was a criminal fine, it would only be imposed if defendant committed a crime with an offense level of 38 and above.  See U.S.S.G. §5E1.2(c)(3). An example of such a crime would be Second Degree Murder in violation of 18 U.S.C. § 1111(a).  See U.S.S.G. §2A1.2(a).