**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA**

_____

CAPITOL RECORDS INC, *et al.*,       )

               Plaintiffs     )

           v.                     )         Civil Action No. 06-cv-1497

JAMMIE THOMAS,           )

               Defendant     )

_____

**UNITED STATES OF AMERICA'S MEMORANDUM IN DEFENSE
OF THE CONSTITUTIONALITY OF THE STATUTORY DAMAGES
PROVISION OF THE COPYRIGHT ACT, 17 U.S.C. § 504(c)**

## INTRODUCTION

In a post-trial brief, defendant has made an as-applied challenge to the constitutionality of the statutory damages provision of the Copyright Act, 17 U.S.C. § 504(c). Defendant has moved for a new trial pursuant to the Federal Rule of Civil Procedure 59, or in the alternative, for remittitur on the sole assertion that the damages awarded by the jury, made pursuant to the range specified by Congress, violates the Due Process Clause of the United States Constitution. The United States has now moved to intervene to defend the constitutionality of 17 U.S.C. § 504(c).[1]

This memorandum deals solely with the issue of the constitutionality of 17 U.S.C. § 504(c). The United States does not express an opinion regarding whether defendant has submitted a proper Rule 59 motion, whether defendant has satisfied the standard for remittitur, or even whether defendant has waived presenting the constitutional question to the Court. Under

---

[1] Because the defendant's motion does not contest the legal sufficiency of any of the grounds for recovery set forth in the jury instructions, and because we are participating solely to address the constitutional issue, we do not address which of the exclusive rights under the Copyright Act were violated here.

the doctrine of constitutional avoidance, however, the United States respectfully submits that this Court should resolve these non-constitutional defenses to the motion *before* deciding the constitutional question.

If it is necessary to reach the constitutional question to resolve defendant's motion, then defendant's motion should be rejected because Congress's carefully crafted statute satisfies the Due Process Clause. As an initial matter, defendant has misstated the proper legal standard for determining the constitutionality of a statutory damages provision. Ignoring the standard articulated by the Supreme Court for examining the constitutionality of a statutory damages provision, defendant incorrectly contends that this Court should rely on the Supreme Court's punitive damages jurisprudence. Given the deference to the legislative branch, this statutory damages standard is significantly less demanding than the standard applicable to punitive damages.

Under the constitutional test adopted by the Supreme Court, an award of statutory damages satisfies the demands of the Due Process Clause as long as it is not "so severe and oppressive as to be wholly disproportioned to the offense or obviously unreasonable." *St. Louis, I.M. & S. Ry. Co. v. Williams*, 251 U.S. 63, 67 (1919). Accordingly, given the standard articulated by the Supreme Court, the statutory damages provision for copyright infringements easily withstands constitutional scrutiny. Statutory damages for copyright infringements have existed in some form dating back to before the ratification of the Constitution. Congress acted reasonably in crafting the current incarnation by ensuring that it serves both a compensatory and deterrent purpose. Congress established a damages range that provides compensation for copyright owners in a regime in which actual damages are hard to quantify. Furthermore, in

-2-

establishing that range, Congress also took into account the need to deter the millions of users of new media from infringing copyrights in an environment where many violators believe that they will go unnoticed.  Accordingly, the statutory range specified by Congress for a copyright infringement satisfies due process.

## **BACKGROUND**

**I        Procedural Background**

In this civil action for copyright infringements, a jury found defendant liable for willfully infringing 24 copyrights owned by plaintiffs.  *See* Dkt. #106.  For purposes of this motion, defendant does not dispute that finding.  *See* Defendant's Memorandum in Support of her Motion for New Trial, or in the Alternative, for Remittitur ("Def.'s Mem") at 4 ("[v]iewing the evidence in a light most favorable to the verdict, it may be deemed established that, [*inter alia*]: defendant's conduct was willful [and] that defendant was not innocent").

The jury in this case awarded damages to six different music labels after finding that defendant had infringed their copyrights.  *See* Dkt. #106.  The jury used a Special Verdict Form specifying the damages award for each infringement and whether that infringement was willful.  *See* Dkt. #100.  Specifically, the jury found that defendant had willfully infringed 24 copyrights and elected to award each plaintiff $9,250 per infringement for a total damages award of $222,000.  *Id.*  The jury instruction specified that the damages range for non-willful conduct to be between $750 and $30,000 per infringement and up to $150,000 per infringement for willful conduct.  *Id.*  The Court informed the jury, after receiving a question from the jury, that the minimum award for willful conduct is $750 per infringement.  *See* Dkt. #s 104, 105.

Within ten days after judgment was entered, defendant moved for a new trial pursuant to

Rule 59, or in the alternative, for remittitur.  *See* Dkt. #109.  As grounds for this motion,

defendant contends that the application of the statutory damages provision of the Copyright Act,

17 U.S.C. § 504(c), is unconstitutional.  *See id.*  On October 18, 2007, defendant informed the

Court, pursuant to Federal Rule of Civil Procedure 5.1, that it was raising a constitutional

challenge to a federal statute.  *See* Dkt. #112.  This motion is the first time that defendant has

raised the constitutionality of the Copyright Act's statutory damages provision as an issue in this

case.  The Court granted the United States until December 3, 2007, to determine if it will

intervene and file a brief defending the constitutionality of the challenged statutory provision.

*See* Dkt. #118.  The United States has now moved to intervene in this action and this brief is

filed in conjunction with the United States' Motion to Intervene to Defend the Constitutionality

of a Federal Statute.

## II.      Statutory Background

As the Supreme Court has recognized, the remedy of statutory damages for copyright

infringements dates back to the Statute of Anne in 1710.  *See Feltner v. Columbia Pictures*

*Television*, 523 U.S. 340, 349 (1998).  And in 1783, the "Continental Congress passed a

resolution recommending that the States secure copyright protections for authors."  *Id.* at 350.

Three of the twelve States that responded to this resolution even "specifically authorized an

award of damages from a statutory range, just as § 504(c) does today."  *Id.* at 351.

The history of a federal statutory damages provision for copyright infringement dates

back to the Copyright Act of 1790.  Under the 1790 law, each infringer of a copyright was liable

"for the sum of fifty cents for every sheet which shall be found in his or their possession," with

half the money going to the infringed party and the other half going to the United States.  *See* 1

Stat. 124 (1790).  Each modification of the Copyright Act has maintained a statutory damages

provision.  For approximately a century, Congress has prescribed a statutory range for damages

for copyright infringements.  *See*, *e.g.*,  *L.A. Westermann Co. v. Dispatch Printing Co.*, 249 U.S.

100, 106-7 (1919) (holding that although a court has discretion in determining a just award

within the range specified by Congress, it "has no discretion when proceeding under [the 1909

Copyright Statute] to go outside" of that range).

The statutory damages provision at issue in this case was amended as part of an 1999

amendment to the Copyright Act of 1976.  *See* PL 106-160, § 2 (1999).  Under the Copyright

Act of 1976, and still current today, "an infringer of copyright is liable for either -- (1) the

copyright owner's actual damages and additional profits of the infringer" or (2) "statutory

damages."  *See* 17 U.S.C. § 504(a).  The copyright owner may elect, except in situations not

relevant here, "at any time before final judgment is rendered, to recover, instead of actual

damages and profits, an award of statutory damages."  *See* 17 U.S.C. § 504(c)(1).

Under the original version of the 1976 Act, the copyright owner was able to recover a

minimum of $250 per infringed work and a maximum of $10,000 per work.  *See* PL 94-553, § 22

(1976).  If the violation was willful, the maximum statutory damages award went up to $50,000

per work.  In the 1999 amendment, Congress altered the damages range to its current level of

being between $750 and $30,000 per infringement, with a maximum of $150,000 for a willful

violation.  *See* PL 106-160, § 2 (1999).[2]

---

[2] An intermediate amendment of the 1976 Act set the range at $500 to $20,000, with a willfulness enhancement up to $100,000.  102 Stat. 2853, 2860 (1988).

## ARGUMENT

**I.      Constitutional Avoidance**

This Court should only reach the merits of the constitutional question if it is necessary to decide that question to decide defendant's motion.  *See Harmon v. Brucker*, 355 U.S. 579, 581 (1981) (court should avoid deciding constitutional questions unless they are essential to disposition of a case); *see also Feltner v. Columbia Pictures Television*, 523 U.S. at 345-47 (reaching the constitutional question after determining that the statute cannot be construed in a way that would avoid the necessity of reaching that constitutional question); *U.S. v. Allen*, 406 F.3d 940, 946 (8th Cir. 2005) ("When we are confronted with several possible grounds for deciding a case, any of which would lead to the same result, we choose the narrowest ground in order to avoid unnecessary adjudication of constitutional issues").  This Court may be able to avoid the constitutional question by deciding the motion on grounds that do not implicate the constitutionality of the Copyright Act's statutory damages provision.

This Court may find that defendant has waived her challenge to Congress's statutory damages provision by submitting "jury instructions and approv[ing] the verdict form that allowed the jury to consider the full range of statutory damages under the Copyright Act."  *See* Plaintiffs' Response in Opposition to Defendant's Motion for New Trial, or in the Alternative, for Remittitur ("Pl.'s Opp.") at 3.  Defendant never raised the issue of the constitutionality of the Copyright Act's statutory damages provision until this post-trial motion.  *Id*. at 4-8 (discussing the procedural background of the case); *see also id*. at 19-21 (arguing that defendant had "invited the Court to instruct the jury that it could award statutory damages within a specified range and cannot be heard to argue that the jury's award within that same range is somehow

unconstitutional"). In fact, the jury even asked the Court for guidance on what constituted the minimum amount for a finding of willful infringement and both parties agreed, including defendant, that "the minimum amount the jury could award for willful infringement is $750." *Id.* at 7. Should this Court find any of these arguments dispositive, it would be unnecessary to reach the question of the constitutionality of the Copyright Act's statutory damages provision.

Furthermore, should this Court reach the constitutional question, it has only been presented as an-applied challenge rather than as a facial challenge to the statute. Defendant is alleging that the award for the copyright infringements of these 24 recordings does not comport with due process. *See* Def.'s Mem. at 3 ("defendant argues that the Court has the authority, if not the duty, to test the Constitutionality of the *application* of the minimum statutory amount in the instant matter") (emphasis added). Defendant is not alleging, nor could she, that an award under the statute would never comport with due process.

## II.      The Applicable Standard

Defendant incorrectly claims that this Court should rely on the Supreme Court's punitive damages jurisprudence, *State Farm Mut. Auto Ins. Co. v. Campbell*, 538 U.S. 408 (2003) and *BMW of North America, Inc. v. Gore*, 517 U.S. 559 (1996), in determining whether this statutory provision violates the due process clause. Statutory damages, specified by Congress, are distinct from the unregulated use of punitive damages by a jury. As an initial matter, the standard articulated by the Supreme Court for determining the constitutionality of a statutory damages award is quite distinct and much more deferential than the framework established by *Gore* and *Campbell* for determining the constitutionality of a punitive damages award. As explained above, an award under a statutory damages provision is analyzed to see if it is "so severe and

oppressive as to be wholly disproportioned to the offense or obviously unreasonable." *See St. Louis*, *I.M. & S. Ry. Co. v. Williams*, 251 U.S. at 67 (holding that a statutory damages award of $75, for a violation that resulted in actual damages of only 66 cents, was within the authorized range of $50 to $300 and did not violate due process).  In contrast, the Supreme Court's punitive damages jurisprudence uses a much more examining standard for determining whether an award violates the Due Process Clause; the Supreme Court has established three guideposts that include (1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded by the jury and civil penalties authorized or imposed in comparable cases.  *See Campbell*, 538 U.S. at 418.

Rather than applying the *Gore and Campbell* framework for determining the constitutionality of a statutory damages provision, courts consistently have applied the standard articulated in *Williams*.  *See, e.g., Zomba Enterprises, Inc*., *et al. v. Panorama Records, Inc.*, 491 F.3d 574, 587-88 (6th Cir. 2007) (finding that the application of the Copyright Act's statutory damages provision did not violate the *Williams* standard); *Accounting Outsourcing, LLC. v. Verizon Wireless Personal Communications, L.P.*, 329 F.Supp.2d 789, 809-810 (M.D. La. 2004) (finding that the application of the Telephone Consumer Protection Act statutory damages provision did not violate the *Williams* standard); *Texas v. American Blastfax, Inc.*, 121 F.Supp.2d 1085, 1090-92 (W.D. Tex. 2000) (same).[3]  The Sixth Circuit recently stated in an application of

_____

[3] Defendant does not cite any case that applied the *Gore* and *Campbell* guideposts in determining the constitutionality of a statutory damages award.  Besides relying on *Zomba*, *see* Def.'s Mem. at 7-8, defendant also cites to *Parker v. Time Warner Entm't Co.*, 331 F.3d 13, 22 (2nd Cir. 2003) and *Napster, Inc.*, 2005 WL 1286711 at *10-11 (N.D. Cal. June 1, 2005).  *See* Def.'s Mem. at 8 n. 12.  The Court in *Parker* did state that in a

the Copyright Act's statutory damages provision that it knows "of no case invalidating such an

award of statutory damages under *Gore* or *Campbell*" nor has the Supreme Court "indicated

whether *Gore* and *Campbell* apply to awards of *statutory* damages."[4]  *Zomba Enterprises, Inc., et

al. v. Panorama Records, Inc.*, 491 F.3d at 587 (emphasis in original); *see also Accounting

Outsourcing, LLC. v. Verizon Wireless Personal Communications, L.P.*, 329 F.Supp.2d at 808-

809 ("refus[ing] to extend the holdings of *Gore* and *Campbell* beyond their intended

application" to punitive damages awards).  A district court was even more explicit in another

case applying the Copyright Act's statutory damages provision: "The unregulated and arbitrary

use of judicial power that the *Gore* guideposts remedy is not implicated in Congress' carefully

crafted and reasonably constrained statute."  *See Lowery's Reports, Inc., v. Legg Mason, Inc.*, et

*al.*, 302 F. Supp.2d 455, 460 (D. Md. 2004).

---

"sufficiently serious case" the aggregation of statutory damage awards in a class context might invoke the Due Process Clause, but found "[a]t this point in this case, however, these concerns remain hypothetical."  *See Parker*, 331 F.3d at 22.  In coming to this conclusion, the Court relied principally on *Williams* rather than *Gore* or *Campbell*, for the proposition that a "statutory penalty may violate due process where the penalty prescribed is 'so severe and oppressive as to be wholly disproportioned to the offense or obviously unreasonable.'"  *Id.*  In *Napster*, the Court did say that an examination of whether a statutory damages award violates due process would be similar to the guideposts used in *Gore* and *Campbell*, but stated that such a determination at this point in the proceedings would be entirely "speculative."  *See In re Napster, Inc.*, 2005 WL 12876411 at *11.

[4] The Sixth Circuit did mention that *Parker* and *Napster,* along with *DirecTV v. Gonzalez*, 2004 WL 1875046, at *4 (W.D. Tex. 2004), state in dicta that *Gore* and *Campbell* "may apply to statutory-damages awards."  *See Zomba Enterprises, Inc., et al. v. Panorama Records, Inc.*, 491 F.3d at 587.  However, none of those three courts actually examined the constitutional issue because they found at the time that the issue was either "hypothetical" or "speculative."  Furthermore, just as in *Parker*, *DirecTV* references the *Williams* standard that statutory damages could violate due process "if the penalty prescribed is so severe and oppressive as to be wholly disproportioned to the offense or obviously unreasonable."  *DirecTV v. Gonzalez*, 2004 WL 1875046, at *4.

Besides the fact that the Supreme Court has already stated a standard that courts have applied for determining the constitutionality of a statutory damages provision, the standard articulated by the Supreme Court in *Gore* and *Campbell* is inapplicable outside of the punitive damages context. As an initial matter, defendant mistakenly conflates the deterrence element that exists in the statutory damages context with punitive damages. *See* Def.'s Mem. at 6; Defendant's Reply to Plaintiffs' Response ("Def.'s Reply) at 4-8. Although deterrence is one of the purposes of a punitive damages award, *Campbell*, 538 U.S. at 425, the fact that a remedy may be based in part on deterrence does not mean that the remedy must be viewed as a form of punitive damages or governed by the same standard as punitive damages. *Cf. Bennis v. Michigan*, 516 U.S. 442, 452 (1996) (explaining that "forfeiture also serves deterrent purpose *distinct* from any punitive purpose") (emphasis added). In addition to deterrence, punitive damages serve as "retribution." *See Campbell*, 538 U.S. at 425. In contrast, statutory damages serve to deter a public wrong from being committed and compensate those harmed in areas in which actual damages are hard to calculate.[5]

Statutory damages are also distinct because the notice concern presented in the punitive damages context is greatly diminished in the statutory damages context. Contrary to defendant's

---

[5] In the context of copyright infringements, the statutory structure Congress established merely adds for a willful violation a multiplier of four to the $30,000 maximum for a non-willful violation. *Compare* 17 U.S.C. § 504(c)(1) *with* 17 U.S.C. § 504(c)(2). Such a small multiple would easily pass muster under *Campbell* and *Gore*. *See State Farm Mut. Auto Ins. Co. v. Campbell*, 538 U.S. at 425 (although there is no rigid rule for determining a constitutional ratio between a compensatory award and a punitive damages award, "[s]ingle-digit multipliers are more likely to comport with due process."). The maximum award of $150,000 per infringement for a willful violation incorporates the $30,000 amount that comprises a maximum award for a non-willful infringement. *See* 17 U.S.C. § 504(c)(2).

suggestion that notice is not part of the *Gore* framework, *see* Def.'s Mem. at 9-10, the Supreme

Court used the guideposts in *Gore* to find that BMW "did not receive adequate notice of the

magnitude of the sanction." *Gore*, 517 U.S. at 574.   *Id.*  The Supreme Court explained that such

notice is necessary because "[e]lementary notions of fairness enshrined in our constitutional

jurisprudence dictate that a person receive fair notice not only of the conduct that will subject

him to punishment, but also of the severity of the penalty."  *Id.*  Conversely, a statutory damages

provision gives the public notice of a specific range of damages to which one may be subject.

In trying to apply the *Gore* framework that examines the disparity between the actual or

potential damages suffered by the plaintiff and the punitive damages award, *see Campbell*, 538

U.S. at 418, defendant ignores the fact that statutory damages are in lieu of actual damages.

Statutory damages compensate those wronged in areas in which actual damages are hard to

quantify in addition to providing deterrence to those inclined to commit a public wrong.  *See,*

*e.g., Texas v. American Blastfax, Inc.*, 121 F.Supp.2d at 1090 (the Telephone Consumer

Protection Act "was meant to '*take into account the difficult to quantify business interruption*

*costs* imposed upon recipients of unsolicited fax advertisements, effectively deter the

unscrupulous practice of shifting these costs to unwitting recipients of junk faxes, and provide

adequate incentive for an individual plaintiff to bring suit on his own behalf.'") (quoting *Kenro,*

*Inc. v. Fax Daily, Inc.*, 1162, 1167 (S.D. Ind. 1997) (emphasis added) (internal quotation marks

omitted).  The compensatory and deterrent focus of a statutory damages award reveals why the

*Gore* framework for examining a ratio between actual damages and punitive damages does not

fit in a statutory damages context.

Another indication that the Supreme Court did not intend for the *Gore* guideposts to

apply to the statutory damages context is that the *Gore* guideposts specifically compare a punitive damages award to civil penalties available for comparable conduct. *See Campbell*, 538 U.S. at 418. Applying this guidepost is a tautology; the award is by definition within the statutory range set by Congress. Hence, the damages range authorized in comparable cases will be the same for all actions that fall under a particular statutory damages provision.

Given that the *Gore* guideposts do not pertain to statutory damages provisions and such provisions are distinct from punitive damages, this Court should not apply those guideposts in this case. Rather, the standard articulated by the Supreme Court in *Williams* is the appropriate standard for determining the constitutionality of a statutory damages provision.

## III.    Applying the *Williams* Standard

Applying the standard articulated by the Supreme Court in *Williams*, the Copyright Act's statutory damages provision is not "so severe and oppressive as to be wholly disproportioned to the offense or obviously unreasonable." *Williams*, 251 at 67. The standard in *Williams* is extremely deferential and need not be an objective ratio test. *See Zomba*, 491 F.3d at 587 (describing the *Williams* standard as being "extraordinarily deferential - even more so than in cases applying abuse-of-discretion review") (citing *Douglas v. Cunningham*, 294 U.S. 207, 210 (1935) ("employment of the statutory yardstick, within set limits, is committed solely to the court which hears the case, and this fact takes the matter out of the ordinary rule with respect to abuse of discretion").[6]

---

[6] The Sixth Circuit in *Zomba* did use an objective test and found that the ratio of 44-1 of statutory damages to actual damages present in that case did not violate due process given that the ratio in *Williams* was 113-1. *See Zomba*, 491 F.3d at 588 . However, the Supreme Court in *Williams* never discussed the ratio between the statutory damages awarded and the actual damages suffered by plaintiffs.

Dating back to the middle of the 17th century, "the common law recognized an author's right to prevent the unauthorized publication of his manuscript" because of the "principle that the manuscript was the product of intellectual labor and was as much the author's property as the material on which it was written." *See Feltner*, 523 U.S. at 349. From the first Congress, federal lawmakers recognized that need to provide for these protections and enacted a federal statutory damages provision for copyright infringements in 1790. *See* Copyright Act of 1790, 1 Stat. 124 (1790). Statutory damages for copyright infringements have existed in the Federal Copyright Act in some form since 1790 and the Court should defer to Congress's historical application of these provisions. *See* Staff of House Comm. On The Judiciary, 87th Cong., Report of the Register of Copyrights on The General Revision of The U.S. Copyright Law 103 (Comm. Print 1961), at ix (tracing a federal copyright statute from 1790 to its three general revisions in 1831, 1870, and 1909).[7]

Under the current statute, Congress established a carefully crafted legislative regime that allows for a factfinder to determine a just award within a specific range.[8] *See* 17 U.S.C. § 504(c). In a 1952 case analyzing a previous copyright statute that also contained a statutory range, the Supreme Court found it was just for a copyright infringer to be subject to statutory damages of $5,000 even though defendant admitted to only $900 in gross profits. *See F.W. Woolworth Co. v. Contemporary Arts, Inc.*, 344 U.S. at 232. The Supreme Court held that "the court's conception of what is just in the particular case, considering the nature of the copyright, the

---

[7] This report, written in 1961, predates the revision of 1976.

[8] The statute refers to what "the court considers just" but the Supreme Court has held that a jury is to determine a damages award under the Copyright Act. *See Feltner*, 523 U.S. 340.

circumstances of the infringement and the like, is made the measure of the damages to be paid, but with the express qualification that in every case the assessment must be within the prescribed limitations, that is to say, neither more than the maximum nor less the minimum. *Within these limitations the court's discretion and sense of justice is controlling.*" *Id. (*emphasis added) (citation omitted).[9]  Accordingly, an award within the limitations outlined by the Copyright Act's statutory damages provision is just and does not violate notions of due process.

The notice concerns expressed in *Gore* are greatly diminished in this case not only because defendant "testified that she had studied the *Napster* case in college and was *specifically aware that copying and sharing copyrighted music files over the Internet is illegal,*"*see* Pl.'s Mem. at 6 (emphasis added), but also because Congress carefully crafted a statute with a specific range of damages.  As defendant admits, Congress created the range for statutory damages in the Copyright Act in consideration of deterrent and compensatory needs.  *See* Def.'s Mem. at 5-6 n.6 (citing Staff of House Comm. On The Judiciary, 87th Cong., Report of the Register of Copyrights on The General Revision of The U.S. Copyright Law 103 (Comm. Print 1961), *reprinted in* 3 Omnibus Copyright Revision Legislative History (George S. Grossman ed., 1976)).

Congress explicitly stated the goal of the increase in the 1999 Amendments was in part to

---

[9] In copyright infringement cases, courts have found that a jury has properly exercised its discretion even when awarding the statutory damages for multiple violations or awarding the maximum amount allowed by the statute.  *See, e.g., Columbia Pictures Television, Inc. v. Krypton Broadcasting of Birmingham, Inc.*, 259 F.3d 1186, 1194-95 (9th Cir. 2001) (finding that an award of $31.68 million for 440 infringements to not be an excessive verdict as it was within the statutory range); *Superior Form Builders v. Dan Chase Taxidermy Supply Co.*, 74 F.3d 488, 496 (4th Cir. 1996) (jury within its right to award maximum amount).

serve a deterrent effect because "[i]t is important that the cost of infringement substantially

exceed the costs of compliance, so that persons who use or distribute intellectual property have a

strong incentive to abide by the copyright laws."  *See* H.R. Rep. 106-216 at *6.[10]  Congress

determined that this deterrence is necessary because it found in 1999 that the rate of software

piracy equaled 25% of all sales and resulted in a loss of $2.9 billion.  *Id*. at *3.  As explained

above, Congress wanted to put infringers on notice that they may be subject to such fines.  *See*

*id*. ("[m]any computer users are either ignorant that copyright laws apply to Internet activity, or

they simply believe that they will not be caught or prosecuted for their conduct").  Congress

maintained that "[c]opyrighted works are some of the United States' most valuable products."

*Id*. at *6.  Given this expressed desire by Congress to increase the deterrent effect to protect

these valuable copyrights, and accompanying Congressional findings, the Copyright Act's

statutory damages provision is not disproportionate to the offense or obviously unreasonable.[11]

As explained above, statutory damages also serves a compensatory role.  The 1999

adjustment upward of the statutory range from the 1988 Amendments "*reflect inflation* over the

---

[10] As explained above, defendant recognizes the important deterrent element to Copyright Act's statutory damages provision but mischaracterizes it as a "punitive purpose."  *See* Def.'s Mem. at 6 (quoting *Cass County Music Co. v. C.H.L.R., Inc.*, 88 F.3d 635, 643 (8th Cir. 1996) ("[S]tatutory damages for copyright infringement are not only restitution of profit and reparation for injury,' but also are in the nature of a penalty, '*designed to discourage wrongful conduct*.'") *(*quoting *F.W. Woolworth Co. v. Contemporary Arts, Inc.*, 344 U.S. 228, 233 (1952)) (emphasis added).

[11] Making a "practice prohibitively expensive [] is an acceptable means of accomplishing [a] statute's goal of deterrence."  *Phillips Randolph Enterprises, LLC v. Rice Fields*, 2007 WL 129052 at *3 (N.D. Ill. 2007)  The "Due Process clause of the 5th Amendment does not impose upon Congress an obligation to make illegal behavior affordable, particularly for multiple violations."  *Id*.

past eleven years and to otherwise preserve the deterrent effect of the statutory damage penalties." *See* H.R. Rep. 106-216 (emphasis added).  Furthermore, actual damages are hard to calculate for copyright infringements and Congress set up a system to allow a copyright owner to elect to receive statutory damages in place of actual damages.  *See Legg Mason*, 302 F. Supp.2d at 460 ("[s]tatutory damages exist in part because of the difficulties in proving and providing compensation for actual harm in copyright infringements") (citing *F.W. Woolworth Co. v. Contemporary Arts, Inc.*, 344 U.S. at 233 ("statutory damages are intended to allow 'owner of a copyright some recompense for injury done to him, in a case where the rules of law render difficult or impossible proof of damages or discovery of profits'")).  Given this difficulty in calculating the actual damages, Congress allowed plaintiffs to elect to receive statutory damages instead of proving actual damages.  *See* 17 U.S.C. § 504(a).

Although defendant claims that plaintiffs' damages are 70 cents per infringing copy, it is unknown how many other users - "potentially millions" - committed subsequent acts of infringement with the illegal copies of works that the defendant infringed.  *See* Pl.'s Mem. at 5. Accordingly, it is impossible to calculate the damages caused by a single infringement, particularly for infringement that occurs over the internet.  Furthermore, plaintiffs contend that their witnesses "testified to the substantial harm caused by the massive distribution of their copyrighted sound recordings over the Internet, including lost revenues, layoffs, and a diminished capability to identify and promote new talent." *Id*. at 5-6.[12]

---

[12] Defendant's suggestion of restricting the application of statutory damages to corporate defendants, *see* Def.'s Reply at 8-9, is without support.  Civil copyright infringement is strict liability, regardless of the nature of the defendant.  *See* 17 U.S.C. § 501.  Statutory damages are fully available upon election by any prevailing plaintiff, subject only to the requirement of timely registration of the infringed work by the

These incalculable harms are among the reasons Congress established a regime that allowed for a specific range of damages.  As the Copyright Office stated in a report to Congress in 1961, a copyright is a form of property that is "intangible and incorporeal."  *See* Staff of House Comm. On The Judiciary, 87th Cong., Report of the Register of Copyrights on The General Revision of The U.S. Copyright Law 103 (Comm. Print 1961), at 3.  The Copyright Office explained that the need for a special remedy of statutory damages "arises from the acknowledged inadequacy of actual damages and profits in many cases:

- The value of a copyright is, by its nature, difficult to establish, and the loss caused by an infringement is equally hard to determine.  As a result, actual damages are often conjectural, and may be impossible or prohibitively expensive to prove.

- In many cases, especially those involving public performances, the only direct loss that could be proven is the amount of a licence fee.  An award of such an amount would be an invitation to infringe with no risk of loss to the infringer.

- The actual damages capable of proof are often less than the cost to the copyright owner of detecting and investigating infringements.

- An award of the infringer's profits would often be equally inadequate.  There may have been little or no profit, or it may be impossible to compute the amount of profits attributable to the infringement.  Frequently the infringer's profits will not be an adequate measure of the injury caused to the copyright owner."

*Id*.

This case demonstrates the existence of all four points raised by the Copyright Office's 1961 Report to Congress.  First, the actual damages for subsequent acts of infringement - that occur after an initial infringement- are impossible to calculate.  Second, defendant even admits that her preferred damages amount of 70 cents per infringement consists of defendant's estimate of the amount paid "by the record label" for a "consumer license" to make the recordings

--------

Copyright Office.  *See* 17 U.S.C. §§ 412, 504(c).

"obtainable to the public."  *See* Def.'s Mem. at 2 n.1.  Besides the fact that such a small award

would encourage others to willfully violate the law and steal "some of the United States' most

valuable products," *see* H.R. Rep. 106-216 at *6, it is also an inadequate calculation of the

damages suffered by the plaintiffs if defendant's act of infringement led to further acts of

infringement by millions of others.  Third, as Congress maintained in its 1999 amendments to the

Copyright Act, "copyright piracy of intellectual property flourishes, assisted in large part by

today's world of advanced technologies." *Id*.  Given the widespread piracy in today's world, it

is costly for copyright owners to detect and investigate infringements.  Fourth, the loss to the

public and to the copyright owner will often be greater than any estimate of an infringer's

profits.  With software piracy rates at 25% of all sales and $2.9 billion of losses, the 1999 House

Report stated that the "effect of this high volume of theft is substantial: lost U.S. jobs, lost

wages, lower tax revenue, and higher prices for honest purchasers of copyrighted software." *Id*.

at *3.  The dollar amounts do not even take into account the intangible losses to which plaintiffs'

claim their witnesses testified, such as a "diminished capability to identify and promote new

talent."  Pl.'s Mem. at 5-6.

Given the historical need to protect intellectual property and deter a public wrong from

being committed, Congress has created a detailed statute that takes into account the difficulty of

calculating actual damages.  In fact, that issue is not just confined to the United States but is

evident in United States' international agreements that require countries to have in place

statutory damages to protect copyrights.  *See*, *e.g.,* Singapore-US Free Trade Agreement, Art.

16.9.9 ("[i]n civil judicial proceedings, each Party shall, at least with respect to works,

phonograms and performances protected by copyright or related rights, and in cases of trademark

counterfeiting, establish or maintain pre-established damages that shall be available on the election of the right holder. Each Party shall provide that pre-established damages shall be in an amount sufficiently high to constitute a deterrent to future infringements and with the intent to compensate the right holder for the harm caused by the infringement."); *see also* Morocco-US Free Trade Agreement, Art. 15.11.7; Central America-US Free Trade Agreement, Art. 15.11.8.

Copyrights are of great value, not just to their owners, but to the American public as well. Congress has recognized this value from the first days of the Republic.  The federal copyright statute, enacted by the First Congress and the subject of numerous revisions since that time, has consistently included special provisions to ensure significant monetary awards in copyright infringement suits that will make copyright owners whole and deter further infringement.  Most recently, Congress has crafted a statute that serves as a deterrent to those infringing parties who think they will go undetected in committing this great public wrong, as well as providing compensation to copyright owners who have to invest resources into protecting property that is often unquantifiable.  Accordingly, given the findings of copyright infringement in this case, the damages awarded under the Copyright Act's statutory damages provision did not violate the Due Process Clause; they were not "so severe and oppressive as to be wholly disproportioned to the offense or obviously unreasonable."  *Williams*, 251 at 67.

## CONCLUSION

The United States respectfully requests that should this Court decide to address the

constitutionality of 17 U.S.C. § 504(c), it should find that the statutory damages provision of the

Copyright Act satisfies the Due Process Clause.


Dated: December 3, 2007                    Respectfully submitted,

                                           JEFFREY S. BUCHOLTZ
                                           Acting Assistant Attorney General

                                           RACHEL K. PAULOSE
                                           United States Attorney

                                            /s/ *Greg Brooker*
                                           GREG BROOKER
                                           Assistant United States Attorney

                                           THEODORE C. HIRT
                                           Assistant Branch Director

                                            /s/ *Adam D. Kirschner*
                                           ADAM D. KIRSCHNER
                                           IL Bar No. 6286601
                                           Trial Attorney
                                           Civil Division, Federal Programs Branch
                                           United States Department of Justice
                                           20 Massachusetts Ave., N.W., Room 7126
                                           P.O. Box 883
                                           Washington, D.C. 20044
                                           Tel.: (202) 353-9265
                                           Fax: (202) 616-8470
                                           Email: adam.kirschner@usdoj.gov

                                           Attorneys for the United States of America