# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

CAPITOL RECORDS INC.,  )
a Delaware corporation, *et al.*, )
)
      Plaintiffs, )
) Case No. 06-1497 (MJD/RLE)
v. )
)
JAMMIE THOMAS, )
)
      Defendant. )
)

## PLAINTIFFS' REPLY BRIEF PURSUANT TO MAY 15, 2008 ORDER

Timothy M. Reynolds (pro hac vice)
David A. Tonini (pro hac vice)
Andrew B. Mohraz (pro hac vice)
HOLME ROBERTS & OWEN LLP
1700 Lincoln, Suite 4100
Denver, Colorado 80203
Telephone: (303) 861-7000
Facsimile: (303) 866-0200

Felicia J. Boyd (No. 186168)
Leita Walker (No. 387095)
FAEGRE & BENSON LLP
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, Minnesota 55402-3901
Telephone: (612) 766-7000
Facsimile: (612) 766-1600

ATTORNEYS FOR PLAINTIFFS

#1345909 v1

Nothing in the briefs submitted by Defendant Thomas, the Electronic Frontier Foundation (EFF), and other *amici* justifies voiding the jury's considered verdict and retrying this case.

First, even if there were any doubt about the meaning of the term "distribute" in Section 106 of the Copyright Act (and there is none), the verdict should be upheld based on the jury's finding that Defendant willfully infringed Plaintiffs' exclusive right to reproduce copies of their works – as well as the uncontradicted evidence that Defendant did in fact transfer copies of Plaintiffs' works, establishing distribution even under an unduly narrow reading of that term.

Second, Defendant and her *amici* have failed to show that there was anything wrong with Instruction 15. As Plaintiffs' brief demonstrated, a defendant violates a copyright owner's exclusive right to "distribute" by making copies available for physical transfer without authorization, whether or not the physical transfer is consummated in any particular instance. That is the plain meaning of "distribute," as the Supreme Court held in *New York Times Co. v. Tasini*, 533 U.S. 483, 498 (2001), and as the overwhelming weight of authority in the courts of appeals and district courts has held for decades. It is also clear from the statutory context and legislative history. And in all events Defendant indisputably intruded upon Plaintiffs' exclusive right to "authorize" distribution. In response, Defendant and her *amici* are forced to resort to tortured misreadings of the statutory text, self-contradictory statements about the relevance of legislative history, and exaggerated claims about dicta from a smattering of inapposite or erroneous district court decisions.

For the reasons stated herein and in Plaintiffs' opening brief, this Court should reject Defendant's effort to rewrite the copyright laws in a manner that Congress never intended and that would defy sound policy and common sense.

## I. THE JURY VERDICT SHOULD BE UPHELD EVEN IF THE COURT HAS DOUBTS ABOUT INSTRUCTION 15.

Plaintiffs' opening brief shows that even if Instruction 15 were incorrect, the verdict should be upheld. Pls. Br. 3-7. This is plainly not a case in which it is "impossible to know" whether the jury would have found Defendant liable for infringement absent Instruction 15, *see* Def. Br. 6, as the evidence showed that Defendant willfully infringed Plaintiffs' exclusive right to reproduce their works. Even Defendants' *amici* concede that evidence established an infringement, *see* Law Professors Br. 8 ("a person who makes an unauthorized copy or phonorecord of a copyrighted work, for purposes of uploading it onto a peer-to-peer network, violates the reproduction right"); EFF Br. 17, and Instruction 15 has no bearing on Plaintiffs' indisputably valid reproduction claim. There is thus no basis for finding that even an erroneous instruction misled the jury or prejudiced the defendant, as the result would have been the same either way. *See Slidell, Inc. v. Millennium Inorganic Chems., Inc.*, 460 F.3d 1047, 1054 (8th Cir. 2006) (looking for "probable effect on the jury's verdict").

Moreover, Defendant fails to deal with the fact that she was distributing Plaintiffs' works even under a reading of "distribute" that requires actual transfers. Uncontradicted trial evidence established complete transfers of seven copyrighted works and partial transfers of the remaining works. *See* Pls. Br. 5-7 & n.2. That establishes a violation of

the distribution right even under Defendant's incorrect interpretation. Notwithstanding Defendant's and EFF's desultory argument that transfers to MediaSentry do not count because MediaSentry was an "authorized agent," the Eighth Circuit has held (in the very cases EFF cites) that a copyright owner's authorization of an investigator to *pursue infringement* does not "authorize the investigator to *validate [the third party's] unlawful conduct*." *Olan Mills, Inc. v. Linn Photo Co.*, 23 F.3d 1345, 1348 (8th Cir. 1994) (emphasis added); *accord RCA/Ariola Int'l, Inc. v. Thomas & Grayston Co.*, 845 F.2d 773, 777, 782 (8th Cir. 1988) (holding retailer liable for reproducing copyrighted works at request of an authorized agent); Pls. Br. 5 n.1 (collecting cases).[1]

Indeed, even if one accepted *amici*'s erroneous assertion that the law requires a defendant's "active" involvement in making distributions, IPI Br. 14-15, Thomas is liable because she took the "active" steps of willfully reproducing copyrighted works without authorization, and affirmatively choosing to place them in a shared folder, thereby making them available to anyone who wanted them on computer network dedicated to the illegal distribution of copyrighted works. Defendant's activities are no less active than those of the storeowner who puts copyrighted videos on his shelves and waits for customers to come rent them. She has infringed Plaintiffs' exclusive right to distribute even under her erroneous interpretation of the term.

---

[1] EFF's citation of *Resnick v. Copyright Clearance Center*, 422 F. Supp. 2d 252 (D. Mass. 2006), is inapposite. The plaintiffs there were seeking to establish direct infringement *by their authorized investigator*, *see id.* at 258 – not, as here, distribution *to* their authorized investigator.

4

## II. THE COPYRIGHT ACT DEFINES UNLAWFUL DISTRIBUTION TO INCLUDE MAKING DIGITAL FILES AVAILABLE FOR COPYING BY OTHERS.

### A. The Right To "Distribute" Encompasses Making Works Available for Copying by Others.

#### 1. The Plain Meaning of "Distribute" in Section 106 Encompasses the Exclusive Right To "Make Available."

As Plaintiffs showed in their opening brief, every relevant indicator of statutory meaning – the text, the statutory context, the legislative history, the considered views of the Register of Copyrights, binding Supreme Court precedent, the overwhelming weight of decades of lower court authority, and sound policy – supports the conclusion that a copyright owner's Section 106(3) exclusive right to "distribute" is violated when a defendant makes copyrighted works available for others to copy without authorization. *See* Pls. Br. 8-15.

Defendant Thomas and her *amici* can only respond with tortured statutory exegesis and selective quotations from a few, outlying district court decisions. For example, EFF purports to find support in the fact that Congress delineated statutory rights carefully, and protected only "the distribution of *certain things* ('copies or phonorecords'), to *certain people* ('the public'), in *certain ways* ('by sale or other transfer of ownership, or by rental, lease, or lending')." EFF Br. 6; Prof. Br. 3-4. That argument is correct but irrelevant. There is no dispute here that the "things" Defendant Thomas was making available were "copies or phonorecords." Likewise there is no dispute that they were being made available "to the public" when put in her shared folder and thus available for millions of KaZaA users to copy without authorization from Plaintiffs. And

there is no dispute that her conduct would result in the transfer of a physical copy to a user who did not previously have one.

The relevant question is whether Defendant's actions invade Plaintiffs' right to "distribute" even absent a complete transfer. That, of course, depends on the meaning of the word distribute. And on that issue, the principal arguments Defendant and her *amici* advance are nonsensical. They concede that "distribute" is not specifically defined in the Copyright Act to require a completed transfer. They also concede that in other statutes Congress routinely defines "distribute" or "distribution" broadly to include making something available even in the absence of a completed transfer. Yet they reach the incongruous conclusion that Congress's decision not to define "distribute" in the Copyright Act is evidence of its intent to impose a narrower meaning in Section 106 than it does elsewhere in the U.S. Code. EFF Br. 6 (pointing to 17 U.S.C. § 901(a)(4)'s definition of "distribute" to include offers to distribute). But the law is precisely the opposite. "[W]here a word is given a consistent meaning throughout the United States Code, then the courts assume it has that same meaning in any particular instance of that word." *Firstar Bank, N.A. v. Faul*, 253 F.3d 982, 990 (7th Cir. 2001). *See also* Pls. Br. 11 n.3 (collecting statutes in which Congress defines "distribute" to encompass making available or offers to distribute). Because the term regularly encompasses making something available, it is most naturally read as meaning the same thing in Section 106 of

6

#1345909 v1

the Copyright Act. *United States v. Shaffer*, 472 F.3d 1219, 1223 (10th Cir. 2007) (reviewing dictionary definitions).[2]

EFF and IPI then assert that the Ninth Circuit's recent decision in *Perfect 10 v. Amazon.com*, 508 F.3d 1146, 1162-63 (9th Cir. 2007), supports their reading of Section 106(3). EFF Br. 7; IPI Br. 12. The opposite is true. In *Perfect 10*, the alleged distributor – Google – did not actually make available for copying any files stored on its own servers or website; rather, Google merely made available *links* to websites on which others offered the files. *See Perfect 10*, 508 F.3d at 1162. Looking back at its decision in *A&M Records, Inc. v. Napster*, 239 F.3d 1004, 1014 (9th Cir. 2001) ("Napster users who upload file names to the search index for others to copy violate plaintiffs' distribution rights."), the *Perfect 10* court repeated the "deemed distribution" rule, under which one who uses file-sharing software to make his or her music collection available to others violates the copyright owners' right of distribution, *see Perfect 10*, 508 F.3d at 1162 ("the distribution rights of the plaintiff copyright owners [in the *Napster* case] were infringed by Napster *users* (private individuals with collections of music files stored on their home computers) when they used the Napster software to make their collections available to all other Napster users"). The *Perfect 10* court then merely rejected liability for Google because '[u]nlike the participants in the Napster system … Google does not own a

---

[2] Thus it is clear that a person "distributes" a maskwork (for the reproduction of semiconductors) when he or she offers to transfer it, 17 U.S.C. § 901(a)(4), a person is a "distributor" when he or she places books on a shelf to be accessed by members of the public, *Moodie v. School Book Fairs, Inc.*, 889 F.2d 739, 743-44 (7th Cir. 1989), and a person who makes photographic images available for copying in a KaZaA shared folder "distributes" child pornography for purposes of the criminal law. *Shaffer*, 472 F.3d at 1223-24.

7

collection of Perfect 10's full-size images and does not communicate these images" to others. *Id.* In other words, defendants who actually make files available are liable; those who simply offer lists of files may not be. Thus, *Perfect 10* strongly supports Plaintiffs in this case – and the description of it advanced by Defendants' *amici* is, to put it charitably, misleading.[3]

In the end, Defendant can point only to a stray sentence in *National Car Rental System, Inc. v. Computer Associates International, Inc.*, 991 F.2d 426 (8th Cir. 1993). But neither Defendant nor her *amici* have any explanation for why the Eighth Circuit, in a case that has nothing to do with anyone making anything available, would have reached out to address the question here. Nor do they acknowledge that, read in context, the sentence that they cite was discussing not *what it means to distribute* (making available or not), but *what must be distributed* (copies or "functionality"). *See* Pls. Br. 22-24. If there were more to Defendant's and *amici*'s position, presumably they would be able to make sense of this case, or rely on something other than a single sentence, stripped of context. But just as they make no effort to reconcile their position with *New York Times Co. v. Tasini*, 533 U.S. 483, 498 (2001), in which the Court found it "clear" that online publishers had "distribute[d] copies" by making articles available online, regardless of

---

[3] The First Circuit's decision in *Latin American Music Co., Inc. v. Archdiocese of San Juan of the Roman Catholic & Apostolic Church*, 499 F.3d 32, 46-47 (1st Cir. 2007) provides little support to Defendant. In that case, the Court actually remanded for consideration of whether Defendant's conduct of making works available violated the Copyright Act.

8

whether subscribers actually downloaded them, *see* Pls. Br. 8-9, they never even try to explain what the *National Car Rental* court was doing.[4]

Defendant's conduct here was not a "mere" expression of a willingness to commit infringement,[5] but was the taking of every step necessary to allow massive dissemination of Plaintiffs' copyrighted works without authorization via a system (KaZaA) designed to facilitate such unlawful dissemination on the widest scale possible while erasing all traces of the other people involved in the illegal trade. Under any reasonable definition of "distribution" – and certainly under the definitions Congress uses elsewhere – Defendant here engaged in widespread and willful acts of distribution.

> **2. The Statutory Context and Legislative History Confirm that the Right To "Distribute" Encompasses "Making Available."**

Plaintiffs' opening brief demonstrated that the Copyright Act's legislative history confirms that the right to "distribute" encompasses the exclusive right to make works available for copying by others. Specifically, Congress intended "distribute" to have the

---

[4] *Amici* also far overstate the support they can draw from academic treatises. *See* Pls. Br. 23 n.9 (noting Nimmer's support for making-available right). And Professor Goldstein's treatise reaches its contrary conclusion based only on a 1957 decision under a previous version of the statute, *see* Pls. Br. 19 (citing *Greenbie v. Noble*, 151 F. Supp. 45, 64 (S.D.N.Y. 1957)), and a S.D.N.Y. decision distinguishable on its facts, *see infra* note 5. *See* Paul Goldstein, 2 *Goldstein on Copyright* § 7.5.1 & n.15. Mr. Patry's antipathy for the making-available right is well known and may derive from his role as Senior Copyright Counsel to Google, which has litigated this issue against copyright owners.

[5] The cases cited by *amici* for their "plain language argument," *see, e.g.,* IPI Br. 12, are wholly unpersuasive. In one, the defendant was not liable for an unauthorized offer of sale because as soon as the offer became unauthorized, it advised potential customers that the catalog was no longer accurate, *see Obolensky v. G.P Putnam & Sons,* 628 F. Supp. 1552, 1554, 1555 (S.D.N.Y. 1986), others simply do not support *amici*'s claims, *see Agee v. Paramount Communications, Inc.*, 59 F.3d 317, 325 (2d Cir. 1995) (noting that, in the context of distributions, posting on a computer bulletin board is sufficient for infringement), and still others have been superseded by cases clearly holding that Defendant's conduct in this case is copyright infringement, *see* IPI Br. 12 (citing old 9th Circuit cases).

9

same meaning as another statutory term, "publication," which is expressly defined in the Act to encompass "making available." *See* Pls. Br. 12-15. Congress has used the terms interchangeably for decades, and has noted that Section 106(3) simply "restated" the definition of publication – which on its face encompasses "offering to distribute copies." H. Comm. on the Judiciary, 89th Cong., Supplementary Report of the Register of Copyright Law: 1965 Revision Bill (Comm. Print May 1965); 17 U.S.C. § 101; Pls. Br. 14-15.

Defendant and her *amici* insist that "distribution" and "publication" must have different meanings, even though the Supreme Court and other courts have found the terms synonymous. *See Harper & Row Publs., Inc. v. Nation Enters.*, 471 U.S. 539, 552 (1985); *Agee v. Paramount Comm'ns, Inc.*, 59 F.3d 317, 325 (2d Cir. 1995); *Ford Motor Co. v. Summit Motor Prods., Inc.*, 930 F.2d 277, 299 (3d Cir. 1991). To do so, however, *amici* are forced to assume the conclusion they set out to prove. Relying on the erroneous *London-Sire Records, Inc. v. Doe I*, No. 04-CV-12434, 542 F. Supp. 2d 153 (D. Mass. Mar. 31, 2008), *amici* argue that "'[b]y the plain meaning of the statute,' all distributions are publications, but not all publications are distributions." EFF Br. 9 (quoting *London-Sire*). They go on to quote *London-Sire*'s musing about acts that constitute publications or distributions. But this interpretation – which divorces publications from distributions – ignores the legislative history that equates the two terms. EFF and *London-Sire* reach their conclusion only by beginning from the premise that a distribution requires a transfer, and then offering examples of acts that are publications but not distributions under the definition they posit. *See, e.g.*, *London-Sire*,

10

542 F. Supp. 2d at 169 (concluding that distribution must not encompass publication, *because* "offers to sell" without transfer are "not a distribution"). Nowhere do *amici* or the *London-Sire* court cite any basis for their conclusion that publications and distributions must be different. And where Congress has made so clear that it equated the undefined term with the defined one, this Court ought not repeat that mistake. *See Toro Co. v. R&R Prods. Co.*, 787 F.2d 1208, 1211-12 (8th Cir. 1986) (using legislative history to interpret undefined term in Copyright Act); Pls. Br. 24-25. An act that qualifies as a publication – like an offer to distribute – qualifies as a distribution.

### B. Defendant Violated the Owner's Exclusive Right to "Authorize" Distribution.

Even if there were any doubt about the meaning of "distribute" in Section 106(3), the Copyright Act also makes clear that a defendant who "authorize[s]" another to distribute copyrighted works without authorization is equally an infringer. By placing Plaintiffs' copyrighted sound recordings in her shared folder, Defendant has indisputably "authorized" the distribution of those sound recordings in violation of the Copyright Act. Pls. Br. 15-17.

In responding to this argument, Defendant and her *amici* insist that this Court should ignore the term's plain meaning and look instead to legislative history, flatly contradicting their argument that the Court should ignore the legislative history equating "distribution" and "publication" and should instead rely solely on their interpretation of "distribute." This self-serving argument fails for numerous reasons. Most basically, if Congress intended for "authorize" to cover only secondary liability, and not other forms

11

of authorization, it could have used other, less expansive words. *See United States v. Clark*, 646 F.2d 1259, 1263-64 (8th Cir. 1981) (refusing to use narrowing interpretation of expansive term, because Congress could have used narrower language had it intended to). EFF's argument seems to be that because a committee report identified one activity encompassed by the term "authorize," the statute must exclude other concepts covered by that term. While the principle of *expressio unius* may be a useful guide for interpreting an enumerated list in a statute, the Supreme Court has specifically refused to apply it to legislative history. *See Standefer v. United States*, 447 U.S. 10, 20 n.12 (1980). EFF's misuse of legislative history cannot obscure the word that Congress used: By placing copyrighted works in her shared folder, Defendant enabled and permitted – authorized – their distribution.

## III. REJECTING THE MAKING-AVAILABLE RIGHT WOULD BRING THE UNITED STATES INTO CONFLICT WITH ITS INTERNATIONAL OBLIGATIONS.

Defendant says little about the World Intellectual Property Organization's ("WIPO") Copyright Treaty and its Performances and Phonograms Treaty, ignoring these treaties because they require the United States to protect "the making available to the public of [copyright owners'] works," WIPO Copyright Treaty, art. 8; WPPT Treaty, art. 10, and both Congress and the Executive have concluded that the Copyright Act satisfies that requirement. *See* Pls. Br. 26-28; PFF Br. Defendant and her *amici* raise three points, none of which warrant breaking with the co-equal branches and bringing the United States into conflict with its obligations.

12

First, EFF states that the treaties are not self-executing. But that is beside the point. The treaties are relevant not because the making-available right in U.S. law *derives* from them; to the contrary, the making-available right is firmly rooted in Section 106(3). The WIPO treaties are relevant because in the course of determining whether existing law satisfied the treaties' requirements, Congress, the President, and other Executive agencies concluded that the Copyright Act does protect the making-available right. Pls. Br. 26-27.

Second, EFF contends that the WIPO treaties require only that the United States protect the making-available rights of *foreign* copyright owners. EFF Br. 13 n.6. But assuming the United States is still complying with its obligation, as the President and Congress have concluded, *see* Pls. Br. 26-28, then the EFF would have Section 106(3) grant one set of rights to foreign copyright owners – encompassing the exclusive right of making available – and a far narrower set of rights to domestic copyright owners, *without making any such distinction in the statute.* That argument is implausible on its face.

Finally, EFF claims that the United States complies with the WIPO treaties, but without actually providing the making-available right reflected in Instruction 15. According to EFF, the rights of reproduction, public performance, and secondary liability doctrines, "taken together, satisfy the WIPO treaty requirements." EFF Br. 13 n.6. This off-hand argument ignores the WIPO treaties themselves, which specifically require protection of a making-available right that encompasses the making-available of works "in such a way that members of the public may access these works from a place and at a time individually chosen by them." Nothing in them limits the protection to

13

infringements that involve an actual reproduction or public performance; EFF's attempt to distort the treaties into creating a more limited "making available" right is no less inconsistent with the United States' obligations than EFF's argument that the making available right does not exist at all.

If EFF is right, then U.S. law fails to meet WIPO standards, the President and Congress were wrong, and the United States is breaching its international obligations. Were there any doubt about the statute's meaning, it ought not be resolved to create the problems EFF proposes.

## IV. DEFENDANT'S AND HER *AMICI'S* POLICY ARGUMENTS ARE NOT PERSUASIVE.

There is no merit to Defendant's suggestion that judicial restraint compels the Court to reverse course with respect to Instruction 15. This Court would not be engaging in any policymaking by upholding Instruction 15. To the contrary, this Court would be following the law as it exists today. It is Defendant and her *amici* who invite inappropriate judicial policymaking.

First, as demonstrated above, both the Executive Branch and the Legislative Branch have concluded that a defendant violates a copyright owner's right to "distribute" by making works available for copying by others without authorization on systems such as KaZaA. It is Defendant and *amici* here who seek to overturn the considered judgments of the branches charged with making copyright policy.

Second, Defendant and her *amici* can muster no plausible policy rationale for the outcome they advocate. There is no reason why the law should allow a defendant to

14

knowingly and intentionally make Plaintiffs' property available to anyone who wants to steal it on a computer network specifically designed to facilitate such theft, without leaving a record. If policy is to play a role at all – and it is unnecessary because the language plainly supports the Court's interpretation in Instruction 15 – it amply supports Plaintiffs' argument.

Third, the suggestion that Plaintiffs have ample other remedies for the massive infringement of their rights by Defendant and other KaZaA users either 1) is the reason why the Court need not wade into issues about the scope of the distribution right because the jury verdict is fully supported by the Defendant's undisputed violation of Plaintiffs' right to control reproduction rights or 2) is simply a distortion. Defendant and its *amici* are throwing every obstacle they can in the path of Plaintiffs' enforcement efforts, safe in the knowledge that it is incredibly difficult to catch users downloading works that are made available over networks like KaZaA.[6] *Amici* are well aware that their view of the law would cripple enforcement of what all concede are widespread and massive violations of Plaintiffs' rights. That cannot possibly be -- and is not -- what Congress intended.

## CONCLUSION

The motion for a new trial should be DENIED.

---

[6] *Amici* EFF's suggestion that Plaintiffs simply want to avoid their burden of proof is both wrong and ironic, given that *amicus* EFF itself is the entity that has counseled the makers of peer-to-peer networks to ensure that they have "plausible deniability" that neither they nor their users can "know" what anyone is doing on their network – precisely so that they can make the claim that they are not responsible for any of it. Fred von Lohmann, *IAAL: Peer-to-Peer File Sharing and Copyright Law After Napster* (2001).

15

Respectfully submitted this 11th day of July 2008.

/s/ Timothy M. Reynolds
Timothy M. Reynolds (pro hac vice)
David A. Tonini (pro hac vice)
Andrew B. Mohraz (pro hac vice)
HOLME ROBERTS & OWEN LLP
1700 Lincoln, Suite 4100
Denver, Colorado 80203
Telephone: (303) 861-7000
Facsimile: (303) 866-0200

Felicia J. Boyd (No. 186168)
Leita Walker (No. 387095)
FAEGRE & BENSON LLP
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, Minnesota 55402-3901
Telephone: (612) 766-7000
Facsimile:  (612) 766-1600

ATTORNEYS FOR PLAINTIFFS