## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| CAPITOL RECORDS INC., a Delaware corporation; SONY BMG MUSIC ENTERTAINMENT, a Delaware general partnership; ARISTA RECORDS LLC, a Delaware limited liability company; INTERSCOPE RECORDS, a California general partnership; WARNER BROS. RECORDS INC., a Delaware corporation; and UMG RECORDINGS, INC., a Delaware corporation, | Case No.  06-cv-1497 (MJD/RLE) |
| **Plaintiffs,** | **DEFENDANT'S REPLY BRIEF IN SUPPORT OF HER MOTION FOR NEW TRIAL (DKT. NO. 109)** |
| v. | |
| Jammie Thomas, | |
| **Defendant.** | |

### INTRODUCTION

Plaintiffs have collected scores of unsuccessful arguments, rejected by "the great weight of authority,"[1] for the singular purpose of convincing this Court that it should ignore the plain language of the Copyright Act and controlling Eighth Circuit precedent. Plaintiffs beseech this Court to allow their judgment to survive a trial whose centerpiece was an erroneous instruction, submitted by plaintiffs based upon authority they knew to have been previously vacated.

Armed with their supporting *amici* that are either partially owned or financially

---

[1] *Atlantic Recording Corp. v. Howell*, No. CV06-2076-PHX-NWB, 2008 WL 1927353, at *6 (D. Ariz. Apr. 29, 2008).

supported by them, plaintiffs ultimately argue that the courts, not Congress, should supply some missing language in the Copyright Act. They rely on what they call "decades of case law," but the fact is that the internet has not been around for decades, and if there is a problem with the Copyright Act, Congress must fix it. In the meantime, the law in this Circuit is that making-available, in and of itself, is not a violation of the Copyright Act, the act of downloading a copyrighted work by an agent of the plaintiff is not a distribution conferring liability upon a defendant, and plaintiffs here have the same burden every plaintiff has: they must prove their case. Vacation of the judgment and new trial are indicated.

## ARGUMENT

## I. THE JURY VERDICT AND JUDGMENT CANNOT BE UPHELD IF INTRUCTION NO. 15 IS ERRONEOUS.

Plaintiffs argue that the judgment "should not be disturbed unless the alleged error in Instruction 15 prejudiced the defendant." (Pltfs Brief at 4). They offer as authority *U.S. v. Jiminez*, 487 F.3d 1140, 1146 (8th Cir. 2007), but *Jiminez* 1) dealt with an evidentiary issue, as opposed to an issue respecting an instruction; and 2) was a criminal drug case with a completely different standard of review. It offers no support whatsoever for the argument they make.

Similarly, *Eich v. Board of Regents for Cent. Mo. State Univ.*, 350 F.3d 752, 761 (8th Cir. 2003) is inapposite. The issue was an evidentiary issue, as opposed to an issue respecting an instruction. *Eich* stands for the proposition that "[t]he law places a high standard on overturning a jury verdict and doing so. Judgment as a matter of law is

proper only when there is a complete absence of probative facts to support the conclusion reached . . . ." *Id*. In the instant matter there is no motion for judgment as a matter of law. In the instant matter the Court is not being asked to consider the sufficiency of probative facts, i.e., the evidence supporting the fact that defendant made any songs available. It makes no different how much evidence was presented to prove that defendant made copyrighted material available if simply making the material available, in the absence of an actual distribution, does not violate plaintiffs' exclusive right of distribution under the Copyright Act.

Plaintiffs offer another inapposite, criminal drug case, *U.S. v. Wilson*, 103 F.3d 1402, 1408 (8th Cir. 1197), suggesting that granting defendant's motion would be a "waste of judicial resources." (Pltfs Brief at 4). *Wilson* dealt with the issue of a new trial based upon alleged prejudice occasioned by a joint trial with a co-defendant, which the court refused to grant, finding that it would be a "waste of judicial resources" to reverse and grant a new trial brought on "speculative grounds." *Wilson*, 103 F.3d at 1408. In the matter at bar there are no "speculative grounds" offered or under consideration; the singular grounds are an erroneous instruction, an impermissible ground requiring vacation of the judgment and new trial.

Finally, plaintiffs invoke *Slidell, Inc. v. Millenium Inorganic Chemicals, Inc*., 460 F.3d 1047, 1054 (8th Cir. 2006) which provides the requirements for a new trial when an erroneous instruction "misled the jury or had a probable effect on the jury's verdict." *Id*. Plaintiffs invite this Court to consider a two-part test based on *Slidell*, *supra*, but in this Circuit when there is an erroneous instruction, and it is "impossible to determine whether

an award is made on a permissible or impermissible basis," a claim must be remanded for new trial. *In Re: IBP Confidential Business Documents Litigation; Hughes A Bagley v. Iowa Beef Processors*, 797 F.2d 632, 648 (8th Cir. 1985) (*citing Greenbelt Coop. Publ'g Assoc. v. Bresler*, 398 U.S. 6, 11, 26 L. Ed. 6, 90 S. Ct. 1537 (1970); *see also*, *Exxon Shipping Co. et al v. Baker et al*, No. 07-219, 2008 WL 2511219, at *7 (U.S. June 25, 2008).

### A. Plaintiffs' Reproduction Right Violation Argument.

The Special Verdict Form provides no insight as to whether the jurors found defendant liable because of the instruction dealing with plaintiffs' reproduction right, Instruction No. 14, or the erroneous Instruction No. 15. Accordingly, it matters not whether the jurors *could* have found defendant liable because of any violation of plaintiffs' reproduction rights. It cannot be known whether the jurors reached their verdict based on a permissible or impermissible ground within the meaning of *Bagley, supra*, and *Greenbelt*, 398 U.S. at 11. A new trial is indicated.

### B. Plaintiffs' Agents' Conduct Argument.

Plaintiffs argue that "[i]t does not matter that a representative of the copyright owners downloaded the copies." (Pltfs Brief at 5.) It matters. *Olan Mills, Inc. v. Linn Photo Co*., 23 F.3d 1345 (8th Cir. 1994) does not say what plaintiffs want it to say.

In the matter at bar, Media Sentry, plaintiffs' investigator, actually downloaded copies. In *Olan Mills*, it was not the investigator who made copies; it was the defendant who actually made the copies. *Id.* at 1348. The facts in *Olan Mills* as the court found them are:

The investigator in this case merely approached Linn Photo in a
conventional manner and offered Linn Photo an opportunity to infringe
upon four clearly marked copyrights. Olan Mills did not authorize the
investigator to validate Linn Photo's unlawful conduct. Indeed, the
investigator's assignment was part of Olan Mills' attempt to stop Linn
Photo's infringement. Accordingly, **the copies made by Linn Photo** at the
request of the investigator were copyright violations.

*Olan Mills*, 12 F.3d at 1348 (emphasis added).

What we have in *Olan Mills* is copying and transferring by the defendant. In the
instant matter the copying was done by someone who had never met, seen, knew or even
heard of defendant. Most importantly, Media Sentry was an agent of plaintiffs, and "[i]t
is well-established that the lawful owner of a copyright cannot infringe its own
copyright." *Id*. Neither can an owner's agent. *Howell*, 2008 WL 1927353, at *8.

If defendant could be found liable at all, it would have to be secondary liability, as
Media Sentry did the copying, but since Media Sentry cannot be primarily liable (since
they are plaintiffs' agents), and there is no evidence that someone one else did the
downloading. There is no one primarily liable, therefore there can be no one secondarily
liable. *Howell*, 2008 WL 1927353, at *6.

Before leaving the subject of *Olan Mills*, this Court should consider an important
observation by dissenting Senior Circuit Judge John R. Gibson who advises, "The court
today, in a time of burgeoning dockets, places its imprimatur on this staged behavior,
with overtones of misrepresentation, planned for the particular purpose of initiating an
infringement lawsuit." *Olan Mills*, 23 F.3d at 1350. That statement is at least as true
today as it was in 1994.

Plaintiffs also rely on *RCA/Ariola Int'l, Inc. v. Thomas & Grayston Co*., 845 F.2d

773 (8th Cir. 1988), but such reliance is hugely misplaced. In RCA/Ariola plaintiffs

employed an undercover investigator, but as in *Olan Mills*, the defendant "retailers had

substantial participation in the infringements in this case and [defendants] Metacom and

McCann were vicariously liable for retailers' acts." *Id*. at 779.

Defendant retailers argued that the district court erred in holding them to be direct

infringers, but the court was not impressed, stating:

> This argument ignores the most obvious basis for holding the retailers
> liable: the retailers' employees actively assisted in copying the protected
> material by inspecting the copyrighted tape and selecting a blank tape of the
> proper length to copy the protected work and by actually operating the
> machine.
>
> *            *            *
>
>  . . . the retailers here also picked the proper tape to reproduce a particular
> copyrighted work . . . the employees helped the customers copy a whole
> tape, not just enough to demonstrate operation of the machine, and the
> customers kept the tape, rather than erasing it.[2]

*RCA/Ariola*, 845 F.2d at 781.

*RCA/Ariola* is an another example of misplaced reliance by plaintiffs. In

*RCA/Ariola* the defendants did something more, much more than simply make a

copyrighted work available. Defendants sold blank disks to the customers and physically

assisted in the making and transfer of copyrighted works.

Before leaving the subject of *RCA/Ariola* this Court should consider another

---

[2] The court in *RCA/Ariola* also found the manufacturer and owner of the copying
machines and its president vicarious liable for the acts of the retailers because of the control the
manufacturer and its president exercised "over the retailers' use of the machines by issuing
directives on the use of the machines and because it profited from that use." *Id*.

important observation by Circuit Judge John R. Gibson, now wrote:

> To the extent RCA simply argues the award was too low, we find no abuse of discretion in the award. The parties do not contest that there was infringement and technical violation of the statute induced by the investigators. The district court had before it a record that disclosed that RIAA was to receive the fees awarded in this case to be used to finance similar litigation. Concern over such assaults on scarce judicial resources may understandably and properly have motivated the district court's abstemious approach to the award of fees in this case.

*RCA/Ariola*, 845 F.2d at 780.

The bottom line is that the jury could have based its award on Instruction 15, and Instruction 15 is erroneous. It is erroneous because it permits the jury to find an infringement in the absence of an actual transfer or copying by defendant, and the copying and transfer that did occur was performed by plaintiffs' agents. Accordingly, the judgment must be vacated and a new trial ordered.

## II. THE COPYRIGHT ACT DOES NOT DEFINE "DISTRIBUTION" TO INCLUDE SIMPLY "MAKING AVAILABLE."

Plaintiffs set out the text of the Copyright Act, and on their own authority provide a convenient definition of "distribute" that appears nowhere in the Act and is "against the great weight of authority." *Atlantic Recording Corp. v. Howell*, No. CV06-2076-PHX-NWB, 2008 WL 1927353, at *6 (D. Ariz. Apr. 29, 2008).

### A. The Right to "Distribute" Does Not Encompass "Making Available" Without an Actual Transfer.

#### 1. The Plain Meaning of "Distribute" in Section 106 Requires an Actual Transfer.

Plaintiffs begin their "plain meaning" argument with a concession that Section 106(3) requires a "transfer." (Pltfs Brief at 8). They acknowledge that Section 106(3)

provides an exclusive right to distribute, but then they ask the Court to take a giant leap by concluding that, since you have to make something available in order to transfer it, it follows that the Copyright Act provides an exclusive right to make-available, and somehow Congress must have intended that Section 504 provides for the recovery of statutory damages when someone makes a copyright work available in the absence of a transfer.

What plaintiffs leave out of the equation is that, in order to receive damages under Section 504, Congress obviously wanted something more than simply making a copyright work available. What Congress wanted is unambiguously described in Section 106(3): a violation of "the exclusive rights . . . to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending."

Said another way, there may very well be an exclusive right to make a copyrighted work available, but it is not an enumerated right that singularly entitles one to a cause of action and damages for infringement under Title 17. The plain meaning of "distribute" in Section 106 encompasses only what it says it does. It requires an actual transfer. That is the law in this Circuit[3] and that is the "great weight of authority" without this Circuit.[4]

Plaintiffs present to the Court *New York Times Co. v. Tasini*, 533 U.S. 483, 488

---

[3] *Nat'l Car Rental System, Inc. v. Computer Assoc. Int'l, Inc*., 991 F.2d 426, 434 (8th Cir. 1993) (citing 2 Nimmer on Copyright § 8.11[A], at 8-124.1, "infringement of the distribution right requires an actual dissemination of either copies or phonorecords.").

[4] *Howell*, 2008 WL 1927353, at *6 ("§ 106(3) is not violated unless the defendant has actually distributed an unauthorized copy of the work to a member of the public.").

(2001), but it is unclear why such authority bolsters any of plaintiffs' arguments. The holding in *Tasini* was very succinct. After first identifying the issue, "The freelance authors' complaint alleged that their copyrights had been infringed by the inclusion of their articles in the databases,"[5] the court held, "In agreement with the Second Circuit, we hold that § 201(c) does not authorize the <u>copying</u> at issue here." *Tasini*, 533 U.S. at 488 (emphasis added).

In *Tasini* plaintiff authors sold their copyrighted articles to defendant print publishers who in turn licensed, and provided copies to electronic publishers, who in turn sold copies to the public. The singular issue centered involved *copying* with no mention of making-available.[6] "We granted certiorari to determine whether the **copying** of the Author's Articles in the Databases is privileged by 17 U.S.C. § 201(c)." *Id*. at 493 (emphasis added).

Accordingly, plaintiffs statement that the Supreme Court held that 'it is clear' that defendants 'distribute copies' of the plaintiffs' articles merely by making them available for download[7] is found nowhere in the *Tasani* opinion.

Plaintiffs next turn to the Digital Millennium Copyright Act for help, arguing that

---

[5] *Tasini*, 533 U.S. at 487.

[6] The court did in fact talk about the Author's rights under Section 106(3), stating "[defendant] Print and Electronic Publishers have exercised at least some of the rights that § 106 initially assigns exclusively to the [plaintiff] Authors: . . . [defendant] UMI, by <u>selling</u> those CD-ROMS, and [defendant] LEXIS/NEXIS, by <u>selling</u> copies of the Articles through the NEXIS Database, 'distribute copies' of the Articles, 'to the public by <u>sale</u>,' § 106(3) . . . ." *Tasani*, 533 U.S. at 498 (emphasis added).

[7] (Pltfs Brief at 9).

that particular act evinces Congress' intention that Section 106 encompasses a right of making available. The Digital Millennium Copyright Act was in large measure adopted to implement the WIPO Internet Treaties, deal with technology issues concomitant with infringement and provide for liability and protections against and for online service providers. What it does not do is identify liability and provide for statutory damages as the facts and allegations of the instant matter are presented.

Plaintiffs' grand finale of argument is a listing of a number of criminal cases where a court found a "distribution" without a transfer, but none of these cases dealt with a statute that specifically required a "transfer" as does Section 106. Many of these cases show a violation of federal law because the conduct was an attempt, but there is no attempt-to-infringe statute in Title 17.

The unambiguous language of Section 106 and the great weight of authority trump the tortured *dicta*, letters of the Register and other submissions of plaintiffs. There is no making-available right under Section 106 that, without more, entitles plaintiffs to judgment and damages under Section 504.

> **2.** **Because There is No Ambiguity in the Plain Language of the Copyright Act, This Court Should Not Resort to Analysis of Conflicting Statutory Context and Legislative History.**

There is no ambiguity in the text of Section 106, and therefore this Court ought not engage in an analysis of the Act's legislative history.

> As we have repeatedly held, the authoritative statement is the statutory text, not the legislative history or any other extrinsic material. Extrinsic materials have a role in statutory interpretation only to the extent they shed a reliable light on the enacting Legislature's understanding of otherwise

ambiguous terms. Not all extrinsic materials are reliable sources of insight into legislative understandings, however, and legislative history in particular is vulnerable to two serious criticisms. First, legislative history is itself often murky, ambiguous, and contradictory. Judicial investigation of legislative history has a tendency to become, to borrow Judge Leventhal's memorable phrase, an exercise in " 'looking over a crowd and picking out your friends.' " See Wald, <u>Some Observations on the Use of Legislative History in the 1981 Supreme Court Term</u>, 68 Iowa L.Rev. 195, 214 (1983). Second, judicial reliance on legislative materials like committee reports, which are not themselves subject to the requirements of Article I, may give unrepresentative committee members-or, worse yet, unelected staffers and lobbyists-both the power and the incentive to attempt strategic manipulations of legislative history to secure results they were unable to achieve through the statutory text.

*Exxon Mobil Corp. v. Allapattah Servs. Inc*., 545 U.S. 568, 125 S. Ct. 2611, 2626 (2005).

More recently the Supreme Court has advised that "[t]he 'strong presumption' that the plain language of the statute expresses congressional intent is rebutted only in 'rare and exceptional circumstances.'" *U.S. v. Clintwood Elkhorn Mining Co*., 128 S. Ct. 1511, 1518 (2008). "Yet it is an elemental canon of statutory construction that where a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it. 'When a statute limits a thing to be done in a particular mode, it includes the negative of any other mode.'" *Transamerica Mortg. Advisors v. Lewis*, 444 U.S. 11, 20, 100 S. Ct. 242, 62 L. Ed. 2d 146 (1979).

In this Circuit, the rule has continuously been unwavering.

Of course courts should construe statutes so as to avoid absurdity or injustice if it can be done under the language employed, but if the intention of the legislative body clearly appear from the plain words of the act the presumption is that such body has said what it meant and intended. If it has not, the remedy is to change the law by legislative act and not to attempt to change it by court decision. This court has many times expressed its disapproval of any judicial journeys into the field of legislation by construction of statutes**.**

*Echols v. Commissioner*, 61 F.2d 191, 192 (8th Cir. 1932) (citation followed by a list of Eighth Circuit cases in accord).

Plaintiffs have found a single district court case where the court opined that "distribute" is not defined in the Copyright Act,[8] but Section 106(3) expressly and unambiguously enumerates what acts constitute a distribution, and they are "by sale or other transfer of ownership, or by rental, lease, or lending."  "Making-available" without more does not constitute a sale or other transfer of ownership.  Nor does it constitute a rental, lease or loan.

This Court should not engage in an analysis of the statute's legislative history. Here there was no evidence of any transfer by defendant to a third-party other than plaintiffs' agent.  Here there was no infringement based upon Section 106(3).  Instruction No. 15 is fatal.  Vacation of the judgment and new trial is indicated.[9]

### 3.     "Publication" is Not Interchangeable with "Distribution."

Plaintiffs have collected a number of cases where courts have erroneously opined that "publication" and "distribution" are synonymous under the Copyright Act.[10]  These

---

[8] *Warner Bros. Records, Inc. v. Payne*, No. 06-CA-051, 2006 WL 2844415, at *3 (W.D. Tex. July 17, 2006).

[9] Defendant has also brought a post-trial motion for remittitur claiming that the $222,000 judgment is unconstitutional because, *inter alia*, it violates her rights under the Due Process Clause.  If the Court can only glean the meaning of Section 106(3) by a detailed analysis of the legislative history of the Act, there is a strong argument that liability for making-available without more is not sufficiently <u>foreseeable</u> to constitutionally support such a staggering award.

[10] *Warner Bros. Records, Inc. v. Payne*, No. 06-CA-051, 2006 WL 2844415, at *3 (W.D. Tex. July 17, 2006); *Arista Records LLC v. Greubel*, 453 F. Supp. 2d 961, 969 (N.D. Tex. 2006);

opinions, and plaintiffs' argument in accord, have been trampled by the great weight of authority otherwise. That is because the definition of "publication" is broader than the definition of "distribution."

"[T]he terms are not synonymous . . . . Plainly publication and distribution are not identical. And Congress' decision to use the latter term when defining a copyright holder's right in 17 U.S.C. 106(3) must be given consequence." *London-Sire Records, Inc. v. Doe 1*, 542 F. Supp. 2d 153, 168-69 (D. Mass. 2008).

In *Howell*, *supra*, the court closely examined the argument plaintiffs make in the instant matter respecting the interchangeability of "publication" and "distribution." Referring to *Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 552, 105 S. Ct. 2218, 85 L. Ed 2d 588 (1985), as do plaintiffs here, the *Howell* court correctly identified the Supreme Court's recognition of a Section 106(3) right of *first* publication. *Howell*, 2008 WL 1927353, at *7. The analysis highlighted the fact that the statute's definition of "publication" includes "distribution of copies . . . to the public" and "offering to distribute copies . . . for purposes of further distribution." *Id*.

Noting further that "[t]he inverse proposition, that all 'publications' are 'distributions,' appears nowhere in the statute or the legislative history . . . ," the court reasoned that, "[r]ead as the record companies suggest, the definition would state that a 'distribution' is a 'distribution' or an 'offering to distribute.' One cannot assume that the

---

*Agee v. Paramount Commc'ns, Inc*., 59 F.3d 317, 325 (2d Cir. 1995); *Ford Motor Co. v. Summit Motor Prods., Inc*., 930 F.2d 277, 299 (3d Cir. 1991); *Atlantic Recording Corp. v. Anderson*, No. H-06-3578, 2008 WL 2316551, at *7 (S.D. Tex. Mar. 12, 2008).

terms are absolutely synonymous in the face of such an unsatisfactory definition." *Id*.

The court in *Howell* concluded as follows:

> The scope of the term distribution is only defined within § 106(3) itself, as a "sale or other transfer of ownership" or a "rental, lease, or lending" of a copy of the work. The plain meaning of that section requires an identifiable copy of the work to change hands in one of the prescribed ways for there to be a distribution. **It is untenable that the definition of a different word in a different section of the statute was meant to expand the meaning of "distribution" and liability under § 106(3) to include offers to distribute**. Courts should not impute such an oblique method to Congress. Rather, courts are to give meaning to Congress' choice to use the word "distribution" in § 106(3) rather than the expressly defined term "publication." *See Padash v. INS,* 358 F.3d 1161, 1169 n. 7 (9th Cir.2004) (refusing to "import the definition" of one term onto another because "the use of different words or terms within a statute demonstrates that Congress intended to convey a different meaning for those words"). **A plain reading of the statute indicates that a publication can be either a distribution or an offer to distribute for the purposes of further distribution, but that a distribution must involve a "sale or other transfer of ownership" or a "rental, lease, or lending" of a copy of the work.** The recording companies have not proved an actual distribution of 42 of the copyrighted sound recordings at issue, so their motion for summary judgment fails as to those recordings.

*Howell*, 2008 WL 1927353, at *8 (emphasis added).

**B.     Defendant Did Not "Authorize" Anyone to Copy Anything Within or Without the Meaning of Section 106 of the Copyright Act.**

Plaintiffs look to the word "authorization" as it appears in Section 106, "Subject to section 107 through 122, the owner of copyright under this title has the exclusive rights to do and to authorize any of the following:" 17 U.S.C. § 106. Plaintiffs cite (as authority for the proposition that authorizing a distribution is sufficient conduct to cause an infringement) the dictionary and cases that use the word in contexts other than Section 106. When confronted with *Venegas-Hernandez v. ACEMLA*, 424 F.3d 50, 57-59 (1st

Cir. 2005), plaintiffs brush it off in a footnote stating, "Its [Venegas-Hernandez] reasoning is peculiar and incorrect." (Pltfs Brief at 16, n7). *Venegas-Hernandez* is dispositive of the issue.

> Because the right to "authorize" is literally one of the exclusive rights provided in <u>section 106</u>, the authorizing person could (as a matter of language) be treated as an infringer subject to statutory damages even if no listed infringing act (for example, performance) actually occurred. Yet the legislative origins of the "authorize" language in the statute arguably support a narrower reading, and **most (perhaps all) courts that have considered the question have taken the view that a listed infringing act (beyond authorization) is required for a claim**. *See* II Goldstein, *Copyright* § 6.3.2, at 6:44 (2d ed. 2005).
>
> The "authorize" reference was added to the statute via the 1976 Copyright Act. *Danjaq, S.A.* v. *MGM/UA Communications, Co.*, 773 F. Supp. 194, 201 (C.D.Ca. 1991). Prior to that time, the courts had adopted a concept of "contributory infringement" to impose liability on someone who wrongfully authorized an infringing act by another who then committed that act. . . .
>
> When the new statutory language was added, the House report explained that "use of the phrase 'to authorize' is intended to avoid any questions as to the liability of contributory infringers." H.R. Rep. No. 94-1476, at 61 (1976), *reprinted in* 1976 U.S.C.C.A.N. 5659, 5674. If the language's purpose was simply to codify the preexisting abetting doctrine that made an authorizer liable for the authorized party's wrongful act of infringement, arguably the drafters did not intend to create an independent liability for authorizing where no listed infringing act, such as performance, thereafter occurred.

*Venegas-Hernandez*, 424 F.3d at 57-58 (emphasis added).

This Court should not create a separate actionable right under Section 106 that has never existed before as plaintiffs urge. Congress and "most (perhaps all)" courts have refused to do so. An authorization is not an actionable infringement without a subsequent infringing act.

**III.    THERE ARE NO "DECADES OF CASE LAW" RESPECTING THE MAKING-AVAILABLE RIGHT IN THE COMPUTER AGE, AND THE MOST RECENT CASES OVERWHELMING DO NOT PERMIT A MAKING-AVAILABLE RIGHT UNDER SECTION 106 THAT JUSTIFY INSTRUCTION NO. 15.**

   **A. *Hotaling* and What it Stands for Should Not be Followed in this Circuit as it Has Been Distinguished, Criticized and Otherwise Beaten to Death in Other Jurisdictions.**

Plaintiffs argue that granting a new trial would depart from "decades of case law recognizing the making-available right in many contexts." (Pltfs Brief at 17).  It would have to be in many contexts, because the internet age came into being after the passage of the Copyright Act of 1976.  Accordingly, plaintiffs invoke a library case, *Hotaling v. Church of Jesus Christ of Latter-Day Saints*, 118 F.3d 199 (4th Cir. 1997); a video store case, *Walt Disney Co. v. Video* 47, Inc., 972 F. Supp. 595 (S.D. Fla. 1996); a book case, *American Code Co. v. Bensinger*, 282 F.829 (2d Cir. 1922); another book case, *Greenbie v. Noble*, 151 F. Supp. 45 (S.D.N.Y. 1957); a video tape case, *Encyclopedia Britannica Educ. Corp. v. Crooks*, 558 F. Supp. 1247 (W.D.N.Y. 1983); a television show case, *U2 Home Entm't, Inc.*, v. *Fu Shun Wang*, 482 F.2d 314 (E.D.N.Y 2007); another video store case, *Columbia Pictures Indus., Inc. v. T&F Enters., Inc.*, 68 F. Supp. 2d 833 (E.D. Mich. 1999); an artistic prints case, *Wildlife Int'l, Inc. v. Clements*, 591 F. Supp. 1542 (D. Ohio 1984); an electronic bulletin board case, *Playboy Enters., Inc. v. Russ Hardenburgh, Inc.*, 982 F. Supp. 503 (N.D. Ohio 1997);[11]  a clip-art software case, *Marobie-FL, Inc. v. Nat'l*

---

[11] This case is actually a computer case; it involves a computer bulletin board where individuals could obtain copyrighted adult photographs.  Regarding plaintiffs' claim for direct infringement, the court refused to find direct liability, stating that, "[m]erely encouraging or facilitating those activities is not proscribed by the statute [Section 106]." *Playboy*, 982 F. Supp.

*Ass'n of Fire Equip. Distribs. & Northwest Nexus, Inc.*, 983 F. Supp. 1167 (N.D. Ill. 1997);[12] and a criminal, state-law preemption case, *State v. Perry*, 697 N.E. 2d 624 (Ohio 1998).

Plaintiffs' cases are not only categorically distinguishable; they are in large measure inapposite or based upon a factor not present in the instant action. In fact, where infringement has been found it was generally *secondary* infringement which cannot be found in the matter at bar because Media Sentry, plaintiffs' agent accomplished the downloading.

By way of example, the case most relied upon by plaintiffs, *Hotaling*, involved a library where plaintiff author/copyright owner failed to timely file a complaint respecting infringing acts of copying. *Hotaling*, 118 F.3d at 210-12. The statute of limitations had not run out, however, for an infringement claim alleging distribution committed within three years of the filing. The divided Fourth Circuit panel found that a "distribution occurs, within the meaning of § 106, when a library holds a copy in its collection, lists the copy in its card file, and makes the copy available to the public." *Hotaling*, 118 F.3d at 204.

Suggesting sympathy for the plaintiff, dissenting Judge Hall echoed the very words used in the most recent cases dealing with alleged distributions by computer:

---

at 513. The court cited both *Hotaling* and *Nat'l Car Rental System*, but made it clear that "[i]n order to establish 'distribution' of a copyrighted work, a party must show that an unlawful copy was disseminated 'to the public.'" *Id.* (here the "public" was paying subscribers).

[12] Defendant "only provided the means to copy, distribute or display plaintiff's works . . . . Accordingly, Northwest [defendant] may not be held liable for direct infringement." *Marobie-FL*, 983 F. Supp. at 1178.

I respectfully dissent. The statute specifically identifies the sorts of "distribution" that violate a copyright, and none of them fit this situation. The owner of a copyright does not possess an exclusive right to "distribute" the work in any conceivable manner; instead, it has the exclusive right "to distribute copies … of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending[.]" 17 U.S.C. § 106(3).

*Hotaling*, 118 F.3d at 205.

There is an old saying that sometimes the law will bend a word before a widow. That appears to be the case with the court in *Hotaling*. There is this visceral reaction that defendants did something wrong, and plaintiff should have a remedy, but subsequent courts taking up the issue have agreed with the *Hotaling* dissenting opinion; Section 106 is very specific and requires an actual transfer. Accordingly, the holding in *Hotaling* has been almost universally rejected.[13]

### 1.   National Car Rental is Controlling Authority.

Plaintiffs have completely missed the point in their discussion of *National Car Rental*. They argue that the "holding is irrelevant to the question before this Court." (Pltfs Brief at 23). The actual holding in the case was a determination that the use of copyrighted material that breached a license agreement "constitutes an extra element in

---

[13] *See*, *Atlantic Recording Corp. v. Howell*, No. CV06-2076-PHX-NWB, 2008 WL 1927353, at *8 (D. Ariz. Apr. 29, 2008); *London-Sire Records, Inc. v. Doe 1*, No. 04cv12434-NG, 2008 WL 887491, at *7-10 (D. Mass. Mar. 31, 2008); *Atlantic Recording Corp. v. Brennan*, 534 F. Supp. 2d 278, 281-82 (D. Conn. 2008); *Arista Records, Inc. v. Mp3Board, Inc.*, No. 00 CIV. 4660 (SHS), 2002 WL 1997918, at *4 (S.D.N.Y. Aug. 29, 2002); and all three of the leading copyright treatises, 2 PAUL GOLDSTEIN, GOLDSTEIN ON COPYRIGHT § 7.5.1, AT 7:127 (3D ED. 2007); 2 NIMMER & NIMMER, *supra*, 8.11[A], at 8-149; and 4 WILLIAM PATRY, PATRY ON COPYRIGHT, 19:9, at 13-13 (2008).

addition to the copyright rights making this cause of action qualitatively different from an action for copyright." *Nat'l Car Rental*, 991 F.2d at 431.  In order to get to that holding, the court's analysis necessarily had to establish what in this Circuit is required to have a cause of action under Section 106.  The fact that the ultimate issue is whether or not preemption is indicated takes nothing away from the court's analysis which stated universal principles of law that are binding in this Circuit until the court says otherwise.

The singular principle of law gleaned from *National Car Rental* that binds this Court is that a suit under the Copyright Act must allege conduct specifically set forth in Section 106 as actionable.  Mere "use" of a copyright is not one of the items enumerated in Section 106, and "use" is not a "distribution" which is a "right to distribute copies of the work." *Nat'l Car Rental*, 991 F.2d at 434.

What *National Car Rental* said about "use" should be said by this Court about "making available."  Neither is a distribution, because a distribution "requires an actual dissemination of either copies or phonorecords."  *Id*.

## III.   REJECTING THE MAKING-AVAILABLE RIGHT DOES NOT CONFLICT WITH INTERNATIONAL OBLIGATIONS OF THE UNITED STATES.

This Court should take note of the fact that the effect of WIPO Internet Treaties has not been considered to be a significant factor touching upon the making-available issue.  That is because there is no inconsistency between the rights recognized by the WIPO Internet Treaties and 17 U.S.C. § 106(3).

The WIPO Internet Treaties *might* very well recognize an exclusive making-available right, but that right is not abrogated by the Copyright Act.  It is simply not a

right that permits a recovery under Section 106 without an actual transfer.  All that the Copyright Act does is confer a set of very specific exclusive rights that, if infringed, permits a remedy of damages, statutory or actual.  As demonstrated in *Nat'l Car Rental*, *supra*, the plain language of the Copyright Act will not be tortured to create an additional right to relief under the Act, but that is not tantamount to declaring the making-available right does or does not exist under the WIPO Internet Treaties.

The foregoing is not to say that strictly construing the Copyright Act leaves a copyright owner remediless under the provisions of the WIPO Treaties.  Injunction may be available to prevent infringement, or further infringement.  *Olan Mills*, 23 F.3d at 1349 ("The power to grant injunctive relief is not limited to registered copyrights, or even to those copyrights which give rise to an infringement action. . . . When a copyright owner has established a threat of continuing infringement, the owner is entitled to an injunction regardless of registration.").

As *amici* for plaintiffs concede, "In October 1998, Congress adopted legislation, as part of the Digital Millennium Copyright Act, to implement fully WCT and WPPT [the WIPO Internet Treaties]."  Brief of *amici* Motion Picture Assoc. of America, p. 8-9 (Dkt. No. 169).   The Copyright Act, strictly construed to its plain language by the courts in *Howell* and *National Car Rental*, does not emasculate the WIPO Internet Treaties as *amici* to plaintiffs suggest.

## CONCLUSION

For the foregoing reasons, defendant's motion for an order vacating the judgment and granting a new trial should be granted.

Respectfully submitted,

Dated:   July 11, 2008                    **CHESTNUT & CAMBRONNE, P.A.**

By /s/  Brian N. Toder
Brian N. Toder  (No. 17869X)
Bryan L. Bleichner (No. 0326689)
3700 Campbell Mithun Tower
222 South Ninth Street
Minneapolis, MN 55402
(612) 339-7300
Fax (612) 336-2940

**ATTORNEYS FOR DEFENDANT**