# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

_____

CAPITOL RECORDS INC.,
a Delaware corporation;
SONY BMG MUSIC ENTERTAINMENT,
a Delaware general partnership;
ARISTA RECORDS LLC,
a Delaware limited liability company;
INTERSCOPE RECORDS,
a California general partnership;
WARNER BROS. RECORDS INC.,
a Delaware corporation; and
UMG RECORDINGS, INC.,
a Delaware corporation;

        Plaintiffs,

v.

        **MEMORANDUM OF LAW & ORDER**
        Civil File No. 06-1497 (MJD/RLE)

JAMMIE THOMAS-RASSET,

        Defendant.

_____

Andrew B. Mohraz, David A. Tonini, and Timothy M. Reynolds, Holme Roberts & Owen, LLP; Felicia J. Boyd, Kara L. B. Barrow, and Mary Andreleita Walker, Faegre & Benson, LLP; and Matthew J. Oppenheim, Oppenheim Group, LLP; counsel for Plaintiffs.

Joe Sibley and K. A. D. Camara, Camara & Sibley, LLP, and Garrett D. Blanchfield, Jr., Reinhardt Wendorf & Blanchfield, counsel for Defendant.

_____

This matter is before the Court on the parties' motions in limine.  The

Court heard oral argument on these motions on June 10, 2009.  Trial is set to

begin on June 15, 2009.

## I.     Defendant's Motion to Suppress Evidence [Docket No. 263]

Defendant Jammie Thomas-Rasset argues that the Court should exclude all

evidence gathered by MediaSentry because it operated in violation of state and

federal laws and because Plaintiffs' attorneys violated ethical rules through their

involvement with MediaSentry.  Because the Court holds that MediaSentry has

not violated any of the asserted state or federal laws, it denies Defendant's

motion.

### A.     MediaSentry's Actions

Peer-to-peer networks allow Internet users to connect to each other and

transfer files directly from user to user.  (Jacobson Decl. ¶ 2, Pls. Ex. A.)  When

files are distributed from one user to another user through a peer-to-peer

network, such as Kazaa, a set of identifying information ties the files back to the

user who distributed the files.  (Id. ¶ 3.)  This information includes the

distributor's IP address, the name of the file, the size of the file, the content hash,

and the port information.  (<u>Id.</u>)  The user requesting the files communicates the request that the sharing computer send the files, and the sharing computer then sends those requested files.  (<u>Id.</u> ¶ 5; Connelly Decl. ¶ 2, Pls. Ex. B.)  Kazaa does not allow one user to gain access into or to manipulate the contents of another user's computer.  (Jacobson Decl. ¶ 5.)  It does allow a user to view the contents of the files that other users placed in the shared folder.  (<u>Id.</u>)

The Kazaa interface displays information about each file that is available in other users' shared folders.  MediaSentry recorded the image for each screen displayed by Kazaa that lists the available files.  It also used Kazaa to download selected files to its own machine to confirm that the files were copyrighted sound recordings.

The IP address is transmitted as part of the normal process of connecting one computer to another over the Internet.  (Jacobson Decl. ¶ 6.)  When attempting to identify alleged infringers on peer-to-peer networks, MediaSentry used the same Kazaa network protocols that every other user used to search for and download files on the network.  (Connelly Decl. ¶ 2.)  Files were transferred to MediaSentry by the uploader in the form of data packets, which contained information identifying the source IP address.  (<u>Id.</u>)  Through packet capture

3

technology, MediaSentry recorded the interaction between itself and the computer connected to the file sharing network and distributing the material to MediaSentry.  (Id.; 1 Trial Tr. 185.)  MediaSentry captured every packet transferred, which included the IP address of the source of the packet.  (1 Trial Tr. 187-88.)

### B. The Minnesota Private Detectives Act

#### 1. Whether MediaSentry Violated the Act

Defendant alleges that MediaSentry collected evidence against her in violation of the Minnesota Private Detectives Act, Minn. Stat. § 326.32, et seq. ("MPDA").  The MPDA provides:

> No person shall engage in the business of private detective or protective agent, or advertise or indicate in any verbal statement or in written material that the person is so engaged or available to supply those services, without having first obtained a license as provided in sections 326.32 to 326.339.

Minn. Stat. § 326.3381, subd. 1.  MediaSentry does not hold a private detective license in Minnesota.  (Def. Ex. A.)

Defendant argues that MediaSentry engaged in the business of being a private detective under multiple provisions of the statute:

> Persons who for a fee, reward, or other consideration, undertake any

of the following acts for the purpose of obtaining information for others are considered to be engaged in the business of a private detective:

\* \* \*

(2) investigating the identity, habits, conduct, movements, whereabouts, transactions, reputation, or character of any person or organization;

(3) investigating the credibility of witnesses or other persons;

(4) investigating the location or recovery of lost or stolen property; [or]

\* \* \*

(8) obtaining through investigation evidence to be used before any authorized investigating committee, board of award, board of arbitration, administrative body, or officer or in preparation for trial of civil or criminal cases;

Minn. Stat. § 326.338, subd. 1. Defendant asserts that MediaSentry engaged in each of the listed activities when it investigated the identity of the user of the computer from which it downloaded the songs at issue in this lawsuit and when it obtained evidence of the copyrighted songs on Defendant's computer. Defendant also claims that MediaSentry violated the MPDA when it held itself out to be a private detective; however, she has offered no admissible evidence of such advertisement in Minnesota.

Defendant notes that the alleged violations of the MPDA are crimes under Minnesota law.  See Minn. Stat. § 326.339.

The Court concludes that MediaSentry is not subject to the MPDA.  Based on the language of the MPDA, the Act does not apply to persons or companies operating outside of the state of Minnesota.  See Minn. Stat. § 326.3381, subd. 5 (providing procedures for licensing out-of-state applications for those who "establish a Minnesota office").  Additionally, there is a general presumption that Minnesota statutes do not apply extraterritorially.  See In re Pratt, 18 N.W.2d 147, 153 (Minn. 1945), cited in Harrington v. Northwest Airlines, Inc., No. A03-192, 2003 WL 22016032, at *2 n.1 (Minn. Ct. App. Aug. 26, 2003) (unpublished) (noting that Minnesota courts employ "the presumption against a state statute having extraterritorial application").

MediaSentry does not operate within Minnesota.  (Connelly Decl. ¶ 3.)  It has no employees in Minnesota and does not conduct any activities in Minnesota.  (Id.)  It pays no taxes in the state and has no agent for service of process here.  (Id.)  MediaSentry conducted no activity in Minnesota relating to this case, and all of the information it received was sent by Defendant from her computer to MediaSentry's computer in a state other than Minnesota.  (Id.)  Merely

6

monitoring incoming internet traffic sent from a computer in another state is insufficient to constitute engaging in the business of private detective within the state of Minnesota.

### C.      The Pen Register and Trap and Trace Devices Act

Defendant asserts that MediaSentry violated the Pen Register Act when it recorded the packets that included the IP address of the sender.  It is a crime under 18 U.S.C. § 3121 to "install or use a pen register or a trap and trace device, without first obtaining a court order."

Under the statute both the term "pen register" and the term "trap and trace device" are defined as devices or processes which capture certain information but do not capture "the contents of any communication."  18 U.S.C. § 3127(3), (4).  See also Columbia Pictures, Inc. v. Bunnell, 245 F.R.D. 443, 450 (C.D. Cal. 2007) ("[P]en registers and trap and trace devices, by definition, do not record 'the contents of any communication.'") (citation omitted).

The Pen Register Act has no application here because the IP address recorded by MediaSentry was part of the content of the communication.  The metadata that is transmitted along with every file sent through the FastTrack network used in this case always includes the IP address.  (Jacobson Decl. ¶ 6.)

Furthermore, the Pen Register Act cannot be intended to prevent individuals who receive electronic communications from recording the IP information sent to them.  If it did apply in those cases, then the Internet could not function because standard computer operations require recording IP addresses so parties can communicate with one another over the Internet. (Jacobson Decl. ¶ 4.)

Additionally, the Pen Register Act does not bar recordings of the contents of communications that are made with the consent of one of the parties to the communication.  See, e.g., United States v. Millet, No. 05 CR 81, 2005 WL 3605269, at *1 (N.D. Ill. Nov. 3, 2005) ("And recordings made of conversations with the consent of one of the parties are permissible under federal law.  The pen registers and trap-and-trace devices may well assist the government in determining the exact time and date of telephone calls and the telephones accessed, but they do not disclose the contents of the conversations, nor do they make illegal the consensual recordings.").  In this case, the IP addresses were communicated as part of the packets Defendant's computer sent to MediaSentry's computer.  MediaSentry, as a party to that communication, simply recorded the information transmitted to it from Thomas-Rasset's computer.

### D. The Electronic Communications Privacy Act of 1986

The Electronic Communications Privacy Act of 1986 prohibits

unauthorized wiretapping:

> Except as otherwise specifically provided in this chapter any person who–
>
> (a) intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication;
>
> * * *
>
> shall be punished as provided in subsection (4) or shall be subject to suit as provided in subsection (5).

18 U.S.C. § 2511(1).

Defendant claims that MediaSentry violated § 2511(1) by intercepting

electronic communications in the form of the packets traveling between Thomas-

Rasset's computer and MediaSentry's computer. Defendant also claims that

MediaSentry violated the statute when it recorded images of the Kazaa interface.

She asserts that the display screen interface of Kazaa constituted an electronic

communication from the sender to the MediaSentry operator, communicating

information about the files on the sender's computer.

Assuming, without deciding, that MediaSentry's actions constituted

interception of an electronic communication, MediaSentry falls under the

participant exception to the Wiretap Act. Section 2511(2)(d) provides:

> It shall not be unlawful under this chapter for a person not acting
> under color of law to intercept a wire, oral, or electronic
> communication where such person is a party to the communication
> or where one of the parties to the communication has given prior
> consent to such interception unless such communication is
> intercepted for the purpose of committing any criminal or tortious
> act in violation of the Constitution or laws of the United States or of
> any State.

18 U.S.C.A. § 2511(2)(d).

MediaSentry was clearly a party to the electronic communication with

Defendant. Defendant asserts that this exception does not protect MediaSentry

because MediaSentry was intercepting communications for the purpose of

committing the crime under Minnesota law of engaging in the business of a

private detective without a license, committing the crime under federal law of

recording IP addresses in violation of the Pen Register Act, and committing the

Minnesota tort of intrusion upon seclusion.

MediaSentry did not intercept the communications for the purpose of

committing a crime or tort. As the Court has already held, MediaSentry did not

commit a crime under the MPDA or under the Pen Register Act. Although

Defendant has vaguely alluded to private detective licensing laws from other states, there is no evidence or legal argument before the Court upon which the Court could conclude that MediaSentry was subject to and violated another state's private detective law in this case. Even if, in capturing the information sent from Defendant's computer, MediaSentry had incidentally violated a private detective licensing statute from some other state, gathering evidence of Defendant's alleged copyright infringement cannot be said to have been accomplished for the purpose of committing a tort or crime. See Meredith v. Gavin, 446 F.2d 794, 798 (8th Cir. 1971) (discussing legislative history of exception to one-party consent exception to the Wiretap Act, which was aimed at "monitoring . . . for insidious purposes such as blackmail, stealing business secrets" and holding that exception applied when recorder's "purpose is evil").

The tort of intrusion upon seclusion occurs when one "intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns . . . if the intrusion would be highly offensive to a reasonable person." Lake v. Wal-Mart Stores, Inc., 582 N.W.2d 231, 233 (Minn. 1998) (footnote omitted). Thomas-Rasset asserts that MediaSentry's actions would be highly offensive to a reasonable person. The Court disagrees. There is

11

no expectation of solitude or seclusion when a person activates a file sharing

program and sends a file to the requesting computer.  By participating in Kazaa,

a user expects millions of other users to view and copy her files, each time

receiving the very information that Thomas-Rasset sent to MediaSentry and

MediaSentry recorded.

### E.  Ethical Violations

Defendant asserts that the Court should suppress evidence gained by

MediaSentry because it was illegally obtained at the direction and under the

supervision of Plaintiffs' lawyers in violation of their ethical obligations.  The

Court has held that MediaSentry did not illegally obtain the evidence in question.

MediaSentry acted for the legitimate purpose of discovering infringers and

protecting its clients' copyrights.  Therefore, there was no ethical violation

committed by Plaintiffs' attorneys' involvement with MediaSentry's

investigation.

### F.  Conclusion

Because Defendant has failed to show that MediaSentry violated any law

in gathering the evidence to be used in this case, Defendant's motion to suppress

is denied.

## II.     Plaintiffs' Motion in Limine to Exclude the Testimony of Defendant's Expert Dr. Yongdae Kim [Docket No. 272]

### A.     <u>Daubert</u> Standard

The admissibility of expert testimony is governed by Federal Rule of

Evidence 702.  The proponent of the testimony has the burden to show by a

preponderance of the evidence that the testimony is admissible under Rule 702.

<u>Lauzon v. Senco Prods., Inc.</u>, 270 F.3d 681, 686 (8th Cir. 2001).  Under the Rule:

> If scientific, technical, or other specialized knowledge will assist the
> trier of fact to understand the evidence or to determine a fact in
> issue, a witness qualified as an expert by knowledge, skill,
> experience, training, or education, may testify thereto in the form of
> an opinion or otherwise, if (1) the testimony is based upon sufficient
> facts or data, (2) the testimony is the product of reliable principles
> and methods, and (3) the witness has applied the principles and
> methods reliably to the facts of the case.

Fed. R. Evid. 702.

"Under the framework developed in <u>Daubert</u>, trial courts must serve as

gatekeepers to insure that proffered expert testimony is both relevant and

reliable.  Trial courts are given broad discretion in fulfilling this gatekeeping role

. . . ."  <u>Wagner v. Hesston Corp.</u>, 450 F.3d 756, 758 (8th Cir. 2006) (citations

omitted).  The proposed testimony must be useful to the factfinder in deciding

the ultimate fact issue; the expert witness must be qualified; and the proposed

evidence must be reliable.  <u>Lauzon</u>, 270 F.3d at 686.

When considering the reliability and relevance of expert testimony, the

Court may examine "whether the theory or technique is subject to testing,

whether it has been tested, whether it has been subjected to peer review and

publication, whether there is a high known or potential rate of error associated

with it, and whether it is generally accepted within the relevant community."

<u>Unrein v. Timesavers, Inc.</u>, 394 F.3d 1008, 1011 (8th Cir. 2005) (citation omitted).

The Court's inquiry is "flexible and fact specific."  <u>Id.</u>

> As a general rule, the factual basis of an expert opinion goes to
> the credibility of the testimony, not the admissibility, and it is up to
> the opposing party to examine the factual basis for the opinion in
> cross-examination.  Only if the expert's opinion is so fundamentally
> unsupported that it can offer no assistance to the jury must such
> testimony be excluded.

<u>Bonner v. ISP Techs., Inc.</u>, 259 F.3d 924, 929-30 (8th Cir. 2001) (citation omitted).

**B.      Factual Basis for Kim's Opinion**

Defendant's expert witness is Dr. Yongdae Kim, as Associate Professor in

the University of Minnesota Department of Computer Science.  Kim will not offer

an opinion regarding whether Thomas-Rasset infringed Plaintiffs' copyrights or

whether her computer was used to distribute their copyrighted sound

recordings.  Instead, Kim will offer possible explanations regarding how someone other than Thomas-Rasset could have committed the file sharing at issue in this case.  Plaintiffs argue that, although Kim lists fourteen possible explanations in his report, he admits that there is no evidence to support any of the explanations.

Defendant retorts that Kim will only offer rebuttal testimony to assist the jury in properly weighing the evidence regarding the origin of the Kazaa software and the allegedly infringing songs on Defendant's computer. Defendant admits that Kim will not offer an opinion regarding the probable cause of the presence of Kazaa and the songs on Thomas-Rasset's computer. Instead, he is merely offering his testimony as a rebuttal to the testimony of Plaintiffs' expert witness.  Kim will opine on the reliability and weight of Plaintiffs' expert's testimony.  Kim will also discuss possible alternative explanations that Plaintiffs' expert did not consider in arriving at his conclusions. Defendant asserts that testimony regarding possibilities, even if they are not probable, is legally sufficient if the proposed expert is attempting to rebut the testimony of another expert.  Defendant also argues that she does not bear the burden of proof on the question of causation, so her expert does not need to

testify regarding probable causation, but can simply offer alternative explanations to attack Plaintiffs' theory of causation.

As a defense rebuttal witness, Kim does not have to testify that the other possible explanations were the probable cause that Kazaa and the sound recordings at issue appeared to be on Defendant's computer.  See, e.g., Allen v. Brown Clinic, P.L.L.P., 531 F.3d 568, 574-75 (8th Cir. 2008) (holding that defense expert could testify as to other possible, but not necessarily probable, causes of plaintiff's injury, because, to require more would "unduly tie a defendant's hands in rebutting a plaintiff's case, where as here, plaintiff's expert testifies that no other cause could have caused plaintiff's injury," and would "impermissibly shift the burden of proof and require a defendant to 'disprove' a plaintiff's theory by a preponderance of the evidence") (citation omitted).  Because Kim is offered only as a rebuttal expert, and only opines regarding possibilities in his report, his testimony must be limited such that "remarks are made in rebuttal of Plaintiff's expert and are not done to establish a cause."  Morrison v. Stephenson, No. 2:06-CV-283, 2008 WL 618778, at *4 (S.D. Ohio Mar. 3, 2008).

Therefore, Kim can testify regarding the possible scenarios that can occur on a peer-to-peer network that would result in the incorrect user being identified

by MediaSentry.  Kim cannot opine regarding causation or what he thinks probably occurred in this case.

Plaintiffs note fourteen particular instances of Kim's testimony that they allege are unsupported and objectionable.  Because Kim's testimony is limited to rebuttal and he is not permitted to testify as to causation, the Court rejects most of Plaintiffs' arguments regarding admissibility.  The alleged lack of factual basis for many of Kim's opinions goes to credibility and provides ground for cross examination.  However, the Court does hold that Kim cannot testify based purely on speculation or when, beyond lacking evidence to support his theory, the record only contains evidence that makes his theory impossible, and, thus, unhelpful to the jury.  See Marmo v. Tyson Fresh Meats, Inc., 457 F.3d 748, 757 (8th Cir. 2006) ("Expert testimony is inadmissible if it is speculative, unsupported by sufficient facts, or contrary to the facts of the case.") (citation omitted).

Therefore, given the evidence that there is no wireless router involved in this case, the Court excludes Kim's opinion that it is possible that someone could have spoofed or hijacked Defendant's Internet account through an unprotected wireless access point.  Similarly, because Kim explicitly testified that this case does not involve any "black IP space," or any "temporarily unused" IP space

17

(Kim Dep. 110-11), he is not permitted to opine at trial that hijacking of black IP space or temporary unused IP is a possible explanation in this case.

In § 3.4 of his Report, Kim asserts that there is no evidence that the music files were "consciously placed" in the shared directory on Thomas-Rasset's computer or were willfully offered for distribution. Kim testified that he is not an expert in human behavior and that his opinion is based on nothing but "speculation." (Kim Dep. 127-28.) Although the Court grants Kim leeway to testify regarding possibilities, speculative testimony is still inadmissible. Because Kim admits that his opinion on this point is speculative, it is excluded.

In § 4.4 of Kim's report, he opines, "The KaZaA-reported IP address is not evidence that the machine running KaZaA is not behind a NAT device." However, Kim testified that he has no knowledge to support this opinion. (Kim Dep. 141-43.) He admits that he did obtain a functioning version of Kazaa and could have run it to observe its behavior, but chose not to. (Kim Dep. 144-45.) Kim admittedly has no knowledge to support his opinion regarding Kazaa's functioning and has not, in fact, observed Kazaa functioning – although he had the opportunity to do so. His opinion regarding Kazaa's functioning in this instance is excluded as not based on a reliable scientific method.

As to Kim's other opinions, the Court concludes that their alleged lack of foundation or improper factual basis goes to weight not admissibility.

## C.    Kim's Expertise

Plaintiffs argue that, while Kim is qualified in computer science, he has no experience with the Kazaa or Kazaa Lite file sharing programs or with the FastTrack file sharing network.  His only experience with Kazaa was his attempt to download the program and examine the interface in connection with this case.  He did not attempt to run the program or observe its behavior.  Plaintiffs conclude that, therefore, Kim is not qualified to testify on Kazaa, Kazaa Lite, or FastTrack.  Plaintiffs also argue that Kim is unqualified to opine regarding his examination of a forensic copy of Defendant's computer because of his lack of experience in computer forensics.

Defendant responds that Kim has conducted research and is an expert in peer-to-peer systems and network security.  Kim's education and background in computer science qualify him as an expert in general computer science.  Defendant admits that Kim has little experience with FastTrack, Kazaa, or Kazaa Lite, but argues that this is a universal problem because there have been few studies done of these programs in the academic community, particularly because

Kazaa is proprietary. Defendant argues that, somehow, Plaintiffs have a monopoly on Kazaa experts.

Kim is qualified in the general areas of computer science, peer-to-peer networks, and computer security. He is not specifically an expert in Kazaa, Kazaa Lite, or FastTrack. Here, Plaintiffs do not control Kazaa, FastTrack, or Kazaa Lite. In fact, Kim had a functioning copy of Kazaa, but chose not to test it. There is no institutional barrier to a computer science expert becoming expert in Kazaa without working with Plaintiffs.

Despite this fact, the Court holds that Kim is qualified to testify in this case. He is an expert in the general fields of peer-to-peer networks and computer security. Although he has not tested Kazaa, Kazaa Lite, or FastTrack firsthand, he has gained knowledge of these areas through his review of other academic studies, informed by his general expertise in peer-to-peer networks. Kim's failure to test of Kazaa, FastTrack, or Kazaa Lite goes to the weight and credibility of his opinions and will be grounds for cross examination.

### D.     Application of Rule 403

Plaintiffs also claim that Kim's testimony should be excluded under Federal Rule of Evidence 403.

## 1.    Rule 403 Standard

Federal Rule of Evidence 403 provides:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

"Because '[e]xpert evidence can be both powerful and quite misleading,' a trial court must take special care to weigh the risk of unfair prejudice against the probative value of the evidence under Fed. R. Evid. 403." Nichols v. Am. Nat'l Ins. Co., 154 F.3d 875, 884 (8th Cir. 1998) (quoting Daubert v. Merrell Dow Pharm., 509 U.S. 579, 595 (1993)).

## 2.    Application to Kim's Proposed Testimony

Plaintiffs argue that Kim's testimony has almost no value because he has no experience or training with Kazaa or the FastTrack network and because his opinions rely on speculative assumptions. They conclude that the probative value of his testimony is outweighed by the dangers of unfair prejudice to Plaintiffs, of confusing the issues, and of misleading the jury.

The Court has restricted Kim's testimony to exclude opinions on causation, opinions based on speculation, and opinions based on facts completely

contradicted by the record.  The basis for his remaining opinions can be tested

through cross examination.  Having weighed the probative value of Kim's

testimony as rebuttal against the dangers enumerated in Rule 403, the Court

concludes that Rule 403 does not justify additional exclusion.

**III.      Defendant's Unopposed Motion in Limine** [Docket No. 276]

As the Court orally ruled during the June 10 hearing, the parties shall refer

to the previous trial as "a prior proceeding."  The results of that trial shall not be

revealed to the jury.

**IV.      Plaintiffs' Motion in Limine to Preclude Defendant from Raising or
          Asserting Evidence of Other Lawsuits** [Docket No. 279]

Plaintiffs ask that the Court bar Defendant from introducing evidence

regarding other copyright lawsuits involving Plaintiffs.  As the Court explained

during June 10 hearing, it will reserve ruling on this motion because the type of

evidence that Defendant will be permitted to offer will depend upon the evidence

and arguments offered by Plaintiffs.  All parties are warned to abide by the Rules

of Evidence and Civil Procedure during trial.

**V.       Plaintiffs' Motion in Limine to Preclude Fair Use Defense** [Docket No.
          283]

Plaintiffs ask that Defendant be barred from asserting the fair use defense

because she failed to assert this affirmative defense until two weeks before trial and has waived the defense.

Fair use is an affirmative defense.  Campbell v. Acuff-Rose Music, Inc., 510 U.S. 569, 590 (1994) ("Since fair use is an affirmative defense, its proponent would have difficulty carrying the burden of demonstrating fair use without favorable evidence about relevant markets.") (footnotes omitted); Harper & Row Publ'rs, Inc. v. Nation Enters., 471 U.S. 539, 561 (1985) ("The drafters resisted pressures from special interest groups to create presumptive categories of fair use, but structured the provision as an affirmative defense requiring a case-by-case analysis.") (citations omitted).

Defendant's reliance upon Sony Corp. of America v. Universal City Studios, Inc., is misplaced.  464 U.S. 417 (1984).  In Sony, the Supreme Court did not hold that fair use is no longer an affirmative defense in non-commercial cases.  Moreover, both Campbell and Harper & Row were decided after – and both cited to – Sony and both explicitly provided that fair use is an affirmative defense.  The Supreme Court has explicitly rejected any fair use presumption based on commercial or non-commercial use.  See Campbell, 510 U.S. at 584 (discussing Sony and holding: "The language of the statute makes clear that the

commercial or nonprofit educational purpose of a work is only one element of

the first factor enquiry into its purpose and character. . . . As we explained in

Harper & Row, Congress resisted attempts to narrow the ambit of this traditional

enquiry by adopting categories of presumptively fair use, and it urged courts to

preserve the breadth of their traditionally ample view of the universe of relevant

evidence.") (citations omitted).

"Generally, failure to plead an affirmative defense results in a waiver of

that defense." First Union Nat'l Bank v. Pictet Overseas Trust Corp., Ltd., 477

F.3d 616, 622 (8th Cir. 2007) (citations omitted). However, "[w]hen an affirmative

defense is raised in the trial court in a manner that does not result in unfair

surprise, . . . technical failure to comply with Rule 8(c) is not fatal.'" Id. (citation

omitted).

In this case, the Court holds that Defendant has waived the affirmative

defense of fair use. Defendant failed to raise the fair use defense in her Answer,

at any time before the First Trial, during the First Trial, or at any time leading up

to this retrial until only two weeks before retrial. This litigation has gone on for

years, yet Plaintiffs had no inkling of this defense until the eve of trial. Because

Plaintiffs had no notice of this defense, they have taken no discovery regarding

Defendant's alleged fair use defense. The record in this case, with which this Court is intimately familiar, gave no hint that a fair use defense would be forthcoming. It would be highly prejudicial to Plaintiffs to allow Defendant to assert this new affirmative defense on the eve of retrial, when they have no opportunity to conduct discovery on this issue and long ago missed the opportunity to file a dispositive motion regarding this affirmative defense. The Court holds that Defendant has waived the fair use defense. Plaintiffs' motion is granted.

## VI. Plaintiffs' Motion in Limine to Preclude Defendant from Asserting an Innocent Infringement Defense at Trial [Docket No. 284]

Plaintiffs ask the Court to hold that Defendant cannot seek a reduction in statutory damages under 17 U.S.C. § 504, known as the innocent infringement defense. They claim that Thomas-Rasset has waived this defense by not asserting it until two weeks before trial and, in the alternative, the defense is barred because Plaintiffs placed proper copyright notices on published copies of their copyrighted works to which Thomas-Rasset had access.

At the June 10 hearing, Defendant informed the Court that she does not oppose Plaintiffs' motion. Therefore, Plaintiffs' motion is granted.

**VII.** **Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction** [Docket No. 310]

As the Court orally ruled during the June 10 hearing, Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction is denied at this time because the motion is premature.

Accordingly, based upon the files, records, and proceedings herein, **IT IS HEREBY ORDERED**:

1. Defendant's Motion to Suppress Evidence [Docket No. 263] is **DENIED**.

2. Plaintiffs' Motion in Limine to Exclude the Testimony of Defendant's Expert Dr. Yongdae Kim [Docket No. 272] is **GRANTED IN PART** and **DENIED IN PART** as set forth in this Order.

3. Defendant's Unopposed Motion in Limine [Docket No. 276] is **GRANTED** as set forth in this Order.

4. Plaintiffs' Motion in Limine to Preclude Defendant from Raising or Asserting Evidence of Other Lawsuits [Docket No. 279] is **RESERVED**.

5. Plaintiffs' Motion in Limine to Preclude Fair Use Defense [Docket No. 283] is **GRANTED**.

6. Plaintiffs' Motion in Limine to Preclude Defendant from Asserting an Innocent Infringement Defense at Trial [Docket No. 284] is **GRANTED**.

7.  Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction [Docket No. 310] is **DENIED WITHOUT PREJUDICE** as premature.


Dated:  June 11, 2009                    <u>s/Michael J. Davis</u>
                                         Michael J. Davis
                                         Chief Judge
                                         United States District Court