1

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| **CAPITOL RECORDS INC.; SONY BMG MUSIC ENTERTAINMENT; ARISTA RECORDS LLC; INTERSCOPE RECORDS; WARNER BROS. RECORDS INC.;** and **UMG RECORDINGS INC.**,<br><br>*Plaintiffs*,<br><br>v.<br><br>**JAMMIE THOMAS**,<br><br>*Defendant*. | Case No. 06-cv-1497 (MJD/RLE) |

# MOTION FOR A NEW TRIAL, REMITTITUR, AND TO ALTER OR AMEND THE JUDGMENT

K.A.D. Camara
Joe Sibley
Camara & Sibley LLP
2339 University Boulevard
Houston, Texas  77005
713 893 7973
713-583-1131 (fax)
camara@camarasibley.com

Garrett Blanchfield
Brant D. Penney
Reinhardt, Wendorf & Blanchfield
332 Minnesota Street, Suite E-1250
St. Paul, Minnesota  55101
651-287-2100
651-287-2103
g.blanchfield@rwblawfirm.com

    *Attorneys for Defendant Jammie Thomas*

Dated: July 6, 2009

1

**MOTION FOR A NEW TRIAL, REMITTITUR, AND TO
ALTER OR AMEND THE JUDGMENT**

The verdict in this case was shocking. For 24 songs, available for $1.29 on iTunes, the jury assessed statutory damages of $80,000 per song — a ratio of 1:62,015. For 24 albums, available for no more than $15 at the store, the jury assessed statutory damages of $80,000 per album — a ratio of 1:5,333. For a single mother's noncommercial use of KaZaA, and upon neither finding nor evidence of actual injury to the plaintiffs, the judgment fines Jammie Thomas $1.92 million. Such a judgment is grossly excessive and, therefore, subject to remittitur as a matter of federal common law. Moreover, such a judgment is inconsistent with the Due Process Clause of the United States Constitution. To the extent that such a judgment is permitted by the Copyright Act on evidence such as was presented in this Court, the statutory-damages provision of the Act offends the Constitution and is not law. Defendant Jammie Thomas respectfully requests that this Court (1) alter or amend the judgment under Rule 59(e) to remove the award of statutory damages; (2) order remittitur of the statutory-damages award to the statutory minimum; or (3) order a new trial on all issues under Rule 59(a).

Mrs. Thomas also intends to appeal this Court's order denying her motion to suppress all evidence collected by MediaSentry and this Court's order permitting the plaintiffs to prove the content of a registered sound recording without a certified copy — or any copy at all — of the sound recording deposited with the Copyright Office. Although Mrs. Thomas has preserved these evidentiary issues by motions and objections made before and at trial, Mrs. Thomas now, out of an abundance of caution and in an effort to give this Court a final opportunity to reconsider its order, moves for a new trial under Rule 59(a) on the ground that there is not sufficient admissible evidence to sustain

the jury's verdict because the evidence collected by MediaSentry should not have been admitted. If this Court does not wish to revisit this matter, which is confined to Part II of this motion, Mrs. Thomas respectfully requests this Court's indulgence in her attempt to ensure that all issues are fully preserved for appeal.

I. **THE JURY'S AWARD OF STATUTORY DAMAGES IS GROSSLY EXCESSIVE AND MUST BE SET ASIDE**

The statutory damages awarded in this case — which are nearly an order of magnitude greater than the statutory damages assessed in the first trial — bear no reasonable relation to the actual injury suffered by the plaintiffs. The damages awarded are grossly in excess of any reasonable estimate of that injury. The plaintiffs did not even attempt to offer evidence of their actual injuries, seeking, instead, an award of statutory damages entirely for purposes of punishment and deterrence. The closest they came was in identifying, mainly in arguments by counsel, injuries to their industry as a whole caused by illegal music sharing as a whole; when pressed, their witnesses — recall the testimony of Mr. Leak — were not able to attribute any particular part of this injury to Mrs. Thomas's alleged actions. An award of statutory damages of $1.92M for 24 songs assessed as punishment, not compensation, shocks the conscience and must be set aside.

This Court can set aside the award of statutory damages in at least three ways. First, Mrs. Thomas contends that the statutory-damages provision of the Copyright Act, as applied in her case, offends the Due Process Clause and is not law. If she is correct, then the statutory-damages portion of the verdict, which rests on this unconstitutional provision, must be set aside under Rule 59(e). Importantly, this would not be a remittitur, but the correction of an unconstitutional verdict: the plaintiffs are not entitled to elect a new trial, but, having declined to seek a jury finding on actual damages on which

3

judgment could be entered instead, must accept a take-nothing judgment. *See Corpus v. Bennett*, 430 F.3d 912, 916–17 (8th Cir. 2005); *Ross v. Kansas City Power & Light Co.*, 293 F.3d 1041, 1049–50 (8th Cir. 2002).

Second, in the alternative, Mrs. Thomas contends that even if the statutory-damages provision of the Copyright Act is constitutional, the jury's application of it in this case is excessive, shocking, and monstrous so that remittitur is appropriate as a matter of federal procedural law. *See Taylor v. Otter Tail Corp.*, 484 F.3d 1016, 1018–19 (8th Cir. 2007). Mrs. Thomas contends that even the minimum statutory damages, $18,000, which would result in punishment ratios of 1:581 in terms of $1.29 songs and 1:50 in terms of $15 albums, would be unconstitutional if assessed in her case. But if any award is appropriate, it would be the minimum. Accordingly, in the alternative, Mrs. Thomas seeks remittitur of the statutory-damages award to $18,000. Third, in the alternative, if this Court prefers to allow a third jury to select a different, lower, number, Mrs. Thomas respectfully requests a new trial on all issues.

### A. THE COPYRIGHT ACT'S STATUTORY-DAMAGES PROVISION IS UNCONSTITUTIONAL AS APPLIED IN THIS CASE

#### 1. Constitutional Limits on Civil Punishment

Civil damages imposed not to compensate, but to punish and deter, raise two concerns of constitutional moment. First, "[a]lthough these awards serve the same purposes as criminal penalties, defendants subjected to punitive damages in civil cases have not been accorded the protections applicable in a criminal proceeding." *State Farm Mutual Automobile Ins. Co. v. Campbell*, 538 U.S. 408, 417 (2003). Second, civil punishments too often subject the defendant to penalties determined not by the particular facts of a case, but by the "inherent uncertainty of the trial process"; what penalty the

4

defendant pays depends more on the jury she draws than on the conduct in which she engaged. *BMW of North America, Inc. v. Gore*, 646 So. 2d 619, 626 (1994) (*per curiam*) (describing disparity between $4M punitive-damages verdict by one Alabama jury and $0 punitive-damages verdict by different jury in case on same facts). "The real problem, it seems, is the stark unpredictability of punitive awards." *Exxon Shipping Co. v. Baker*, 128 S. Ct. 2605, 2625 (2008). In this case, this unpredictability is stark indeed: two different juries returned punitive awards that differ by almost an order of magnitude.

The Due Process Clause of the Fifth Amendment provides some protection against excessive and unpredictable punishments imposed in civil cases. In a line of cases stretching back well over 100 years, the Supreme Court has held that the Due Process Clause imposes substantive constraints on civil punishments and, in particular, on the relationship that damages imposed as punishment must bear to the actual injury proved by the plaintiffs. "[O]ur cases have announced due process standards that every award must pass." *Exxon Shipping Co. v. Baker*, 128 S. Ct. 2605, 2626 (2008); *Pacific Mutual Life Ins. Co. v. Haslip*, 499 U.S. 1, 18 (1991) ("We note once again our concern about punitive damages that 'run wild.'"). As early as 1919, the Supreme Court applied these standards in the context of a statutory penalty imposed in a civil case. *See St. Louis, I.M. & S. Ry. Co. v. Williams*, 251 U.S. 63, 66 (1919) ("That this clause places a limitation upon the power of the states to prescribe penalties for violations of their laws has been fully recognized."); *see also, e.g., Murray v. Cingular Wireless II, LLC*, 242 F.R.D. 415, 421 (N.D. Ill. 2005) ("it is true that a grossly excessive statutory damages award creates a due process problem").

A civil punishment is unconstitutional when it is "grossly excessive" in relation to the Government's legitimate interests in punishing and deterring unlawful conduct. *BMW v. Gore*, 517 U.S. 559, 568 (1996). In determining whether a civil punishment is grossly excessive, courts "consider three guideposts: (1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases." *Campbell*, 538 U.S. at 418. Because the punitive award in this case is pursuant to a statutory scheme, the first two factors are the most relevant.

> The most important of the three factors is the first, reprehensibility.
>
> We have instructed courts to determine the reprehensibility of a defendant by considering whether: the harm caused was physical as opposed to economic; the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others; the target of the conduct had financial vulnerability; the conduct involved repeated actions or was an isolated incident; and the harm was the result of intentional malice, trickery, or deceit, or mere accident.

*Id.* at 419. Here, Mrs. Thomas did no physical harm; any harm that occurred was purely economic, to the tune of $1.29 for each of the 24 songs or $15 for each of the 24 albums at issue. *See also Wechsberg v. United States*, 54 Fed. Cl. 158, 167 (Fed. Cl. 2002) (requiring plaintiffs to offer evidence of actual injuries if these are used to justify an award of statutory damages higher than the minimum). Her conduct did not evince any indifference or reckless disregard for the health of safety of others since, again, any harm she did was purely economic. And the targets of her conduct are the largest recording companies in the United States and are hardly financially vulnerable relative to those plaintiffs — maimed children, for example — who we think of as most deserving of punitive damages. The remaining two factors, even if read to favor the recording

6

companies, show only that Mrs. Thomas repeatedly and intentionally did something minor. They cannot support an award of $1.92 million by themselves.

The second *Gore* factor is the factor commonly expressed in ratios of punitive to actual damages: "the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award." *Campbell*, 538 U.S. at 418. Although the Supreme Court has declined to state a bright-line rule about the maximum permissible ratio, it has repeatedly held that "few awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process." *Id.* at 425. Even if, on occasion, awards with two-digit or even three-digit ratios are permissible, the damages award in this case, with its four-digit ratio looked at by album and five-digit ratio looked at by song is nowhere close to constitutionally permissible. "In sum, courts must ensure that the measure of punishment is both reasonable and proportionate to the amount of harm to the plaintiff and to the general damages recovered." *Id.* at 426.

Importantly, the legitimate interests in relation to which a civil penalty must be reasonable are those related to punishing and deterring a defendant for *her* conduct and the injury that she caused to *the plaintiffs*. It is unconstitutional to impose a civil penalty on a defendant for either the conduct of others or her own conduct that harmed those who are not plaintiffs. *See Philip Morris USA v. Williams*, 549 U.S. 346, 353–54 (2007). The plaintiffs in this case repeatedly argued that, in selecting what damages were appropriate, the jury should consider not only the harm to the recording companies, but also to artists creating music (who the recording companies' representatives repeatedly testified are independent third parties, not employees) and to consumers of music. The award of

7

statutory damages in this case cannot be based on any alleged injury to these nonparties any more than it could be based on the harm to the recording industry caused not by Mrs. Thomas's particular conduct, but by the widespread and generalized problem of illegal music downloading.

A useful analogy is to class actions under statutes that impose statutory-damage minimums. In that setting (as in the context of federal drug crimes), the aggregation of claims may make a statutory minimum that is reasonable in the context of a single claim grossly excessive in the context of the class action, so that, as applied, the statutory-damages provision is unconstitutional. *See, e.g., Kline v. Coldwell Banker & Co.*, 508 F.2d 226, 235 (9th Cir. 1974); *Blanco v. CEC Entertainment Concepts L.P.*, No. CV-07-0559-GPS, 2008 WL 239658 at *2 (C.D. Cal. 2008); *Parker v. Time Warner Entertainment Co., L.P.*, 331 F.3d 13, 22 (2d Cir. 2003); *Serna v. Costco Wholesale Corp. Inc.*, No. CV-07-1491-AHM, 2008 WL 234197 at *1 (C.D. Cal. 2008); *Azoiani v. Love's Travel Stops & Country Stores, Inc.*, No. CV-07-90-ODW, 2007 WL 4811627 at *4–*5 (C.D. Cal. 2007); *Najarian v. Avis Rent A Car System*, No. CV-07-588-RGK, 2007 WL 4682071 at *4–*5 (C.D. Cal. 2007). Had the recording companies sued on all the songs they claim to have found on Mrs. Thomas's computer, the verdict would have been $136,240,000. This does not show that they are "being reasonable" by seeking only $1.92M; it shows, rather, that $80,000 per song is a grossly excessive and therefore unconstitutional civil penalty.

### 2. Judicial Review of the Amount of Civil Penalties is Constitutionally Required

There is nothing untoward about a judge using his judgment to restrict a jury's award of statutory damages; to the contrary, judicial review of the amount of civil

punishments is constitutionally required. Although the amount of statutory damages is committed in the first instance to the jury, and, because of the Seventh Amendment, the jury's verdict cannot be increased, the constitutionality of civil punishments depends on their being subject to judicial review. So the Supreme Court held in *Honda Motor Co. v. Oberg*, 512 U.S. 415, 420–21 (1994), in which the Court recognized and distinguished two kinds of protections granted by the Due Process Clause to defendants who face civil penalties. First, "[o]ur recent cases have recognized that the Constitution imposes a substantive limit on the size of punitive damages awards." *Id.* at 420. Second, due process requires that any jury award be subject to judicial review:

> A decision to punish a tortfeasor by means of an exaction of exemplary damages is an exercise of state power that must comply with the Due Process Clause of the Fourteenth Amendment. The common-law practice, the procedures applied by every other State, the strong presumption favoring judicial review that we have applied in other areas of the law, and elementary considerations of justice all support the conclusion that such a decision should not be committed to the unreviewable discretion of a jury.

*Id.* at 434–35.

The judgment in this case must ultimately be one made not only by the jury, but by this Court in the exercise of its independent judgment. Revisiting the question in 2001, the Supreme Court again affirmed that civil penalties are subject to *de novo* review and that judicial review of the amount of a civil penalty is a constitutional requirement. "Unlike the measure of actual damages suffered, which presents a question of historical or predictive fact, the level of punitive damages is not really a 'fact' 'tried' by the jury. Because the jury's award of punitive damages does not constitute a finding of 'fact,' appellate review of the district court's determination that an award is consistent with due process does not implicate the Seventh Amendment." *Cooper Industries v. Leatherman Tool Group Inc.*, 532 U.S. 424, 437 (2001). Judicial review of the jury's selection of a

civil penalty from within the statutory range is not only permissible, but constitutionally required.

    **B.    ALTERNATIVELY, THE STATUTORY DAMAGES IN THIS CASE SHOCK THE CONSCIENCE SUCH THAT REMITTITUR IS REQUIRED**

For the same reasons, this Court should, in the alternative, order remittitur of the statutory damages in this case to the minimum amount permitted by statute, which is $18,000. Remittitur is appropriate where the result on a verdict "is monstrous or shocking." *Thorne v. Welk Investment, Inc.*, 197 F.3d 1205, 1211–12 (8th Cir. 1999); *Jenkins v. McLean Hotels, Inc.,* 859 F.2d 598, 600 (8th Cir. 1988). Here, where the punishment ratios are 1:62,015 measured in songs and 1:5,333 measured in albums, the verdict is both monstrous and shocking. Mrs. Thomas was a single mother who, at worst, downloaded and shared some music on KaZaA, music for which she had already lawfully purchased the CD's, without any hint at all of a commercial motive. Her wrongdoing is a far cry from that which normally results in a $1.92 million verdict. Even if this Court rejects Mrs. Thomas's constitutional arguments, it should exercise its discretion to reduce the award of statutory damages to the statutory minimum.

**II.    THERE IS INSUFFICIENT ADMISSIBLE EVIDENCE THAT MRS. THOMAS'S COMPUTER WAS INVOLVED IN THE FILE SHARING AT ISSUE BECAUSE THE EVIDENCE COLLECTED BY MEDIA SENTRY IS INADMISSIBLE.**

In a pretrial motion to suppress, Mrs. Thomas argued that all the evidence collected by Media Sentry should have been suppressed because that evidence was collected illegally and in violation of the rules of professional conduct. Rather than restate the arguments already made at length in the papers and at oral argument, Mrs. Thomas incorporates that motion and her reply in support of that motion and all exhibits

thereto into this motion by reference as though fully set out here.  *See* Docket Nos. 263 (Motion to Suppress), 308 (Reply in Support of Motion to Suppress).  This Court denied Mrs. Thomas's motion to suppress.  Mrs. Thomas intends to appeal this Court's original order denying her motion on grounds not identified in this motion for new trial and does not intend to waive any grounds for appeal by limiting her argument here.

This Court's opinion denying the motion to suppress rests on this Court's conclusion that Media Sentry did not violate any law in its investigation of Mrs. Thomas.  But, as to the private detectives acts, this Court focused only on the Minnesota statute, which it held was not applicable to Media Sentry's activities because Media Sentry's operatives were physically located outside Minnesota.  *See* Order at 6–7.  At trial, the Media Sentry representative testified that he was operating in New Jersey when he raided Mrs. Thomas's computer.  And in Mrs. Thomas's reply brief in support of her motion to suppress, she explained that even if this Court held that either New Jersey or Maryland law were applicable, the private detectives acts in those states would also have rendered Media Sentry's activities illegal:

> Neither MediaSentry nor Plaintiffs have disclosed the location of MediaSentry's activities in February 2005.  Media reports in 2005 indicate that MediaSentry most likely conducted its activities from either New Jersey or Maryland.  Both New Jersey and Maryland have private investigator and wiretap statutes that MediaSentry would have violated if it conducted its activities from these states.  *See* N.J. Stat. §§ 45:19, 2A:156A-2; Md. Code, Business Occupations & Professions § 13-801; Md. Code, Courts & Judicial Proceedings § 10-402.

Reply Br. at 6–7.  Accordingly, Media Sentry's activities were illegal even if this Court does not agree with Mrs. Thomas that Media Sentry was subject to the Minnesota Private Detectives Act.

Without the evidence collected by Media Sentry, there would be insufficient evidence to support a verdict of liability. This Court should therefore order a new trial under Rule 59.

## III. CONCLUSION

Even the plaintiffs were shocked by the verdict. No one could have expected $1.92 million for 24 songs. That alone justifies remittitur; at a minimum, Mrs. Thomas should no be subjected to a penalty that no reasonable person could have expected would flow from the noncommercial music sharing of which she stands convicted. But the verdict reveals a deeper problem with the statutory-damages scheme of the Copyright Act as applied in cases like Mrs. Thomas's. The Act does not distinguish, in determining the range of statutory damages, between commercial and noncommercial infringers, between those who infringe for great profit and those who do so for personal use, between someone who steals and reprints President Ford's memoirs and someone who downloads Richard Marx — all these distinctions are left to the unguided discretion of the jury. The only way in which a scheme like this can be constitutional is if the jury's awards are subject to judicial review.

That review is guaranteed by the Due Process Clause, under which this Court and the Court of Appeals must each ensure that the civil penalty imposed bears a reasonable relation to the actual injury proved by the plaintiffs to have been caused by the defendant. *See Oberg*, 512 U.S. at 420–21; *Cooper Industries*, 532 U.S. at 437. Absent such a connection, measured using the guideposts of the reprehensibility factors — was there bodily injury? was the plaintiff financially vulnerable? — and the punishment ratios — no more than single digits in ordinary cases and no more than two-digit or three-digit

ratios in the whole history of the federal courts, a civil punishment is grossly excessive and therefore unconstitutional. The judgment in this case is far beyond what any reasonable person could have predicted. It is for this Court to reduce it appropriately.

Respectfully submitted,

/s/ K.A.D. Camara
K.A.D. Camara
Joe Sibley
Camara & Sibley LLP
2339 University Boulevard
Houston, Texas 77005
713 893 7973
713-583-1131 (fax)
camara@camarasibley.com

Garrett Blanchfield, Jr., 209855
Brant D. Penney
Reinhardt, Wendorf & Blanchfield
332 Minnesota Street, Suite E-1250
St. Paul, Minnesota 55101
651-287-2100
651-287-2103
g.blanchfield@rwblawfirm.com

*Attorneys for Defendant Jammie Thomas*

Dated: July 6, 2009