## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MINNESOTA

CAPITOL RECORDS INC., *et al.*,                    )
                                                   )
                                Plaintiffs         )
                                                   )
                v.                                 )        Civil Action No. 06-cv-1497
                                                   )
JAMMIE THOMAS,                                     )
                                                   )
                                Defendant          )
                                                   )

### UNITED STATES OF AMERICA'S MEMORANDUM IN DEFENSE OF THE CONSTITUTIONALITY OF THE STATUTORY DAMAGES PROVISION OF THE COPYRIGHT ACT, 17 U.S.C. § 504(c)

### INTRODUCTION

In a post-trial brief, defendant has made an as-applied challenge to the constitutionality of the statutory damages provision of the Copyright Act, 17 U.S.C. § 504(c).  Defendant has moved the Court to either (1) alter or amend the judgment entered on June 19, 2009, on the grounds that the jury's statutory damages award is unconstitutional; (2) remit the award under the common-law doctrine of remittitur; or (3) grant a new trial on all issues because, in part, certain evidence should not have been admitted.  The United States files this memorandum to defend the constitutionality of 17 U.S.C. § 504(c).

The United States does not express an opinion regarding whether defendant has satisfied the standard for remittitur or is entitled to a new trial under Rule 59 due to an alleged mistaken evidentiary ruling.  Under the doctrine of constitutional avoidance,

however, the United States respectfully submits that this Court should resolve these non-constitutional grounds for challenging the jury's verdict *before* deciding the constitutional question.

If it is necessary to reach the constitutional question to resolve defendant's motion, then defendant's motion should be rejected because Congress' carefully crafted statute satisfies the Due Process Clause. As an initial matter, defendant has misstated the proper legal standard for determining the constitutionality of a statutory damages award. Defendant incorrectly contends that this Court should rely on the Supreme Court's punitive damages jurisprudence. *See* Defendant's Motion for a New Trial, Remittitur, and to Alter or Amend the Judgment (Dkt. #344) ("Def's Mem.") at 4, 6 (citing *State Farm Mutual Automobile Ins. Co. v. Campbell*, 538 U.S. 408 (2003), and *BMW of North Am., Inc. v. Gore*, 517 U.S. 559 (1996)). The correct standard for determining whether such an award violates due process was set forth by the Supreme Court in *St. Louis, I.M. & S. Ry. Co. v. Williams*, 251 U.S. 63, 67 (1919). This deferential standard is significantly less demanding than the standard applicable to punitive damages. Under *Williams*, a court is to examine whether an award within a statutory range is "so severe and oppressive as to be wholly disproportioned to the offense and obviously unreasonable" by considering whether Congress has given "due regard for the interests of the public, the numberless opportunities for committing the offense, and the need for securing uniform adherence to [the law]." *Williams*, 251 U.S. at 67.

-2-

The application of the Copyright Act's statutory damages provision in this case withstands constitutional scrutiny under the test adopted by the Supreme Court in *Williams*. In enacting the current statutory damages provision of the Copyright Act, Congress has given such regard to the public's interests, the opportunity to repeatedly commit this statutory violation, and the need to ensure adherence to the law. *Id.* at 67. Congress has established a regime to protect intellectual property that dates back to before the beginning of the Republic. The current damages range provides compensation for copyright owners because, *inter alia*, there exist situations in which actual damages are hard to quantify. Furthermore, in establishing that range, Congress took into account the need to deter the millions of users of new media from infringing copyrights in an environment where many violators believe that they will go unnoticed. Accordingly, the statutory range specified by Congress for a copyright infringement satisfies due process.

## **BACKGROUND**

### I.   **Statutory Background**

The remedy of statutory damages for copyright infringement dates back to the Statute of Anne in 1710. *See Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340, 349 (1998). "In 1783, the Continental Congress passed a resolution recommending that the States secure copyright protections for authors." *Id.* at 350. Three of the twelve States that responded to this resolution "specifically authorized an award of damages from a statutory range, just as § 504(c) does today." *Id.* at 351.

An award of statutory damages for copyright infringement was first authorized under U.S. federal law almost immediately following the adoption of the Constitution. Under the Copyright Act of 1790, enacted by the First Congress, each infringer of a copyright was liable for "the sum of fifty cents for every sheet which shall be found in his or their possession." 1 Stat. 124, 125 (1790). Each subsequent modification of the Copyright Act has maintained a statutory damages provision.

The statutory damages provision at issue in this case was first enacted as part of the Copyright Act of 1976, and the amounts have been adjusted twice since that time, most recently in 1999. *See* Digital Theft Deterrence and Copyright Damages Improvement Act of 1999, Pub. L. No. 106-160, § 2 (1999). Under the Copyright Act of 1976, and the law in effect today, "an infringer of copyright is liable for either -- (1) the copyright owner's actual damages and any additional profits of the infringer" or (2) "statutory damages." 17 U.S.C. § 504(a). The copyright owner may elect to recover statutory damages instead of actual damages and profits at any time before final judgment is rendered. *Id.* § 504(c)(1).

Under the 1976 law, if the copyright violation was not willful, the copyright owner was entitled to recover statutory damages of between $250 and $10,000 per infringed work. Pub. L. No. 94-553, § 22 (1976). If the violation was willful, the maximum statutory damages award increased to $50,000 per work. *Id.* In the 1999 amendment, Congress increased the statutory damages range to its current level: between $750 and

$30,000 per infringed work in cases involving non-willful violations, with a maximum of $150,000 per infringed work for willful violations. *See* Pub. L. No. 106-160, § 2; *see also* 17 U.S.C. 504(c).[1] Congress explained that the increase was necessary not just to adjust for inflation but also because:

> Many computer users are either ignorant that copyright laws apply to Internet activity, or they simply believe that they will not be caught or prosecuted for their conduct. Also, many infringers do not consider the current copyright infringement penalties a real threat and continue infringing, even after a copyright owner puts them on notice that their actions constitute infringement and that they should stop the activity or face legal action.

H.R. Rep. 106-216, at 3 (1999).

## II.    Procedural Background

On April 19, 2006, plaintiffs filed this action for copyright infringement. *See* Dkt. #1. After discovery and trial, a first jury found that defendant had willfully infringed 24 copyrights owned by plaintiffs and awarded $9,250 per infringement for a total of $222,000. *See* Dkt. # 106. Defendant moved to set aside that verdict or have a new trial based on, in part, a challenge to the constitutionality of the jury's statutory damages award. *See* Dkt. # 109. The United States moved to intervene, which this Court granted, to defend the constitutionality of the statutory damages provision. *See* Dkt. #s 129, 134. This Court did grant the motion for a new trial but did so on non-constitutional grounds.

---

[1] An intermediate amendment of the 1976 Act set the range at $500 to $20,000, with a willfulness enhancement of up to $100,000. 102 Stat. 2853, 2860 (1988).

*See* Dkt. # 197.

After a second trial, the jury awarded plaintiffs $1.92 million in statutory damages

– $80,000 for each of the 24 songs for which the jury found plaintiff had willfully

infringed a copyright. *See* Dkt. #338. Defendant again has moved for a new trial,

remittitur, and to alter or amend the judgment, *see* Def's Mem., and defendant again has

challenged the constitutionality of the Copyright Act's statutory damages provision as

applied here. *Id.* In addition, defendant asserts that the Court should, alternatively,

reduce the award under the "common law" doctrine of remittitur or should award a new

trial because the Court allegedly admitted inadmissible evidence. *See* Def's Mem. at 2.

Now that the constitutional issue has been raised again, the United States files this brief to

defend the constitutionality of a federal statute.

## ARGUMENT

## I.   THIS COURT SHOULD FIRST DETERMINE WHETHER THE CONSTITUTIONAL QUESTIONS RAISED BY DEFENDANT CAN BE AVOIDED.

As her first argument for vacating the jury's award, defendant contends that the

jury's award within the Copyright Act's statutory damages range is unconstitutional. *See*

Def's Mem. at 4. It is well-settled, however, that a court should only reach the merits of a

constitutional question if it is necessary to decide a case before it. *See Lyng v. Northwest*

*Indian Cemetery Protective Ass'n*, 485 U.S. 439, 445 (1988) ("A fundamental and

longstanding principle of judicial restraint requires that courts avoid reaching

constitutional questions in advance of the necessity of deciding them."); *see also Feltner*, 523 U.S. at 345-47 (reaching the constitutional question after determining that the statute cannot be construed in a way that would avoid the necessity of reaching that constitutional question); *U.S. v. Allen*, 406 F.3d 940, 946 (8th Cir. 2005) ("When we are confronted with several possible grounds for deciding a case, any of which would lead to the same result, we choose the narrowest ground in order to avoid unnecessary adjudication of constitutional issues").

In this case, the Court may be able to avoid the constitutional question by deciding defendant's motion on grounds that do not implicate the constitutionality of the Copyright Act's statutory damages provision or, at the very least, the constitutionality of the jury award of $80,000 per infringement. For example, this Court may agree with defendant's argument that a new trial should be granted because of the admission of evidence that defendant argues should not have been admitted. *See* Def's Mem. at 10-12. Or this Court may decide that defendant has met the standard for common-law remittitur. *Id.* at 10.

The Copyright Act does not eliminate the discretion a trial judge otherwise has under common law to remit a jury award of statutory damages, so long as the remitted damages remain within the statutory range. If the Court determines that remittitur is required, it may exercise its "discretion," 17 U.S.C. § 504(c)(2), and award a different amount within the statutory range that the Court deems "just," 17 U.S.C. § 504(c)(1). *See F.W. Woolworth Co. v. Contemporary Arts, Inc.*, 344 U.S. 228, 232 (1952) (holding that

-7-

in the context of an earlier version of the Copyright Act "the court's conception of what is just in the particular case, considering the nature of the copyright, the circumstances of the infringement and the like, is made the measure of the damages to be paid, but with the express qualification that in every case the assessment must be within the prescribed limitations, that is to say, neither more than the maximum nor less the minimum. *Within these limitations the court's discretion and sense of justice are controlling.*") (emphasis added) (citation omitted); *see also Superior Forms Builder, Inc. v. Dan Chase Taxidermy Supply Co., Inc.*, 74 F.3d 488, 496-97 (4th Cir. 1996) (identifying several factors a court may use to review a jury's damages award within the statutory range).[2]

This Court, however, should reject defendant's attempt to have this Court address the constitutional question *before* deciding whether defendant meets the non-constitutional standard for remittitur. *See* Def's Mem. at 10 ("Even if this Court rejects Mrs. Thomas's constitutional arguments, it should exercise its discretion to reduce the award of statutory damages to the statutory minimum."). Should the Court remit the award to a figure lower than the $80,000 per infringement that the jury awarded, it would be unnecessary to answer the question of whether the particular $1.92 million verdict in

---

[2]Although the Supreme Court has held that there is a Seventh Amendment right to a jury trial to decide the proper damages award in a copyright case, *see Feltner*, 523 U.S. 340, this Circuit has found outside of the copyright context that a district court may remit an award even when there is such a Seventh Amendment right to a jury trial as long as it offers a plaintiff the opportunity to accept the remitted amount or elect to have a new trial. *See Thorne v. Welk Inv., Inc.*, 197 F.3d 1205, 1212 (8th Cir. 1999).

this instance is unconstitutional.[3] This discussion is not to suggest an answer of whether the award should be remitted in this particular case, but rather to suggest that an answer to such a question should precede any resolution of Mrs. Thomas's constitutional arguments.

## II.   THE COPYRIGHT ACT'S STATUTORY DAMAGES PROVISION SATISFIES DUE PROCESS.

Should the Court find it necessary to address defendant's constitutional challenge after considering common-law remittitur, it should hold that an award pursuant to the Copyright Act's statutory damages provision comports with due process. Indeed, the statutory benchmark for awarding statutory damages (a "just" amount within the statutory range, 17 U.S.C. § 504(c)(1)), is as favorable to the defendant (if not more favorable) than the constitutional limit set by *Williams*, under which a court may strike down a statutory award as a violation of due process only if it is "so severe and oppressive as to be wholly disproportioned to the offense [or] obviously unreasonable" because Congress has not given "due regard for the interests of the public, the numberless opportunities for committing the offense, and the need for securing uniform adherence to [the law]." *Williams*, 251 U.S. at 67. It follows, therefore, that any award within the statutory range

---

[3] Defendant also suggests that the statutory minimum would be unconstitutional, *see* Def's Mem. at 4, but this Court should first determine on non-constitutional grounds what is the actual award before examining the constitutional question. Nevertheless, as explained below, *see infra* at 15-24, the statutory minimum satisfies due process as it is within the statutory range that Congress established after giving "due regard for the interests of the public, the numberless opportunities for committing the offense, and the need for securing uniform adherence to [the law]." *Williams*, 251 U.S. at 67.

that a jury originally finds as "just," or that the Court considers "just" after remitting the

original award for being "grossly excessive" as to create a "plain injustice" or a

"monstrous" or "shocking result," *see Eich v. Borad of Regents for Cent. Missouri State*

*Univ.*, 350 F.3d 752, 763 (8th Cir. 2003) (quotation omitted), necessarily satisfies the

constitutional review standard of *Williams*.  Accordingly, this Court should reject any

attempt by defendant to challenge the constitutionality of the statutory damages provision.

### A.   Courts Examine Statutory Damages Awards Under The Standard Articulated By The Supreme Court In *Williams.*

In arguing that the jury award in this case violates due process, defendant

erroneously relies on the Supreme Court's punitive damages jurisprudence, *see Def's*

Mem. at 6 (citing, e.g., *BMW of North Am., Inc. v. Gore*, 517 U.S. 559, 574–75 (1996)).

That line of authority does not provide the appropriate standard for determining whether

statutory damages awards violate the Due Process Clause.  Rather, the applicable standard

is set forth in *Williams*.  251 U.S. at 64, 67 (holding that a statutory damages award of

$75, for a violation that resulted in actual damages of only 66 cents, was within the

statutorily-authorized range of $50 to $300 and did not violate due process).  The

*Williams* standard is quite distinct from, and much more deferential than, the framework

articulated in *Gore*.[4]

---

[4] The *Gore* framework assesses an award of punitive damages based on (1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded by the jury and civil penalties

The framework articulated in *Gore* for assessing punitive damages is not

applicable to statutory damages because the two remedies are distinct.  Punitive damages

are awarded by a jury to punish a wrongdoer; the jury's discretion in choosing an amount

is usually unconstrained.  Statutory damages, on the other hand, exist in large part to

compensate victims of wrongdoing in areas where actual damages are difficult to

calculate or prove.  *See Lowry's Reports, Inc. v. Legg Mason, Inc.*, 302 F. Supp. 2d 455,

460 (D. Md. 2004).  The discretion in choosing an amount of statutory damages,

moreover, is constrained by the carefully crafted statute.  As a result of these differences,

statutory damages do not implicate the due process issue of fair notice and unconstrained

discretion that concerned the Supreme Court in *Gore, see Gore*, 517 U.S. at 574

("Elementary notions of fairness enshrined in our constitutional jurisprudence dictate that

a person receive fair notice not only of the conduct that will subject him to punishment,

but also of the severity of the penalty[.]"); rather, a statutory damages provision by its

nature puts individuals on notice of a specific range of damages to which they may be

subject, *see id.* at 595 (Breyer, J., concurring) (noting the absence of "legislative

enactments [in *Gore*] that classify awards and impose quantitative limits that would

significantly cabin the fairly unbounded discretion created by the absence of constraining

legal standards"); *Lowry's Reports*, 302 F. Supp. 2d at 460 ("The unregulated and

arbitrary use of judicial power that the *Gore* guideposts remedy is not implicated in

---

authorized or imposed in comparable cases.  517 U.S. at 575.

Congress' carefully crafted and reasonably constrained [Copyright] statute."); *DirecTV, Inc. v. Cantu*, 2004 WL 2623932, at *4–*5 (W.D. Tex. Sept. 29, 2004) (rejecting due process claim and distinguishing *Gore* from statutory damages context because "fair notice is not a concern here"); *Accounting Outsourcing, LLC v. Verizon Wireless Pers. Commc'n, L.P.*, 329 F. Supp. 2d 789, 808–10 (M.D. La. 2004) (same).[5]

Indeed, attempting to apply the *Gore* framework to statutory damages further demonstrates that ill fit. It does not make sense in the context of statutory damages to examine the disparity between the actual damages suffered by a plaintiff and the punitive damages award as required by *Gore*, *see Gore*, 517 U.S. at 575, because statutory damages may only be awarded when a plaintiff forgoes the right to recover actual damages, *Lowry's Reports*, 302 F. Supp. 2d. at 460, and are, in fact, a substitute or proxy for actual damages. Furthermore, statutory damages compensate those wronged in areas in which actual damages are hard to quantify in addition to providing deterrence to those inclined to commit a public wrong. *F.W. Woolworth*, 344 U.S. at 233 ("The statutory rule, formulated after long experience, not merely compels restitution of profit and reparation for injury but also is designed to discourage wrongful conduct."); *see also, e.g., Texas v. American Blastfax, Inc.*, 121 F. Supp. 2d 1085, 1090 (W.D. Tex. 2000) (the

---

[5] Contrary to defendant's assertion, statutory damages are not unpredictable. *See* Def's Mem. at 5. When Congress has established a range, an individual is on notice that he or she may be liable at the maximum of the range. Copyright infringers are on notice that they may be liable for up to $150,000 per infringement if they have committed willful conduct. *See* 17 U.S.C. § 504(c).

Telephone Consumer Protection Act "was meant to '*take into account the difficult to quantify business interruption costs* imposed upon recipients of unsolicited fax advertisements, effectively deter the unscrupulous practice of shifting these costs to unwitting recipients of junk faxes, and provide adequate incentive for an individual plaintiff to bring suit on his own behalf.'") (quoting *Kenro, Inc. v. Fax Daily, Inc.*, 1162, 1166 (S.D. Ind. 1997)) (emphasis added) (quotations omitted).  Defendant's suggestion that the actual harm can be measured to "the tune of $1.29 for each of the 24 songs or $15 for each of the 24 albums at issue," *see* Def's Mem. at 6, ignores the potential multiplying effect of peer-to-peer file sharing. *See Anderson v. Atlantic Recording Corp. v. Anderson*, 2008 WL 2316551 at *9 (S.D. Tex. March 12, 2008) ("there is no way to ascertain the precise amount of damages caused by Defendant's actions in not only improperly downloading Plaintiffs' Copyrighted Recordings himself but also subsequently distributing some or all of Plaintiffs' Copyrighted Recordings to a vast community of other persons on KaZaA.").

A further indication that the Supreme Court did not intend for its punitive damages jurisprudence to apply to statutory damages is that the *Gore* guideposts specifically compare a punitive damages award to civil penalties available for comparable conduct. *See Gore*, 517 U.S. at 575; *id.* at 583 ("[A] reviewing court engaged in determining whether an award of punitive damages is excessive should accord substantial deference to legislative judgments concerning appropriate sanctions for the conduct at issue.")

(quotations omitted). Thus, even in *Gore*, the case defendant relies on, the Supreme Court differentiates statutory damages based on legislative judgments, which are to be accorded "substantial deference," from punitive damages awards. Indeed, applying this guidepost from *Gore* in the context of statutory damages would be a tautology: a statutory damages award is by definition within the statutory range set by Congress.

Courts have consistently applied the *Williams* standard, rather than punitive damages jurisprudence, in assessing the constitutionality of statutory damages. *See Zomba Enters., Inc. v. Panorama Records, Inc.*, 491 F.3d 574, 587–88 (6th Cir. 2007) (concluding application of the Copyright Act's statutory damages provision did not violate the *Williams* standard); *Centerline Equip. v. Banner Personnel Services, Inc.*, 545 F. Supp. 2d 768, 777–78 (N.D. Il.) (applying the *Williams* standard to uphold the statutory damages provision of the Telephone Consumer Protection Act); *Accounting Outsourcing*, 329 F. Supp. 2d at 808–10 (same); *Texas v. American Blastfax, Inc.*, 121 F. Supp. 2d at 1091 (same); *see also United States v. Citrin*, 972 F. 2d 1044, 1051 (9th Cir. 1992) ("A statutorily prescribed penalty violates due process rights only where the penalty prescribed is so severe and oppressive as to be wholly disproportioned to the offense and obviously unreasonable.") (quotation omitted)). This Court likewise should apply the *Williams* standard in assessing the constitutionality of the application of the Copyright Act's statutory damages provision in this case.

**B.     The Copyright Act's Statutory Damages Provision Satisfies The
        *Williams* Standard.**

The *Williams* standard is extremely deferential and does not turn on a particular

ratio between statutory and actual damages. *See Zomba*, 491 F.3d at 587 (describing the

*Williams* standard as "extraordinarily deferential—even more so than in cases applying

abuse-of-discretion review") (citing *Douglas v. Cunningham*, 294 U.S. 207, 210 (1935)

("[E]mployment of the statutory yardstick, within set limits, is committed solely to the

court which hears the case, and this fact takes the matter out of the ordinary rule with

respect to abuse of discretion."))[6] Rather, "[t]he ultimate question" according to

*Williams* is "whether a penalty" within the statutory range is "so severe and oppressive as

to be wholly disproportioned to the offense and obviously unreasonable." *See Williams*,

251 U.S. at 66-67. And to make such a determination, a court is to examine whether a

legislature has given "due regard for the interests of the public, the numberless

opportunities for committing the offense, and the need for securing uniform adherence to

[the law]." *Id.* at 67. Defendant's constitutional attack on an award within the Copyright

Act's statutory range fails under this standard and should be rejected.

Dating back to the middle of the 17th century, "the common law recognized an

author's right to prevent the unauthorized publication of his manuscript" because of "the

---

[6] The Sixth Circuit did use an objective ratio test in *Zomba* and found that a ratio
of 44:1 of statutory damages to actual damages did not violate due process given that the
ratio in *Williams* was 113:1. *See Zomba,* 491 F.3d at 588. But, as in this case, actual
damages are not always calculable.

principle that the manuscript was the product of intellectual labor and was as much the author's property as the material on which it was written." *Feltner*, 523 U.S. at 349. The first Congress recognized the need to protect this intellectual labor by enacting a federal statutory damages provision for copyright infringement in 1790. *See* Copyright Act of 1790, 1 Stat. 124, 125. Federal copyright law has authorized the awarding of statutory damages for copyright infringement in some form ever since, and the Court should defer to Congress' historical application of these provisions. *See* Staff of House Comm. On The Judiciary, 87th Cong., Report of the Register of Copyrights on The General Revision of The U.S. Copyright Law (Comm. Print 1961), at ix (tracing the federal copyright statute from 1790 to its three general revisions in 1831, 1870, and 1909).[7]

The Supreme Court has emphasized the weight to be afforded to the historical practices of the Congress in copyright, especially the First Congress, in evaluating constitutional challenges to the Copyright Act. In *Burrow-Giles Lithographic Co. v. Sarony*, 111 U.S. 53, 57 (1884), the Court upheld the extension of copyright protection to photographs under the Copyright Clause and in so doing held that "[t]he construction placed upon the constitution by the first act of 1790 and the act of 1802, by the men who were contemporary with its formation, many of whom were members of the convention which framed it, is of itself entitled to very great weight, and when it is remembered that

---

[7] This report, written in 1961, was part of an extensive review, by the Copyright Office, of the history, purposes, and effects of the Copyright Act. It culminated in Congress' enactment of the 1976 Copyright Act.

the rights thus established have not been disputed during a period of nearly a century, it is almost conclusive." *Id.* at 57. More recently, the Court reaffirmed, in upholding the constitutionality of copyright term extensions, that "[t]o comprehend the scope of Congress' Copyright Clause power, a page of history is worth a volume of logic." *Eldred v. Ashcroft*, 537 U.S. 186, 199 (2003) (quotation omitted).

The Copyright Act's statutory damages provision serves both to compensate and deter. Congress established a scheme to allow copyright owners to elect to receive statutory damages for copyright infringement instead of actual damages and profits because of the difficulty of calculating and proving actual damages. *F.W. Woolworth*, 344 U.S. at 233 (noting statutory damages are intended to allow "the owner of a copyright some recompense for injury done him, in a case where the rules of law render difficult or impossible proof of damages or discovery of profits"); *Lowry's Reports*, 302 F. Supp. 2d at 460 ("Statutory damages exist in part because of the difficulties in proving—and providing compensation for—actual harm in copyright infringement actions.").[8] As the Copyright Office explained in its 1961 report to Congress, the need for statutory damages in the context of copyright infringement "arises from the acknowledged inadequacy of actual damages and profits in many cases:

---

[8] The compensatory component of statutory damages is reflected in Congress' concern that the 1999 adjustment of the statutory damages range from the 1988 Amendments "reflect inflation over the past eleven years." *See* H.R. Rep. 106-216, at 6 (1999).

- The value of a copyright is, by its nature, difficult to establish, and the loss caused by an infringement is equally hard to determine. As a result, actual damages are often conjectural, and may be impossible or prohibitively expensive to prove.

- In many cases, especially those involving public performances, the only direct loss that could be proven is the amount of a license fee. An award of such an amount would be an invitation to infringe with no risk of loss to the infringer.

- The actual damages capable of proof are often less than the cost to the copyright owner of detecting and investigating infringements.

- An award of the infringer's profits would often be equally inadequate. There may have been little or no profit, or it may be impossible to compute the amount of profits attributable to the infringement. Frequently the infringer's profits will not be an adequate measure of the injury caused to the copyright owner."

Staff of House Comm. On The Judiciary, 87th Cong., Report of the Register of

Copyrights on The General Revision of The U.S. Copyright Law (Comm. Print 1961), at

102–03.

The inadequacy of actual damages and profits to compensate copyright owners is

evident under the circumstances of this case.[9] It is impossible for a copyright owner to

---

[9] Defendant cites to a series of class action cases for the proposition that "the aggregation of claims" may result in an unconstitutionally excessive award. *See* Def's Mem. at 8. But those courts merely found that a class should not be certified, *see e.g.*, *Kline v. Coldwell Banker & Co.*, 508 F.2d 226, 235 (9th Cir. 1974) ("we cannot find that under Rule 23(b)(3) this class action is superior to other available methods for the fair and efficient adjudication of the controversy"), or determined that such an issue was premature because a class had not been certified, *see Parker v. Time Warner*

calculate actual damages when an online media distribution system is used to distribute

illegally its copyrighted sound recordings; the number of subsequent acts of infringement

by computer users who download illegal copies of the sound recordings from the original

infringer is simply unknowable. Additionally, it is costly for owners of copyrighted

sound recordings to detect and investigate copyright infringement because of the

widespread, somewhat anonymous, nature of such infringement in today's world of

advanced computer technologies. *See* H.R. Rep. 106-216, at 3 ("[C]opyright piracy of

intellectual property flourishes, assisted in large part by today's world of advanced

technologies."). Finally, the harms to the owners of copyrighted sound recordings and to

the public are not negated merely because an infringer using an online media distribution

system does not seek commercial gain. Such infringement can limit a copyright owner's

(or their authorized licensees') ability to distribute legal copies of copyrighted sound

recordings. *See* H.R. Rep. 105-339, at 5 (acknowledging the harm of infringement

without commercial gain on businesses that depend on licensing agreements and

---

*Entertainment Co., L.P.*, 331 F.3d 13, 22 (2nd Cir. 2003) ("At this point in this case, however, these concerns remain hypothetical. There has been no class certification motion filed nor any actual evidence presented that raises a reasonable possibility that principles of due process may restrict an ultimate damages award."). Class actions serve very different purposes and the concerns illustrated in those cases arose "from the effects of combining a statutory scheme that . . . encourage[s] the filing of individual lawsuits . . . with the class action mechanism that aggregates many claims-often because there would otherwise be no incentive to bring an individual claim." *Id.* Here, there is not a confluence of two legal tools seeking to serve similar purposes. Instead, the statutory damages provision alone is serving the legislative purpose.

royalties). It can also reduce a copyright owner's profits by permitting individuals who would otherwise be required to purchase copies of copyrighted sound recordings to obtain illegal copies for free.

In increasing the range of statutory damages in the 1999 amendments to the Copyright Act, Congress stated, "[i]t is important that the cost of infringement substantially exceed the costs of compliance, so that persons who use or distribute intellectual property have a strong incentive to abide by the copyright laws." H.R. Rep. 106-216, at 6. Congress noted that, in 1999, the rate of software piracy equaled 25% of all sales in the United States and resulted in a loss of $2.9 billion to copyright owners. *Id.* at 3. According to Congress, further deterrence was necessary to prevent similar losses in the future because "many infringers do not consider the current copyright infringement penalties a real threat and continue infringing, even after a copyright owner puts them on notice that their actions constitute infringement and that they should stop the activity or face legal action." *Id.*

Although "[p]art of the justification for large statutory damages awards in copyright cases is to deter actors by ensuring that the possible penalty for infringing substantially outweighs the potential gain from infringing," *see* Memorandum of Law & Order, September 24, 2008 ("Court's Opinion") (dkt. # 197) at 42, another justification is to deter individuals from engaging in conduct that is harmful to the public even when

there is no commercial gain.[10] The Copyright Act defines "financial gain" as an

"expectation of receipt, of anything of value, including the receipt of other copyrighted

works." *See* 17 U.S.C. § 101. Defendant may consider that "Mrs. Thomas repeatedly and

intentionally did something minor," *see* Def's Mem. at 7, but her financial gain of "access

to free music," Court's Opinion at 43, and her enabling others such access creates a great

public harm that Congress determined must be deterred. *See F.W. Woolworth*, 344 U.S.

at 233 ("The statutory rule, formulated after long experience, not merely compels

restitution of profit and reparation for injury but also is designed to discourage wrongful

conduct."). Furthermore, infringement without commercial gain harms the public

because the high volume of infringement results in "lost U.S. jobs, lost wages, lower tax

revenue, and higher prices for honest purchasers of copyrighted [sound recordings]."

H.R. Rep. 106-216, at 3; *see also Williams*, 251 U.S. at 66 (observing that the

"[l]egislature may adjust [the] amount (of statutory damages) to the public wrong rather

than the private injury").

    This Court has stated that the "myriad of copyright cases" involving "large

statutory damages awards" have "limited relevance" because they "involve corporate or

business defendants." *See* Court's Opinion at 41. But Congress did not make such a

---

[10] Defendant's reliance on *Philip Morris USA v. Williams*, 549 U.S. 346, 353-54 (2007), *see* Def's Mem. at 7, is misplaced; the very essence of statutory damages is to address public harms that are difficult to quantify and to deter others from committing those public harms.

distinction in constructing the statutory range to deter the public harm of copyright

infringement. The public harm done by copyright infringement is not limited to when the

infringer is seeking commercial gain. *See F.W. Woolworth*, 344 U.S. at 233 ("Even for

uninjurious and unprofitable invasions of copyright the court may, if it deems it just,

impose a liability within statutory limits to sanction and vindicate the statutory policy (of

deterrence)."). Further, as Judge Murphy of this Circuit stated, in dissenting on an issue

unrelated to the one presently before this Court, "[t]he repercussions of infringement via

the internet are too easily ignored or minimized. Regarded by some as an innocuous form

of entertainment, internet piracy of copyrighted sound recordings results in substantial

economic and artistic costs." *In re Charter Communications, Inc.*, 393 F.3d 771, 778 (8th

Cir. 2005) (Murphy, J., *dissenting*).

As this Court identified, defendant "acted like countless other Internet users" and

"[h]er alleged acts were illegal, but common." *See* Court's Opinion at 43. Although this

Court found the commonality of plaintiff's actions to counter against the first jury's

award, the commonality of the actions also raises the necessity of providing strong

deterrence toward others who think their actions go undetected. Further, such a

cumulative effect creates a great public harm. *See Williams*, 251 U.S. at 67 (finding that

due process is satisfied if the legislature has given "due regard for the interests of the

public, the numberless opportunities for committing the offense, and the need for

securing uniform adherence to [the law]."). One study has estimated that global music

piracy causes the loss of (1) $12.5 billion of annual economic output in the United States, (2) 71,060 American jobs, (3) $2.7 billion in annual earnings to American workers, and (4) $422 million in annual U.S. tax revenue. *See* Stephen E. Siwek, *The True Cost of Sound Recording Piracy to the U.S. Economy,* Institute for Policy Innovation, Policy Report 188, August 2007, *available at* http://www.ipi.org (follow "The True Cost of Sound Recording Piracy to the U.S. Economy" hyperlink under Publications for 2007) (last visited August 12, 2009). Similarly, as Judge Murphy of this Circuit has noted, "[a]nnual losses to copyright owners *before the expansive growth in peer to peer file sharing* were estimated to be $11 to $20 billion," *see In re Charter Communications, Inc.,* 393 F.3d at 779 (Murphy, J., *dissenting*) (citing H. Rep. 205-339, at 4 (1997) (emphasis added)), and this harm extends to "[l]ocal music retailers" and "artists" who "can lose economic incentive to create and distribute works," *id.*

Copyrights are of great value, not just to their owners, but to the American public as well. Congress has recognized this value from the first days of the Republic. The federal copyright statute, enacted by the First Congress and subject to numerous revisions since that time, has consistently authorized the awarding of statutory damages to ensure significant monetary awards in copyright infringement lawsuits that will make copyright owners whole and deter further infringement. This historical approach is followed in the current version of the Copyright Act's statutory damages provision; it provides compensation to copyright owners who have to invest resources into protecting property

that is often unquantifiable in value and deters those infringing parties who think they will go undetected in committing this serious public wrong.  Congress' expressed desire to increase deterrence, accompanied by congressional findings, demonstrates that Congress gave due regard to the public harm, opportunities to commit multiple violations, and need to ensure compliance with the law in establishing its statutory range.[11]  The Court should defer to Congress' reasoned judgment.  The proper place for any policy debate of what should be the level of deterrence resides in the halls of Congress.

## CONCLUSION

The United States respectfully requests that the Court first determine whether defendant's motion can be resolved without reaching the constitutional issue presented. If, however, the Court finds it necessary to address the constitutionality of the application of 17 U.S.C. § 504(c), it should find that it satisfies the Due Process Clause.

Dated: August 14, 2009   Respectfully submitted,

         TONY WEST
         Assistant Attorney General

         B. TODD JONES
         United States Attorney

---

[11] This issue is not just confined to the United States but is evident in United States' international agreements that require countries to have in place statutory damages to protect copyrights. *See, e.g.*, Singapore-US Free Trade Agreement, Art. 16.9.9; Morocco-US Free Trade Agreement, Art. 15.11.7; Central America-US Free Trade Agreement, Art. 15.11.8.

JOHN R. GRIFFITHS
Assistant Branch Director
Civil Division

/s/ *Adam D. Kirschner*
ADAM D. KIRSCHNER
IL Bar No. 6286601
Trial Attorney
Civil Division, Federal Programs Branch
United States Department of Justice
20 Massachusetts Ave., N.W., Room 7126
P.O. Box 883
Washington, D.C. 20044
Tel.: (202) 353-9265
Fax: (202) 616-8470
Email:adam.kirschner@usdoj.gov

Attorneys for the United States of America