## IN THE UNITED STATES OF DISTRICT COURT
## FOR THE DISTRICT OF MINNESOTA

CAPITOL RECORDS, INC., *et al*.,

        Plaintiffs,

vs.

JAMMIE THOMAS-RASSET,

        Defendant.

Case No.: 06cv1497-MJD/RLE

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR A NEW TRIAL, REMITTITUR, AND TO ALTER OR AMEND THE JUDGMENT**

Timothy M. Reynolds (pro hac vice)
Andrew B. Mohraz (pro hac vice)
HOLME ROBERTS & OWEN LLP
1700 Lincoln, Suite 4100
Denver, Colorado 80203
Telephone: (303) 861-7000
Facsimile: (303) 866-0200

Matthew J. Oppenheim (pro hac vice)
THE OPPENHEIM GROUP, LLP
7304 River Falls Drive
Potomac, Maryland 20854
Telephone: (301) 299-4986
Facsimile:  (866) 766-1678

Felicia J. Boyd (No. 186168)
Leita Walker (No. 387095)
FAEGRE & BENSON LLP
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, Minnesota 55402-3901
Telephone: (612) 766-7000
Facsimile:  (612) 766-1600

ATTORNEYS FOR PLAINTIFFS

# TABLE OF CONTENTS

INTRODUCTION AND SUMMARY OF ARGUMENT ............................................................ 1

STATEMENT OF FACTS ...................................................................................................... 3

ARGUMENT ........................................................................................................................... 5

     I.     Defendant's Constitutional Argument Is Baseless. ................................................ 5

          A.     Defendant Waived the Argument that the Jury's Award Is
                Unconstitutional. ........................................................................................ 6

          B.     The Jury's Award of Statutory Damages Is Constitutional. ....................... 7

                1.     Defendant's Argument Is Devoid of Factual Support ................... 8

                2.     Statutory Damages Are Reviewed Under a Much More
                      Deferential Standard Than That Applied to Punitive
                      Damages .................................................................................... 10

                3.     The Jury's Award of Statutory Damages to Plaintiffs
                      Satisfies *Williams* ..................................................................... 18

     II.     The Court Should Not Grant a Remittitur. ............................................................. 21

     III.     The Court Should Refuse To Reconsider Defendant's Legal Arguments
          Regarding Suppression Of MediaSentry Evidence And A Need For
          Certified Deposit Copies Of Sound Recordings At Trial. ................................... 24

CONCLUSION ..................................................................................................................... 26

# TABLE OF AUTHORITIES

## CASES

*Accounting Outsourcing, LLC v. Verizon Wireless Personal Commc'ns, L.P.*,
329 F. Supp. 2d 789 (M.D. La. 2004) ....................................................7, 14, 16-17

*BMW of N. America, Inc. v. Gore*,
517 U.S. 559 (1996) ................................................................................ 8, 13, 14

*Bateman v. Mnemonics, Inc.*,
79 F.3d 1532 (11th Cir. 1996) ............................................................................. 6

*Brady v. Daly*,
175 U.S. 148 (1899) ........................................................................................... 12

*Browning-Ferris Industrial of Vt., Inc. v. Kelco Disposal, Inc.*,
492 U.S. 257 (1989) ........................................................................................... 14

*Columbia Pictures Television, Inc. v. Krypton Broad. of Birmingham, Inc.*,
259 F.3d 1186 (9th Cir. 2001) ............................................................................ 16

*Douglas v. Cunningham*,
294 U.S. 207 (1935) ...................................................................................15-16, 18

*Eich v. Board of Regents*,
350 F.3d 752 (8th Cir. 2003) .............................................................................. 21

*F.W. Woolworth Co. v. Contemporary Arts, Inc.*,
344 U.S. 228 (1952) .............................................................................. 11, 12, 18

*Feltner v. Columbia Pictures Television, Inc.*,
523 U.S. 340 (1998) .............................................................................. 11, 16, 22

*Gutierrez-Rodriguez v. Cartagena*,
882 F.2d 553 (1st Cir. 1989) .............................................................................. 24

*Hagerman v. Yukon Energy Corp.*,
839 F.2d 407 (8th Cir. 1988) ............................................................................... 6

*Herold v. Burlington N., Inc.*,
761 F.2d 1241, 1248 (8th Cir. 1985) .................................................................. 23

*Holtzman v. Caplice*,
No. 07 C 7279, 2008 WL. 2168762 (N.D. Ill. May 23, 2008) ...................... 7-8, 17

*Kenro, Inc. v. Fax Daily, Inc.*,
962 F. Supp. 1162 (S.D. Ind. 1997) ................................................................... 17

*King v. Brewer*,
577 F.2d 435 (8th Cir. 1978) ............................................................................... 6

*L.A. Westermann Co. v. Dispatch Printing Co.*,
   249 U.S. 100 (1919) ........................................................................ 12

*Levka v. City of Chicago*,
   748 F.2d 421 (7th Cir. 1984) .......................................................... 24

*Lowry's Reports, Inc. v. Legg Mason, Inc.*,
   302 F. Supp. 2d 455 (D. Md. 2004) ....................................... 7, 8, 13, 18

*McCabe v. Mais*,
   580 F. Supp. 2d 815 (N.D. Iowa 2008) ......................................... 23, 24

*Parker v. Time Warner Entertainment Co., L.P.*,
   331 F.3d 13 (2d Cir. 2003) .............................................................. 20

*Philip Morris USA v. Williams*,
   549 U.S. 346 (2007) ................................................................. 19, 20-21

*Ross v. Kansas City Power & Light Co.*,
   293 F.3d 1041 (8th Cir. 2002) ........................................................ 21

*SESAC, Inc. v. WPNT, Inc.*,
   327 F. Supp. 2d 531 (W.D. Pa. 2003) .............................................. 22

*Shaw v. United States*,
   741 F.2d 1202 (9th Cir. 1984) ........................................................ 24

*Smith v. Updegraff*,
   744 F.2d 1354 (8th Cir. 1984) .......................................................... 6

*Sony BMG Music Entertainment v. Tenenbaum*,
   Case No. 07-cv-11446-NG, Jury Verdict Form  ............................... 23

*Sony BMG Music Entertainment v. Tenenbaum*,
   Case No. 07-cv-11446-NG, slip op. (D. Mass. July 22, 2009)  ............ 25

*St. Louis, I.M. & S. Railway Co. v. Williams*,
   251 U.S. 63 (1919) ................................................................. 7, 15, 17, 19

*Superior Form Builders, Inc. v. Dan Chase Taxidermy Supply Co.*,
   74 F.3d 488 (4th Cir. 1996) ............................................................ 15

*Taylor v. Otter Tail Corp.*,
   484 F.3d 1016 (8th Cir. 2007) ..................................................... 23, 24

*Texas v. America Blastfax, Inc.*,
   121 F. Supp. 2d 1085 (W.D. Tex. 2000) ......................................... 17

*United States v. Beason*,
   220 F.3d 964 (8th Cir. 2000) ........................................................... 6

*United States v. Samples*,
   456 F.3d 875 (8th Cir. 2006) ........................................................... 6

*Universal City Studios, Inc. v. Reimerdes*,
    111 F. Supp. 2d 294 (S.D.N.Y. 2000), *aff'd*, 273 F.3d 429 (2d Cir. 2001).............. 5

*Vogler v. Blackmore*,
    352 F.3d 150 (5th Cir. 2003) ................................................................................. 23

*Zomba Enterprises, Inc. v. Panorama Records*,
    491 F.3d 584 (6th Cir. 2007), *cert. denied*, 128 S. Ct. 2429 (2008) ............ 7, 14, 15

## FEDERAL STATUTES

17 U.S.C. 504(c) ........................................................................................... 7, 8, 12, 13
47 U.S.C. 227(b)(3)(B) .......................................................................................... 16

## FEDERAL RULES

Fed. R. Civ. P. 51(d) ................................................................................................. 6

## LEGISLATIVE MATERIALS

H.R. Rep. No. 106-216, at 6 (1999) .................................................................. 13, 18, 19

Staff of House Comm. on the Judiciary, 87th Cong., Report of the Register of
    Copyrights on the General Revision of the U.S. Copyright Law (Comm.
    Print 1961) (reprinted in 8 Melville B. Nimmer and David Nimmer,
    *Nimmer on Copyright* Appendix 14).........................................................11, 12-13

## OTHER AUTHORITIES

Colleen P. Murphy, *Judicial Assessment of Legal Remedies*,
    94 Nw. U. L. Rev. 153, 202 (1999)....................................................................... 17

Plaintiffs respectfully submit this response in opposition to Defendant's Motion

for a New Trial, Remittitur, and to Alter or Amend the Judgment ("Motion," Doc.

No. 344), and state as follows:

## INTRODUCTION AND SUMMARY OF ARGUMENT

Two separate juries have now found Defendant liable for willfully infringing

Plaintiffs' copyrights, and they did so based on overwhelming evidence of Defendant's

wrongdoing.  Yet Defendant now moves to set aside or limit the latest jury's award even

though there is no dispute that the Court correctly instructed the jury regarding the

appropriate range of statutory damages and the jury followed that instruction.

In making this motion, Defendant pays little regard or attention to the substantial

deference that must be given to Congress in legislating the appropriate range of statutory

damages and to juries in awarding those damages.  Instead, Defendant asks this Court to

do what no Court has ever done – find that a verdict that falls within the statutory range

set forth in Section 504 of the Copyright Act nevertheless fails to comply with due

process and is therefore unconstitutional.  Alternatively, Defendant contends that the

damage award is "grossly excessive," and therefore subject to remittitur.  Finally,

Defendant reasserts in cursory fashion her arguments, previously rejected by this Court,

seeking to suppress all evidence collected by MediaSentry and objecting to a lack of

certified copies of sound recordings deposited with the Copyright Office at trial.  (Def.

Mot. at 2.)  Defendant's motion fails in every respect.

First, Defendant's constitutional arguments lack any merit and should not even be

reached if the Court concludes that a remittitur is legally permissible for an award of

statutory damages (a proposition that Plaintiffs dispute), because that remedy effectively moots Defendant's constitutional challenge.   More importantly, though, Defendant failed to preserve the constitutional arguments pressed here and, in any event, those arguments all lack factual and legal support.   Given all the evidence presented at trial, most of which Defendant ignores, there is no basis for concluding that the jury's selection of a damage figure within the range authorized by Congress for willful copyright infringement violated the Due Process Clause.   The due process concerns analyzed in punitive damage cases simply have no applicability to an award of statutory damages.   Indeed, Plaintiffs have found no case where a court has ever struck down a statutory damages award on this basis.

Second, there is no basis for a remittitur.   Even if a court has the power to remit an award authorized by Congress (which Plaintiffs dispute), the facts of this case – 24 acts of willful infringement, providing immediate access to hundreds of other works for copying by any of the millions of users of the KaZaA network, clear evidence of destruction of evidence, perjury, and a demonstrated need for significant deterrence – amply justify a very substantial award.   That said, if the Court nonetheless determines that some reduction is both legally permissible and factually warranted, in order to achieve finality in this case, Plaintiffs would consider a remittitur rather than participating in a third trial.   But they will do so only if the damages fully take into account the evidence in the case.   In addition, the three jury verdicts that have been reached in individual file-sharing cases – the two verdicts from this case and the recent

*Tenenbaum* verdict in Massachusetts – should inform that decision as they reflect what a jury could reasonably find.

Finally, Defendant puts forth no new evidence to support her arguments regarding either the suppression of MediaSentry's evidence of infringement or the lack of deposit copies of sound recordings from the Copyright Office. The Court rejected these arguments when first raised by Defendant, and should not reconsider them now.

## STATEMENT OF FACTS

On June 18, 2009, the jury returned its verdict, finding that Defendant had willfully infringed all 24 of Plaintiffs' sound recordings at issue and awarding Plaintiffs statutory damages in the amount of $80,000 for each act of willful infringement. (Doc. No. 336.) On June 19, 2009, the Court entered judgment on the jury's verdict. ("Judgment," Doc. No. 338.)[1] On July 6, 2009, Defendant filed her Motion seeking to (1) strike the statutory damages portion of the Judgment; (2) remit the statutory damages award to the statutory minimum; or (3) set aside the verdict and order a new trial on all issues under Rule 59(a). (Def. Mot. at 2.)

Defendant's Motion ignores completely the overwhelming evidence of Defendant's willful and unrepentant infringing conduct that provided the basis for the jury's verdict. In addition to the 24 works in suit, Plaintiffs proved that Defendant had approximately 1,700 digital audio files – many of them Plaintiffs' copyrighted sound

---

[1]   Although Plaintiffs, as prevailing parties under Section 505 of the Copyright Act, are also entitled to recover their attorney fees from Defendant, they have not sought fees in this case.

recordings – in her KaZaA shared folder on her computer at the time MediaSentry detected her infringement.  Plaintiffs' evidence demonstrated that Defendant had copied these sound recordings from other KaZaA users and that Defendant distributed these copyrighted recordings on KaZaA until she learned that Plaintiffs had detected her infringement.  Defendant testified that she had studied the *Napster* case in college and knew that copying and sharing copyrighted music files over the Internet was illegal.  Plaintiffs also demonstrated that Defendant refused to accept responsibility for her actions, including intentionally concealing her infringement by providing Plaintiffs, her counsel, and her own expert with a brand new computer hard drive that she knew would have no evidence of her infringement rather than the actual drive that she used to infringe.  She also pointed to a parade of completely implausible possible culprits who might have used both her computer and her "tereastarr" user name to commit the various acts of copyright infringement, none of which the jury believed.

    In addition, Defendant's misconduct caused significant damage to Plaintiffs.  While Plaintiffs, under the Copyright Act, did not need to prove actual damages, there can hardly be any dispute that there is substantial damage caused by the rampant piracy of users of peer-to-peer services.  It strains credulity to suggest that unlimited downloading and uploading of free music to millions of users of peer-to-peer services somehow does not impact the legitimate market for music.  In fact, Plaintiffs' witnesses, including Wade Leak and JoAn Cho, testified to the substantial harm caused by the massive distribution of their copyrighted sound recordings over peer-to-peer networks such as KaZaA, including lost revenues, layoffs, and a diminished capability to identify

and promote new talent.  As Mr. Leak testified, such conduct, as practiced by Defendant and numerous others, has seriously hurt Plaintiffs' digital market for the songs at issue. Legitimate markets simply cannot compete with free.  Defendant's actions amounted to the exercise of a blanket worldwide license to reproduce and distribute Plaintiffs' copyrighted sound recordings, and the cost of such a license on the open market would involve "buying the company."  *See Universal City Studios, Inc. v. Reimerdes*, 111 F. Supp. 2d 294, 331-32 (S.D.N.Y. 2000) (describing harm from infringement over the Internet as "exponential rather than linear"), *aff'd*, 273 F.3d 429 (2d Cir. 2001).  The jury obviously found the testimony about the impact of Defendant's willful infringement and the substantial need to deter such conduct persuasive and compelling.

## ARGUMENT

### I.      Defendant's Constitutional Argument Is Baseless.

Defendant asserts that "the statutory-damages provision of the Copyright Act, as applied in her case, offends the Due Process Clause and is not law."  (Def. Mot. at 3.)  As noted above, if the Court determines that remittitur is appropriate, it will effectively have mooted any constitutional concerns.  Moreover, Defendant has waived the issue by failing time and again to raise any constitutional challenge to an award of statutory damages within the range set by Congress.  If the Court nevertheless reaches the constitutional issue, it should rule that the claim has no merit.

### A.   Defendant Waived the Argument that the Jury's Award Is Unconstitutional.

In seeking a new trial under Rule 59, a party must show that she made an appropriate objection, stating the grounds for the objection with particularity, before the commencement of jury deliberations.  *See Hagerman v. Yukon Energy Corp.*, 839 F.2d 407, 413-14 (8th Cir. 1988); *Bateman v. Mnemonics, Inc.*, 79 F.3d 1532, 1543-44 (11th Cir. 1996).[2]  In addition, a party may not complain that she has been denied a fair trial after inviting the very error about which she complains.  *See United States v. Samples*, 456 F.3d 875, 884 (8th Cir. 2006); *United States v. Beason*, 220 F.3d 964, 968 (8th Cir. 2000); *King v. Brewer*, 577 F.2d 435, 441-43 (8th Cir. 1978).

Here, Plaintiffs made it abundantly clear that they intended to seek statutory damages in this case.  They raised the issue in their Complaint, in their Rule 26(a)(1) disclosures, in their discovery responses, in their statement of the case, and in their proposed jury instructions and verdict form.  The Court, in turn, proposed to instruct the jury that it could award statutory damages for each infringement proved at trial anywhere within the range established by Congress.  Not only did Defendant not object to these instructions, she had herself submitted proposed jury instructions expressly asking that

---

[2]   *See also* Fed. R. Civ. P. 51(d) ("A party may assign as error: (A) an error in an instruction actually given, if that party properly objected; or (B) a failure to give an instruction, if that party properly requested it and—unless the court rejected the request in a definitive ruling on the record—also properly objected."); *Smith v. Updegraff*, 744 F.2d 1354, 1367 (8th Cir. 1984) ("We believe Rule 51 was intended to encompass jury verdict forms and find no compelling reason to decide otherwise.").

the jury be instructed on the full range of statutory damages available to Plaintiffs under the Copyright Act.  (Doc. No. 271 at 8.)

Having invited the Court to instruct the jury that it could award statutory damages within the range specified by the Copyright Act, and having failed to object to the Court's instruction to that effect, Defendant cannot now be heard to argue that the jury's award within that very range is somehow unconstitutional on its face.[3]

### B.    The Jury's Award of Statutory Damages Is Constitutional.

Defendant's constitutional attack on the damage award is, in any event, baseless. In challenging the jury's award, Defendant relies on facts not in evidence.  Furthermore, the award falls well within the statutory range for willful infringement that Congress authorized in 17 U.S.C. § 504(c).  It follows that the Court must analyze the constitutionality of the award under the highly deferential standard articulated in *St. Louis, I.M. & S. Ry. Co. v. Williams*, 251 U.S. 63 (1919).  *See Zomba Enters., Inc. v. Panorama Records*, 491 F.3d 584, 587 (6th Cir. 2007), *cert. denied*, 128 S. Ct. 2429 (2008); *Lowry's Reports, Inc. v. Legg Mason, Inc.*, 302 F. Supp. 2d 455, 460 (D. Md. 2004); *Accounting Outsourcing, LLC v. Verizon Wireless Pers. Commc'ns, L.P.*, 329 F. Supp. 2d 789, 808-09 (M.D. La. 2004); *Holtzman v. Caplice*, No. 07 C 7279, 2008 WL

---

[3]    In post-trial briefing following the first jury trial in this case, Defendant raised a due process challenge to the jury's award of statutory damages.  The Court did not rule on that argument when it ordered a new trial.  At no point other than her two post-trial briefs, however, has Defendant challenged the constitutionality of statutory damages for copyright infringement.  Because the Court expressly ruled that the second trial was a new trial as to all issues (Doc. No. 197 at 40.), Defendant's failure to raise a due process challenge during the second trial means that Defendant has waived it.

2168762, at *6-7 (N.D. Ill. May 23, 2008).  Defendant's reliance on the Supreme Court's

punitive damages jurisprudence – including the three guideposts established in *BMW of*

*N. Am., Inc. v. Gore*, 517 U.S. 559 (1996) – is entirely misplaced, both legally and

factually.

### 1.    Defendant's Argument Is Devoid of Factual Support.

Defendant premises her challenge to the jury's award of statutory damages on a

factual argument entirely without support in the record.  According to her, the actual

harm caused by her infringement should be calculated as either $1.29 per song or $15 per

album.  (Def. Mot. at 2.)  Her entire argument flows from this erroneous and unsupported

assertion that the only thing that she did was download a few songs.  Defendant would

have this Court believe that she simply stole 24 songs, roughly the equivalent of two

albums.  In fact, there were 1,700 songs in her directory which she shared with the

millions of users of the KaZaA network.  The record is clear that the Defendant did

exponentially more than simply steal 24 songs.

Pursuant to 17 U.S.C. § 504(c)(1), Plaintiffs chose to seek statutory damages

rather than actual damages.  Plaintiffs were therefore not required to present proof of

actual damages resulting from Defendant's infringement, although the harm to Plaintiffs

was amply demonstrated.  *Lowry's Reports*, 302 F. Supp. 2d at 459 (explaining that

"[b]ecause statutory damages are an alternative to actual damages, there has never been a

requirement that statutory damages must be strictly related to actual injury").  At trial,

Defendant might have attempted to elicit testimony that Plaintiffs' actual damages were

merely $1.29 or $15 per track, in an effort to have the jury limit the statutory damages

they awarded based on the fact that the actual damages were low.  But Defendant apparently had no evidence of this and did not present it to the jury.  In fact, Defendant failed at trial to address the actual harm caused by her infringement.

On the other hand, the testimony from witnesses for the Plaintiffs strongly supported the theory that the harm was substantially more than simply the amount it would cost to legally download a song or album.  The evidence showed that Defendant willfully infringed 24 of Plaintiffs' copyrighted works.  Moreover, Defendant had more than 1,700 digital audio files in her KaZaA shared folder on her personal computer that she distributed for copying by any other user of the KaZaA network.  These song files were in Defendant's shared folder for a long period of time, and Defendant left her computer on and connected to the Internet "all the time."  By placing and storing these files in her KaZaA shared folder, Defendant was distributing Plaintiffs' copyrighted works in an unlimited, unprotected, and viral method because any of the millions of other users on the KaZaA network, all of whom were looking to download for free, could easily access these files, download them, and subsequently allow untold numbers of other people to do the same.

The evidence permitted the jury to conclude that Defendant disseminated actual copies of Plaintiffs' copyrighted works to other users on the network many times.  Witnesses for the Plaintiffs, such as Wade Leak, testified that the cost of obtaining a license that would allow someone to engage in Defendant's actions would be unheard of and prohibitive.

Defendant also ignores completely the other relevant evidence that Plaintiffs presented to the jury and that the jury was properly instructed to consider in an assessment of damages.  (Doc. 335 at 23 (instructing the jury that it could consider "the willfulness of the defendant's conduct, the defendant's innocence, the defendant's continuation of infringement after notice or knowledge of the copyright or in reckless disregard of the copyright, the effect of the defendant's prior or concurrent copyright infringement activity, and whether profit or gain was established").)  For instance, the jury heard that Defendant destroyed evidence, in the form of her original computer hard drive.  Plaintiffs also presented evidence of perjury and demonstrated a compelling need for significant deterrence of Defendant's behavior.  Thus, Defendant improperly limits her valuation and damages theory to the harm caused by reproducing 24 songs.  In fact, the jury was entitled to and properly did consider the substantial harm that she caused through both reproduction and distribution of the infringed works and thousands of others, as well as the need for deterrence and her litigation misconduct.

> **2.     Statutory Damages Are Reviewed Under a Much More Deferential Standard Than That Applied to Punitive Damages.**

The legal premise of Defendant's constitutional attack is that a statutory damage award should be reviewed much like a punitive damage award.  But that premise is simply wrong.  Statutory damages are not the functional equivalent of punitive damages. They serve a broader range of purposes, including providing compensation and achieving an appropriate level of deterrence of copyright infringement.  More importantly, statutory damages must be awarded within a defined range established, and periodically adjusted,

by Congress. A statutory range that is enacted before the wrongful conduct is engaged in gives ample notice and does not present any of the same due process issues as punitive damages, which are unlimited and unconstrained. That means that any constitutional challenge is governed by a standard much more deferential than that applicable to a jury's punitive damage award. In particular, there is no constitutional requirement that the level of a statutory damage award bear some close relation to the actual harm caused by an intentional tort.

American copyright law has authorized awards of statutory damages since the Copyright Act of 1790, and English copyright law did the same long before that. *See Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340, 349 (1998) (tracing the history of statutory copyright damages back to the first English copyright statute that set damages for infringement at "one Penny for every Sheet which shall be found in [the infringer's] custody, either printed or printing, published, or exposed to Sale" (quoting 8 Anne ch. 19 (1710) (alteration in original)). One reason for allowing statutory damages is that it is difficult to prove actual damages caused by copyright infringement. *See F.W. Woolworth Co. v. Contemporary Arts, Inc.*, 344 U.S. 228, 231 (1952) (statutory damages "give the owner of a copyright some recompense for injury done him, in a case where the rules of law render difficult or impossible proof of damages or discovery of profits" (quotation marks omitted)); Staff of House Comm. on the Judiciary, 87th Cong., Report of the Register of Copyrights on the General Revision of the U.S. Copyright Law 102-03 (Comm. Print 1961) (hereinafter "Report of Register of Copyrights"), *reprinted in* 8

Melville B. Nimmer and David Nimmer, *Nimmer on Copyright* Appendix 14 (Matthew

Bender, Rev. Ed.) (explaining why actual damages are inadequate in many cases).

Because of the difficulty of proving actual harm, the Copyright Act gives

copyright owners the explicit right to "elect, at any time before final judgment is

rendered, to recover, *instead of* actual damages and profits, an award of statutory

damages for all infringements involved in the action."  17 U.S.C. § 504(c)(1) (emphasis

added).  Allowing a copyright owner to choose statutory damages does not mean that

there has not been actual harm, it simply means that Congress properly recognized the

difficulty of proving that harm.  As the Supreme Court has recognized, providing a

choice between actual damages and statutory damages "shows that something other than

actual damages is intended -- that another measure is to be applied in making the

assessment" of the appropriate amount of statutory damages.  *L.A. Westermann Co. v.*

*Dispatch Printing Co.*, 249 U.S. 100, 106 (1919).

Thus, statutory damages serve as an alternative means of providing compensation

to victims of copyright infringement, while also serving to deter future infringements and

impose an appropriate penalty on intentional wrongdoers.[4]  That by itself means that

_____

[4]    *See Brady v. Daly*, 175 U.S. 148, 154 (1899) (primary purpose is
compensatory); *F.W. Woolworth*, 344 U.S. at 233 ("The statutory rule, formulated after
long experience, not merely compels restitution of profit and reparation for injury but
also is designed to discourage wrongful conduct."); *see also*, Report of Register of
Copyrights 103 ("In sum, statutory damages are intended (1) to assure adequate
compensation to the copyright owner for his injury, and (2) to deter infringement."); H.R.
Rep. No. 106-216, at 6 (1999) (acknowledging that "juries must be able to render awards
that deter others from infringing intellectual property rights" and that "[i]t is important
that the costs of infringement substantially exceed the costs of compliance, so that

statutory damages should not be viewed as equivalent, functionally or constitutionally, to punitive damages.

Even more important is the fact that statutory damages must be set within a range that Congress has established.  The Copyright Act has long provided an explicit range of possible statutory damage awards for copyright infringement, with a different maximum award permitted in the context of willful infringement.  17 U.S.C § 504(c).  Congress has carefully adjusted this legislatively enacted range in response to external developments on a number of occasions, ***the most recent adjustment taking place in 1999 in response to increased copyright infringement via the Internet***.  H.R. Rep. No. 106-216 (1999).

This feature of statutory damages is critical because the central concern animating the Supreme Court's *Gore* line of cases setting constitutional limits on punitive damages is a lack of fair notice.  As the *Gore* Court put it, "[e]lementary notions of fairness enshrined in our constitutional jurisprudence dictate that a person receive fair notice not only of the conduct that will subject him to punishment, but also of the severity of the penalty that a State may impose."  517 U.S. at 574.  Here, where Congress has established a statutory range of damages with a mandatory upper limit, those constitutional concerns fall away.  *See Lowry's Reports*, 302 F. Supp. 2d at 460 (refusing to review statutory damages for copyright infringement under the *Gore* punitive damages analysis because "[t]he unregulated and arbitrary use of judicial power that the *Gore* guideposts remedy is not implicated in Congress' carefully crafted and reasonably

persons who use or distribute intellectual property have a strong incentive to abide by the copyright laws").

13

constrained statute"); *Accounting Outsourcing*, 329 F. Supp. 2d at 809 (refusing to apply *Gore* to statutory damage award and noting that, in the context of such congressionally mandated schemes, "Defendants can hardly complain that they had no fair notice regarding the severity of the potential punishment"); *Zomba Enters.*, 491 F.3d at 588 (holding that the Supreme Court's punitive damages analysis does not apply to an award of statutory damages).

The existence of a statutory range also precludes application of the punitive damages case law for a second reason. The Court's *Gore* line of cases emphasized that "substantial deference [should be given] to legislative judgments concerning appropriate sanctions for the conduct at issue," 517 U.S. at 583 (quoting *Browning-Ferris Indus. of Vt., Inc. v. Kelco Disposal, Inc.*, 492 U.S. 257, 301 (1989) (O'Connor, J. concurring in part and dissenting in part)). This recognition of the heightened deference given to statutory damage awards, and the correspondingly lower deference owed a jury's unbounded punitive damage award, is included within the third guidepost established by the *Gore* Court, which judges the propriety of punitive damages by examining the disparity between a punitive damage award and the "civil penalties authorized or imposed in comparable cases." 517 U.S. at 575 (emphasis added). The damages awarded here fall within a clearly defined *statutory* range – they are by definition the "civil penalties authorized" for Defendant's conduct. Comparing an award of statutory damages to the authorized range of civil penalties would be an odd exercise because they are the same thing. This alone demonstrates the inapplicability of the *Gore* punitive damages framework to a review of statutory damages.

For these reasons, courts reviewing the constitutionality of statutory damage awards apply the much more deferential standard for statutory civil penalties established in *St. Louis, I.M. & S. Railway Co. v. Williams*,  251 U.S. 63 (1919).  This standard rarely, if ever, justifies a court in second-guessing a legislature's choice of penalty for an intentional tort like willful copyright infringement.  As noted in *Williams*, "the states . . . possess a wide latitude of discretion in the matter" and statutory remedies for "public wrongs" are not required to be "be confined or proportioned to [the plaintiff's] loss or damages."  *Id*. at 66.  Under this standard, it is not sufficient for a defendant to claim that there is a large differential between their estimate of the actual harm caused and the magnitude of the penalty.  The *Williams* standard recognizes that legislators have the constitutional authority to make that choice, and a court should be loathe to disturb it.

Courts reviewing awards of statutory damages under the Copyright Act have recognized this duty of extreme deference.  As the Sixth Circuit explained, constitutional review in this context "is extraordinarily deferential – even more so than in cases applying abuse-of-discretion review."  *Zomba Enters., Inc. v. Panorama Records*, 491 F.3d at 587 (affirming statutory damage award in a ratio of 44:1 compared to the licensing fee the plaintiff lost as a result of the infringement); *see Superior Form Builders, Inc. v. Dan Chase Taxidermy Supply Co.*, 74 F.3d 488, 496 (4th Cir. 1996) (applying a standard of review that "is even more deferential than abuse of discretion" and upholding a jury award of $400,000 for four infringements, even though the plaintiff proved no actual damage and the defendant's gross revenue was $10,200); *see also Douglas v. Cunningham*, 294 U.S. 207, 210 (1935) (analyzing the range of statutory

damages in the 1909 Act and explaining that "the employment of the statutory yardstick,

within set limits, is committed solely to the court which hears the case, and this fact takes

the matter out of the ordinary rule with respect to abuse of discretion"); *Columbia*

*Pictures Television, Inc. v. Krypton Broad. of Birmingham, Inc.*, 259 F.3d 1186, 1194

(9th Cir. 2001) ("If statutory damages are elected, [t]he court has wide discretion in

determining the amount of statutory damages to be award, constrained only by the

specified maxima and minima." (internal quotation marks omitted) (citation omitted)

(alteration in original)).[5]

Courts have accorded the same level of deference in cases addressing other

statutory damage provisions.  For example, the federal Telephone Consumer Protection

Act ("TCPA") provides that any person who receives an unsolicited advertisement sent

by fax is entitled to receive "actual monetary loss from such a violation, or . . . $500 in

damages for each such violation, whichever is greater."  47 U.S.C. § 227(b)(3)(B).

Courts that have addressed this provision have applied *Williams* and noted that "Congress

identified two public harms addressed by the TCPA:  (1) unsolicited fax advertisements

impose difficult-to-quantify interruption costs on businesses and residences because fax

machines typically can only handle one fax at a time; and (2) unsolicited commercial

---

[5]     Although earlier cases left unsettled whether it was the judge or the jury who
decided whether to award statutory damages and in what amount, in recent years, the role
of the jury in determining statutory damages for copyright has been clearly settled.  The
Supreme Court, in *Feltner*, 523 U.S. at 355, held that the Seventh Amendment "provides
a right to a jury trial on all issues pertinent to an award of statutory damages under
§ 504(c) of the Copyright Act, including the amount itself."  Defendant's motion is flatly
inconsistent with this right.

facsimiles shift the advertisers' printing costs to unwitting recipients." *Accounting Outsourcing*, 329 F. Supp. 2d at 809; *see also Texas v. Am. Blastfax, Inc.*, 121 F. Supp. 2d 1085, 1090 (W.D. Tex. 2000) (explaining that "the TCPA damages provision was not designed solely to compensate each private injury caused by unsolicited fax advertisements, but also to address and deter the overall public harm caused by such conduct").

TCPA defendants often assert that the actual damages suffered by the recipient of unsolicited fax advertisements are incredibly low, as little as "a few pennies per alleged violation," making the statutory damages of $500 per fax disproportionately high. *See, e.g.*, *Kenro, Inc. v. Fax Daily, Inc.*, 962 F. Supp. 1162, 1165-66 (S.D. Ind. 1997). But courts have found no constitutional violation under *Williams*, recognizing that Congress designed the TCPA remedy to "take into account the difficult to quantify business interruption costs imposed upon recipients of unsolicited fax advertisements, effectively deter the unscrupulous practice of shifting these costs to unwitting recipients of junk faxes, and provide adequate incentive for an individual plaintiff to bring suit on his own behalf." *Id.* (internal quotation marks omitted); *see Holtzman*, 2008 WL 2168762, at *6.

In fact, Plaintiffs have not located a single case, **in the nine decades since Williams was decided**, in which a court relied on *Williams* to reduce or eliminate an award of statutory damages because of a due process violation. *See*, *e.g.*, Colleen P. Murphy, *Judicial Assessment of Legal Remedies*, 94 Nw. U. L. Rev. 153, 202 (1999) (noting that in the context of the Copyright Act, "[n]o reported decision has reduced a litigated award that was within the appropriate statutory range").

17

### 3.    The Jury's Award of Statutory Damages to Plaintiffs Satisfies *Williams*.

Under the applicable standards, there is no doubt that the jury's award passes

constitutional muster.  The jury determined that Defendant infringed 24 of Plaintiffs'

copyrighted works, and that the infringement was willful.  Defendant argues that these

24 intentional torts were trivial in their economic impact.  (Def. Mot. at 2.)  But that

argument – even if correct (which it is not) – misses the mark as a matter of law for the

reasons already discussed.  The Constitution does not require some fixed ratio between

actual injury caused by an intentional tort and the damages a legislature may choose to

impose.  To the contrary, legislators may freely determine that a given tort merits a

damage award vastly exceeding the actual injury inflicted.  *See Lowry's Reports*, 302 F.

Supp. 2d at 459; *Douglas*, 294 U.S. at 210.  In so doing, they can assess what level of

damage award is needed to deter violations, taking into account the difficulty of detecting

violations and the cost of enforcement litigation.  *See* H.R. Rep. No. 106-216, at 2

(explaining that the 1999 increase in the statutory damages range was necessary to

provide "more stringent deterrents to copyright infringement and stronger enforcement of

the laws").

Thus, whether or not an infringer acts with the express purpose of profiting from

his or her infringement, statutory damages are available within the range set by Congress.

As the Supreme Court recognized in *Woolworth*, "[e]ven for uninjurious and unprofitable

invasions of copyright the court may, if it deems it just, impose a liability within statutory

limits to sanction and vindicate the statutory policy."  344 U.S. at 233.

As already noted, Defendant's constitutional argument is also factually erroneous. Defendant did not limit her tortious conduct to 24 reproductions made for her personal use. To the contrary, she participated in a massive way in the KaZaA file-sharing network, she attempted to hide her conduct by replacing her hard drive, and she offered multiple conflicting and implausible denials of her misconduct under oath. In light of all of this evidence, Defendant's due process concerns are meritless, particularly when measured against the "due regard for the interests of the public, the numberless opportunities for committing the offense, and the need for securing uniform adherence to" the Copyright Act. *See Williams*, 251 U.S. 67.

In fact, when Congress amended the Copyright Act in 1999 to increase the minimum and maximum permissible amounts of statutory damages, ***it cited behavior just like Defendant's as a primary motivating factor***. Congress sought to increase statutory damages to deal with the fact that "[m]any computer users are either ignorant that copyright laws apply to Internet activity, or they simply believe that they will not be caught or prosecuted for their conduct." H.R. Rep. No. 106-216 at 3. The case at bar is almost directly on point with what Congress sought to address in the latter situation – a defendant who knew that she was infringing but believed that she would not be caught or prosecuted for her conduct because she committed her acts via an Internet connection. Statutory damages serve an integral purpose in securing the adherence of these individuals to copyright law in the digital age.

Defendant relies on *Philip Morris USA v. Williams*, 549 U.S. 346 (2007), for the proposition that the damage award must be justified solely by reference to "punishing and

deterring a defendant for *her* conduct and the injury that caused to *the plaintiffs*." (Def. Mot. at 7 (emphasis in original).) But setting aside the fact that *Philip Morris* does not apply because it did not concern an award of statutory damages, Defendant misreads the case. The Court did state that a jury cannot be told to punish a defendant directly for tortious conduct affecting third parties not before the court. But it went on to say that, in calculating the appropriate punitive damage award, a jury must weigh the reprehensibility of the defendant's conduct, and that assessment *can constitutionally take account of the actual and potential harm inflicted by the defendant on third parties. Philip Morris*, 549 U.S. at 355. Plaintiffs testified about harm primarily to themselves but also to artists who directly share in the royalties from the sale of sound recordings. They are directly "downstream" from the Plaintiffs and cannot prosecute their own rights as they do not own the copyrights at issue. It is certainly permissible for the jury to consider the impact of Defendant's conduct on this very important segment of the music community.

Defendant also relies on cases suggesting that statutory damage awards may be constitutionally excessive when thousands of claims are aggregated in a class action. But those cases have no relevance here, where Plaintiffs did not bring a class action and did not seek to aggregate every claim of copyright infringement on which they had right to sue and seek statutory damages. *See, e.g.*, *Parker v. Time Warner Entm't Co., L.P.*, 331 F.3d 13, 22 (2d Cir. 2003) (explaining that the problems that arise at the intersection between class actions and statutory damages are a result of combining one mechanism – statutory damages – that encourages the filing of individual lawsuits with a second mechanism – class actions – that "aggregates many claims – often because there would

otherwise be no incentive to bring an individual claim").  Rather, Plaintiffs chose a very

small number of infringement claims to pursue in relation to Defendants' overall activity.

Nothing forced the jury to pick the dollar figure it selected.  To the contrary, the jury had

the authority to award damages reflective of Defendant's misconduct and it did so.

Copyright infringement is a serious offense, and Defendant's willful actions

should not be minimized.  Her conduct underscores the compelling need for the deterrent

effect Congress incorporated into the Copyright Act's statutory damages scheme.  To

conclude otherwise would subvert long-settled, and still entirely relevant, understandings

of the appropriate measure of damages for copyright infringement.

Finally, even if the Court were to conclude that the damages award is

constitutionally excessive, the remedy would not be, as Defendant argues, to reduce the

award to zero.  (Def. Mot. at 3-4).  Rather, the proper approach would be to reduce the

award to the maximum amount that the court determines would be constitutional.  *See*

*Ross v. Kansas City Power & Light Co.*, 293 F.3d 1041, 1049-50 (8th Cir. 2002).

## II.     The Court Should Not Grant a Remittitur.

Plaintiffs submit that the Court also should deny Defendant's request for a

remittitur.  Even if the Court has the power to remit an award of statutory damages

(which Plaintiffs dispute), for much the same reasons discussed above, Plaintiffs submit

that the damage award is not "grossly excessive" and therefore is not properly subject to

a remittitur.  *See Eich v. Bd. of Regents*, 350 F.3d 752, 763-64 (8th Cir. 2003).

The Supreme Court -- fully aware of the range of statutory damages -- has made it

clear that the jury has the sole authority to determine "all issues pertinent to an award of

statutory damages," including the amount itself. *Feltner*, 523 U.S. at 355. *Feltner* does not hold nor contemplate that a judge has the right to alter a jury's statutory damage award if that award falls squarely within the statutory damage range prescribed by Congress. *See also SESAC, Inc. v. WPNT, Inc.*, 327 F. Supp. 2d 531, 532 (W.D. Pa. 2003) (rejecting request for remittitur of statutory damages for copyright infringement because "[t]he court should not interfere lightly with a carefully crafted statutory scheme by substituting its judgment for that of the legislature").

In any event, as discussed above, the jury's damage award is proper and in no way excessive. Indeed, as previously noted, the evidence in the record supports the verdict, the court properly instructed the jury, and the jury awarded an amount well within the range created by Congress.

Yet Plaintiffs also recognize the substantial practical interest in ending this long-running litigation, and especially in avoiding a third trial of this case. This case has already placed a heavy burden upon the resources of this Court over the course of two jury trials. Plaintiffs, of course, have also expended considerable sums to litigate the case. They also recognize that the award is likely beyond the ability of Defendant to pay. With these realities in mind, and without waiving their right to reject any remittitur and elect a new trial, Plaintiffs might accept a remittitur under certain circumstances.

First, any remittitur must take into account Defendant's willful conduct and her infringement of a significant number of Plaintiffs' copyrighted sound recordings, including the 24 sound recordings at issue, as well as the substantial damage caused to Plaintiffs and their businesses by Defendant's actions. In this regard, the Court cannot

order a remittitur for "an amount less than the jury could reasonably find." *Taylor v.*

*Otter Tail Corp.*, 484 F.3d 1016, 1019 (8th Cir. 2007) (citation omitted).  And in

determining the amount of any potential remittitur, the Court should look to other jury

verdicts in similar cases.  *See McCabe v. Mais*, 580 F. Supp. 2d 815, 837 (N.D. Iowa

2008); *Vogler v. Blackmore*, 352 F.3d 150, 156 (5th Cir. 2003).  The Court should

therefore consider the damages awarded by the jury in the first trial of Thomas – $9,250

for each of 24 infringed works – and the recently concluded trial of Joel Tenenbaum in

the District of Massachusetts – $22,500 for each of 30 infringed works.  The *Tenenbaum*

case involved willful infringement by an individual user of a file-sharing service and

featured facts that are virtually identical to Defendant's infringement.  *Sony BMG Music*

*Entm't v. Tenenbaum*, Case No. 07-cv-11446-NG (Jury Verdict Form attached hereto as

Exhibit A).  Along with the jury award in this case, these two awards provide insight into

what a reasonable jury would find appropriate damages for willful copyright

infringement through file-sharing.

Together these cases represent the considered determination of 34 men and

women in geographically diverse parts of the country, representing a spectrum of ages,

experiences and backgrounds.  The jurors spent a cumulative total of 11 trial days

listening to the evidence and argument presented by each side of these file-sharing cases.

Although the Eighth Circuit has noted that "[e]ach case must be evaluated on its own

merits," *McCabe*, 580 F. Supp. 2d at 835 n.14 (quoting *Herold v. Burlington N., Inc.*, 761

F.2d 1241, 1248 (8th Cir. 1985)), these statutory damage awards appropriately reflect the

broader harm caused by file-sharing, as explained at trial by Wade Leak.  Moreover, they

are the only damage awards in file-sharing cases to date – cases that shared almost identical facts in evidence and which were decided in short succession. Thus, they should inform any decision to reduce the award as they reflect what a "jury could reasonably find." *See Taylor*, 484 F.3d at 1019; *see also McCabe*, 580 F. Supp. 2d at 835 n.14 ("[T]he value of any comparison will depend upon the similarities of the injuries, the locations and dates of the trials, and of the evidence presented there." (quoting *Gutierrez-Rodriguez v. Cartagena*, 882 F.2d 553, 579 (1st Cir. 1989)); *Shaw v. United States*, 741 F.2d 1202, 1209 (9th Cir. 1984) (although "[e]ach case stands on its own facts[,] . . . courts are required to maintain some degree of uniformity in cases involving similar losses"); *Levka v. City of Chicago*, 748 F.2d 421, 425 (7th Cir. 1984) (explaining that a court may consider with a damage award "is out of line compared to other awards in similar cases").

Accordingly, Plaintiffs would consider accepting such a remittitur solely to allow both sides and the Court to achieve finality and close the case, but premised on the continued belief that both juries impaneled at the trials in this case rendered valid verdicts against Defendant. They would not do so if the Court were to hold that the current verdict was *unconstitutionally* high.

## III. The Court Should Refuse To Reconsider Defendant's Legal Arguments Regarding Suppression Of MediaSentry Evidence And A Need For Certified Deposit Copies Of Sound Recordings At Trial.

Finally, Defendant raises two issues "out of an abundance of caution and in an effort to give this Court a final opportunity to reconsider" its rulings on two legal issues: (1) the Court's Memorandum of Law & Order dated June 11, 2009 (Doc. No. 315)

24

denying Defendant's Motion to Suppress Evidence (Doc. No. 263); and (2) the Court's Order dated June 16, 2009 (Doc. No. 329) denying Defendant's Memorandum in Support of Objection to Admission of Non-Certified Copies of Sound Recordings and Other Testimony to Prove Contents of Copyrighted Works (Doc. No. 322) (Def. Mot. at 2).

First, the Court should refuse to reconsider Defendant's arguments regarding suppression of evidence collected by MediaSentry.  For the reasons stated in Plaintiffs' Response to Motion to Suppress Evidence (Doc. No. 296) and set forth at oral argument on June 10, 2009, the Court's decision to deny Defendant's motion to suppress was correct and should stand.  Defendant argues that the Court should reconsider its order based on allegations that MediaSentry violated the private detectives acts in New Jersey or Maryland (Def. Mot. at 11).  However, Defendant has already raised and the Court has already rejected these arguments, which were belatedly presented for the first time in Defendant's Reply in Support of Motion to Suppress Evidence filed on June 9, 2009 (Doc. No. 308 at 8-9).  In fact, the Court held that "MediaSentry has not violated *any of the asserted state or federal laws*."  (Doc. No. 315 at 2, emphasis provided.)  Further, Plaintiffs note that the District of Massachusetts recently rejected a virtually identical motion asserted by Defendant's counsel in *Sony BMG Music Entertainment v. Tenenbaum*, Case No. 07-cv-11446-NG, slip op. (D. Mass. July 22, 2009) (attached hereto as Exhibit B).  In the *Tenenbaum* case, the court similarly found that counsel's arguments had no merit and denied a virtually identical request to suppress evidence gathered by MediaSentry on behalf of the plaintiff record companies.  (*Id.*) (denying defendant's motion to suppress evidence by MediaSentry because defendant failed to

25

show MediaSentry violated any law in gathering evidence to be used in the case.)

Accordingly, this Court's decision to deny Defendant's motion to suppress was correct

and should be upheld.

Second, Defendant offers no new evidence regarding her objection to admission of

non-certified copies of the sound recordings at issue.  For the reasons stated in Plaintiffs'

Brief in Opposition to Defendant's Motion to Exclude Evidence of the Sound Recordings

Deposited with the Copyright Office (Doc. No. 326) and set forth at oral argument before

the Court on June 16, 2009, Plaintiffs respectfully submit the Court correctly decided this

issue at that time and there is no basis to reconsider it now.

## CONCLUSION

WHEREFORE, Plaintiffs ask that Defendant's Motion be denied.  However, if the

Court concludes, contrary to Plaintiffs' position, that some remittitur is appropriate,

Plaintiffs will consider accepting such a remittitur as discussed herein.

Respectfully submitted this 14th day of August 2009.

/s/ Timothy M. Reynolds
Timothy M. Reynolds (pro hac vice)
Andrew B. Mohraz (pro hac vice)
HOLME ROBERTS & OWEN LLP
1700 Lincoln, Suite 4100
Denver, Colorado 80203
Telephone: (303) 861-7000
Facsimile: (303) 866-0200

Matthew J. Oppenheim (pro hac vice)
THE OPPENHEIM GROUP, LLP
7304 River Falls Drive
Potomac, Maryland 20854
Telephone: (301) 299-4986
Facsimile:  (866) 766-1678

Felicia J. Boyd (No. 186168)
Leita Walker (No. 387095)
FAEGRE & BENSON LLP
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, Minnesota 55402-3901
Telephone: (612) 766-7000
Facsimile:  (612) 766-1600

ATTORNEYS FOR PLAINTIFFS