# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

_____

CAPITOL RECORDS INC.,
a Delaware corporation;
SONY BMG MUSIC ENTERTAINMENT,
a Delaware general partnership;
ARISTA RECORDS LLC,
a Delaware limited liability company;
INTERSCOPE RECORDS,
a California general partnership;
WARNER BROS. RECORDS INC.,
a Delaware corporation; and
UMG RECORDINGS, INC.,
a Delaware corporation;

          Plaintiffs,

v.                         **MEMORANDUM OF LAW & ORDER**
                         Civil File No. 06-1497 (MJD/RLE)

JAMMIE THOMAS-RASSET,

          Defendant.

_____

Andrew B. Mohraz, David A. Tonini, and Timothy M. Reynolds, Holme Roberts & Owen, LLP; Felicia J. Boyd, Kara L. B. Barrow, and Mary Andreleita Walker, Faegre & Benson, LLP; and Matthew J. Oppenheim, Oppenheim Group, LLP; counsel for Plaintiffs.

Joe Sibley and K. A. D. Camara, Camara & Sibley, LLP, and Brant D. Penney and Garrett D. Blanchfield, Jr., Reinhardt Wendorf & Blanchfield, counsel for Defendant.

_____

I.      **INTRODUCTION**

This matter is before the Court on Defendant's Motion for a New Trial, Remittitur, and to Alter or Amend the Judgment [Docket No. 344] and Plaintiffs' Motion to Amend Judgment.  [Docket No. 342]

II.     **SUMMARY OF THE COURT'S OPINION**

After long and careful deliberation, the Court grants in part and denies in part Thomas-Rasset's motion and remits the damages award to $2,250 per song – three times the statutory minimum.  The need for deterrence cannot justify a $2 million verdict for stealing and illegally distributing 24 songs for the sole purpose of obtaining free music.  Moreover, although Plaintiffs were not required to prove their actual damages, statutory damages must still bear *some* relation to actual damages.

The Court has labored to fashion a reasonable limit on statutory damages awards against noncommercial individuals who illegally download and upload music such that the award of statutory damages does not veer into the realm of gross injustice.  Finding a precise dollar amount that delineates the border between the jury's wide discretion to calculate its own number to address

2

Thomas-Rasset's willful violations, Plaintiffs' far-reaching, but nebulous damages, and the need to deter online piracy in general and the outrageousness of a $2 million verdict is a considerable task. The Court concludes that setting the limit at three times the minimum statutory damages amount in this case is the most reasoned solution.

This award constitutes the maximum amount a jury could reasonably award to both compensate Plaintiffs and address the deterrence aspect of the Copyright Act. **This reduced award is significant and harsh.** It is a higher award than the Court might have chosen to impose in its sole discretion, but the decision was not entrusted to this Court. It was the jury's province to determine the award of statutory damages and this Court has merely reduced that award to the maximum amount that is no longer monstrous and shocking. Plaintiffs have seven days from the date of this Order to decide whether to accept the remittitur or request a new trial on the issue of damages.

The Court denies Thomas-Rasset's motion for a new trial based on the admission of evidence collected by MediaSentry. It further denies her motion for a new trial based on Plaintiffs' failure to produce certified copies of the sound recordings deposited with the Copyright Office.

3

Finally, the Court grants Plaintiffs' request to amend the Judgment to include a permanent injunction.

## III.   BACKGROUND

Plaintiffs are recording companies that owned or controlled exclusive rights to copyrights in sound recordings, including 24 at issue in this lawsuit.  On April 19, 2006, Plaintiffs filed a Complaint against Defendant Jammie Thomas-Rasset alleging that she infringed Plaintiffs' copyrighted sound recordings pursuant to the Copyright Act, 17 U.S.C. §§ 101, 106, 501-505, by illegally downloading and distributing the recordings via the online peer-to-peer file sharing application known as Kazaa.  Plaintiffs sought injunctive relief, statutory damages, costs, and attorney fees.

Trial on this matter began on October 2, 2007.  On October 4, 2007, the jury found that Thomas-Rasset had willfully infringed all 24 of Plaintiffs' sound recordings at issue and awarded Plaintiffs statutory damages in the amount of $9,250 for each willful infringement.  [Docket No. 100]  The total damages award was $222,000.  On October 5, the Court entered judgment on the jury's verdict. [Docket No. 106]

On October 15, Defendant filed a Motion for New Trial, or in the

4

Alternative, for Remittitur, based solely on the issue of the constitutionality of the

Copyright Act's statutory damages provision in the case. [Docket No. 109] On

September 24, 2008, the Court vacated the verdict and granted a new trial based

on its conclusion that it had erred in giving Jury Instruction No. 15, which

addressed the existence of a making-available right. [Docket No. 197] The Court

made no findings regarding the constitutionality of the damages award.

The second trial of this matter began on June 15, 2009. On June 18, 2009,

the jury returned a verdict finding that Thomas-Rasset had willfully infringed all

24 sound recordings and awarding statutory damages in the amount of $80,000

for each song, for a total verdict of $1,920,000. [Docket No. 336] On June 19,

2009, the Court entered judgment on the jury's verdict. [Docket No. 338]

Now, Thomas-Rasset requests that the Court set aside the award of

statutory damages and provides three alternatives: 1) the statutory damages

provision of the Copyright Act, as applied to Thomas-Rasset, violates the Due

Process Clause of the U.S. Constitution; therefore, Plaintiffs must accept a $0

verdict; 2) the jury's application of the statutory damages provision of the

Copyright Act is excessive and shocking so the Court should remit the verdict to

the minimum statutory damages of $750 per sound recording infringed; or 3) the

jury's application of the statutory damages provision of the Copyright Act is excessive and shocking so the Court should grant a new trial. She also requests a new trial on the ground that there is insufficient evidence to sustain the verdict because the evidence collected by MediaSentry should not have been admitted at trial. Finally, she asserts that the Court erred in permitting Plaintiffs to proceed without producing certified copies of the sound recordings deposited with the Copyright Office.

Plaintiffs request that the Court amend the June 19, 2009 Judgment to include a permanent injunction.

## IV.   DISCUSSION

### A.   Remittitur

#### 1.   Standard for Remittitur

"[A] district court should order remittitur only when the verdict is so grossly excessive as to shock the conscience of the court. A verdict is not considered excessive unless there is plain injustice or a monstrous or shocking result." Eich v. Bd. of Regents for Cent. Mo. State Univ., 350 F.3d 752, 763 (8th Cir. 2003) (citations omitted). When deciding a motion for a new trial or remittitur, the Court can rely on its own reading of all of the trial evidence

presented.  <u>Schaefer v. Spider Staging Corp.</u>, 275 F.3d 735, 738 (8th Cir. 2002).

> The scope of review of a district court's damage award is extremely narrow and the district court's award may not be reversed except for a manifest abuse of discretion.  In determining whether the trial court abused its discretion in ordering a remittitur, [the appellate court will] analyze whether the remittitur was ordered for an amount less than the jury could reasonably find.

<u>Taylor v. Otter Tail Corp.</u>, 484 F.3d 1016, 1019 (8th Cir. 2007) (citations omitted).

**2.     Whether the Court Has the Power to Remit Statutory Damages Awards**

Plaintiffs argue that this Court does not have the power to remit an award of statutory damages.  They note that the Supreme Court has held that "the Seventh Amendment provides a right to a jury trial on all issues pertinent to an award of statutory damages under § 504(c) of the Copyright Act, including the amount itself."  <u>Feltner v. Columbia Pictures Television, Inc.</u>, 523 U.S. 340, 355 (1998).  Plaintiffs conclude that the jury, alone, has the authority to determine the amount of statutory damages within the statutory range.

The Court is hesitant to interfere with the jury's role in determining the proper amount of damages.  And the Court is cognizant that Congress chose the range of statutory damages available for copyright infringement, within which the jury's decisionmaking was bounded.  However, despite the Court's

reluctance to interfere, there is no authority for Plaintiffs' assertion that the Court does not have the power to remit an award of statutory damages.

Moreover, the fact that Plaintiffs have a Seventh Amendment right to a jury trial regarding damages under the Copyright Act does not prevent the Court from ordering remittitur. Rather, the Seventh Amendment merely requires that, if this Court does order remittitur, it also offer Plaintiffs the option of choosing to reject the remittitur and exercise their right to a new jury trial solely on the issue of damages. Corpus v. Bennett, 430 F.3d 912, 917 (8th Cir. 2005); Thorne v. Welk Inv., Inc., 197 F.3d 1205, 1212 (8th Cir. 1999).

### 3. Whether the Award Is Grossly Excessive

### a. Statutory Damages Framework

The Copyright Act provides that "an infringer of copyright is liable for either . . . the copyright owner's actual damages and any additional profits of the infringer . . . or . . . statutory damages." 17 U.S.C. § 504(a).

The statute further provides:

(1) Except as provided by clause (2) of this subsection, the copyright owner may elect, at any time before final judgment is rendered, to recover, instead of actual damages and profits, an award of statutory damages for all infringements involved in the action, with respect to any one work, for which any one infringer is liable individually . . .

8

in a sum of not less than $750 or more than $30,000 as the court
considers just.  For the purposes of this subsection, all the parts of a
compilation or derivative work constitute one work.

(2) In a case where the copyright owner sustains the burden of
proving, and the court finds, that infringement was committed
willfully, the court in its discretion may increase the award of
statutory damages to a sum of not more than $150,000.

17 U.S.C. § 504(c).

Congress last amended the statutory damages section of the Copyright Act

in 1999, significantly increasing the minimum and maximum statutory awards to

their current levels.  Congress intended the statutory damages to be

"substantially" higher than actual damages:

Courts and juries must be able to render awards that deter others
from infringing intellectual property rights.  It is important that the
cost of infringement substantially exceed the costs of compliance, so
that persons who use or distribute intellectual property have a
strong incentive to abide by the copyright laws.

H.R. Rep. No. 106-216, at 6 (1999).

The statutory damages provision of the Copyright Act has both deterrent

and compensatory components.  Cass County Music Co. v. C.H.L.R., Inc., 88 F.3d

635, 643 (8th Cir. 1996).  If a plaintiff requests that a jury decide the amount of

statutory damages, then "a jury must determine the actual amount of statutory

damages under § 504(c)." <u>Feltner</u>, 523 U.S. at 355.

A plaintiff can recover statutory damages even though it did not submit

evidence regarding actual damages, such as lost profits:

> [S]tatutory damages for copyright infringement are not only "restitution of profit and reparation for injury," but also are in the nature of a penalty, "designed to discourage wrongful conduct." "The discretion of the court is wide enough to permit a resort to statutory damages for such purposes. Even for uninjurious and unprofitable invasions of copyright the court may, if it deems it just, impose a liability within statutory limits to sanction and vindicate the statutory policy."

<u>Cass County Music Co.</u>, 88 F.3d at 643 (quoting <u>F.W. Woolworth Co. v.</u>

<u>Contemporary Arts, Inc.</u>, 344 U.S. 228, 233 (1952)) (footnote and emphasis

omitted).

### b.    Relationship Between Statutory Damages and Actual Damages

Thomas-Rasset argues that the ratio of the statutory damages award to

actual damages in this case, when measured in songs, is 1:62,015. She bases this

calculations on a cost of $1.29 per song online. She further argues that, based on

a cost of $15 per album, the ratio is still 1:5,333. (Alasdair McMullan, the

executive vice president of legal affairs for EMI Music North America, testified

that Richard Marx's "Now and Forever" probably retailed for $1.29 on iTunes

and the album probably cost less than $20.00 in a retail store.)  Thomas-Rasset

concludes that these ratios are monstrous and shocking.

Plaintiffs accurately point out that, because they chose to seek statutory

damages rather than actual damages, they were not required to present proof of

the actual damages caused by Thomas-Rasset's infringement.  See, e.g., Cass

County Music Co., 88 F.3d at 643 ("[S]tatutory damages are by definition a

substitute for unproven or unprovable actual damages."); Lowry's Reports, Inc.

v. Legg Mason, Inc., 302 F. Supp. 2d 455, 459 (D. Md. 2004) ("Because statutory

damages are an alternative to actual damages, there has never been a

requirement that statutory damages must be strictly related to actual injury.")

(citations omitted).  However, because statutory damages have, in part, a

compensatory purpose, "assessed statutory damages should bear some relation

to the actual damages suffered."  Bly v. Banbury Books, Inc., 638 F. Supp. 983, 987

(E.D. Pa. 1986).

### c.      Factual Support for Actual Damages Inflicted

Thomas-Rasset asserts that, at most, she was a single mother who merely

downloaded and shared music when she had already lawfully bought CDs of

much of that music and had no commercial motive to infringe.  Defendant notes

that, if her conduct caused any harm, it was only economic harm.  She caused no

danger to the safety of others.  Additionally, Thomas-Rasset argues that the

victims of her conduct were not vulnerable – they are the largest recording

companies in the United States.

Plaintiffs contend that their actual damages were far greater than the $1.29

cost of Richard Marx's "Now and Forever" on iTunes or the less than $20 cost of

an album containing that song.  They note that the evidence showed that

Thomas-Rasset willfully infringed 24 of their copyrighted sound recordings.  The

songs, along with almost 1,700 others, were in Thomas-Rasset's directory, which

she shared with the millions of users of the Kazaa network.  Therefore, the songs

at issue were accessible for free downloading by millions of Kazaa users who

could subsequently share them with others.  Plaintiffs argue that the valuation of

actual damages cannot be limited to the harm only caused by reproducing 24

songs.

Plaintiffs further note that Gary Wade Leak, the deputy general counsel for

Sony Music Entertainment, testified that, in the case of an illegal download, the

damage to the recording company is the loss of the sale of that particular song,

but in the case of an illegal online distribution, the recording company has lost

exponential sales for that song.  He testified that, generally, online piracy has caused the recording industry to lose billions of dollars in the last several years and has caused the layoffs of thousands of employees.

Leak further testified that the cost of obtaining a license to engage in Thomas-Rasset's conduct would be prohibitive.  Specifically, he testified that, in order to obtain an unlimited license to distribute music online for free, a person would have to buy the entire recording company and shut it down.  As Defendant notes, Leak could not quantify the harm caused to Sony by Thomas-Rasset, because he could not determine how many times the recordings were downloaded from her share file by other Kazaa users.  Thomas-Rasset argues that it would be unconstitutional to punish her for the harms caused by illegal music downloading in general.

### d.    Evidence of Willfulness and the Need for Deterrence

As the Court instructed the jury, factors other than the damages caused and gains obtained by the defendant's infringement are relevant to the decision of the proper amount of statutory damages.  Facts that go to the deterrence aspect of statutory damages, such as a defendant's willfulness or innocence, and incorrigibility, are also relevant.  Here, the jury found that Thomas-Rasset acted

willfully.  Thomas-Rasset testified that she had studied Napster in college and that, while still in college, she later learned that copying and distributing copyrighted music recordings over the Internet was against the law.  Therefore, she was aware that downloading songs off of and distributing songs via Kazaa was illegal.

Moreover, Thomas-Rasset refused to accept responsibility for downloading and distributing the infringing sound recordings.  Thomas-Rasset previously provided sworn interrogatory answers that there had never been any type of online media distribution on her computer in the three years before the Complaint was filed and that she did not contend that anyone else was responsible for the infringement.  Despite never implicating others during her depositions or testimony in the previous trial, in this second trial, she suddenly leveled new accusations against her children and ex-boyfriend, asserting that they might have committed the infringement.  Thomas-Rasset's refusal to accept responsibility for her actions and her decision to concoct a new theory of the infringement casting possible blame on her children and ex-boyfriend for her actions demonstrate a refusal to accept responsibility and raise the need for strong deterrence.

### e.    Need for Remittitur

Although Plaintiffs highlight valid reasons that Thomas-Rasset must pay a statutory damages award, these facts simply cannot justify a $2 million verdict in this case.  Thomas-Rasset was not a business acting for profit.  Instead, she was an individual consumer illegally seeking free access to music for her own use.  Congress set a high maximum for statutory damages in order to ensure that damages awards could be large enough to outweigh the potential gain from infringing.  As the Court noted in its September 2008 Order, in the case of commercial actors, the potential gain in revenues is enormous and enticing to potential infringers.  In the case of individuals who infringe by using peer-to-peer networks, the potential gain from infringement is access to free music, not the possibility of hundreds of thousands  – or even millions – of dollars in profits.  The need for deterrence cannot justify a $2 million verdict for stealing and illegally distributing 24 songs for the sole purpose of obtaining free music.

Similarly, the damage to Plaintiffs cannot support this verdict.  While Plaintiffs were not required to prove their actual damage, the possible actual damage weighs in the Court's analysis.  One purpose of statutory damages under the Copyright Act is to act as a substitute for actual damages when they are

difficult to calculate.  However, as the Court has already explained, statutory damages must still bear *some* relation to actual damages.

It may be impossible to calculate how many other computer users committed infringement with the illegal copies of works accessed from Thomas-Rasset or the amount of damage that their access caused.  Additionally, trial testimony made clear that detecting online piracy and identifying infringers on peer-to-peer networks is difficult and costly.  The recovery to Plaintiffs must be sufficient to justify their expenditure in pursuing infringers.

All of the potential ills caused by unauthorized peer-to-peer networking and illegal downloading are relevant to the damages award.  The Court does not discount that, in aggregate, illegal downloading has caused serious, widespread harm to the recording industry.  These facts justify a statutory damages award that is many multiples higher than the simple cost of buying a CD or legally purchasing the songs online.

The Court has considered the strong need for deterrence in this particular case, the difficulty in quantifying the damages caused by the chain effect of Thomas-Rasset's distribution of copyrighted sound recordings over the Internet, the large scale damages caused by online piracy in aggregate, and the substantial

16

impediments to identifying and pursuing infringers.  However, despite the

combination of these justifications and the Court's deference to the jury's verdict,

$2 million for stealing 24 songs for personal use is simply shocking.  No matter

how unremorseful Thomas-Rasset may be, assessing a $2 million award against

an individual consumer for use of Kazaa is unjust.  Even Plaintiffs admit that

Thomas-Rasset is unlikely to ever be able to pay such an award.  Having

determined that the current verdict is so shocking that it must be remitted, the

Court next faces the task of assessing the proper amount of remittitur.

### 4.    Proper Amount of Remittitur

Thomas-Rasset requests that the Court remit the statutory damages award

to $18,000, which consists of the statutory minimum, $750, per song.  Plaintiffs

assert that there is no basis for remittitur.  However, they represent that they will

consider a remittitur, so long as it takes into account Defendant's willful conduct,

the substantial damage cause by her actions, and the significant number of

copyright sound recordings upon which she infringed.

### a.    Standard for Determining Proper Amount of Remittitur

The Court's task is not to choose the statutory damages amount it thinks

would be most appropriate in this matter.  Rather, under the "maximum recovery rule," the Court reduces the damages to the "maximum amount the jury could properly have awarded."  K-B Trucking Co. v. Riss Int'l Corp., 763 F.2d 1148, 1163 (10th Cir. 1985) (citation omitted), cited with approval in In re Knickerbocker, 827 F.2d 281, 289 n.6 (8th Cir. 1987).  See also Stogsdill v. Healthmark Partners, L.L.C., 377 F.3d 827, 834 (8th Cir. 2004) ("When a jury awards excessive damages, remittitur to the maximum amount proved is an appropriate remedy.") (citation omitted); Ogilvie v. Fotomat Corp., 641 F.2d 581, 586 n.13 (8th Cir. 1981) (holding remittitur to "the maximum amounts that would be sustained by [plaintiffs'] proof" is the proper standard) (footnote omitted); Slatton v. Martin K. Eby Constr. Co., Inc., 506 F.2d 505, 509 (8th Cir. 1974) (upholding district court's remittitur to $50,000 as "the maximum limit sustainable on a jury verdict even though it thought that $15,000 to $20,000 was fair and reasonable compensation" because remittitur was not "ordered for an amount less than the jury could reasonably find").  The Court will not substitute its judgment for the judgment of the jury.  Rather, it will remit the award to the maximum amount sustainable by the record, so that the statutory damages award is no longer shocking or monstrous.

### b.    Evidence of Other Jury Verdicts

Plaintiffs argue that the Court should look to other jury verdicts in similar cases to determine the amount of the remittitur.  They point out that, in the first trial in this case, the jury awarded $9,250 for each of the 24 infringed works.  In the recent similar trial in the District of Massachusetts, the jury awarded $22,500 for each of 30 works infringed.  (Sony BMG Music Entm't v. Tenenbaum, Case No. 07-cv-11446-NG, July 31, 2009, Jury Verdict.)

In evaluating the propriety of remittitur, the Eighth Circuit has held that comparing jury verdicts for similar injuries in different cases is "not greatly helpful because each case must be evaluated as an individual one, within the framework of its distinctive facts."  Vanskike v. Union Pac. R.R. Co., 725 F.2d 1146, 1150 (8th Cir. 1984) (citation omitted).  Additionally, "[e]ach case is evaluated by a different, randomly selected group of individual jurors."  Id.  In this case, the previous jury award was vacated by this Court and, in the Tenenbaum case, the court has not yet decided the pending motion to reduce the damages award.  Therefore, although the Court is aware of these other two awards, it does not consider them to carry weight in its remittitur analysis.

### c.    Request for Reduction to the Statutory Minimum

Defendant advocates that the Court remit the damages award to the statutory minimum.  Even statutory damages of $750 per sound recording initially appears surprisingly high when the retail cost of such downloads is considered.  However, the Court declines Thomas-Rasset's request to remit the award to the statutory minimum.

Congress set the statutory range for copyright infringement and evinced a clear intent that each work willfully infringed justifies at least $750 in statutory damages.  Reducing the statutory damages award to that minimum amount would still result in a total damages award of $18,000.  An award of $750 per song infringed would constitute a substantial amount to a noncommercial consumer and would cost more than forty times the cost of a CD.  Such an award would uphold Congress's intent "that the cost of infringement substantially exceed the costs of compliance, so that persons who use or distribute intellectual property have a strong incentive to abide by the copyright laws."  H.R. Rep. 106-216, at 6.

However, Congress has set the floor of $750 per sound recording infringed, even without a finding of willfulness.  Some increase in the damages awarded is reasonable in a case of willful infringement.  The jury explicitly found that

Thomas-Rasset willfully infringed on Defendants' copyrights.  The statute

demonstrates Congress's intent that willful infringers can be – but do not have to

be – treated more harshly that non-willful infringers.

Additionally, Thomas-Rasset lied on the witness stand by denying

responsibility for her infringing acts and, instead, blamed others, including her

children, for her actions.  A reasonable jury could have used the facts in this case

to conclude that additional deterrence was required.

The Court further notes that simply comparing the amount of the award

with the cost of a song on iTunes or a CD is inadequate – the damages caused to

Plaintiffs are far ranging and difficult to calculate.  A reasonable jury could also

have used Leak's testimony to conclude that Thomas-Rasset's infringement

posed great harm to the recording industry because, by distributing the songs

online for free, she exponentially increased their damages.  Additionally,

Plaintiffs elected to recover statutory damages in lieu of actual damages.

Therefore, it would be inappropriate to limit Plaintiffs' recovery based on a strict

multiple of Plaintiffs' actual damages.  In fact, even if the Court were inclined to

attempt such a calculation, it would surely fail: the damages caused by

Thomas-Rasset's infringement cannot be calculated with precision.  Moreover,

unlike actual damages, statutory damages can include a deterrence component, which can justify a higher award.

Based on all of these factors, the jury could reasonably award damages above the statutory minimum of $750 per song in order to achieve deterrence and compensate for large, uncertain damages. The Court must remit the award to the highest part of the range that the jury could reasonably have chosen. Therefore, the Court concludes that remittitur to the statutory minimum is unsupportable.

### d.    Remittitur to Three Times the Statutory Minimum

The Court concludes that remittitur to $2,250 – 3 times the statutory minimum – per sound recording infringed is appropriate. There is a broad legal practice of establishing a treble award as the upper limit permitted to address willful or particularly damaging behavior. Federal statutes allow for an increase in statutory damages, up to triple statutory damages, when the statutory violation is willful or demonstrates a particular need for deterrence. See, e.g., Digital Millennium Copyright Act, 17 U.S.C. § 1203(c)(3) (providing that "the court may increase the award of damages up to triple the amount that would otherwise be awarded" if the person committed the violation "within 3 years after a final judgment was entered against the person for another such

violation"); Telephone Consumer Protection Act, 47 U.S.C. § 227(b)(3), (c)(5) (permitting court to increase statutory damages award "to an amount equal to not more than 3 times" the statutory damages amount of $500, for willful or knowing violations).  In these other contexts, treble statutory damages have been set as the permissible outer limit of statutory damages awards, even in the face of willful behavior.

Other statutes, while not trebling statutory damages, allow tripling of a dollar amount other than actual damages, such as the cost of settlement service, the defendant's profits, the amount of a fraudulent claim, or a month's rent.  See, e.g., Real Estate Settlement Procedures Act, 12 U.S.C. § 2607(d)(2) ("Any person or persons who violate the prohibitions or limitations of this section shall be jointly and severally liable to the person or persons charged for the settlement service involved in the violation in an amount equal to three times the amount of any charge paid for such settlement service."); Lanham Act, 15 U.S.C. § 1117(b) (providing that, under certain circumstances involving the use of a counterfeit mark or designation, "the court shall, unless the court finds extenuating circumstances, enter judgment for three times such profits or damages, whichever amount is greater"); Civil Monetary Penalties Law, 42 U.S.C.

§ 1320a-7a(a) ("In addition, such a person shall be subject to an assessment of not

more than 3 times the amount claimed for each such item or service in lieu of

damages sustained by the United States or a State agency because of such [false]

claim . . . ."); Mass. Gen. Laws ch. 186, § 14 ("Any person who commits any act in

violation of this section [by interfering with a tenant's quiet enjoyment] shall also

be liable for actual and consequential damages or three month's rent, whichever

is greater . . .").

Finally, a myriad of statutes permit the recovery of treble actual damages,

either because of willful behavior or as a matter of course when Congress has

found the violation to be particularly serious.  See, e.g., Clayton Act, 15 U.S.C.

§ 15(a) (providing that "any person who shall be injured in his business or

property by reason of anything forbidden in the antitrust laws . . . shall recover

threefold the damages by him sustained"); Racketeer Influenced and Corrupt

Organizations Act, 18 U.S.C. § 1964(c) (providing that "[a]ny person injured in

his business or property by reason of a violation of section 1962 of this chapter . . .

shall recover threefold the damages he sustains"); False Claims Act, 31 U.S.C.

§ 3729(a)(1) (establishing "civil penalty of not less than $5,000 and not more than

$10,000 . . . plus 3 times the amount of damages which the Government sustains

24

because of the act of that person"); Patent Act, 35 U.S.C. § 284 (providing that "the court may increase the damages up to three times the amount found or assessed"); Residential Lead-Based Paint Hazard Reduction Act, 42 U.S.C. § 4852d(b)(3) ("Any person who knowingly violates the provisions of this section shall be jointly and severally liable to the purchaser or lessee in an amount equal to 3 times the amount of damages incurred by such individual.").

Of course, the Copyright Act contains no treble damages provision.  The Court's remittitur is not an attempt to create such a provision.  Rather, the Court has labored to fashion a reasonable limit on statutory damages awards against noncommercial individuals who illegally download and upload music such that the award of statutory damages does not veer into the realm of gross injustice. Finding a precise dollar amount that delineates the border between the jury's wide discretion to calculate its own number to address Thomas-Rasset's willful violations, Plaintiffs' far-reaching, but nebulous damages, and the need to deter online piracy in general and the outrageousness of a $2 million verdict is a considerable task.  The Court concludes that setting the limit at three times the minimum statutory damages amount in this case is the most reasoned solution.

This award constitutes the maximum amount a jury could reasonably

award to both compensate Plaintiffs and address the deterrence aspect of the

Copyright Act.  This reduced award is significant and harsh.  It is a higher award

than the Court might have chosen to impose in its sole discretion, but the

decision was not entrusted to this Court.  It was the jury's province to determine

the award of statutory damages and this Court has merely reduced that award to

the maximum amount that is no longer monstrous and shocking.

### 5.    Constitutional Challenge

Because the Court determines that remittitur is appropriate in this case, it

will not reach the question of the constitutionality of the jury's damages award.

See United States v. Allen, 406 F.3d 940, 946 (8th Cir. 2005) ("When we are

confronted with several possible grounds for deciding a case, any of which

would lead to the same result, we choose the narrowest ground in order to avoid

unnecessary adjudication of constitutional issues.)" (citation omitted).

### B.    Reconsideration of the Court's Denial of the Motion to Suppress

### 1.    The Court's Previous Ruling

In the Court's June 11, 2009 Order on the motions in limine, the Court

denied Thomas-Rasset's motion to suppress evidence gathered by MediaSentry.

Defendant had asserted that MediaSentry violated the Minnesota Private

Detectives Act ("MPDA") by acting as a detective although it held no Minnesota private detective license.  The Court held that MediaSentry was not subject to the MPDA because it did not operate within the state of Minnesota.

The Court further noted that "[a]lthough Defendant has vaguely alluded to private detective licensing laws from other states, there is no evidence or legal argument before the Court upon which the Court could conclude that MediaSentry was subject to and violated another state's private detective law in this case." (June 11 Order at 10-11.)  The Court also held that, even if "MediaSentry had incidentally violated a private detective licensing statute from some other state," it did not act "for the purpose of committing a tort or crime," so the federal Wiretap Act would not apply.  (Id. at 11.)

### 2.    Defendant's Current Motion for a New Trial

In the current motion for a new trial, Defendant reasserts her previous arguments.  She then argues that the Court's previous Order denying the motion to suppress was based on its erroneous conclusion that MediaSentry did not violate any law in its investigation of Thomas-Rasset.

Thomas-Rasset notes that, during trial, the MediaSentry representative testified that he was operating in New Jersey when he interacted with Thomas-

Rasset's computer.  Defendant asserts that New Jersey has private investigator

and wiretap statutes that were violated when Media Sentry had operated in that

state.  She cursorily cites to N.J. Stat. §§ 45.19, 2A:156A-2.  She concludes that

Media Sentry's actions were illegal under New Jersey law, and, therefore, all of

the evidence gathered by Media Sentry should have been suppressed.  She

argues that, without that evidence, there would have been insufficient evidence

to support a verdict of liability.  Therefore, the Court should grant a new trial

under Rule 59.

### 3.    Conclusion

The Court denies Thomas-Rasset's motion for a new trial based on the

suppression issue.  New Jersey Statute § 45:19-10 provides that if a private

detective business fails to obtain a private detective license, it is guilty of a

misdemeanor.  However, Defendant points to no New Jersey case or statute that

holds that evidence obtained by an unlicensed private detective is subject to

suppression.  Furthermore, while Defendant reprints her cursory argument from

her reply to the motions in limine, she provides no substantive legal argument or

factual analysis of whether the New Jersey statute would apply at all in this case.

As for New Jersey's wiretap statute, New Jersey is a single-consent state,

with a wiretap statute almost identical to the federal Wiretap Act.  <u>See</u> N.J. Stat.

§ 2A:156A-4(d).  As the Court already held with respect to the federal Wiretap

Act, MediaSentry was a party to the electronic communication with Thomas-

Rasset.  Additionally, the Court already held that MediaSentry did not commit a

crime or tort in relation to the interception.  Finally, as the Court previously held

that, even if MediaSentry did violate a private detective licensing statute from

some state other than Minnesota, it did not intercept or use the communication

<u>for the purpose</u> of committing a crime or tort.  Therefore, the Court will not

reverse its decision denying Thomas-Rasset's motion in limine to suppress the

evidence gathered by MediaSentry.

### C.    Reconsideration of the Court's Admission of Non-Certified Copies

Thomas-Rasset states that she intends to appeal the Court's Order allowing

Plaintiffs to prove the content of a registered sound recording without a certified

copy of the sound recording deposited with the Copyright Office.  However, she

provides no argument or analysis with regard to that point.  Therefore, the

Court's previous ruling stands and it will not grant a new trial on this basis.

### D.    Request for Injunctive Relief

#### 1.    Propriety of an Injunction

Plaintiffs request that, under Federal Rule of Civil Procedure 59(e), the

Court amend the Judgment in this case to include an injunction, as requested in

Plaintiffs' Complaint.  The Copyright Act provides:

> Any court having jurisdiction of a civil action arising under this title
> may . . . grant temporary and final injunctions on such terms as it
> may deem reasonable to prevent or restrain infringement of a
> copyright.

17 U.S.C. § 502(a).  "Injunctions regularly are issued pursuant to the mandate of

Section 502, because the public interest is the interest in upholding copyright

protections."  Taylor Corp. v. Four Seasons Greetings, LLC, 403 F.3d 958, 968 (8th

Cir. 2005) (citation omitted).  Additionally, the Court has the equitable power to

order destruction of all infringing copies in Defendant's possession.  17 U.S.C.

§ 503(b).

> To determine whether permanent injunctive relief is warranted, [the
> Court] balance[s] three factors: (1) the threat of irreparable harm to
> the moving party; (2) the balance of harm between this harm and the
> harm suffered by the nonmoving party if the injunction is granted;
> and (3) the public interest.

Taylor, Corp., 403 F.3d at 967.

### a.    Irreparable Harm

The parties expend considerable energy debating whether, in light of the

Supreme Court's decision in the patent case of <u>eBay, Inc. v. MercExchange L.L.C.</u>,

547 U.S. 388, 394 (2006), this Court can continue to apply the long line of case law

which presumes the existence of irreparable harm based upon a finding of

copyright infringement.  <u>See, e.g.</u>, <u>Nat'l Football League v. McBee & Bruno's, Inc.</u>,

792 F.2d 726, 729 (8th Cir. 1986) ("Copyright law has long held that irreparable

injury is presumed when the exclusive rights of the holder are infringed.")

(citation omitted).  The Court concludes that it does not need to determine the

applicability of <u>eBay</u> to copyright injunctions because, through the evidence

introduced at trial, Plaintiffs have demonstrated irreparable harm even in the

absence of the traditional presumption.

Defendant argues that the large monetary judgment Plaintiffs have

obtained is more than enough to compensate them for any past infringing acts

and deter future infringement.  However, there are strong doubts whether

Plaintiffs will ever recover the monetary award from Defendant.

Thomas-Rasset further claims that Plaintiffs have not offered evidence that

she is likely to continue infringing.  Although Plaintiffs have not submitted any

direct evidence regarding continued infringement by Thomas-Rasset, the Court

holds that the likelihood of future infringement is raised because Defendant has

not accepted responsibility for her actions and online infringement is easy to accomplish, but difficult to detect.

The Court rejects Thomas-Rasset's assertion that Plaintiffs' failure to seek a preliminary injunction prevents entry of a permanent injunction at this point in the litigation.  Cf. MercExchange, L.L.C. v. eBay, Inc., 500 F. Supp. 2d 556, 573 (E.D. Va. 2007) (holding plaintiff's failure to seek a preliminary injunction was "plainly not dispositive" and concluding that failure was only relevant in that particular case because it was "consistent with [the plaintiff's] strategy of pursuing market participants to exact licenses for infringement") (footnote omitted).  There is no indication that Plaintiffs' decision to forgo seeking a preliminary injunction was part of an overall strategy to attempt to exact licenses or was otherwise contrary to the propriety of entry of a permanent injunction at this time.

Thomas-Rasset claims that the risk of future harm is speculative and notes that Plaintiffs did not present any evidence of actual lost market share.  This argument is unavailing.  Congress provided for – and Plaintiffs sought and recovered – statutory damages for the very reason that actual damages for copyright infringement are difficult to prove.  It would be contrary to Congress's

32

intent and the jury's verdict to deny injunctive relief to Plaintiffs because they took advantage of the option of seeking statutory damages due to the difficulty of proving actual damages.  It is this very difficulty of measuring damages that contributes to a finding of irreparable harm.

As the Court has already discussed in this Order, illegal distribution over peer-to-peer networks, such as Kazaa, causes Plaintiffs lost revenues and layoffs. Additionally, a license to engage in Defendant's activity would be prohibitively expensive because to obtain the license, one would have to buy the company. The downloaded sound recordings in this case were exact replicas of Plaintiffs' copyrighted sound recordings.  Therefore, by distributing these recordings to other Kazaa users, Thomas-Rasset directly competed with Plaintiffs' copyrighted material.  Measuring damages from peer-to-peer copyright infringement is made more difficult because, as trial testimony established, Kazaa permits anonymous file sharing, so copyright holders cannot monitor every act of infringement over the network.

The harm Plaintiffs face is irreparable and monetary damages are inadequate precisely because actual damages are difficult to compute.  Given the large volume of songs in Thomas-Rasset's Kazaa share file and her continued

refusal to accept responsibility for her actions, it is reasonable to conclude that an

injunction is necessary to prevent future infringement.  This threat of repeated

infringement, the difficulty of detecting future infringement by Thomas-Rasset,

and the viral aspect of damages weigh in favor of a finding of a threat of

irreparable harm.

### b.       Balance of the Hardships

The balance of the hardships favors an injunction.  Defendant's conduct

could create exponential harm to Plaintiffs, but the requested injunction would

inflict minimal hardship on Thomas-Rasset.  There is no cognizable harm to

Defendant from being enjoined from doing something that is against the law and

for which she has already been found liable.  Thomas-Rasset fails to identify any

hardship that would be inflicted upon her if the injunction is issued.  See, e.g.,

UMG Recordings, Inc. v. Blake, No. 5:06-CV-00120-BR, 2007 WL 1853956, at *3

(E.D.N.C. June 26, 2007) ("As to the consideration of the balance of hardship

between Plaintiffs and Defendant, the fact that Plaintiffs' recordings can be

replicated into infinity, for free, establishes that a distinct hardship rests with

Plaintiffs.  Defendant, on the other hand, faces little, if any, harm.  These

recordings will still be just as accessible to Defendant; (s)he will have to pay to

download them.").

### c.  Public Interest

> Injunctions regularly are issued pursuant to the mandate of section
> 502, because the public interest is the interest in upholding copyright
> protections.  Since Congress has elected to grant certain exclusive
> rights to the owner of a copyright in a protected work, it is virtually
> axiomatic that the public interest can only be served by upholding
> copyright protections and, correspondingly, preventing the
> misappropriation of the skills, creative energies, and resources
> which are invested in the protected work.

Taylor Corp., 403 F.3d at 968 (citations omitted).

The public interest weighs in favor of an injunction.  Defendant is correct

that the Supreme Court has noted that parodies or other critical uses of

copyrighted works that simply go beyond the fair use of the material may not

justify injunctive relief.  Campbell v. Acuff-Rose Music, Inc., 510 U.S. 569, 578

n.10 (1994).  There is no allegation that Thomas-Rasset engaged in parody or

other critical use of Plaintiffs' copyrighted material, and her fair use defense was

waived; instead, Defendant engaged in "simple piracy."  Id. (citation omitted).

The general rule applies here: the public interest is in favor of upholding

copyright protections and the copyright holder's exclusivity.

### 2.  Conclusion

The Court grants Plaintiffs' request for an injunction.  First, there is undisputed statutory authority for the Court to order "destruction or other reasonable disposition of all copies . . . made or used in violation of the copyright owner's exclusive rights."  17 U.S.C. § 503(b).  Thomas-Rasset offers no legitimate reason why she should keep unauthorized copies of the infringed songs.  Therefore, the Court orders the destruction of those recordings, to the extent that Thomas-Rasset still has them.

Second, analysis of each equitable factor favors entry of a permanent injunction barring future infringement.   Therefore, the Court grants Plaintiffs' motion to amend the judgment.

Because Plaintiffs continually create new works that will be vulnerable to infringement and would require litigation if the injunction were limited to existing works, the injunction covers works to be created in the future.  See, e.g., Princeton Univ. Press v. Mich. Document Servs., Inc., 99 F.3d 1381, 1392 (6th Cir. 1996) ("The weight of authority supports the extension of injunctive relief to future works.") (citations omitted).  Additionally, because the Court has held that the Copyright Act does not provide a making available right, it will not enjoin Thomas-Rasset from making the copyrighted sound recordings available to the

public.

Accordingly, based upon the files, records, and proceedings herein, **IT IS**

**HEREBY ORDERED**:

1.    Defendant's Motion for a New Trial, Remittitur, and to Alter or
      Amend the Judgment [Docket No. 344] is **DENIED IN PART** and
      **GRANTED IN PART** as follows: The Judgment is amended to remit
      the damages award to $2,250 per sound recording infringed.
      Plaintiffs are directed to either accept the remittitur or to schedule a
      new trial on the issue of damages.  Plaintiffs shall file a notification
      of their decision regarding remittitur no later than seven days from
      the date of this Order.  The Court will defer amending the Judgment
      pending notification of Plaintiffs' position with regard to remittitur.

2.    Plaintiffs' Motion to Amend Judgment [Docket No. 342] is **DENIED
      IN PART** and **GRANTED IN PART** as follows: The Judgment will
      be amended to include the following permanent injunction:

            Defendant shall be and hereby is enjoined from directly
            or indirectly infringing Plaintiffs' rights under federal or
            state law in the copyrighted recordings and any sound
            recording, whether now in existence or later created,
            that is owned or controlled by Plaintiffs (or any parent,
            subsidiary, or affiliate record label of Plaintiffs)
            ("Plaintiffs' Recordings"), including without limitation
            by using the Internet or any online media distribution
            system to reproduce (i.e., download) any of Plaintiffs'
            Recordings, or to distribute (i.e., upload) any of
            Plaintiffs' Recordings, except pursuant to a lawful
            license or with the express authority of Plaintiffs.
            Defendant also shall destroy all copies of Plaintiffs'
            Recordings that Defendant has downloaded onto any
            computer hard drive or server without Plaintiffs'

authorization and shall destroy all copies of those downloaded recordings transferred onto any physical medium or device in Defendant's possession, custody, or control.

3.      Amendment of the Judgment is deferred pending notification of Plaintiffs' position with regard to remittitur.


Dated:   January 22, 2010                    s/ Michael J. Davis
                                             Michael J. Davis
                                             Chief Judge
                                             United States District Court