## IN THE UNITED STATES OF DISTRICT COURT
## FOR THE DISTRICT OF MINNESOTA

CAPITOL RECORDS, INC., *et al*.,

          Plaintiffs,

vs.

JAMMIE THOMAS-RASSET,

          Defendant.

Case No.: 06cv1497-MJD/RLE

**NOTICE OF PLAINTIFFS'
DECISION RE: REMITTITUR**

---

Plaintiffs submit this notice pursuant to the Court's January 22, 2010 Order regarding remittitur.  (Doc. 366.)  After considering the Court's Order, Plaintiffs regretfully must decline to accept the remittitur since the rationale underlying the remittitur is inconsistent with the Copyright Act and its legislative history, as well as established case law.

In its January 22, 2010 decision, the Court recognized the scope and gravity of the conduct engaged in by Defendant Jammie Thomas-Rasset by specifically noting that she willfully infringed Plaintiffs' sound recordings, was aware that what she was doing was illegal, lied to the jury, and never accepted responsibility for her actions.  (Doc. 366 at 13-14.)  The Court agreed that Thomas-Rasset's actions in downloading Plaintiffs' recordings without authorization and then distributing them through KaZaA for millions of other users to download had caused Plaintiffs substantial, yet unquantifiable, harm.  (*Id.* at 16, 21.)  Finally, the Court acknowledged that Plaintiffs demonstrated a need to deter both Thomas-Rasset and others from engaging in such blatant infringement.  (*Id.*)

The seriousness of Thomas-Rasset's conduct and its impact on Plaintiffs was not lost on the twenty-four individual members of the two juries who rendered verdicts in this matter. They easily (and quickly) found that Thomas-Rasset had willfully infringed Plaintiffs' copyrights. The first jury awarded damages of $222,000 ($9,250 per work) and the second jury awarded $1.9 million ($80,000 per work).

While Plaintiffs do not believe that either verdict was improper under the law, or that the second verdict should be remitted, they would have considered accepting a remittitur simply so that this case could finally come to an end. However, any remittitur must otherwise be consistent with the law and be guided by what actual juries have awarded under similar circumstances.[1] Unfortunately, Plaintiffs find it impossible to accept a remittitur that could be read to set a new standard for statutory damages – essentially capping those damages at three times the minimum statutory amount of $750 (or $2,250) for any "noncommercial individuals who illegally download and upload music." (*Id.* at 2, 25.) This far-reaching determination is contrary to the law and creates a statutory scheme that Congress did not intend or enact.

The Copyright Act sets forth a statutory damages range for cases of willful infringement of $750 to $150,000. Neither the Copyright Act nor any case law

---

[1]     The awards of other juries are the best evidence of what a reasonable jury would do. Yet, the Court discounted the first jury verdict in this case and disregarded the verdict in *Sony BMG Music Entertainment v. Tenenbaum* in which the jury returned a verdict of $675,000 ($22,500 per work). (Doc. 366 at 19.) There is, however, no dispute that thirty-four men and women have considered the willful infringement of these defendants and awarded sums from $9,250 to $80,000 per work. Those verdicts speak volumes and should not be ignored.

2

distinguishes – as this Court did – between "commercial" and "non-commercial" infringers for statutory damages purposes.  Moreover, neither the Copyright Act nor any case law contains any authority for capping damages at three times minimum damages in particular cases.  It is not for the courts to fashion a limit on damages for any particular type of infringer or any particular type of infringement.  That job belongs exclusively to Congress.  *See Eldred v. Ashcroft*, 537 U.S. 186, 222 (2003) ("[T]he Copyright Clause empowers Congress to determine the intellectual property regimes that, overall, in that body's judgment, will serve the ends of the Clause.")

Indeed, Congress has spoken on this very topic.  Congress deliberately and purposefully established a range of statutory damages that applies *without regard* to the commercial motivation of the defendant.  When Congress last took up the question of statutory damages in the Digital Theft Deterrence and Copyright Damages Improvement Act of 1999, it specifically increased the range of available damages to address conduct just like Thomas-Rasset's:

> By the turn of the century the Internet is projected to have ***more than 200 million users***, and the development of new technology will create additional incentive for copyright thieves to steal protected works. . . . ***Many computer users*** are either ignorant that copyright laws apply to Internet activity, or they ***simply believe that they will not be caught or prosecuted for their conduct***.  Also, many infringers do not consider the current copyright infringement penalties a real threat and continue infringing, even after a copyright owner puts them on notice that their actions constitute infringement and that they should stop the activity or face legal action.

H.R. Rep. No. 106-216 at 3 (emphasis added).  Thus, Congress specifically recognized the harm caused by "computer users" like Thomas-Rasset and increased the range of

#1454160 v1 den

available damages to provide "more stringent deterrents to copyright infringement and stronger enforcement of the laws." *See id.* at 2; *see also id.* at 6 ("It is important that the costs of infringement substantially exceed the costs of compliance, so that persons who use or distribute intellectual property have a strong incentive to abide by the copyright laws.").

A rule that the maximum permissible award in cases involving so-called "noncommercial" infringers is three times *minimum* statutory damages also ignores the harm caused by such infringers. From an economic perspective, individuals who give away copyrighted works illegally can cause as much harm as those who sell those works illegally, particularly when the so-called "non-commercial" infringer uses a P2P service. The notion that an infringer who does not make a profit should automatically be entitled to better treatment than an infringer who does make a profit is found nowhere in the law. The "not for profit" infringer is hardly entitled to special protection, which is why Congress conferred no such protection.

Aside from ignoring the plain language and intent of the Copyright Act, the Court's remittitur decision also contravenes the Plaintiffs' right under the Seventh Amendment to have the appropriate level of damages decided by the jury. *Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340, 355 (1998). When a court remits a jury award, it must have a basis for doing so and it must not substitute its judgment for that of the jury. Otherwise, the constitutional right to a jury trial would be, at best, illusory. Creating, as this Court did, a new and much smaller range of statutory damages

and calling it "the maximum amount that a reasonable jury could award" is no different than simply refusing to empanel a jury.

Where appropriate, a court's task in ordering a remittitur is to reduce the damages to the "maximum amount the jury could properly have awarded" under the facts of a particular case. *K-B Trucking Co. v. Riss Int'l Corp.*, 763 F.2d 1148, 1163 (10th Cir. 1985) (citation omitted), *cited with approval in In re Knickerbocker*, 827 F.2d 281, 289 n.6 (8th Cir. 1987); *Ogilvie v. Fotomat Corp.*, 641 F.2d 581, 586 n.13 (8th Cir. 1981) (holding that remittitur to "the maximum amounts that would be sustained by [plaintiffs'] proof" is the proper standard).  Instead of looking to the particular facts of this case, the Court's remittitur focuses on instances where Congress has authorized a "treble award . . . to address willful or particularly damaging behavior."  (Doc. 366 at 22-25.) This is an improper basis for determining a remittitur, especially where Congress could have adopted a "three times" rule for willful copyright infringement but did not.

The Court's $2,250 cap, which would seem to apply to any individual caught distributing music on a P2P network, takes away from the jury the discretion to award a higher "per work" amount in appropriate circumstances.  The Court's cap would set a new ceiling such that no copyright owner could effectively enforce their rights unless they could and did sue on numerous works.  No copyright owner would be motivated to enforce its rights where it could only sue on a handful of works because the potential recovery would be too limited.  Congress set a wide range of statutory damages for copyright cases precisely because plaintiffs need to be incentivized to bring appropriate cases to enforce their rights – even those who own a small number of copyrights or those

who only have a limited number of works infringed.  Conversely, the Court's artificially depressed cap compels parties with a large number of copyrights at stake to sue on all of them, rather than a more modest number.  This serves only to increase the discovery and trial burdens on parties and courts.  Yet the Court's inflexible "three times" cap would invariably penalize plaintiffs with a small number of works at issue, and would force those with a lot of works to add to their complaints unnecessarily.

Plaintiffs have endeavored to pursue this case in a very reasonable manner. Thomas-Rasset could have settled this case for a very modest amount at its inception, but she instead chose to stonewall Plaintiffs and lie to two juries.  Even as recently as last week, when she could still have settled this case for a reasonable sum, she again announced that she will not pay *any* amount to settle the case.  Thomas-Rasset's position is even more remarkable given that the Court's recent order does not disturb the liability and willfulness findings of the second jury.  Her conduct throughout this litigation has been patently unreasonable, and it demeans and devalues the hard-work and creativity of those responsible for the music that she felt entitled to steal and give away to countless others.

In light of the foregoing, Plaintiffs respectfully decline to accept the Court's remittitur and shall work with Defendant's counsel and the Court to set this matter for a new trial on the issue of damages.

Respectfully submitted this 8th day of February 2010.

/s/ Timothy M. Reynolds
Timothy M. Reynolds (pro hac vice)
David A. Tonini (pro hac vice)
Andrew B. Mohraz (pro hac vice)
HOLME ROBERTS & OWEN LLP
1700 Lincoln Street, Suite 4100
Denver, Colorado 80203
Telephone: (303) 861-7000
Facsimile: (303) 866-0200

Matthew J. Oppenheim (pro hac vice)
THE OPPENHEIM GROUP, LLP
7304 River Falls Drive
Potomac, Maryland 20854
Telephone: (301) 299-4986
Facsimile:  (866) 766-1678

Felicia J. Boyd (No. 186168)
Leita Walker (No. 387095)
FAEGRE & BENSON LLP
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, Minnesota 55402-3901
Telephone: (612) 766-7000
Facsimile:  (612) 766-1600

ATTORNEYS FOR PLAINTIFFS

#1454160 v1 den