**UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA**

| | |
|---|---|
| CAPITOL RECORDS INC.;SONY BMY MUSIC ENTERTAINMENT; ARISTA RECORDS LLC; INTERSCOPE RECORDS; WARNER BROS. RECORDS INC.; and UMG RECORDINGS INC.,       Plaintiffs, v. JAMMIE THOMAS,       Defendant. | Case No. 06-cv-1497 (MJD/RLE) *AMICUS CURIAE* BRIEF ON THE ISSUE OF JURY INSTRUCTION |

**STATEMENT OF INTEREST**

Charles Nesson is the William F. Weld Professor of Law at Harvard Law School as well as Founder and Faculty Co-Director of the Berkman Center for Internet & Society. He teaches the Law of Evidence and the American Jury. He is counsel for Joel Tenenbaum, the defendant in *Sony BMG Music Ent'mnt v. Tenenbaum*, No. 07cv11446-NG, 2010 WL 2705499 (D. Mass., July 09, 2010), which is currently pending appeal. As the only other individual filesharing case to go trial, its eventual outcome may be influenced by the jury instructions to be given by this Court in the re-retrial of Jamie Thomas-Rasset to commence on November 2, 2010.

In the re-retrial of Jamie Thomas-Rasset, the only issue to be tried is the amount of the statutory damage award the copyright holders are receive. The jury in the case should be instructed to return a damage award that is "just." No mention of the statutory range should be made. To do so would exceed and indeed contravene the mandate of 17 U.S.C. § 504 and would violate the Seventh Amendment.

> **a. Given the non-commercial nature of the defendant's actions in this case, presenting the statutory maximum to the jury sets an anchor to the damage range which is both prejudicially biasing to the jury's judgment and unconstitutional.**

The language of the Copyright Act of 1976 and its predecessor contemplated that the amount of statutory damages assessed for copyright infringement would be decided by judges and not juries. *See* 17 U.S.C. § 504(c) (2006) (statutory damages set "as the court considers just"); Pub. L. 60-349 § 25 (1909) (damages to be set "as to the court shall appear to be just"); *see also* 4 Nimmer on Copyright § 14.04(C)(1) (2010) (the "dominant view" before 1998 was that "it is for the judge, in the exercise of his discretion, to award statutory damages"). But in 1998, the Supreme Court, in

*Feltner v. Columbia Pictures Television, Inc.*, held that "the Seventh Amendment provides a right to a jury trial on all issues pertinent to an award of statutory damages . . . including the amount itself." 523 U.S. 340, 355 (1998). Congress has not amended the fundamental structure of the statute in light of this decision — instead, the overall scheme remains the same, except that the amount of damages is sent to a jury unless the jury trial right is waived.

Overlaying a jury trial onto the pre-existing statutory damages regime invites arbitrariness because "[u]nlike juries, judges can draw on their experience of setting awards in other copyright cases, as well as their research regarding the awards imposed by other judges, in settling on an appropriate figure." 145 Cong. Rec. S7453 (Sen. Hatch). Indeed, there has been a staggering difference between statutory damages assessed by juries and those assessed by judges in filesharing cases, which ultimately speaks to the error in the jury's instructions.

The statute requires an award which is "just." Yet, giving the jury a dollar range displaces the jury's delicate and inchoate common sense notion of what is "just" and substitutes a mandate to choose within an expansive range. The verdict form in Tenenbaum, like the verdict forms in the two trials of Thomas-Rasset, directed the jury to answer:

> "If you answered "YES" [to "willful" (defined as "knowing")], what damages do you award the Plaintiff for **this** copyrighted work, from $750 to $150,000?"1

This sentence is repeated in the verdict form for each separate infringement. Coupled with the instructions given by the judge, the extremes of the statutory range are driven into jury consciousness. The task of setting a "just" award is displaced. The statutory maximum is provided with no context for understanding it. A juror will "start with some anchor, the number [she] know[s], and adjust." Richard H. Thaler & Cass R. Sunstein, *Nudge: Improving Decisions About Health, Wealth, and Happiness* 23 (2008). This is problematic because "adjustments are typically insufficient." *Id.* Thus, when charities are seeking donations, the particular suggested amounts influence what people donate — when the suggestions are higher, the donations are as well. *Id.*[2] The impact of the $150,000

---

1

Conisderation of the actual verdict form the jury was required to fill out to complete its task demonstrates the clarity and emphasis of the misdirection to the jury.

2 . Behavioral economists have recognized that actor valuations within a given range are influenced by the range itself. *See* Dan Ariely, *"Coherent Arbitrariness": Stable Demand Curves Without Stable Preferences*, 118 Quarterly Journal of Economics 73 (2003) (discussing psychological evidence that individual assessments are often arbitrary yet coherently related to irrelevant stimuli such as arbitrary maxima). In one experiment, subjects were asked to ascribe a value to an unknown bottle of wine based on the initial stimulus of the last two digits of their social security number. *Id.* at 75-77. Subjects were asked if they'd be willing to pay the monetary equivalent of the last two digits of their social security number, and if not, how much they'd be willing to pay. Subjects whose last two digits were in the top quintile on average were willing to pay *323%* more than those whose last two digits were in the bottom quintile. In other words, the numeric determination by each subject reflected the range from zero to the arbitrary high-anchor determined by the last two digits of their social security number. Those with broader ranges returned

range limit (with no instruction explaining that the higher end of the range is reserved for egregious *commercial* infringers) will work to encourage jurors to adjust their award upward, well beyond what is constitutionally permissible against a non-commercial defendant who has made no profit and caused minimal if any damage.  Anchoring the range at a maximum that has already been held to be unconstitutional as applied to another individual non-commercial filesharer, *see Tenenbaum* at *26 (determining that $2,500 per infringement is "the maximum amount that is consistent with the dictates of the Due Process Clause"), invites arbitrary and excessive jury awards.

 Indeed, the outcomes from the previous verdicts in this case bear this out. The juries, both informed of the statutory range, predictably returned wildly excessive and disparate awards, in the first trial $9,250 per infringement for a total of $221,500 and in the second trial $80,000 per infringement totaling $1,900,000, *Capitol Records Inc. v. Thomas-Rasset*, 680 F. Supp. 2d 1045, 1048 (D. Minn., 2010). In *Tenenbaum*, with the jury likewise instructed, the jury set $22,500 per infringement for a total of $675,000. Even when lowered by a factor of ten, Judge Gertner described the amount as "significant and harsh . . . [and] *higher than I might have awarded in my own independent judgment.*" 2010 WL 2705499, at *27 (emphasis added).  The awards from these cases demonstrate the folly. An instruction to the jury that it can return an unconstitutional verdict leads to the possibility of endless retrials.  Every case has produced jury awards from three to *thirty-six* times the maximum the constitution is said to allow.

Instructing the jury on the statutory range is not required by the statute. The statute explicitly charges the judge, not the jury, with fitting the "just" award within the statutory range. Let the jury determine the "just" award in the absence of numeric anchors. Let the judge subsequently adjust the award to fit the statutory range. Nothing in the Seventh Amendment requires the jury to perform the task of adjusting the award it determines to be just to fit within the statutory range. If there is any such requirement it must be found within the statute, but of course, no such requirement is there.

### c. Instructing the jury on the maximum range introduces extreme arbitrariness into the process because the jury has no basis for contextualizing the maximum.

The extraordinarily broad statutory range provided in 17 U.S.C. § 504(c) is intended to cover the gamut of infringing activities.  Unfortunately, Congress provided no explicit guidance on how to ascribe damages within that range. Since the passage of the 1976 Copyright Act, *Superior Form Builders, Inc. v. Dan Chase Taxidermy Supply Co.*, 74 F.3d 488 (4th Cir. 1996) is the only final decision ascribing a statutory maximum for copyright infringement. Dan Chase Taxidermy Supply Company had become the largest taxidermy supplier in the country by consistently and deliberately copying its competitors' animal mannequins,

higher values. ]

consciously disregarding copyright laws, and continuing despite being sued several times for infringement. In fact, at the time of trial, eleven plaintiffs were suing the company for similar infringements. *Id.* at 497.

The company purchased animal mannequins from copyright holders using pseudonyms, removed their copyright notice, and attached its own. It went on to register its infringing works with the copyright office and advertise itself as the originator of the goods, warning consumers to "Beware of looka-likes" and vilifying other suppliers, including the original copyright holder, as "desperate 'copy cats' working overtime in an attempt to deceive the public and violate the rights of others." *Id*. at 492. The trial court determined that "Chase had been involved in similar infringement suits for years and that only substantial awards of damages as well as attorney's fees will deter Mr. Chase from continuing this willful and outrageous conduct." *Id*. (quotations omitted). The court also found that Chase was in violation of the ethical rules of the National Taxidermy Association, to which he was a member, against reproducing works of others. *Id.*

Judges have means to contextualize the statutory range. Juries do not. To force juries to award damages with inadequate and positively misleading direction from the Court does the institution of the jury and the law no service—the jury because its verdicts are disconnected from the common sense on which its respect depends, the law because its process is manipulated to produce and project a draconian message at odds with sense and constitution.

### d. The Court could diminish the arbitrariness of the jury's task by explaining how to determine a damage award that would be just.

Your duty in instructing the jury is to fill the void left when *Feltner* took the task of setting the statutory award away from judges and gave the task to jurors. Bottom line, you should instruct the jurors in a way that provides them with meaningful context, and avoid instruction that invites arbitrariness. Judge Gertner's constitutional ruling and your previous opinions in this case provide the base on which to build. Your instruction should identify the noncommercial character of the defendant is case as " an individual who reaped no pecuniary reward from [her] infringement and whose individual infringing acts caused the plaintiffs minimal harm, *Sony BMG Music Ent'mnt v. Tenenbaum*, No. 07cv11446-NG, 2010 WL 2705499 (D. Mass., July 09, 2010). You should instruct that if the defendant's actions were knowing but not willful, then the minimum of $750 per infringement would be appropriate; you should instruct that if the defendant's actions were willful, then, depending on the degree of willfulness, the jury could lawfully set the award as high as treble the $750 minimum. Within that range the jury should set an award it considers to be just.3

The Court could also rationalize its instruction on willfulness with § 504(c). The statute creates three distinct categories of infringer: innocent, the lowest category; willful, the highest category, and a now indefinable middle category, neither innocent (defined as "not aware" and with "no reason to know") nor willful,

---
3 No waiver of any objection which might be raised to such instruction is intended.

presently misdefined as satisfied by "knowing." Since lack of knowledge is the defining characteristic of innocent infringement, a determination of knowledge has the effect of merging the top two gradations of infringement, both "willful". Moreover, the R.I.A.A. has so far succeeded in removing innocent infringement from consideration. *See Maverick Recording Co. v. Harper* 598 F.3d 193 (5th Cir. 2010); *B.M.G. Music v. Gonzalez* 430 F.3d 888 (7th Cir. 2005). This further collapses the tripartite structure of infringement into a single category, flouting the manifest design of the statute.

      This need not, and indeed should not be the structure of § 504(c) presented to the jury. Instead infringement should be placed within a structure sensibly aligned and contextualized to express the statute. Innocent infringement would be explained as infringement occurring with no knowledge on the part of the defendant that she was infringing, *e.g. Harper*. Then a spectrum of non-innocent/non-willful infringement should be described to the jury, starting at the base of the second category of infringement with mere knowledge and extending to end of the spectrum, covering infringements that exhibit willfulness in high degree, *e.g. Builders*. Such instruction would aid, not displace the jury's ability to decide on an award that is "just".


Respectfully submitted,

Charles Nesson,
with assistance of Phil Hill, JD'13