UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| CAPITOL RECORDS INC. *et al.*,<br><br>   *Plaintiffs*,<br><br>v.<br><br>JAMMIE THOMAS–RASSET,<br><br>   *Defendant*. | Case No. 06-cv-1497-MJD |

**MOTION TO ALTER OR AMEND THE JUDGMENT AND RENEWED
MOTION FOR JUDGMENT AS A MATTER OF LAW**

K.A.D. Camara
Joe Sibley
CAMARA & SIBLEY LLP
2800 Post Oak Boulevard, Suite 5220
Houston, Texas  77056
713 966 6789
713 583 1131 (fax)
*camara@camarasibley.com*
*sibley@camarasibley.com*

Garrett Blanchfield
Brant D. Penney
Reinhardt, Wendorf & Blanchfield
332 Minnesota Street, Suite E-1250
St. Paul, Minnesota  55101
651 287 2100
651 287 2103
*g.blanchfield@rwblawfirm.com*
*b.penney@rwblawfirm.com*

     *Attorneys for Defendant Jammie Thomas–Rasset*

## MOTION TO ALTER OR AMEND THE JUDGMENT AND RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW

The jury awarded statutory damages of $62,500 per song for a total award of $1,500,000. *See* Doc. 428 (judgment). This award violates the Due Process Clause because it bears no reasonable relationship to the actual damages that the defendant caused. While the plaintiffs offered evidence of the harm caused by file sharing in general, they were unable to present evidence of any harm caused by this defendant in particular.[1] Because the plaintiffs failed to prove that this particular defendant did them any identifiable harm, even an award of the minimum statutory damages permitted by the Copyright Act would be unconstitutional. Accordingly, the defendant asks this Court to alter or amend the judgment under Rule 59(e) or grant judgment as a matter of law under Rule 50(b) to remove any award of statutory damages or, in the alternative, reduce the award of statutory damages to an amount that this Court believes is constitutional.[2]

**I.      COMPETING CONSTITUTIONAL STANDARDS**

A district court must reduce an unconstitutionally excessive verdict. *See Ross v. Kansas City Power & Light Co.*, 293 F.3d 1041, 1049–50 (8th Cir. 2002) (holding that, unlike for a remittitur, the plaintiffs' consent is not necessary to reduce a verdict on constitutional grounds). A defendant may challenge a verdict as unconstitutionally excessive either by a motion to alter or amend the judgment, *see, e.g., Maristuen v.*

---

[1] The plaintiffs did not even succeed in proving damages equal to the profits that they lost on the sale of the 24 songs at issue in this case. None of the plaintiffs' witnesses was able to testify about the profit margins on these songs. And without knowing the plaintiffs' profit margins, we cannot accurately determine the harm that the plaintiffs suffered when they lost a sale.

[2] In light of the plaintiffs' demonstrated unwillingness to accept a reduced judgment, the defendant does not request common-law remittitur. Rather, the defendant asks this Court to address her constitutional challenge and thereby create an appealable final judgment.

*National States Ins. Co.*, 57 F.3d 673, 676, 679 n.4 (8th Cir. 1995), or by a renewed motion for judgment as a matter of law, *see, e.g., Fletcher v. Price Chopper Foods of Trumann, Inc.*, 220 F.3d 871, 875 (8th Cir. 2000).  In either case, the question is whether the award of statutory damages comports with the Due Process Clause.

The parties disagree about what constitutional standard this Court should use to review the award of statutory damages in this case.  The plaintiffs argue for the standard in *St. Louis, I.M. & S. Ry. Co. v. Williams*, 251 U.S. 63 (1919), the only Supreme Court case to address the constitutionality of statutory damages, while the defendant argues for the standard in *BMW v. Gore*, 517 U.S. 559 (1996), and the Supreme Court's other recent cases in the context of common-law punitive damages.  Although there is a split of authority on whether *Gore* and its progeny apply to statutory punitive damages, the better view is that the Due Process Clause creates a single standard for review of punitive damages, whether common law or statutory, and that *Williams*, *Gore*, and the Supreme Court's other punitive-damages decisions all explain this single standard.  *See Sony BMG Music Entertainment v. Tenenbaum*, No. 07-cv-11446-NG, — F. Supp. 2d —, 2010 WL 2705499 at *13 n.10 (noting split and collecting cases), *14 (holding that *Gore* applies to statutory punitive damages).[3]

## II.  THE *WILLIAMS* STANDARD

In *Williams*, a railroad challenged statutory damages of "not less than fifty dollars nor more than three hundred dollars" for violating Arkansas's regulation of railroad rates

---

[3] Indeed, courts have often relied on *Williams* and similar cases in the context of common-law statutory damages.  *See, e.g., Eichenseer v. Reserve Life Ins. Co.*, 934 F.2d 1377, 1382 n.6 (5th Cir. 1991) (citing *Williams* and *Waters-Pierce* in reviewing a common-law punitive-damages award).  This lends support to the view that there is a single body of law governing constitutional review of punitive damages, whether authorized by common law or by statute.

by overcharging two passengers by 66 cents. 251 U.S. at 63–64. The railroad argued that such statutory damages "contravene due process of law" because "the penalty is arbitrary and unreasonable, and not proportionate to the actual damages sustained." *Id.* The Supreme Court held that the Due Process Clause "places a limitation upon the power of the states to prescribe penalties for violations of their laws" and that the Clause is violated "where the penalty prescribed is so severe and oppressive as to be wholly disproportioned to the offense and obviously unreasonable." *Id.* at 66–67. The Court sustained the penalty at issue, noting that, although "[w]hen the penalty is contrasted with the overcharge possible in any instance it of course seems large," it was not unconstitutional in light of "the interests of the public, the numberless opportunities for committing the offense, and the need for securing uniform adherence to established passenger rates." *Id.* at 67.

Several other early cases also held that "grossly excessive" statutory damages "amount to a deprivation of property without due process of law." *Waters-Pierce Oil Co. v. State of Texas*, 212 U.S. 86, 111 (1909); *see also, e.g., Southwestern Telegraph & Telephone Co. v. Danaher*, 238 U.S. 482, 491 (1915) ("to inflict upon the company penalties aggregating $6,300 was so plainly arbitrary and oppressive as to be nothing short of a taking of its property without due process of law") (collecting cases). Moreover, although *Williams* was decided in 1919, the Supreme Court, *see, e.g., Browning-Ferris Indus. of Vermont, Inc. v. Kelco Disposal, Inc.*, 492 U.S. 257, 276–77 (1989) ("the Due Process Clause places outer limits on the size of a civil damages award

4

made pursuant to a statutory scheme") (*citing Williams*), and lower courts[4] have continued to rely on it for the proposition that statutory damages are subject to due-process review.

Even considering only *Williams*, *Waters-Pierce*, and the other punitive-damages cases that arose in the context of statutory damages, the award of statutory damages in this case is unconstitutional. The award in this case is "wholly disproportioned to the offense and obviously unreasonable," *Williams*, 251 U.S. at 66–67, because it was driven by the harm caused by file sharing in general, not the harm caused by this defendant's actions in particular. At trial, all the plaintiffs' witnesses testified that they could not identify any harm that they suffered because of the defendant:

- *Lost sales to the defendant*. None of the plaintiffs' witnesses could testify — even though the plaintiffs certainly could have prepared them to do so — about the plaintiffs' profit margins on any of the 24 songs at issue. As a result, the plaintiffs were unable to prove any actual injury based on the defendant's downloading the 24 songs in question instead of buying them online or at a record store.

- *Lost sales to others as a result of free distribution on KaZaA*. The plaintiffs' witnesses, including their expert witness, Dr. Jacobson, all testified that it is impossible to tell whether any third party other than Media Sentry received any of the 24 songs from the defendant. More importantly, the plaintiffs' witnesses agreed that even if the defendant had never shared the 24 songs on KaZaA, the songs would have been available for download on KaZaA because they would have been available from other users. Although the plaintiffs offered evidence of harm caused by KaZaA or by the users of KaZaA collectively, they did not offer evidence of harm caused by this particular defendant.

- *Decline in value of the copyright*. The plaintiffs argued that the "value of their copyrights" in the 24 songs at issue was reduced. But they never explained how, other than by the unlawful distribution already described, this came about. And, again, if the value of the plaintiffs' copyrights was reduced by the availability of

---

[4] *See, e.g., Parker v. Time Warner Entertainment Co.*, 331 F.3d 13, 26 (2d Cir. 2003) ("A statutory penalty may violate due process where the penalty prescribed is 'so severe and oppressive as to be wholly disproportioned to the offense and obviously unreasonable.'") (*quoting Williams*); *United States v. Citrin*, 972 F.2d 1044, 1051 (9th Cir. 1992) (same);

5

the 24 songs in question on KaZaA, that was caused by KaZaA, or by KaZaA's users as a whole, not by this particular defendant.

The award in this case was also "grossly excessive." *See Waters-Pierce*, 212 U.S. at 111. The easiest way to see this is to consider what would happen if the damages in this case were assessed as a rule. The plaintiffs in this case repeatedly argued that they could have sued the defendant over thousands of sound recordings. If the plaintiffs had sued over 1,000 sound recordings instead of 24, the total damage award would have been $62,500,000, which is "obviously," *Williams*, 251 U.S. at 66–67, excessive and unreasonable. The constitutionality of the per-song award of statutory damages in this case cannot depend on the fact that the plaintiffs chose to sue over only 24 songs. Moreover, the evidence at trial showed that millions of others were also using KaZaA. If the defendants collected the award in this case from even just 1,000 other users, their total recovery would be $1,500,000,000. That, too, is obviously excessive and unreasonable. The award in this case cannot be said to punish the defendant for what she, one user of KaZaA among millions, did. Considered as such a punishment, it violates the standards announced in *Williams* and *Waters-Pierce*.

Moreover, none of the factors that the Court in *Williams* identified as favoring the constitutionality of a large statutory-damages award exist in this case. The first factor was "the interests of the public." In all the early cases sustaining large awards, the defendant was a company charged with performing a public function (a railroad sued for overcharging passengers in *Williams* and a utility sued for discriminating between its customers in *Danaher*) or the suit vindicated a right of the public as a whole (an antitrust suit against a large oil monopoly in *Waters-Pierce*). Here, there is no such public interest in play: the defendant is an individual, not a company providing a necessary public

6

service; and this suit vindicates the private pecuniary interests of the recording-company plaintiffs, not any general right of the public.

The second factor was "the numberless opportunities for committing the offense." The third factor was "the need for securing uniform adherence to established passenger rates." Again, at issue in *Williams* was a railroad overcharging its passengers: a railroad that set its prices incorrectly would overcharge passenger after passenger. No such concern is at issue in this case, where the defendant was an individual whose financial situation is such that even far more modest statutory damages, not to mention the threat of contempt, would have been sufficient to deter her from further infringement. Moreover, there is no need to make this particular defendant an example because it is difficult to catch violators: the plaintiffs can use the same techniques that they used to identify this defendant to identify the many others who shared music online. Then each such defendant can bear an appropriate punishment for participating in file sharing rather than one defendant being punished for file sharing in general.

### III.   THE *GORE* STANDARD

*Gore* and its progeny share the concern expressed in the *Williams* line of cases that punitive damages retain some reasonable relationship to actual harm. *See, e.g., State Farm Mutual Automobile Ins. Co. v. Campbell*, 538 U.S. 408, 416 (2003) (due process prohibits "the imposition of grossly excessive or arbitrary punishments"); *BMW of North America Inc. v. Gore*, 517 U.S. 559, 574–75 (1996) ("the $2 million award against BMW is grossly excessive"). These cases identify three factors or guideposts that a court must consider in determining whether punitive damages are proportional: "the degree of the defendant's reprehensibility or culpability; the relationship between the penalty and the

harm to the victim caused by the defendant's actions; and the sanctions imposed in other cases for comparable misconduct." *Cooper Industries v. Leatherman Tool Group, Inc.*, 532 U.S. 424, 435 (2001) (internal citations omitted) (collecting cases).

In assessing a defendant's reprehensibility, courts consider whether: "the harm caused was physical as opposed to economic; the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others; the target of the conduct had financial vulnerability; the conduct involved repeated actions or was an isolated incident; and the harm was the result of intentional malice, trickery, or deceit, or mere accident." *Campbell*, 538 U.S. at 419. The first three factors support the defendant in this case: the harm, lost sales, was exclusively economic; for the same reason, the health or safety of others was not involved in any way; and the plaintiffs, large recording companies, were not financially vulnerable. The fourth factor supports the plaintiffs in that the defendant was found to have used KaZaA with many songs, but supports the defendant in that there was no evidence that the plaintiff continued infringing after the plaintiffs sued her. The fifth factor supports the plaintiffs in that the jury found the defendant to be willful, but supports the defendant in that, given the instructions, this was only a finding of knowledge, and not one of "malice, trickery, or deceit."

"The second and perhaps most commonly cited indicium of an unreasonable or excessive punitive damages award is its ratio to the actual harm inflicted on the plaintiff." *Gore*, 517 U.S. at 580. In this case, the plaintiffs did not prove any actual harm at all. But a charitable estimate of their actual harm is $1 per song, the price of a song on iTunes, or $15 per song, the price of an album containing the song at the record store. The punishment ratios in this case, using these estimates of actual harm, would be 62,500

8

to 1 or 4,166 to 1, both of which are well above the single-, double-, or, rarely, triple-digit multiples that the courts have approved. *Cf. Gore*, 517 U.S. at 580–83 (discussing such ratios); *State Farm*, 538 U.S at 424–25 (same).

The best discussion of the third *Gore* factor in the context of file sharing cases is Judge Gertner's discussion in *Tenenbaum*. *See* 2010 WL 2705499 at \*15–\*21. Judge Gertner identified Congressional statements suggesting that particular senators did not expect that file sharers would be subject to substantial statutory damages, *see id.* at \*17–\*18; this Court's prior awards of $9,250 per song and $2,250 per song, *see id.* at \*19; the trend in other file-sharing cases where defendants have defaulted to enter judgment for the statutory minimum, *see id.* (collecting cases); and the damages typically assessed against restaurants, bars, and other businesses that play unlicensed music, *see id.* at \*20 (collecting cases with both lower multiples and "shockingly" lower absolute awards, including awards between $3,000 and $35,000). Judge Gertner correctly concluded that this factor supports a greatly reduced award in this case.

Twice, the Supreme Court has held that a defendant can be punished only for the acts that are the subject of the lawsuit. In *Campbell*, a Utah jury and the Utah Supreme Court punished State Farm for its nationwide policies in general, not its conduct against the particular plaintiff in that case, Campbell. *See* 538 U.S. at 422–23. The Court held that this was unconstitutional in a passage worth quoting:

> A defendant's dissimilar acts, independent from the acts upon which liability was premised, may not serve as the basis for punitive damages. A defendant should be punished for the conduct that harmed the plaintiff, not for being an unsavory individual or business. Due process does not permit courts, in the calculation of punitive damages, to adjudicate the merits of other parties' hypothetical claims against a defendant under the guise of the reprehensibility analysis, but we have no doubt the Utah Supreme Court did that here. Punishment on these bases creates the possibility of

9

>   multiple punitive damages awards for the same conduct; for in the usual case nonparties are not bound by the judgment some other plaintiff obtains.

*Id.* The Court made the same point in *Phillip Morris USA v. Williams*, 549 U.S. 346, 353 (2007), where it held that "the Constitution's Due Process Clause forbids a State to use a punitive damages award to punish a defendant for injury that it inflicts upon nonparties or those whom they directly represent, *i.e.*, injury that it inflicts upon those who are, essentially, strangers to the litigation."

If a defendant cannot be punished for its own dissimilar acts and if a plaintiff cannot collect punitive damages imposed for harm done to other, different plaintiffs, then, *a fortiori*, a defendant cannot be punished for the acts of other potential defendants not before the court.  But that is what happened in this case: the plaintiffs' evidence did not relate to the harm caused by this defendant, but rather to the harm caused by file-sharing defendants as a class.  Punishing this defendant for the harm that hundreds of thousands of others who are not defendants in this case caused is as unconstitutional as was punishing the defendant in State Farm for the harm that it caused to those who were not plaintiffs in that case.

## IV.   UNPERSUASIVE ARGUMENTS *CONTRA*

The plaintiffs often point out that the Copyright Act does not require them to come forward with evidence of actual damages if they elect to recover statutory damages instead.  This is true, but not controlling: that the Copyright Act does not require evidence of actual damages does not mean that the Constitution does not require such evidence or, even less, that the Constitution forbids an award wholly divorced from actual damages where the evidence shows that actual damages are nonexistent or *de minimis*.  See *Campbell*, 538 U.S. at 426 ("courts must ensure that the measure of

punishment is both reasonable and proportionate to the amount of harm to the plaintiff"). In many cases, it is clear that the defendant has caused some real injury, but that injury is difficult to quantify. This case is different. Here, it is not that the defendant has caused a difficult-to-quantify injury, it is that file sharing as a whole has caused a difficult-to-quantify injury. Guessing at damages when you know that a defendant has caused them is quite different from guessing at damages when the damages were caused by a shift in technology generally, rather than the particular conduct of the defendant at bar. One is a relaxation in the proof standard for damages; the other involves punishing someone for the actions of others.

The plaintiffs further argue that an award of statutory damages within the statutory range is constitutional because Congress considered such awards and found them to be appropriate. This argument is unpersuasive because the statute that authorizes statutory damages in this case is the general provision governing copyright remedies: it applies to theft of a movie for commercial reproduction; pirating of software like Microsoft Windows; reprinting of presidential memoirs; and downloading music off of KaZaA for noncommercial use. Congress did not tailor it to any particular copyright infringement; rather, Congress left that task to judges, and the Supreme Court, in *Feltner*, reallocated it to judges and juries together. Moreover, the Court has held that judicial review is a necessary procedural requirement for the constitutionality of punitive damages. *See Honda Motor Co. v. Oberg*, 512 U.S. 415, 434–35 (1994) ("such a decision [the 'exaction of exemplary damages'] should not be committed to the unreviewable discretion of a jury"); *Pacific Mutual Life Ins. Co. v. Haslip*, 499 U.S. 1, 20–23 (1991) (judicial review was critical component in upholding constitutionality of

punitive-damage award); *Cooper Industries*, 532 U.S. 424, 437 (judicial review does not violate the Seventh Amendment "[b]ecause the jury's award of punitive damages does not constitute a finding of 'fact'). Finally, this argument is inconsistent with the many cases under *Williams* and *Waters-Pierce* that review statutory damages under the Due Process Clause.

V.   **CONCLUSION**

The statutory damages assessed in this case bear no relation to the actual injury that this defendant caused. The plaintiffs complain that this is because the injury they suffered due to distribution of free music on KaZaA cannot be traced to any particular defendant. That may be true, but it does not follow that one defendant can be punished for the harm that KaZaA itself — that file-sharing technology itself — caused. The testimony was clear that the plaintiffs cannot trace and, indeed, made no attempt to trace, the particular injury that this defendant caused. If this Court agrees that the Constitution requires some proportionality between actual damages and statutory damages imposed to punish and deter, then the complete dearth of evidence of actual damages that the plaintiffs presented in this case requires a take-nothing verdict.

13

December 6, 2010

        Respectfully submitted,


        /s/ K.A.D. Camara

        K.A.D. Camara
        Joe Sibley
        CAMARA & SIBLEY LLP
        2800 Post Oak Boulevard, Suite 5220
        Houston, Texas  77056
        713 966 6789
        713 583 1131 (fax)
        *camara@camarasibley.com*
        *sibley@camarasibley.com*

        Garrett Blanchfield
        Brant D. Penney
        Reinhardt, Wendorf & Blanchfield
        332 Minnesota Street, Suite E-1250
        St. Paul, Minnesota  55101
        651 287 2100
        651 287 2103
        *g.blanchfield@rwblawfirm.com*
        *b.penney@rwblawfirm.com*

        *Attorneys for Defendant Jammie Thomas–Rasset*