# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

CAPITOL RECORDS, INC., et al.,

        Plaintiffs,

v.

**MEMORANDUM OF LAW & ORDER**
Civil File No. 06-1497 (MJD/LIB)

JAMMIE THOMAS-RASSET,

        Defendant.

Andrew B. Mohraz, David A. Tonini, and Timothy M. Reynolds, Holme Roberts & Owen, LLP; Felicia J. Boyd, Barnes & Thornburg, LLP; and Matthew J. Oppenheim, Oppenheim Group, LLP; counsel for Plaintiffs.

Joe Sibley and K. A. D. Camara, Camara & Sibley, LLP, and Brant D. Penney and Garrett D. Blanchfield, Jr., Reinhardt Wendorf & Blanchfield, counsel for Defendant.

Adam D. Kirschner, United States Department of Justice, and Gregory G. Brooker, Assistant United States Attorney, for Intervenor United States of America.

## I.    INTRODUCTION

This matter is before the Court on Plaintiffs' Motion to Amend Judgment [Docket No. 435] and Defendant's Motion to Alter or Amend the Judgment and Renewed Motion for Judgment as a Matter of Law [Docket No. 437].

1

## II.     SUMMARY OF THE COURT'S OPINION

The Court grants Thomas-Rasset's motion and reduces the damages award

to its constitutional maximum of $2,250 per song – three times the statutory

minimum.

The Court is intimately familiar with this case.  It has presided over three

trials on this matter and has decided countless motions.  It has grappled with the

outrageously high verdict returned in a case that was the first of its kind to go to

trial.  The Court is loath to interfere with the jury's damages decision.  However,

the Constitution and justice compel the Court to act.

The Court concludes that an award of $1.5 million for stealing and

distributing 24 songs for personal use is appalling.  Such an award is so severe

and oppressive as to be wholly disproportioned to the offense and obviously

unreasonable.  In this particular case, involving a first-time willful, consumer

infringer of limited means who committed illegal song file-sharing for her own

personal use, an award of $2,250 per song, for a total award of $54,000, is the

maximum award consistent with due process.

This reduced award is punitive and substantial.  It acts as a potent

deterrent.  It is a higher award than the Court might have chosen to impose in its

sole discretion, but the decision was not for this Court to make.  The Court has merely reduced the jury's award to the maximum amount permitted under our Constitution.

The Court further grants Plaintiffs' request to amend the Judgment to include a permanent injunction, but declines to enjoin Defendant from making available Plaintiffs' works because, as the Court previously held, the Copyright Act does not provide a making-available right.

## III.    BACKGROUND

Plaintiffs are recording companies that owned or controlled exclusive rights to copyrights in sound recordings, including 24 at issue in this lawsuit.  On April 19, 2006, Plaintiffs filed a Complaint against Defendant Jammie Thomas-Rasset alleging that she infringed Plaintiffs' copyrighted sound recordings pursuant to the Copyright Act, 17 U.S.C. §§ 101, 106, 501-505, by illegally downloading and distributing the recordings via the online peer-to-peer file sharing application known as Kazaa.  Plaintiffs sought injunctive relief, statutory damages, costs, and attorney fees.

The first trial on this matter began on October 2, 2007.  On October 4, 2007, the jury found that Thomas-Rasset had willfully infringed all 24 of Plaintiffs'

sound recordings at issue and awarded Plaintiffs statutory damages in the

amount of $9,250 for each willful infringement.  [Docket No. 100]  The total

damages award was $222,000.  On October 5, the Court entered judgment on the

jury's verdict.  [Docket No. 106]

On October 15, Defendant filed a Motion for New Trial, or in the

Alternative, for Remittitur, based solely on the issue of the constitutionality of

the Copyright Act's statutory damages provision in the case.  [Docket No. 109]

On September 24, 2008, the Court vacated the verdict and granted a new trial

based on its conclusion that it had erred in giving Jury Instruction No. 15, which

addressed the existence of a making-available right.  [Docket No. 197]  The Court

made no findings regarding the constitutionality of the damages award.

The second trial of this matter began on June 15, 2009.  On June 18, 2009,

the jury returned a verdict finding that Thomas-Rasset had willfully infringed all

24 sound recordings and awarding statutory damages in the amount of $80,000

for each song, for a total verdict of $1,920,000.  [Docket No. 336]  On June 19,

2009, the Court entered judgment on the jury's verdict.  [Docket No. 338]

Thomas-Rasset filed a motion requesting that the Court set aside the

award of statutory damages and provided three alternative bases: 1) the

4

statutory damages provision of the Copyright Act, as applied to Thomas-Rasset, violated the due process clause of the U.S. Constitution; therefore, Plaintiffs must accept a $0 verdict; 2) the jury's application of the statutory damages provision of the Copyright Act was excessive and shocking so the Court should remit the verdict to the minimum statutory damages of $750 per sound recording infringed; or 3) the jury's application of the statutory damages provision of the Copyright Act was excessive and shocking so the Court should grant a new trial. Thomas-Rasset also raised issues related to the sufficiency of the evidence to sustain the verdict and the Court's evidentiary rulings.  Plaintiffs requested that the Court amend the June 19, 2009 Judgment to include a permanent injunction.

On January 22, 2010, the Court issued an Order holding that the jury's statutory damages award of $80,000 per song infringed was shocking and unjust and remitted the damages award to $2,250 per song, three times the statutory minimum.  [Docket No. 366]  Because the Court reduced the damages award based on remittitur, it did not reach the question of whether the verdict was unconstitutional.  The Court further denied Defendant's evidentiary objections and, conditioned upon Plaintiffs' acceptance of the remittitur, granted Plaintiffs' request for an injunction.

On February 8, 2010, Plaintiffs exercised their right to reject remittitur and request a new jury trial solely on the issue of damages.  [Docket No. 371]

The case proceeded to trial for a third time on November 2, 2010.  On November 3, the jury returned a verdict awarding statutory damages in the amount of $62,500 for each song, for a total verdict of $1,500,000.  [Docket No. 427]  On November 8, the Court entered judgment on the jury's verdict.  [Docket No. 428]

Plaintiffs have now filed a Motion to Amend Judgment, seeking to include the same injunctive relief they previously sought in the final judgment. Defendant has filed a Motion to Alter or Amend the Judgment and Renewed Motion for Judgment as a Matter of Law requesting that the Court remove or reduce the award of statutory damages as unconstitutional.

## IV.    DISCUSSION

### A.    Motion to Alter or Amend the Judgment

#### 1.    Introduction

Defendant requests that this Court amend the judgment to reduce the damages award on the grounds that the award violates the due process clause of the Constitution because it bears no reasonable relationship to the actual

6

damages caused by Defendant.  Specifically, she brings an as-applied challenge

to the constitutionality of the statutory damages awarded under 17 U.S.C. §

504(c).

Although, in the past, the Court endeavored to avoid unnecessary

adjudication of a constitutional issue by relying upon remittitur, based on

Plaintiffs' demonstrated refusal to accept remittitur, the Court must now address

the constitutionality of the damages award, because, after yet another trial on

damages, the Court would face the same constitutional question.  Moreover,

Defendant has not requested remittitur at this juncture.

"[A] court has a mandatory duty to correct an unconstitutionally excessive

verdict so that it conforms to the requirements of the due process clause." Ross

v. Kansas City Power & Light Co., 293 F.3d 1041, 1049 (8th Cir. 2002) (quoting

Johansen v. Combustion Eng'g, Inc., 170 F.3d 1320, 1331 (11th Cir. 1999)).  The

Court has a duty to review whether a statutory damages award conforms to the

due process clause even when a jury has rendered the award.  See, e.g., S.W. Tel.

& Tel. v. Danaher, 238 U.S. 482, 491 (1915) (reversing judgment entered on jury's

$6,300 statutory damages award because the award "was so plainly arbitrary and

oppressive as to be nothing short of a taking of its property without due process

of law").  See also Seaboard Air Line Ry. v. Seegers, 207 U.S. 73, 78 (1907) (noting

that the due process clause imposes "limits beyond which penalties may not

go").

**2.      Standard for Review of the Constitutionality of the
Statutory Damages Award**

The parties disagree on the applicable standard for review of the

constitutionality of a statutory damages award.  Plaintiffs and the Government

assert that the correct standard is found in St. Louis, I.M. & S. Ry. Co. v.

Williams, 251 U.S. 63, 67 (1919), while Defendant claims that the punitive

damages standard found in BMW of N. Am., Inc. v. Gore, 517 U.S. 559 (1996),

and State Farm Mut. Auto. Ins. Co. v. Campbell, 538 U.S. 408 (2003), applies.  The

Court concludes that the Williams standard applies to its analysis.

**a)      The Williams Standard**

Under Williams, an award of statutory damages satisfies due process so

long as it is not "so severe and oppressive as to be wholly disproportioned to the

offense or obviously unreasonable."  251 U.S. at 67.  In Williams, the Supreme

Court upheld a statutory penalty of $75 for a railroad ticket overcharge of 66

cents.  The railroad alleged that the award, within the statutory range of 50 to 300

8

dollars, violated due process.  The Supreme Court explained that the

government had the power to impose fines and to permit the aggrieved party to

collect them in a private lawsuit.  Id. at 66.  And there was no requirement that

the award "be confined or proportioned to [the aggrieved party's] loss or

damages; for, as it is imposed as a punishment for the violation of a public law,

the Legislature may adjust its amount to the public wrong rather than the private

injury, just as if it were going to the state."  Id. (citation omitted).  The Supreme

Court acknowledged that the penalty seemed large when contrasted with the

overcharge, but concluded that the award conformed to the due process clause

"[w]hen it is considered with due regard for the interests of the public, the

numberless opportunities for committing the offense, and the need for securing

uniform adherence to established passenger rates."  Id. at 67.

In Williams, the Supreme Court directly addressed the constitutionality of

an award of statutory damages within a range set by a legislature.  The Supreme

Court has continued to cite to Williams as the due process clause standard for

statutory damages.  See Browning-Ferris Indus. of Vt., Inc. v. Kelco Disposal,

Inc., 492 U.S. 257, 276-77 (1989) (noting authority that "the Due Process Clause

places outer limits on the size of a civil damages award made pursuant to a

statutory scheme") (citing <u>Williams</u>, 251 U.S. at 66-67).  Courts have continued to

apply the <u>Williams</u> standard today to their review of the constitutionality of

statutory damage awards under the Copyright Act.  <u>See, e.g.</u>, <u>Zomba Enters., Inc.</u>

<u>v. Panorama Records, Inc.</u>, 491 F.3d 574, 587-88 (6th Cir. 2007).   The <u>Williams</u>

standard is directly on point and provides clear guidance to the Court for the

task at hand.

### b)   Inapplicability of Punitive Damages Jurisprudence

Thomas-Rasset relies on a series of cases addressing the constitutionality of

punitive damages to argue that the statutory damages awarded here are

excessive.  <u>See</u> <u>Gore</u>, 517 U.S. 559, <u>Campbell</u>, 538 U.S. 408.  In these cases, the

Supreme Court

> instructed courts reviewing punitive damages to consider three
> guideposts: (1) the degree of reprehensibility of the defendant's
> misconduct; (2) the disparity between the actual or potential harm
> suffered by the plaintiff and the punitive damages award; and (3)
> the difference between the punitive damages awarded by the jury
> and the civil penalties authorized or imposed in comparable cases.

<u>Campbell</u>, 538 U.S. at 418 (citation omitted).  The <u>Campbell</u> court instructed that

"few awards exceeding a single-digit ratio between punitive and compensatory

damages, to a significant degree, will satisfy due process."  <u>Id.</u> at 425.

While statutory damages awards under the Copyright Act undoubtedly contain a punitive component, see Cass County Music Co. v. C.H.L.R., Inc., 88 F.3d 635, 643 (8th Cir. 1996) (stating that "statutory damages . . . are intended not only to put the plaintiff in the position he would have been but for the infringement, but also, and arguably preeminently, to punish the defendant"), they also contain a compensatory component, see id. ("[S]tatutory damages are by definition a substitute for unproven or unprovable actual damages."); see also F.W. Woolworth Co. v. Contemporary Arts, Inc., 344 U.S. 228, 231 (1952) (stating that statutory damages are intended to permit "the owner of a copyright some recompense for injury done him, in a case where the rules of law render difficult or impossible proof of damages or discovery of profits") (citation omitted). Statutory damages are materially distinct from punitive damages awards. Moreover, while Gore addressed a punitive damage award awarded in addition to compensatory damages, the Copyright Act statutory damages award is awarded in place of compensatory damages, precisely because actual damages are so difficult to calculate.

The Court finds the Gore guideposts to be inapplicable and unhelpful to its analysis for three main reasons.  First, as explained above, statutory damages

and punitive damages are two distinct remedies with different purposes and attributes.  Second, the Supreme Court's underlying consideration in the <u>Gore</u> punitive damages jurisprudence is lack of notice; that concern does not neatly apply to a review of statutory damages awarded within a range explicitly set forth by Congress.  Third, the <u>Gore</u> guideposts themselves do not logically fit an analysis of statutory damages.

### (1)    Notice

The three guideposts set forth in <u>Gore</u> were aimed at ensuring that the defendant had fair notice of the potential punitive penalty.  <u>See</u> <u>Campbell</u>, 538 U.S. at 416-17 (providing that the reason that "[t]he Due Process Clause of the Fourteenth Amendment prohibits the imposition of grossly excessive or arbitrary punishments on a tortfeasor" is because "[e]lementary notions of fairness enshrined in our constitutional jurisprudence dictate that a person receive fair notice not only of the conduct that will subject him to punishment, but also of the severity of the penalty that a State may impose") (quoting <u>Gore</u>, 517 U.S. at 574) (other citations omitted).

Punitive damages are potentially unlimited and subject to the unbridled discretion of the jury.  The Supreme Court was concerned about punitive

12

damage awards because punitive damages awards are subject to an

"unregulated and arbitrary use of judicial power."  Lowry's Reports, Inc. v. Legg

Mason, Inc., 302 F. Supp. 2d 455, 460 (D. Md. 2004).

     In contrast, by definition, statutory penalties provide parties with clear

notice about their potential liability, albeit within a wide range.  Here, the

Copyright Act incorporates limits on statutory damages awards.  Those limits

were followed in this case.  While the extremely high damages award was

completely unexpected by Thomas-Rasset, and likely by Congress, in the Gore

sense of the word, Thomas-Rasset was on "notice" of the potential statutory

penalties awarded against her.

### (2)    Inapplicability of the Gore Guideposts

     Aside from the fact that the award at issue here is not a punitive damages

award and the purpose of the Gore guideposts – avoiding an unconstitutional

lack of notice – is inapposite in this case, the Gore guideposts themselves cannot

be logically applied to this award.

     The most glaring example of the fact that the Gore guideposts do not fit

this case is the guidepost requiring courts to examine "the difference between the

punitive damages awarded by the jury and the civil penalties authorized or

imposed in comparable cases." <u>Campbell</u>, 538 U.S. at 418.  The Supreme Court

reasoned that courts should give "substantial deference to legislative judgments

concerning appropriate sanctions for the conduct at issue." <u>Gore</u>, 517 U.S. at 583.

A statutory damages award, such as the one in this case, will be within the

permissible range of this guidepost because it will **be** the civil penalty authorized

by Congress.  The Copyright Act's explicit damages range is, itself, the very

guidepost that the Supreme Court urges this Court to heed.  Thus, comparing an

in-range statutory damages award to the authorized statutory damages range is

unhelpful.

In the second guidepost, the Supreme Court stated that courts should

examine the disparity between the actual or potential harm suffered and the

punitive damage award.  <u>Campbell</u>, 538 U.S. at 418.  Punitive damages are

awarded in addition to compensatory damages, so a comparison between the

two is easily made.  In contrast, under the Copyright Act, statutory damages are

awarded in lieu of actual damages.  No jury determination of compensatory

damages exists to which the Court could compare the statutory damages award.

Moreover, Congress expressly rejected the idea that a statutory damages

award should bear some specific ratio to the actual harm suffered by the plaintiff

because the statute provides copyright holders with the right to elect either "actual damages and any additional profits of the infringer" or "instead . . . statutory damages." 17 U.S.C. § 504(a), (c)(1).  See also Columbia Pictures Television, Inc. v. Krypton Broad. of  Birmingham, Inc., 259 F.3d 1186, 1194 (9th Cir. 2001) ("A plaintiff may elect statutory damages regardless of the adequacy of the evidence offered as to his actual damages and the amount of the defendant's profits.") (citation omitted).

Only the third factor, the degree of the defendant's culpability or reprehensibility, logically applies to statutory damages awards.

Because the Williams standard is directly applicable to this case and the Gore standard does not logically apply to statutory damages, the Court now examines whether the jury's award of statutory damages in this case complies with the Williams standard.  The Court must decide whether the statutory damages award is so severe and oppressive as to be wholly disproportioned to the offense or obviously unreasonable.

**3.** **Whether the Award Is So Severe and Oppressive as to Be Wholly Disproportioned to the Offense or Obviously Unreasonable**

**a)** **Statutory Damages Framework**

The Copyright Act provides that "an infringer of copyright is liable for either . . . the copyright owner's actual damages and any additional profits of the infringer . . . or . . . statutory damages."  17 U.S.C. § 504(a).

The statute further provides:

> (1) Except as provided by clause (2) of this subsection, the copyright owner may elect, at any time before final judgment is rendered, to recover, instead of actual damages and profits, an award of statutory damages for all infringements involved in the action, with respect to any one work, for which any one infringer is liable individually . . . in a sum of not less than $750 or more than $30,000 as the court considers just.  For the purposes of this subsection, all the parts of a compilation or derivative work constitute one work.

> (2) In a case where the copyright owner sustains the burden of proving, and the court finds, that infringement was committed willfully, the court in its discretion may increase the award of statutory damages to a sum of not more than $150,000.

17 U.S.C. § 504(c).

Congress last amended the statutory damages section of the Copyright Act in 1999, significantly increasing the minimum and maximum statutory awards to their current levels.  Congress intended the statutory damages to be "substantially" higher than actual damages:

> Courts and juries must be able to render awards that deter others from infringing intellectual property rights.  It is important that the cost of infringement substantially exceed the costs of compliance, so

16

> that persons who use or distribute intellectual property have a
> strong incentive to abide by the copyright laws.

H.R. Rep. No. 106-216, at 6 (1999).

The statutory damages provision of the Copyright Act serves both to compensate the copyright holder and to deter infringers.  Cass County Music Co., 88 F.3d at 643.  If a plaintiff requests that a jury decide the amount of statutory damages, then "a jury must determine the actual amount of statutory damages under § 504(c)."  Feltner v. Columbia Pictures Television, Inc., 523 U.S. 340, 355 (1998).

A plaintiff can recover statutory damages even though it did not submit evidence regarding actual damages, such as lost profits:

> [S]tatutory damages for copyright infringement are not only
> "restitution of profit and reparation for injury," but also are in the
> nature of a penalty, "designed to discourage wrongful conduct."
> "The discretion of the court is wide enough to permit a resort to
> statutory damages for such purposes.  Even for uninjurious and
> unprofitable invasions of copyright the court may, if it deems it just,
> impose a liability within statutory limits to sanction and vindicate
> the statutory policy."

Cass County Music Co., 88 F.3d at 643 (quoting F.W. Woolworth Co., 344 U.S. at 233) (footnote and emphasis omitted).

> **b)**     **The Relationship Between Statutory Damages and
> Actual Damages**

17

Thomas-Rasset argues that the ratio of the statutory damages award to actual damages in this case, when measured in songs, is 1:62,500.  She bases this calculation on a cost of $1 per song online.  She further argues that, based on a cost of $15 per album, the ratio is still 1:4,166.  Thomas-Rasset concludes that these ratios are unconstitutionally high.

The Court will not require strict proportionality between actual harm – which cannot be precisely quantified – and the damages award here.  Because Plaintiffs chose to seek statutory damages rather than actual damages, the Copyright Act does not require them to present proof of the actual damages caused by Thomas-Rasset's infringement.  See, e.g., F.W. Woolworth Co., 344 U.S. at 233 (holding that "[e]ven for uninjurious and unprofitable invasions of copyright the court may, if it deems it just, impose a liability within statutory limits to sanction and vindicate the statutory policy"); Cass County Music Co., 88 F.3d at 643 ("[S]tatutory damages are by definition a substitute for unproven or unprovable actual damages.").

Nor does the due process clause require that the damages award be strictly proportioned to Plaintiffs' losses.  In the case of statutory damage awards, Congress "may adjust its amount to the public wrong rather than the private

injury, just as if [the penalty] were going to the state." <u>Williams</u>, 251 U.S. at 66 (citation omitted).  Therefore, due process does not "require that [the statutory damages award] be confined or proportioned to [the plaintiff's] loss or damages."  <u>Id.</u>  However, because statutory damages have, in part, a compensatory purpose, "assessed statutory damages should bear some relation to the actual damages suffered."  <u>Bly v. Banbury Books, Inc.</u>, 638 F. Supp. 983, 987 (E.D. Pa. 1986).

### c)    The Factual Support for Actual Damages Inflicted

Thomas-Rasset argues that there is no evidence of harm caused by her actions – if Plaintiffs were damaged, it was by Kazaa or Kazaa users as a whole, not by Thomas-Rasset in particular.  She notes that Plaintiffs' witnesses could not testify about their specific profit margins on any of the 24 songs at issue; nor could they testify to how many third parties, other than MediaSentry, received any of the 24 songs from Defendant.  Thomas-Rasset points out that, even if **she** had not shared the 24 songs on Kazaa, those same popular songs would have been available on Kazaa from other users.  She concludes that, therefore, Plaintiffs failed to prove any actual injury based on Defendant downloading the 24 songs rather than buying them.

19

Plaintiffs contend that their actual damages were far greater than the cost of purchasing the songs on iTunes or the CD albums containing the songs. The evidence showed that Thomas-Rasset willfully infringed 24 of their copyrighted sound recordings. The songs, along with almost 2,000 others, were in Thomas-Rasset's directory, which she shared with the millions of users of the Kazaa network. Plaintiffs' songs were accessible for free downloading by millions of Kazaa users who could subsequently share them with others. Plaintiffs argue that the valuation of actual damages cannot be limited to the harm only caused by reproducing 24 songs.

Plaintiffs further note that Wade Leak testified that illegal online distribution not only causes the loss of the potential sale of that song to the downloader, but also causes a devaluing of the copyright in general because the marketplace becomes accustomed to obtaining music for free. Leak and JoAn Cho testified that it was difficult for Plaintiffs to compete in the legitimate market with an illegal peer-to-peer market providing access to the same recordings for free. Plaintiffs argue that offering the sound recordings for free – and thus, completely devaluing the recordings – causes more damage to the value of their copyright than if Defendant had attempted to illegally sell them at a high profit.

See F.W. Woolworth, 344 U.S. at 232 (recognizing that "sales at a small margin might cause more damage to the copyright proprietor than sales of the infringing article at a higher price").

Plaintiffs' witnesses further testified that the cost of obtaining a license to engage in Thomas-Rasset's conduct would be prohibitive: in order to obtain an unlimited license to distribute music online for free, a person would have to buy the entire recording company.  Even the cost of an unlimited license for one popular individual sound recording would cost millions of dollars – the entire value of the track.

Plaintiffs argue that Thomas-Rasset's infringement deprived them of the profits they might have made not only from Defendant, but also from an unknowable number of other Kazaa users as well.  They point out that widespread peer-to-peer infringement has damaged the value of copyrighted sound recordings as a whole.  Overall, online piracy has cost the recording industry billions of dollars and has threatened its viability.

The very nature of the peer-to-peer network used by Thomas-Rasset made it impossible for Plaintiffs to specifically quantify the damage done by Thomas-Rasset, because Kazaa does not keep logs of the works that she distributed

illegally and does not permit third parties to see what works she distributed.

Thomas-Rasset placed all 24 of Plaintiffs' works in her Kazaa shared folder, kept

them in that folder, and kept her computer on and connected to the Internet for

an extended period of time with Kazaa running, likely distributing these works

to countless other Kazaa users.  Defendant's own misconduct made it difficult to

quantify the damage that she caused.  The Court rejects her suggestion that she

caused no harm.  At the same time, while online piracy as a whole may have

caused billions in damages, there is simply no basis for attributing more than a

miniscule portion of that damage to Thomas-Rasset.

### d)    Evidence of Willfulness and the Need for Deterrence

As the Court instructed the jury, factors other than the damages caused

and gains obtained by the defendant's infringement are relevant to the decision

of the proper amount of statutory damages.  Facts that go to the deterrence

aspect of statutory damages, such as a defendant's willfulness or innocence, and

incorrigibility, are also relevant.  The jury found that Thomas-Rasset acted

willfully.  Thomas-Rasset testified that she had studied Napster in college and

that, before 2003, she had learned that copying and distributing copyrighted

music recordings over the Internet without the owner's permission was against

the law.  Therefore, she was aware that downloading songs off of and distributing songs via Kazaa was illegal.

Moreover, Thomas-Rasset refused to accept responsibility for downloading and distributing the infringing sound recordings.  She lied in her trial testimony by denying responsibility for her infringing acts and, instead, casting possible blame on her children and ex-boyfriend for her actions. Thomas-Rasset's past refusal to accept responsibility for her actions raises the need for strong deterrence.

### e)   Williams Factors

Having analyzed the harm caused by Thomas-Rasset's actions, the willfulness of her infringement, and the need for deterrence, the Court now addresses whether the $1.5 million statutory damages award passes muster under the Williams standard.  The Williams court highlighted three factors when analyzing whether the statutory damages award complied with the due process clause: "the interests of the public, the numberless opportunities for committing the offense, and the need for securing uniform adherence to established passenger rates." Williams, 251 U.S. at 67.  The Court examines each factor with regard to this case.

### (1)    Public Interest

Thomas-Rasset argues that there is no public interest at play in this case.

She notes that she is an individual, not a company providing a necessary public

service, like the railroad in <u>Williams</u>.  She claims that this lawsuit only vindicates

the recording companies' private pecuniary interests, not the general rights of

the public.  The Court disagrees.

There is a significant public interest in vindicating copyright.  In fact, "the

primary object in conferring the monopoly lie[s] in the general benefits derived

by the public from the labors of authors."  <u>United States v. Paramount Pictures</u>,

334 U.S. 131, 158 (1948).  Copyright "is a means by which an important public

purpose may be achieved.  It is intended to motivate the creative activity of

authors and inventors by the provision of a special reward, and to allow the

public access to the products of their genius after the limited period of exclusive

control has expired."  <u>Sony Corp. of America v. Universal City Studios, Inc.</u>, 464

U.S. 417, 429 (1984).  The public has a strong interest in rewarding and protecting

copyright owners in order to encourage the creation of valuable works to be

shared with the public.

### (2)    Opportunities for Committing the Offense

Due to the nature of peer-to-peer networks, such as Kazaa, there are numberless opportunities for Thomas-Rasset – and other individuals – to commit infringement of copyrighted sound recordings. It is easy, costless, and quick to infringe online. There are millions of users seeking to download and distribute sound recordings. There are countless sound recordings and other copyrighted material to be infringed. Kazaa was capable of allowing the sharing of hundreds of millions of files at a time. At the time that MediaSentry interacted with Thomas-Rasset on Kazaa, there were more than 2 million users online sharing more than 800 million files. Thomas-Rasset, herself, compiled almost 2,000 songs in her Kazaa shared folder. Because of the design of peer-to-peer networks, such as Kazaa, copyright holders face formidable challenges in identifying and stopping infringers. It is clear that there are "numberless opportunities for committing the offense" of illegally downloading and distributing sound recordings online.

### (3)    Need for Securing Uniform Adherence

The third <u>Williams</u> factor was "the need for securing uniform adherence to established passenger rates." The need for deterrence also exists in this case. Online infringement is easy to complete; it causes real damage to the copyright

holders, and, thereby injures the public by leading to a decrease in the incentive

to create artistic works; and it is widespread.

### f)      Unconstitutional Severity and Oppressiveness of the Award

To protect the public's interest in enforceable copyrights, to attempt to

compensate Plaintiffs, and to deter future copyright infringement, Thomas-

Rasset must pay a statutory damages award.  Plaintiffs have pointed out that

Thomas-Rasset acted willfully, failed to take responsibility, and contributed to

the great harm to the recording industry inflicted by online piracy in general.

These facts can sustain the jury's conclusion that a substantial penalty is

warranted.  However, they cannot justify a $1.5 million verdict in this case.

As the Court noted in its January 2010 Order, Thomas-Rasset was not a

business acting for profit.  Instead, she was an individual consumer illegally

seeking free access to music for her own use.  Congress set a high maximum for

statutory damages in order to ensure that damages awards could be large

enough to outweigh the potential gain from infringing.  In the case of commercial

actors, the potential gain in revenues is enormous and enticing to potential

infringers.  In the case of an individual, like Thomas-Rasset, who infringes by

using peer-to-peer networks, the potential gain from infringement is access to

free music to build a personal library, which could be purchased, at most, for

thousands of dollars, not the possibility of hundreds of thousands – or even

millions – of dollars in profits.  Although Plaintiffs highlight cases upholding

large statutory damages awards under the Copyright Act, all involve commercial

infringers – businesses, not private individuals committing infringement for their

personal use.  In fact, the only case in which the court examined the

constitutionality of a large statutory damages award against a non-commercial,

individual downloader is Sony BMG Music Entertainment v. Tenenbaum, in

which the Judge Gertner reached the same conclusion of unconstitutionality as

this Court now reaches.  See 721 F. Supp. 2d 85, 116 (D. Mass. 2010).  There is no

doubt that a multi-million dollar penalty is overkill to deter a private individual

from obtaining free songs online.  The need for deterrence cannot justify a $1.5

million verdict for stealing and illegally distributing 24 songs for the sole

purpose of obtaining free music.

       Nor can the damage suffered by Plaintiffs support this verdict.  Plaintiffs

were not required to prove their actual damages, and the Court does not shift

that burden to them now.  Even so, the possible actual damage weighs in the

Court's analysis.  One purpose of statutory damages under the Copyright Act is

to act as a substitute for actual damages when they are difficult to calculate. However, as the Court has already explained, statutory damages must still bear **some** relation to actual damages.

Plaintiffs cannot calculate how many other computer users committed infringement with the illegal copies of works accessed from Thomas-Rasset or the amount of damage that their access caused. Detecting online piracy and identifying infringers on peer-to-peer networks is difficult and costly. The recovery to Plaintiffs must be sufficient to justify their expenditure in pursuing infringers.

The Court acknowledges that, in aggregate, illegal downloading has caused substantial, widespread harm to the recording industry. Thomas-Rasset's individual acts of distribution likely led to distribution by an exponential chain of other users. She is a part of that chain, and her illegal actions contributed to the end result of widespread damage to Plaintiffs. These facts justify a statutory damages award that is many multiples higher than the simple cost of buying a CD or legally purchasing the songs online. Yet, although Thomas-Rasset played a role in the web of online piracy, she played a miniscule role – she was one of more than 2 million users sharing more than 800 million files on the day that

28

MediaSentry obtained files from her.  It cannot be that she must pay the damages caused by millions of individuals because she was one of two users caught, sued, and subjected to a jury trial.

The Court has weighed the near impossibility of quantifying the damages caused by the chain effect of Thomas-Rasset's distribution of copyrighted sound recordings over the Internet, the substantial damages caused by online piracy in aggregate, the compelling need for deterrence in this particular case, and the formidable obstacles to identifying and pursuing infringers.  The Court accords deference to the jury's verdict.  Yet an award of $1.5 million for stealing and distributing 24 songs for personal use is appalling.  Such an award against an individual consumer, of limited means, acting with no attempt to profit, is so severe and oppressive as to be wholly disproportioned to the offense and obviously unreasonable.

### 4.   The Maximum Constitutionally Allowable Statutory Damages Award in This Case

#### a)   Standard for Reduction under the Due Process Clause

Because the Court concludes that the $1.5 million award violates the due process clause, it must reduce the award to the maximum amount that will comply with due process.  <u>See</u> <u>Tenenbaum</u>, 721 F. Supp. 2d at 117; <u>see also</u>

Leatherman Tool Group, Inc. v. Cooper Indus., Inc., 285 F.3d 1146, 1152 (9th Cir.

2002) (reducing unconstitutionally high punitive damages award to the

"maximum award . . . consistent with due process").

**b)      Maximum Permissible Statutory Damages Award**

As the Court explained in its January 2010 Order, it cannot accept Thomas-

Rasset's invitation to simply compare the costs of the pilfered songs on iTunes

and reach the maximum permissible award.  Thomas-Rasset caused damages to

Plaintiffs that are far ranging and difficult to calculate.  By distributing the songs

at issue online for free, Thomas-Rasset exponentially increased Plaintiffs'

damages.  Additionally, unlike actual damages, statutory damages can include a

deterrence component, which can justify a higher award.  Here, Thomas-Rasset

willfully infringed on Plaintiffs' copyrights and then denied responsibility for her

infringing acts and, instead, blamed others.  These facts justify a higher award to

serve the increased need for deterrence.

Moreover, Plaintiffs elected to recover statutory damages **in lieu of** actual

damages.  Therefore, it would be improper to limit Plaintiffs' recovery based on a

strict multiple of Plaintiffs' actual damages.  In any case, the damages caused by

Thomas-Rasset's infringement cannot be calculated with precision.

The Court concludes that a statutory damages award of $2,250 – 3 times

the statutory minimum – per sound recording infringed is the maximum

permitted under the due process analysis.  As the Court explained in its January

2010 Order, there is a broad legal practice of establishing a treble award as the

upper limit permitted to address willful or particularly damaging behavior.

Federal statutes allow for an increase in statutory damages, up to triple statutory

damages, when the statutory violation is willful or demonstrates a particular

need for deterrence.  See, e.g., Digital Millennium Copyright Act, 17 U.S.C. §

1203(c)(4) (providing that "the court may increase the award of damages up to

triple the amount that would otherwise be awarded" if the person committed the

violation "within 3 years after a final judgment was entered against the person

for another such violation"); Telephone Consumer Protection Act, 47 U.S.C. §

227(b)(3), (c)(5) (permitting court to increase statutory damages award "to an

amount equal to not more than 3 times" the statutory damages amount of $500,

for willful or knowing violations).  In these other contexts, treble statutory

damages have been set as the permissible outer limit of statutory damages

awards, even in the face of willful behavior.

Other statutes, while not trebling statutory damages, allow tripling of a

dollar amount other than actual damages, such as the cost of settlement service,

the defendant's profits, the amount of a fraudulent claim, or a month's rent.  See,

e.g., Real Estate Settlement Procedures Act, 12 U.S.C. § 2607(d)(2) ("Any person

or persons who violate the prohibitions or limitations of this section shall be

jointly and severally liable to the person or persons charged for the settlement

service involved in the violation in an amount equal to three times the amount of

any charge paid for such settlement service."); Lanham Act, 15 U.S.C. § 1117(b)

(providing that, under certain circumstances involving the use of a counterfeit

mark or designation, "the court shall, unless the court finds extenuating

circumstances, enter judgment for three times such profits or damages,

whichever amount is greater"); Civil Monetary Penalties Law, 42 U.S.C. § 1320a-

7a(a) ("In addition, such a person shall be subject to an assessment of not more

than 3 times the amount claimed for each such item or service in lieu of damages

sustained by the United States or a State agency because of such [false] claim . . .

."); Mass. Gen. Laws ch. 186, § 14 ("Any person who commits any act in violation

of this section [by interfering with a tenant's quiet enjoyment] shall also be liable

for actual and consequential damages or three month's rent, whichever is greater

. . .").

Many statutes permit the recovery of treble actual damages, either because

of willful behavior or as a matter of course when Congress has found the

violation to be particularly serious.  <u>See, e.g.,</u> Clayton Act, 15 U.S.C. § 15(a)

(providing that "any person who shall be injured in his business or property by

reason of anything forbidden in the antitrust laws . . . shall recover threefold the

damages by him sustained"); Racketeer Influenced and Corrupt Organizations

Act, 18 U.S.C. § 1964(c) (providing that "[a]ny person injured in his business or

property by reason of a violation of section 1962 of this chapter . . . shall recover

threefold the damages he sustains"); False Claims Act, 31 U.S.C. § 3729(a)(1)

(establishing "civil penalty of not less than $5,000 and not more than $10,000 . . .

plus 3 times the amount of damages which the Government sustains because of

the act of that person"); Patent Act, 35 U.S.C. § 284 (providing that "the court

may increase the damages up to three times the amount found or assessed");

Residential Lead-Based Paint Hazard Reduction Act, 42 U.S.C. § 4852d(b)(3)

("Any person who knowingly violates the provisions of this section shall be

jointly and severally liable to the purchaser or lessee in an amount equal to 3 times the amount of damages incurred by such individual.").

Finally, when statutory damages provisions do not provide specific guidance, courts have turned to the treble damages formula to address willful behavior.  See, e.g., Zuffa, LLC v. Al-Shaikh, Civil Action No. 10–00085–KD–C, 2011 WL 1539878, at *9 (S.D. Ala. Apr. 21, 2011) (noting that, in awarding statutory damages for first time violations of the Communications Act of 1934, 47 U.S.C. § 605(e)(3)(C), where the court is permitted to increase the statutory damages award by an unspecified amount up to $100,000 based upon a finding of willfulness and attempted gain, many courts have "multiplied the amount of statutory damages awarded . . . by three (3), to compute the amount of enhanced damages") (gathering cases).

There is no treble damages provision included within the Copyright Act, and this Court does not seek to insert such a provision.  The Court concludes that in this particular case, involving a first-time willful, consumer infringer who committed illegal song file-sharing for her own personal use, $2,250 per song, for a total award of $54,000, is the maximum award consistent with due process.  See also Tenenbaum, 721 F. Supp. 2d at 117 (concluding that "an award of $2,250 per

song, three times the statutory minimum, is the outer limit of what a jury could

reasonably (and constitutionally) impose in this case" )(footnote omitted).

The Court must settle upon a precise dollar amount that is the maximum

award permissible, yet any specific dollar amount will appear to be somewhat

arbitrary.  Why is an award of $2,251 per song oppressive while an award of

$2,250 is not?  See Tenenbaum, 721 F. Supp. 2d at 117-18 ("Some will

undoubtedly murmur that my decision to draw the constitutional line at $2,250

per infringed work is to some extent arbitrary.  But this criticism applies to any

line drawing process; it is always possible to argue that the line should have been

drawn a bit differently.").  The Court must arrive upon a tangible dollar amount.

Having carefully weighed all of the relevant factors, the Court concludes that, in

this case, setting the limit at three times the minimum statutory damages amount

is the most reasoned solution.

This award constitutes the maximum amount a jury could award,

consistent with the due process clause.  This reduced award is punitive and

substantial.  It acts as a potent deterrent.  It is a higher award than the Court

might have chosen to impose in its sole discretion, but the decision was not for

this Court to make.  The Court has merely reduced the jury's award to the

maximum amount permitted under our Constitution.

## B.    Plaintiffs' Request for Injunctive Relief

### 1.    Propriety of an Injunction

Plaintiffs request that, under Federal Rule of Civil Procedure 59(e), the

Court amend the Judgment in this case to include an injunction, as requested in

Plaintiffs' Complaint.  The Court thoroughly addressed this request in its

January 2010 Order, and the parties raise no materially new arguments that

would change the Court's ruling.  See Capitol Records Inc. v. Thomas-Rasset, 680

F. Supp. 2d 1045, 1059-62 (D. Minn. 2010).  Therefore, based on the same

reasoning set forth in the Court's previous Order, the Court grants Plaintiffs'

request, with the exception that the Injunction will not include a ban on the act of

making available Plaintiffs' sound recordings.

The Copyright Act provides:

> Any court having jurisdiction of a civil action arising under this title
> may . . . grant temporary and final injunctions on such terms as it
> may deem reasonable to prevent or restrain infringement of a
> copyright.

17 U.S.C. § 502(a).  "Injunctions regularly are issued pursuant to the mandate of

Section 502, because the public interest is the interest in upholding copyright

36

protections." <u>Taylor Corp. v. Four Seasons Greetings, LLC</u>, 403 F.3d 958, 968 (8th

Cir. 2005) (citation omitted).

> To determine whether permanent injunctive relief is warranted, [the
> Court] balance[s] three factors: (1) the threat of irreparable harm to
> the moving party; (2) the balance of harm between this harm and the
> harm suffered by the nonmoving party if the injunction is granted;
> and (3) the public interest.

<u>Id.</u> at 967.

### a)      Irreparable Harm

Plaintiffs have demonstrated irreparable harm, whether or not the Court

applies the traditional presumption of irreparable harm based upon a finding of

copyright infringement.  Although Plaintiffs are awarded a large monetary

judgment against Defendant to compensate them for any past infringing acts and

deter future infringement, there are strong doubts whether Plaintiffs will ever

recover the monetary award from Defendant.  Moreover, the Court holds that

the likelihood of future infringement is raised because Defendant did not accept

responsibility for her actions, and online infringement is easy to execute, but

difficult to detect.  Nor does Plaintiffs' failure to seek a preliminary injunction

prevent entry of a permanent injunction at this point in the litigation.  <u>Cf.</u>

<u>MercExchange, L.L.C. v. eBay, Inc.</u>, 500 F. Supp. 2d 556, 573 (E.D. Va. 2007)

(holding plaintiff's failure to seek a preliminary injunction was "plainly not dispositive" and concluding that failure was only relevant in that particular case because it was "consistent with [the plaintiff's] strategy of pursuing market participants to exact licenses for infringement") (footnote omitted).  There is no indication that Plaintiffs' decision to forgo seeking a preliminary injunction was part of an overall strategy to attempt to exact licenses or was otherwise contrary to the propriety of entry of a permanent injunction at this time.

Congress provided for statutory damages for the very reason that actual damages for copyright infringement are difficult to prove.  It would be contrary to Congress's intent and the jury's verdict to deny injunctive relief to Plaintiffs because they took advantage of the option of seeking statutory damages due to the difficulty of proving actual damages.  This challenge of measuring damages contributes to a finding of irreparable harm.

As the Court has already discussed in this Order, illegal distribution over peer-to-peer networks, such as Kazaa, causes substantial damage to Plaintiffs. Additionally, a license to engage in Defendant's activity would be prohibitively expensive.  The downloaded sound recordings in this case were exact replicas of Plaintiffs' copyrighted sound recordings.  Therefore, by distributing these

recordings to other Kazaa users, Thomas-Rasset directly competed with Plaintiffs' copyrighted material.  Measuring damages from peer-to-peer copyright infringement is particularly difficult because Kazaa permits anonymous file sharing, so copyright holders cannot monitor every act of infringement over the network.

The harm Plaintiffs face is irreparable and monetary damages are inadequate precisely because actual damages are difficult to compute.  Given the large volume of songs in Thomas-Rasset's Kazaa share file and her past refusal to accept responsibility for her actions, it is reasonable to conclude that an injunction is necessary to prevent future infringement.  This threat of repeated infringement, the difficulty of detecting future infringement by Thomas-Rasset, and the viral aspect of damages weigh in favor of a finding of a threat of irreparable harm.

### b)    Balance of the Hardships

The balance of the hardships favors an injunction.  The requested injunction would inflict minimal hardship on Thomas-Rasset.  There is no cognizable harm to Defendant from being enjoined from doing something that is against the law and for which she has already been found liable.  Thomas-Rasset

fails to identify any hardship that would be inflicted upon her if the injunction is

issued.  On the other hand, Defendant's conduct could create exponential harm

to Plaintiffs.

### c)      Public Interest

Injunctions regularly are issued pursuant to the mandate of section
502, because the public interest is the interest in upholding copyright
protections.  Since Congress has elected to grant certain exclusive
rights to the owner of a copyright in a protected work, it is virtually
axiomatic that the public interest can only be served by upholding
copyright protections and, correspondingly, preventing the
misappropriation of the skills, creative energies, and resources
which are invested in the protected work.

Taylor Corp., 403 F.3d at 968 (citations omitted).

The public interest weighs in favor of an injunction.  There is no allegation

that Thomas-Rasset engaged in parody or other critical use of Plaintiffs'

copyrighted material, and her fair use defense was waived; instead, Defendant

engaged in "simple piracy." Campbell v. Acuff-Rose Music, Inc., 510 U.S. 569,

578 n.10 (1994).  Here, the public interest is in favor of upholding copyright

protections and the copyright holder's exclusivity.

### 2.      Scope of the Injunction

The Court grants Plaintiffs' request for an injunction.  Analysis of each equitable factor favors entry of a permanent injunction barring future infringement.  Therefore, the Court grants Plaintiffs' motion to amend the judgment.

Because Plaintiffs continually create new works that will be vulnerable to infringement and would require litigation if the injunction were limited to existing works, the injunction covers works to be created in the future.  See, e.g., Princeton Univ. Press v. Mich. Document Servs., Inc., 99 F.3d 1381, 1392 (6th Cir. 1996) ("The weight of authority supports the extension of injunctive relief to future works.") (citations omitted).

The Court also orders Thomas-Rasset to destroy all unauthorized copies of Plaintiffs' recordings, to the extent that she still possesses them.  See 17 U.S.C. § 503(b) (permitting court to order "destruction or other reasonable disposition of all copies . . . made or used in violation of the copyright owner's exclusive rights").  Thomas-Rasset offers no legitimate reason why she should keep unauthorized copies of the infringed songs.

Plaintiffs further request that the Court include language in the injunction barring Defendant from making any of Plaintiffs' sound recordings available for

41

distribution to the public.  Plaintiffs argue that, if Thomas-Rasset makes

Plaintiffs' copyrighted works available on a peer-to-peer network, she will have

completed all of the steps necessary for her to engage in the same illegal

distribution of Plaintiffs' works for which she has already been found liable.

Because the Court has held that the Copyright Act does not provide a making-

available right, it will not enjoin Thomas-Rasset from making the copyrighted

sound recordings available to the public.  See Capitol Records v. Thomas, 579 F.

Supp. 2d 1210, 1226-27 (D. Minn. 2008).  As granted, the Injunction adequately

addresses Plaintiffs' concern.  It enjoins all infringement by Defendant, including

use of an online distribution system to reproduce or distribute Plaintiffs' sound

recordings without a lawful license or Plaintiffs' express authority.

Accordingly, based upon the files, records, and proceedings herein**, IT IS**

**HEREBY ORDERED**:

1.   Plaintiffs' Motion to Amend Judgment [Docket No. 435] is **DENIED IN PART** and **GRANTED IN PART** as follows: The Judgment [Docket No. 428] will be amended to include the following permanent injunction:

> Defendant shall be and hereby is enjoined from directly or indirectly infringing Plaintiffs' rights under federal or state law in the copyrighted recordings and any sound recording, whether now in existence or later created, that is owned or controlled by Plaintiffs (or any

parent, subsidiary, or affiliate record label of Plaintiffs) ("Plaintiffs' Recordings"), including without limitation by using the Internet or any online media distribution system to reproduce (<u>i.e.</u>, download) any of Plaintiffs' Recordings, or to distribute (<u>i.e.</u>, upload) any of Plaintiffs' Recordings, except pursuant to a lawful license or with the express authority of Plaintiffs. Defendant also shall destroy all copies of Plaintiffs' Recordings that Defendant has downloaded onto any computer hard drive or server without Plaintiffs' authorization and shall destroy all copies of those downloaded recordings transferred onto any physical medium or device in Defendant's possession, custody, or control.

2. Defendant's Motion to Alter or Amend the Judgment and Renewed Motion for Judgment as a Matter of Law [Docket No. 437] is **GRANTED** as follows:

The Judgment [Docket No. 428] is amended to reduce the damages award to $2,250 per sound recording infringed.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:  July 22, 2011                    s/ Michael J. Davis
                                         Michael J. Davis
                                         Chief Judge
                                         United States District Court